# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

Francisco Almeida-Leon, et al.,

     Plaintiffs,

               v.

WM Capital Management, Inc., et al.,

     Defendants.

**Civil No. 16-1394 (SEC)**

## OPINION & ORDER

Pending before the Court is WM Capital's motion for summary judgment on Plaintiffs' remaining claim for breach of contract.[1] The motion is granted.

### I.   BACKGROUND

The instant case arises from a settlement agreement executed in 2014 between Juan Almeida-Leon, Francisco Almeida-Leon, Wanda Cruz-Quilez, Tenerife Real Estate Holdings, LLC (collectively, Plaintiffs), and the Federal Deposit Insurance Commission as receiver for R-G Bank (the FDIC-R). In short, the FDIC-R had obtained a default judgment against Juan Almeida-Leon for almost $3 million. ECF No. 41, ¶ 1-2. In order to protect its judgment credit, the FDIC-R secured a preliminary injunction halting the foreclosure sale of various properties in another litigation in state court, the proceeds of which would have accrued to the Plaintiffs.

After lengthy negotiations, the parties reached an "Agreement to Satisfy Judgment and Assignment of Mortgage Notes" (the "Agreement"). In short, the FDIC-R agreed to dissolve the injunction in exchange for several concessions aimed at the

---

[1] Also pending is Plaintiffs' Motion to Alter Judgment. ECF No. 63. The motion is denied substantially for the reasons stated in WM Capital's response, ECF No. 70.

satisfaction of its judgment credit. In particular, Plaintiffs assigned the FDIC a 50% interest in the notes pending foreclosure, as well as the related judgment issued by the state court in that case.[2] Although the purpose of the agreement was straightforward, its execution was decidedly not so pellucid. In particular, the Agreement contained a set of preconditions that would later hinder the prompt liquidation of those notes.

As required by the Agreement, the parties moved the state court to amend the judgment and include the FDIC-R as co-plaintiff and judgment creditor. Although the parties filed that motion on August 12, 2014, the state court did not amend the judgment until February 11, 2016. ECF No. 41, ¶ 7. Plaintiffs complain that for the entire period, and despite their multiple requests, the FDIC-R never took any affirmative actions geared towards the sale of the property. See ECF No. 45-1, ¶ 16. On December 9, 2015, WM Capital purchased the FDIC-R's participation in the notes and judgment. See ECF No. 1, ¶ 13.

Frustrated with the stalemate on the sale of the notes, Plaintiffs sued the FDIC-R and WM Capital[3] on January 22, 2016 – 20 days before the state court ruled on the motion. See ECF No. 9-1. Among other matters, Plaintiffs sought to exercise co-owner and litigious credit redemption upon the credit assigned by the FDIC-R to WM Capital. The Hon. Judge Casellas dismissed those claims at the pleadings stage. See ECF No. 56. Now ripe for summary judgment is Plaintiffs' remaining claim for breach of contract.

## II. ANALYSIS

As with any breach of contract claim, the preferred place to start is with the contract itself. In one section of the Agreement, titled "Termination of Agreement," the FDIC represented that it was drafting a "Phase I Environmental Study Report on and assessing the environmental condition" of the property subject to foreclosure. See ECF

---

[2] Plaintiffs claim that only Juan Almeida assigned a "50% undivided interest in the notes being foreclosed" in the state court case. See ECF No. 45-2, ¶ 3. The record shows otherwise. All of the co-plaintiffs in this case explicitly agreed to assign an undivided interest in the mortgage notes and judgment in favor of the FDIC. See ECF No. 41-2, ¶ 1.1 & ¶ 3.1.2.

[3] At that time, Plaintiffs did not know the identity of the FDIC-R's buyer – a later amendment to the complaint filled this void.

No. 41-2, ¶ 3.2. The FDIC promised to complete this task "as quickly as possible." Id. Yet, "[u]ntil such time as the FDIC-R complete[d] [the Phase I study] or otherwise provide[d] authorization in writing, the Foreclosure Auction [would] not occur." Id. This clause ostensibly gave the FDIC-R the ability to void the Agreement if the results of the environmental study were "unsatisfactory." Id.

The main thrust of Plaintiffs' claim is that the FDIC-R did not complete the environmental study "as quickly as possible," which delayed the execution of the notes.[4] Until the sale took place, this valuable commercial real estate property remained in limbo, causing Plaintiffs their alleged damages.

WM Capital, in turn, counters that the completion *vel non* of the environmental study was irrelevant. Before the sale could take place, the Agreement also required the substitution of the FDIC-R as a co-plaintiff and judgment creditor in the state court case through the entry of an amended judgment. See ECF No. 41-2, ¶ 3.1.3. "As soon as such amended judgment is entered," the Agreement proclaimed, the parties would "seek without delay and use their best efforts to conduct the Foreclosure Auction as soon as possible." Id. While the parties filed a motion requesting such amendment on August 12, 2014, the state court did not rule upon the motion until February 11, 2016. See ECF No. 41, ¶ 6-7. No breach could occur, according to WM Capital, until after the state court had amended the judgment. The Court agrees.

Under Puerto Rico law, a contract is formed by the concurrence of three elements: (1) the consent of the contracting parties; (2) a definitive object subject of the contract; and (3) a cause for the obligations that each party is assuming. 31 P.R. Laws Ann. § 3391. There is consent upon "the concurrence of the offer and acceptance of the thing and the cause which are to constitute the contract." 31 P.R. Laws Ann. § 3401.

"Obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." Id. at § 2994. If "a

---

[4] Plaintiffs further contend that WM Capital is also liable for this breach given its acquisition of the disputed assets from the FDIC-R.

party fails to uphold or abide by the contract's essential obligations, such failure will be deemed a breach of the contract." Markel Am. Ins. Co. v. Diaz-Santiago, 674 F.3d 21, 31 (1st Cir. 2012).

Parties are free to qualify their consent to a particular obligation by inserting a condition precedent into the contract (in Spanish, a "*condición suspensiva*"). When an obligation is subject to preconditions, "the acquisition of rights, as well as the extinction or loss of those already acquired, shall depend upon the event constituting the condition." 31 P.R. Laws Ann. § 3042. In other words, "the insertion of a condition is a self-imposed limitation which places the contractual relationship in a phase of suspension... [t]he condition therefore entails a necessary delay during which the acquisition of rights contemplated by the parties in their obligational structure ... is held in abeyance until the same is fulfilled." Raytheon–Catalytic, Inc. v. Gulf Chemical Corporation, 959 F. Supp. 100 (D.P.R.1997) (our emphasis); see also Melendez Martinez v. Jimenez Realty, Inc., 897 (1970) (the duty to comply with a particular contractual obligation does not trigger unless preconditions are met).

In this case, two events had to occur before the foreclosure could proceed: 1) the state court had to amend the judgment to include the FDIC-R as a co-plaintiff and judgment creditor; and 2) the FDIC had to complete the environmental study or provide its written consent to the sale. Each of these events constituted an independent condition precedent to the parties' obligation to "seek without delay and use their best efforts to conduct the Foreclosure Auction." Thus, even ignoring the second precondition, the obligation to take steps in furtherance of the foreclosure did not trigger until February 11, 2016; that is, the date on which the state court amended its judgment.[5] Because

---

[5] Plaintiffs spend a lengthy portion of their brief arguing that the proximate cause of their damages was the FDIC-R's failure to complete the environmental study. They argue, in other words, that the state court's failure to act upon the motion does not excuse the FDIC-R's failure to complete the environmental study. WM Capital counters that under the Agreement, the environmental study was actually unnecessary if the FDIC-R gave its written consent to the sale. As the Court understands it, though, this squabble changes nothing. The Agreement clearly states that the foreclosure sale could not proceed until the state court granted the motion. The obligation to seek foreclosure, then, did not trigger until that event actually occurred.

Also, Plaintiffs recently filed a "supplement" to their opposition brief noting that, after discovery, they found out that the FDIC-R had actually conducted parts of the environmental study without informing Plaintiffs. As WM

Plaintiffs filed the complaint in this case 20 days prior to that date, their breach of contract claim fails as a matter of law.[6] WM Capital could not breach an obligation that did not exist.

There is one last wrinkle to iron out in this case. Recall that WM Capital had already acquired the FDIC-R's assets by the time the state court granted the motion on February 11, 2016. Plaintiffs complain that even after this happened, WM Capital "continued to prevent and impede" the foreclosure of the properties. See ECF No. 45, p. 18. According to Plaintiffs, this was yet another breach of the Agreement. This argument fails for several reasons.

The first is procedural: Plaintiffs never alleged these particular facts in their complaint. In fact, the "purpose of the lawsuit" was, among other things, to "demand and recover the damages resulting from the credit delay incurred by the FDIC-R." See Second Amended Complaint, ECF No. 21, ¶ 45 (e) (emphasis added). Other paragraphs of the second amended complaint cement the notion that Plaintiffs' breach of contract claim centers on the FDIC's alleged failure to "generate the environmental study" referenced in the 2014 contract, and that WM Capital's liability for this alleged breach is limited to its status as the FDIC-R's successor. See Id. at ¶ 45 (c).

Along the same vein, the second amended complaint does not charge WM Capital with any breach of contract occurring after the date of the original pleadings in this case. In fact, Plaintiffs have amended their pleadings twice. On neither occasion did the movers state the allegations they now raise in opposition to WM Capital's motion for summary judgment. To bring those allegations to bear would have required a supplemental complaint, which Plaintiffs have never even requested leave to file. A supplemental complaint, pursuant to Fed. R. Civ. P. 15(d), is the vehicle through which

---

Capital notes, this filing is untimely. Even if it were not, it makes no difference; again, the completion *vel non* of the environmental study is irrelevant.

[6] Bizarrely, Plaintiffs also complain that the FDIC-R breached the Agreement by failing to prod the state court into granting their motion. This argument fails for the reasons outlined above. But even if it did not, Plaintiffs' argument is a non-starter, given that the obligation applied equally to Plaintiffs, and they also chose to stay silent before the state court.

a pleader may set forth "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." While "[a]n amended complaint sometimes can be filed 'as a matter of course,' Fed.R.Civ.P. 15(a); a supplemental complaint cannot." Connectu LLC v. Zuckerberg, 522 F.3d 82, 90 (1st Cir. 2008). In short, these allegations are, procedurally speaking, out of bounds and insufficient to sustain the opposition.

The second is substantive: the record does not support the notion that WM Capital acted to delay the foreclosure sale after the state court granted the motion. In fact, only a couple of months after the substitution, on May 5, 2016, Plaintiffs and WM Capital stipulated before the state court that they would conduct the foreclosure sale. See ECF No. 52-1, p. 11. In that stipulation, the parties represented to the state court that the case at bar could have an incidental effect on the particular amount and scope of the interest each party had on the mortgage notes. However, while the outcome of this case would determine the amount due to each of the parties, nothing impeded the liquidation of the properties. Furthermore, the Court notes that the environmental study – Plaintiffs' cudgel throughout this litigation – played no role in the stipulation. In other words, the parties agreed to the sale regardless of the status or completion of that report.

### III.    Conclusion

WM Capital's motion for summary judgment is GRANTED. Plaintiffs' remaining claim is dismissed. However, the Court notes that this does not dispose of this case, since WM Capital still has a live counterclaim for breach of contract. The Court will refrain from issuing a partial judgment at this time.[7] Instead, within 14 days, WM Capital shall state how it intends to proceed with this claim.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of March, 2018.

> *s/ Daniel R. Dominguez*
> DANIEL R. DOMINGUEZ
> U.S. Senior District Judge

---

[7] The First Circuit strongly disfavors partial judgments as they foster piecemeal appeals. See Nichols v. Cadle Co., 101 F.3d 1448, 1449 (1 st Cir. 1996) ("piecemeal appellate review invites mischief. Because the practice poses a host of potential problems we have warned, time and again, that Rule 54(b) should be used sparingly.").