# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

FRANCISCO ALMEIDA-LEÓN, et al.,   )
                                   )
           Plaintiffs,        )
                                   )
      v.                 )     Civil No. 3:16-cv-01394-JAW-BJM
                                   )
WM CAPITAL MANAGEMENT, INC.,   )
                                   )
                                   )
          Defendant.       )

## ORDER ON CO-PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Co-plaintiff/counter-defendant seeks to dismiss defendant/counter-plaintiff's counterclaim for specific performance of an agreement to satisfy a judgment under Puerto Rico law against co-plaintiffs/counter-defendants. The parties present a dense and convoluted set of facts, and the Court concludes there are genuine issues of material fact and denies summary judgment.

## I.   PROCEDURAL HISTORY

On March 7, 2016, WM Capital Management, Inc. (WM) removed a lawsuit filed by Francisco Almeida-León, Wanda Cruz-Quiles, their Conjugal Partnership, and Juan Almeida-León (the Almeida Plaintiffs) against WM claiming (1) breach of contract; (2) litigious credit, and (3) co-owner redemption under Puerto Rico law. *Notice of Removal*, Attach. 5, *Compl.* (ECF No. 1-5).  On May 10, 2016, the Almeida

Plaintiffs filed a second amended complaint. *Second Am. Compl.* (ECF No. 21) (*Am. Compl.*). A long and highly contentious legal process ensued.

### A.     Co-Owner Redemption and Litigious Credit Claims

On May 24, 2016, WM moved to dismiss the litigious credit and co-owner redemption claims, the Almeida Plaintiffs responded on June 24, 2016, and WM replied on July 14, 2016. *WM Capital's Mot. to Dismiss* (ECF No. 23); *Opp'n to Mot. to Dismiss* (ECF No. 27); *Mot. Tendering Reply* (ECF No. 33). The Court granted WM's motion to dismiss on the Almeida Plaintiffs' litigious credit and co-owner redemption claims and issued a partial judgment on February 17, 2017. *Op. & Order* (ECF No. 56) (*Order on Litigious Credit and Co-Owner Redemption Claims*); *Partial J.* (ECF No. 57) (*J. on Litigious Credit and Co-Owner Redemption Claims*).

On March 9, 2017, the Almeida Plaintiffs filed a motion to alter and amend the order of dismissal and the corresponding partial judgment, which WM opposed. *Mot. to Alter and Am. Dockets #56 and #57 under FRCP 59* (ECF No. 63); *WM Capital's Resp. in Opp'n to Pls.' Mot. to Alter and Am. Dockets #56 and #57 under FRCP 59* (ECF No. 70). On March 19, 2018, the Court denied the Almeida Plaintiffs' motion to alter and amend, adopting WM's arguments in its opposition motion. *Op. and Order* at 1 n.1 (ECF No. 105) (*Pls.' Breach of Contract Order*).

### B.     The Almeida Plaintiffs' Breach of Contract Claim

On October 5, 2016, WM filed a motion for partial summary judgment on the breach of contract claim. *WM Capital's Mot. for Partial. Summ. J.* (ECF No. 40); *Statement of Uncontested Material Facts in Support of WM Capital's Mot. for Summ.*

*J.* (ECF No. 41); *Mot. Submitting English Translation* (ECF No. 43).   On October 27, 2016, the Almeida Plaintiffs filed their response to WM's motion for partial summary judgment on their breach of contract claim with their response to WM's statement of material facts and additional statement of material facts.   *Opp'n to Mot. for Partial Summ. J., Docket 40* (ECF No. 45); *Pls.' Statement of Material Uncontested Facts*, Attach. 1 (ECF No. 45-1); *Resp. to Purported Uncontested Material Facts as Proposed by Def. W.M. Capital, in Docket 40*, Attach 2 (ECF No. 45-2).   On November 11, 2016, WM filed its reply along with its reply statement of material facts.   *WM Capital's Reply to Pls.' Opp'n to Mot. for Partial Summ. J.* (ECF No. 48); *Reply Statement of Material Facts* (ECF No. 49); *Mot. Submitting English Translation on Exs.* (ECF No. 52); *Mot. Submitting English Translation* (ECF No. 53).   The Court granted WM's motion for partial summary judgment on March 19, 2018.   *Pls.' Breach of Contract Order*.

On April 19, 2018, the Almeida Plaintiffs filed a motion to alter and amend the court's order granting WM's motion for summary judgment regarding the breach of contract claim and reiterated their request to alter and amend the court's order and judgment dismissing the co-owner redemption claim.   *Mot. to Alter and Am. Docket 105 Under FRCP 59, Unconstitutional Depriving of Constitutional Rights* (ECF No. 115).   On May 17, 2018, WM opposed the Almeida Plaintiffs' motion to alter and amend. *WM Capital's Resp. in Opp'n to Pls.' Mot. to Alter and Am. Docket No. 105 Under FRCP 59* (ECF No. 122).   On May 8, 2019, the Court denied the Almeida Plaintiffs' second motion to alter and amend.   *Order Den. Co-Pls./Counter-Defs.' Mot.*

*to Alter and Am.* (ECF No. 262).  With these rulings, the sole surviving cause of action

is WM's counterclaim for specific performance of an agreement.  *See Answer to Am.*

*Compl. and Countercl.* at 10-13 (ECF No. 25) (*WM's Counterclaim*).

### C.    Joinder of Tenerife

On August 4, 2016, WM filed a motion to join Tenerife Real Estate Holdings,

LLC (Tenerife) as an indispensable party under Federal Rule of Civil Procedure 19.

*Mot. to Join Indispensable Party* (ECF No. 35).  In support of the requested joinder,

WM asserted that Tenerife, of which Francisco and Juan Almeida-León are members,

was one of the parties that executed the agreement that is the object of this litigation.

*Id*. at 1-2.  On August 30, 2016, Tenerife opposed motion to join it as a party to this

lawsuit,  *Opp'n Mot. to Join Party (DKT. #35)* (ECF No. 36), and on September 30,

2016, WM replied.  *WM Capital's Reply In Support Of Its Mot. To Join Tenerife LLC*

*As An Indi[s]pensible, Necessary Party To This Litigation* (ECF No. 39).

On March 3, 2017, the Court ruled that WM's request for joinder did not meet

the criteria for an indispensable party under Rule 19.  *Op. & Order* (ECF No. 61).

The Court, however, stated that "WM Capital's claim for breach of contract against

Tenerife is identical to the one levied against the Almeida Plaintiffs, such that it

arises from the same 'transaction' or 'occurrence,' and will require the adjudication of

common issues of fact and law." *Id*. at 8.  On April 3, 2017, WM requested Tenerife's

joinder as co-plaintiff and counter-defendant under Federal Rule of Civil Procedure

20, which the Court granted on April 18, 2017.  *Mot. to Join Tenerife Real Estate*

*Holdings, LLC Pursuant to Rule 20 of the Federal Rules of Civil Procedure* (ECF No.

68); *Order* (ECF No. 72) (*Order Joining Tenerife*).   On December 5, 2017, Tenerife answered WM's counterclaim.  *Ans. to Countercl.* (ECF No. 96) (*Tenerife's Answer*).

###    D.    Tenerife's Motion for Summary Judgment

On March 22, 2018, Tenerife filed a motion for summary judgment on WM's counterclaim for specific performance of the Agreement to Satisfy Judgment and Assignment of Mortgage Notes (the Agreement) together with a statement of material facts.   *Tenerife's Mot. for Summ. J.* (ECF No. 108) (*Tenerife's Mot.*); *Tenerife's Statement of Fact* (ECF No. 108-1) (CDSMF).  On April 25, 2018, WM filed a response, opposing the motion, also with an opposing statement of material facts and a statement of additional material facts.  *Opp'n to Tenerife's Mot. for Summ. J.* (ECF No. 117) (*WM Opp'n*); *WM Capital's Resp. to Tenerife's Statement of Uncontested Material Facts & Additional Uncontested Material Facts in Support of the Opp'n to Tenerife's Mot. for Summ. J.* (ECF No. 117-1) (DRCDSMF), (DASMF); *Mot. Submitting English Translations*, Attachs. 1-4 (ECF No. 132).  Tenerife did not reply to WM's response to its motion for summary judgment nor did Tenerife respond to WM's statement of additional material facts.

## II.    Local Rule 56, Federal Rule of Civil Procedure 56, Law of the Case, and Judicial Notice

This case has been pending for over three years but involves events that can be traced back as long ago as 2009.  The underlying facts are extremely dense, and the parties have vigorously and extensively litigated the issues.  They seem to agree on almost nothing of substance.

Perhaps the complexity explains why the parties, particularly the Plaintiffs and Tenerife, have at times failed to comply with the District of Puerto Rico's Local Rules and the Federal Rules of Civil Procedure. *See Order* (ECF No. 62); *Order* (ECF No. 72). The parties' pending arguments also implicate some of the Court's prior rulings and raise concerns regarding the doctrine of law of the case as well as the extent to which the Court may take judicial notice of state court rulings. Accordingly, the Court clarifies what it will and will not consider in resolving the pending motion for summary judgment. In doing so, however, the Court deploys these rules as "a scalpel, not a butcher knife" to what it deemed inappropriate or improper for it to consider where suitable. *Perez v. Volvo Car Corp.*, 247 F.3d 303, 315 (1st Cir. 2001).

### A.    Local Rule 56

Local Rule 56 provides in part that "[t]he court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." D.P.R. Loc. R. 56(e). This provision of the United States District Court for the District of Puerto Rico's local rules is an anti-ferret rule. *See Mariani-Colon v. Dep't of Homeland Sec.*, 511 F.3d 216, 219 (1st Cir. 2007) (describing Local Rule 56 as an "anti-ferret rule"). This rule "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." *Bautista Cayman Asset Co. v. J.A.M.A. Dev. Corp.*, 322 F. Supp. 3d 266, 267 (D.P.R. 2018) (internal quotation marks omitted) (citing *CMI Capital Market Inv. v. González–Toro*, 520 F.3d 58, 62 (1st Cir. 2008)). Local Rule 56 "is aimed at enabling a district court to adjudicate a summary judgment motion

6

without endless rummaging through a plethoric record." *Puerto Rico Am. Ins. Co. v. Rivera-Vazquez*, 603 F.3d 125, 131 (1st Cir. 2010). It divorces the Court's duty to determine whether there is a triable issue for a jury to resolve from the parties' duty to organize the evidence. *See Mariani-Colon,* 511 F.3d at 219. The First Circuit has frequently stated that parties that overlook or ignore the restraints of a District's anti-ferret rule do so "at their peril." *See id.* (quoting *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007)).

Here, the Court omitted portions of Tenerife's proffered facts because Tenerife submitted them in violation of the anti-ferret rule and in violation of the basic requirements of the federal and local rules. FED. R. CIV. P. 56; D.P.R. LOC. R. 56. Local Rule 56(b) provides:

> A motion for summary judgment shall be supported by a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried. Each fact asserted in the statement shall be supported by a record citation as required by subsection (e) of this rule.

*Id.* Subsection (e) reads:

> Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

*Id.* 56(e).

Entire statements or portions of Tenerife's proffered facts are neither short nor concise, fail to include a properly supported record citation, or substitute legal arguments and conclusions for asserted facts.  For example, Tenerife's statement of material fact thirty-five lists the numerous ways it claims WM breached its obligations under the Agreement, spanning five pages and often substituting legal conclusions for proffered facts.  If considered, the Court would have to comb through the record to find or verify these proffered facts, something the anti-ferret rule is designed to prevent.  *See Rivera-Vazquez*, 603 F.3d at 131-32.  Tenerife's statement of material fact paragraph thirteen consists for the most part of allegations of fraud ("dolus") on the part of WM, and it reads like the allegations in a complaint or a closing argument, not—as required by the federal and local rules—a statement of undisputed material fact.  FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law"); D.P.R. LOC. R. 56(a) ("A motion for summary judgment shall be supported by a separate, short, and concise statement of material facts . . . as to which the moving party contends there is no genuine issue of material fact to be tried").  The Court does not understand why Tenerife can in good faith claim WM does not dispute that it committed fraud.

## B.     The Law of the Case

The law of the case doctrine has two branches.  *Ellis v. United States*, 313 F.3d 636, 646 (1st Cir. 2002).  One concerns "the so-called mandate rule . . . which . . . forbids . . . a lower court from relitigating issues that were decided by a higher court

. . . at an earlier stage of the same case." *Id.* (citations omitted).  The other, relevant here, provides that "a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation." *Id.* (quoting *Flibotte v. Pa. Truck Lines, Inc.*, 131 F.3d 21, 25 (1st Cir. 1997)).  As a result, courts typically should "respect and follow its own rulings, made earlier in the same case." *Id.* (citing *Arizona v. California*, 460 U.S. 605, 619 (1983)).  "The orderly functioning of the judicial process requires that judges of coordinate jurisdiction honor one another's orders and revisit them only in special circumstances." *See id.*[1]  The Court finds applicable here the bases the First Circuit outlined in *Ellis* for why a court should not stray from its prior rulings.  313 F.3d at 647-48 (listing factors); *Redondo Const., Co. v. Izquierdo*, 929 F. Supp. 2d 1, 5 (D.P.R. 2012); *cf. Fin. Res. Network, Inc., v. Brown & Brown, Inc.,* 754 F. Supp. 2d 128, 145 (D. Mass. 2010) (finding the law of

---

[1]     This rationale is grounded on a number of considerations:

The law of the case doctrine affords litigants a high degree of certainty as to what claims are—and are not—still open for adjudication. *See Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816–17, 108 S. Ct. 2166, 100 L.Ed.2d 811 (1988).  For another thing, it furthers the abiding interest shared by both litigants and the public in finality and repose. *See Wyoming v. Oklahoma*, 502 U.S. 437, 446 (1992).  Third, it promotes efficiency; a party should be allowed his day in court, but going beyond that point deprives others of their days in court, squanders judicial resources, and breeds undue delay. *See Christianson*, 486 U.S. at 819; [*United States v.*] *Rivera–Martinez*, 931 F.2d [148,] 151 [(1st Cir. 1991)].  Fourth, the doctrine increases confidence in the adjudicatory process: reconsideration of previously litigated issues, absent strong justification, spawns inconsistency and threatens the reputation of the judicial system.  *See* Geoffrey C. Hazard, Jr., *Preclusion as to Issues of Law: The Legal System's Interest*, 70 IOWA L. REV. 81, 88 (1984) (collecting cases). Finally, judges who too liberally second-guess their co-equals effectively usurp the appellate function and embolden litigants to engage in judge-shopping and similar forms of arbitrage. *See* [*United States v.*]*Erwin*, 155 F.3d [818] 825 [(6th Cir. 1998)]; *see also White v. Higgins*, 116 F.2d 312, 317–18 (1st Cir. 1940); [18B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE] § 4478.1, at 695 [(2d ed. 2002)].

*Ellis*, 313 F.3d at 647.

the case doctrine did not prevent reconsideration of previous claims because claim was decided on a "different legal and factual record").  The Court will not revisit its prior orders dismissing the Almeida Plaintiffs' litigious credit, co-owner redemption, or breach of contract claims.

In the Court's Order on Litigious Credit and Co-Owner Redemption Claims, it dismissed these two claims, reasoning that the Agreement "did not create a transfer of ownership but rather a right to administer the ceded assets with the ultimate purpose of liquidation in order to satisfy the Judgment Credit."  *Order on Litigious Credit and Co-Owner Redemption Claims* at 4.[2]  Furthermore, the Court dismissed these claims with prejudice.  *Id.* at 15; *J. on Litigious Credit and Co-Owner Redemption Claims.*  The Court dismissed the Almeida Plaintiffs' breach of contract claim because it was premised on the FDIC-R's failure to complete the environmental study "as quickly as possible" and on allegedly preventing the execution of foreclosure in state court in that it failed as a matter of law as "the obligation to take steps in furtherance of the foreclosure did not trigger until February 11, 2016; that is, the date on which the state court amended its judgment" to include the FDIC-R as a co-plaintiff and judgment creditor.  *Pls.' Breach of Contract Order* at 3-5.  However, the "Plaintiffs filed the complaint in this case 20 days prior to that date."  *Id.* at 5.  The Court determined the environmental study was a second subsequent precondition to the state court amending the state court judgment and "the completion *vel non* of the environmental study is irrelevant."  *Id.* at 5 n.5.  The Court finds these prior analyses

---

[2]      The Almeida Plaintiffs conceded that they had no litigious credit claim. *Order on Litigious Credit and Co-Owner Redemption Claims* at 4 & n.2.

10

and conclusions sound and will not disturb them.

This is relevant because Tenerife asserts that the Court's order dismissing the Almeida Plaintiffs' litigious credit and co-owner redemption claims does not apply to it because it was not a party at the time the order was docketed. *Tenerife's Mot.* at 2, 9-10. Tenerife's argument is unpersuasive. First, it is inaccurate on the facts. The Court's final adjudication of its ruling—denying the Almeida Plaintiffs' motion to alter and amend it—occurred on March 19, 2018, and Tenerife was joined as party in this case on April 18, 2017. *Order Joining Tenerife*; *Pls.' Breach of Contract Order.* Second, the substantive basis of Tenerife's claim of co-owner redemption and community property rights is indistinguishable from that raised by the Almeida Plaintiffs. *Compare Second Am. Compl.* ¶¶ 28-32, 34, 37, 45, *Opp'n to Mot. to Dismiss* at 23-30, *Mot. to Alter and Am. Dockets #56 and #57 under FRCP 59* at 10-12, *with Tenerife's Mot.* at 1-8; CDSMF ¶¶ 38-42, 45, 51, 68.

Indeed, at times, Tenerife incorporates nearly verbatim the Almeida Plaintiffs' allegations in support of their litigious credit and redemption claims. *Compare Second Am. Compl.* ¶ 29 ("During said telephone conversations of January 14, 2016 Attorney Jairo Mellado refused to provide the name or identity of the purchasing entity or any data related thereto") *with* CDSMF ¶ 39 ("Attorney Jairo Mellado refused to provide the name or identity of the purchasing entity, or any data or price related thereto"); *Second Am. Compl.* ¶ 30 ("During the telephone conversation of January 14, 2016 counsel for the Almeida Family informed Atty. Mellado, who represented both the FDIC-R and the undisclosed purchaser, that under the informed

11

fact of a sale each member of the Almeida Family did thereby, as of that moment, demand and enforce the right of redemption on the sale performed by the FDIC-R, as right of co-owner redemption and right of litigious sale redemption") *with* CDSMF ¶ 40 ("In the telephone conversation of January 14, 2016 the attorney for the Almeida Family informed Attorney Jairo Mellado, who represented both successive assignees, the FDIC-R and the then undisclosed purchaser, that under the informed fact of a sale, each member of the Almeida Family did thereby, as of that moment, demanded and enforced the right of redemption on the sale performed by the FDIC-R, as Right of Co-Owner Redemption and right of litigious sale redemption") (emphasis omitted).

In short, the Court's rulings dismissing the co-owner redemption claim and their alternative argument of community property rights in a trust apply to all Almeida Plaintiffs as well as Tenerife and are the law of the case.  The Court will not further consider these issues.  *See Order Den. Co-Pls./Counter-Defs.' Mot. to Alter and Am.*; *United States v. Wallace*, 573 F.3d 82, 87-88 (1st Cir. 2009) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case") (citation omitted).

The same principle applies to Tenerife's argument that WM breached its contractual obligations because evidence revealed during discovery—specifically, the FDIC-R comment logs—allegedly demonstrates that the FDIC-R and later WM intentionally prevented the completion of the environmental study and the foreclosure sale of the Kennedy Property.  *Tenerife's Mot.* at 13-14.  The Almeida Plaintiffs raised the same arguments regarding the FDIC-R's and WM's alleged

intentional non-compliance with the environmental study.  *Pls.' Suppl. Mot. in Opp'n to Docket 40 and 41 (Mot. for Partial Summ. J.), New Facts and Date Resulting from Disc. Performed Statement of Material Uncontested Facts*  at 2-7 (ECF No. 79).  The Court held previously that "the completion *vel non* of the Environmental Study is irrelevant to the breach of contract claim in this case."  *Pl.'s Breach of Contract Order* at 5, n.5.  The Count also noted under paragraph 3.2 of the Agreement, the FDIC-R (and WM as its assignee) could opt not to execute the EAS of the Kennedy property, and instead provide written authorization to proceed with the foreclosure sale without it.  *Id.* at 2-3 (citations omitted).  As Tenerife presented the same argument the Court previously rejected, the Court rejects it to the degree Tenerife asserts it establishes a breach of the Agreement by the FDIC-R or WM.[3]

## C.    Judicial Notice

A Court may take judicial notice of adjudicative facts if such facts "are not subject to reasonable dispute" because either they are generally known within the territorial jurisdiction of the Court or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b)(1)-

---

[3]      Tenerife's argument as to what the comment log establishes misses the mark.  Tenerife contends that the comment log shows that phase I of the environmental study was ordered on July 1, 2014, via rush request.  *Tenerife's Mot.* at 13.  Additionally, Tenerife notes that the completed report was dated July 22, 2014.  *Id.*  Thus, according to Tenerife, the environmental report was available before the Agreement was signed on July 28, 2014, and FDIC-R/WM's failure to disclose the environmental study constituted fraud.  *Id.* at 13-14.  However, while the request for environmental study was made on July 1 and the report was generated on July 22, the comment log states on July 23, August 5, and August 19, the report had not been posted.  *Opp'n to Pls.' Suppl. Mot.*, Attach. 2 at 5-6 (ECF No. 85-2) (*Comment Log*).  On August 19, the Comment Log states that Phase I had been "Rec'd."  *Comment Log* at 6.  Tenerife's footnote ten acknowledges this sequence.  *Tenerife's Mot.* at 13 n.10.  Therefore, the record does not reveal that the environmental report could have been disclosed when the Agreement was executed.

13

(2); *see also Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*, 391 F.3d 312, 322 n.12 (1st Cir. 2004) (adjudicative facts are "the facts of the particular case") (citation omitted).  "Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." *Int'l Star Class Yacht Racing Assoc. v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (citations omitted); *see also Nadherny v. Roseland Prop. Co.*, 390 F.3d 44, 51–52 (1st Cir. 2004) (citing *Int'l Star Class Racing Assoc.*, 146 F.3d at 70-71) (district court erred in taking judicial notice of adjudicative facts pertaining to industry custom and practice from other state and federal cases)).  But, the Court "may take judicial notice of another court's order for the limited purpose of recognizing the judicial act or the subject matter of the litigation." *MVM Inc. v. Rodriguez*, 568 F. Supp. 2d 158, 163 (D.P.R. 2008) (citing *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)).

Thus, the Court may take notice of the legal conclusions of another court, such as for the purposes of res judicata, but it cannot take as true another court's finding of facts.  *See Int'l Shipping Agency, Inc. v. Union de Trabajadores de Muelles Local 1740*, No. CIV. 12-1996 SCC, 2015 WL 5022794, at *5 (D.P.R. Aug. 21, 2015); *Hamilton v. Fed. Home Loan Mortg. Corp.*, No. 2:13-cv-00414-JAW, 2014 WL 12726327, at *1 (D. Me. July 30, 2014); 21B CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5106.4 (2d ed. 2018).  The parties have referenced  documents and orders from Puerto Rico state courts to support their

respective arguments.  The Court will consider the holdings of the relevant state court cases the parties cited, but it will not consider those courts' findings of fact if the findings are reasonably disputed.[4]

### D.     Federal Rule of Civil Procedure 56

Pursuant to Rule 56(c), for an affidavit to be considered at the summary judgment stage, it must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  FED. R. CIV. P. 56(c)(4).  "This requisite personal knowledge must concern facts as opposed to conclusions, assumptions, or surmise."  *Livick v. The Gillette Co.*, 524 F.3d 24, 28 (1st Cir. 2008) (quoting *Perez*, 247 F.3d at 316); *Arroyo–Audifred v. Verizon Wireless, Inc.*, 527 F.3d 215, 217 (1st Cir. 2008) (noting that a Court need only consider well-supported facts for deciding a motion for summary judgement).  "[P]arties may not include legal arguments or conclusions in their statement of facts."  *Cruz-Acevedo v. Toledo-Davila,* 660 F. Supp. 2d 205, 209 (D.P.R. 2009).

This is not to say that parties may not submit affidavits that are "self-serving", *Cadle Co. v. Hayes*, 116 F.3d 957, 961 n.5 (1st Cir. 1997) (citation omitted), rather they cannot assert or disguise a legal argument or conclusion as a proffered fact.  *See Irobe v. United States Dep't of Agric.*, 890 F.3d 371, 381 (1st Cir. 2018); *Torrech–*

---

[4]     The Court will also only consider state court documents and materials that comply with the District of Puerto Rico's local rules and the Court of Appeals for the First Circuit's directive on documents written in a foreign language being translated into English and put into the record.  *See* D.P.R. LOC. R. 5(g); *see also Izquierdo*, 929 F. Supp. 2d at 9 n.13 (citing *Puerto Ricans for Puerto Rico Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir. 2008)).

*Hernandez v. General Elec. Co.*, 519 F.3d 41, 47 (1st Cir. 2008) ("'Unsupported, subjective, conclusory, or imaginative' statements made within a summary judgment affidavit are not part of the summary judgment record"); *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st Cir. 2000) (citation omitted) ("To the extent that affidavits submitted in opposition to a motion for summary judgment merely reiterate allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge, they are insufficient"); *In re Light Cigarettes Mktg. Sales Practices Litig.*, 751 F. Supp. 2d 196, 202 (D. Me. 2010) (citing *Santiago–Ramos*, 217 F.3d at 53; *Lopez–Carrasquillo v. Rubianes*, 230 F.3d 409, 414 (1st Cir. 2000)) (granting summary judgment because only evidence of discrimination was contained in affidavit that merely reiterated legal arguments)). Nor can an affidavit's factual assertions be generalized or fail to indicate how they are based on personal knowledge. *Quinones v. Buick*, 436 F.3d 284, 290 (1st Cir. 2006).[5]

With these considerations and constraints in mind, the Court turns to the parties' statement of facts.

---

[5]     Tenerife's statement of material fact sixty-eight, for example, incorporates the majority of paragraph forty-five of the Almeida Plaintiffs' Second Amended Complaint, listing the various reasons for their lawsuit against WM. *Compare* CDSMF ¶ 68 *with Second Am. Compl.* ¶ 45; *see also* CDSMF ¶ 71 ("The breaches, fault, negligence, dolus, deceit and unreasonable commercial conduct, incurred by the assignee/purchaser WMCM, and by other unidentified persons and entities have caused severe damages to plaintiffs. Tenerife has not filed its own pleadings and causes of action, but reserves all of them. The breach of contract, fault, negligence, dolus and deceit of defendant includes the conduct described herein, with the deliberate purpose of depriving plaintiffs of their contractual, statutory and property rights, impeding execution of the judgment, in civil case no. KCD2011-0142, payment and collection of monies owed, and WMCM continues its obstructionist scheme and demanding multi-million-dollar concessions").

## III.   STATEMENT OF FACTS[6, 7]

### A.     The Parties and Prior Cases

Francisco Almeida-León, Wanda Cruz-Quiles and the Conjugal Partnership formed between them, are natural persons and residents of San Juan, Puerto Rico and Miami, Florida.  CDSMF ¶ 1; DRCDSMF ¶ 1.   All the Almeida Plaintiffs are citizens of the commonwealth of Puerto Rico.  *Second Am. Compl.* ¶ 3; *WM's Counterclaim* ¶ 3.  WM is organized under the laws of the state of New York.  CDSMF ¶ 2; DRCDSMF ¶ 2; *WM's Counterclaim* ¶ 2; *Tenerife's Answer* ¶ 2.[8]  WM regularly

---

[6]     In accordance with "conventional summary judgment praxis," the Court recounts the facts in the light most favorable to the non-movant's theory of the case consistent with record support.  *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002).  In compliance with this obligation, the Court recites certain events as facts even though Tenerife disputes them.  Additionally, the Court considered other pertinent motions and supporting admissible evidence on the record as deemed necessary.  *See* FED. R. CIV. P. 56(c)(3).  Because Tenerife did not respond to WM's additional statement of material facts, WM's additional statement of material facts are deemed uncontroverted and are admitted.

[7]     The Court incorporates the factual findings in its opinions and orders dismissing the Almeida Plaintiffs' litigious credit, co-owner redemption, and breach of contract claims.  *Order on Litigious Credit and Co-Owner Redemption Claims*; *Pls.' Breach of Contract Order*.

[8]     Tenerife's statement of material fact two reads:

> WM Capital Management, Inc., upon information and belief, as represented by defendant, is a corporation organized and existing under the laws of another jurisdiction, has not been registered to do business in Puerto Rico (see copy of Negative Certificate by the Department of State, Exhibit 1 of the amended complaint) notwithstanding that Puerto Rico is where it has and produces a high volume of its principal business in a consistent manner, and uses the offices of its professionals and agents in Puerto Rico."

CDSMF ¶ 2.  In support of this statement, Tenerife cites docket number 45, attachment 3, page 74 of 92, ¶ 2.  *Id.* (emphasis omitted).

WM admits in part and denies in part Tenerife's statement of material fact two.  DRCDSMF ¶ 2.  It admits that it is organized under the laws of another jurisdiction but denies the rest of Tenerife's assertion because it is not based on personal knowledge but on information and belief which is not admissible.  *Id.*

The Court excludes the statements WM denied.  It does not do so on the ground WM urges.  If Tenerife produced a document from the Puerto Rico Department of State, it would be enough to establish that fact.  *See* FED. R. EVID. 803(8).  Instead, it does so because Tenerife's statements are not supported by the citations.  Exhibit 1 of the Amended Complaint is not a Negative Certification by the Department of State.

conducts business in Puerto Rico and has officers and employees in Puerto Rico. CDSMF ¶¶ 47-48; DRCDSMF ¶¶ 47-48.[9]

Tenerife was incorporated on June 23, 2012, and pursuant to its operating agreement, its members are Juan Almeida-León, Francisco Almeida-León, and El Hipopótamo, Inc. DASMF ¶¶ 1-2.[10]  In October 2011, in a state civil case, no. KCD2011-0142, before the San Juan Superior Court, Francisco Almeida-León and Wanda Cruz-Quiles obtained a judgment against Emérito Estrada Rivera, Isuzu Puerto Rico, Inc. (EER-IPR), for the collection of three mortgages notes and a

_____

The Court includes the assertion that WM is a corporation organized under the state of New York, because in paragraph two of its counterclaim, WM made that allegation and in its response to the counterclaim, Tenerife admitted the allegation on information and belief.  This is an example of how contentious this case has become.  The parties are not even willing to admit the others are who they say they are.

[9]   Tenerife's statement of material fact forty-seven asserts:

WMCM, consistently and systematically does business in Puerto Rico, makes decisions, evaluates, decides, buys, sells and negotiates, making the decisions in Puerto Rico and administers its portfolio from Puerto Rico, maintains frequent presence of its officers and personnel, including Mr. Garret and Mr. Jim Barr Coleman in Puerto Rico. Dkt 45-3 page 86 of 92 ¶47.

CDSMF ¶ 47.  WM denies this assertion.  DRCDSMF ¶ 47.  WM says the assertion is based solely on Francisco Almeida-León and Wanda Cruz-Quiles' affidavit, but the affidavit lacks sufficient indicia of personal knowledge and is otherwise argumentative and conclusory.  *Id.*

The Court disagrees with WM's denial.  Tenerife's record citation reflects that WM informed Francisco Almeida-León and Wanda Cruz-Quiles about its activities in Puerto Rico.  The Court refines the assertion to omit its conclusory language.  *See Torrech–Hernandez*, 519 F.3d at 47.

Tenerife's statement of forty-eight asserts:

Several facts related to the sale of the 50% undivided ownership interest in the judgment in case KCD2011-01452 by the FDIC-R to WMCM have been determined, several of which are enumerated in the following paragraphs. Dkt 45-3, page 86 of 92 ¶48.

CDSMF ¶ 48 (emphasis omitted).  The Court omits this assertion because it is nonfactual. *See supra* Part II, subsection D.

[10]   In its memorandum opposing Tenerife's motion for summary judgment, WM asserts that Francisco and Juan Almeida-León own Hipopótamo, Inc. and cite an attachment to its motion for joinder.  *WM Opp'n* at 10 n.15 (citing *Tenerife's Articles of Incorp.* (ECF No. 35-4)).  The Court has not considered this assertion because it is asserted in WM's memorandum and not within WM's additional statement of material facts.

mortgage foreclosure. CDSMF ¶ 3; DRCDSMF ¶ 3. Juan Almeida-León, who uses the same business address as his brother Francisco Almeida-León, acquired a 50% undivided co-ownership interest in the credits, rights, promissory notes subject to foreclosure, mortgages, and judgment in the same state case. CDSMF ¶ 4; DRCDSMF ¶ 4.

Tenerife was a party to the Agreement at the center of the instant case— "Agreement to Satisfy Judgment; and Assignment of Mortgage Notes", dated July 28, 2014, which was drawn and executed in the related federal case before the United States District Court for the District of Puerto Rico, *FDIC-R v. Juan Almeida-León,* 3:12-cv-2025-FAB. DASMF ¶¶ 4, 6-7.[11] That federal case concerned the collection of money and a mortgage execution, and the Federal Deposit Insurance Corporation, as receiver of the failed R-G Premier Bank (FDIC-R), obtained a default judgment against Juan Almeida-León in the amount of $2,828,850.11 plus interest. DASMF ¶ 3; CDSMF ¶ 5; DRCDSMF ¶ 5.[12] On May 28, 2014, the FDIC-R obtained a temporary restraining order (TRO) in *FDIC-R v. Juan Almeida-León,* which prevented the

---

[11] As Tenerife did not respond to WM's statement of additional material facts, these paragraphs are deemed admitted. P.R. LOC. R. 56(e) ("Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted"). These statements are also confirmed by the contents of the Agreement. *Statement of Uncontested Material Facts in Support of the Mot. for Partial Summ. J.* (ECF 41-2) (*Agreement*). For clarity, the Court will refer to the specific page numbers or paragraphs identified in the Agreement when referencing specific portions. Moreover, because the Agreement is in the record, and both parties cite it, the Court includes portions of the Agreement as needed.

[12] Tenerife asserts the FDIC-R obtained a judgment against Juan Almeida for $2,828,850.11. CDSMF ¶ 5. WM denies this assertion by Tenerife and states the FDIC as Receiver for RG Premier Bank received a judgment against Juan Almeida León in the amount of $2,828,850.11 plus post-judgment interest. DRCDSMF ¶ 5. In its additional statement of material facts, WM does not assert the judgment included the post-judgment interest. DASMF ¶ 3. Nevertheless, the record, as well as the judgment from the *FDIC-R v. Juan Almeida-León* case, *J.* (ECF No. 25), show that the Court awarded the FDIC post-judgment interest in its judgment against Juan Almeida-León. The Court adopts WM's version of this fact.

auctioning of the Kennedy property in the state court case KCD2011-0142.  CDSMF ¶ 6; DRCDSMF ¶ 6; DASMF ¶ 4.  The FDIC-R's TRO was premised on its discovery that Juan and Francisco Almeida-León claimed to have "joint ownership" of four mortgage notes, but one of the notes had been transferred to Tenerife and the other three were in the process of being foreclosed upon by Francisco Almeida-León without Juan Ameida-León.  DASMF ¶ 4.  The parties eventually consented to convert the TRO into a preliminary injunction without a hearing for thirty days until July 24, 2014.  CDSMF ¶¶ 6-7, 11; DRCDSMF ¶¶ 6-7, 11; DASMF ¶ 6.[13]

## B.    The Agreement

### 1.    The Parties and Contents of the Agreement

---

[13]    Tenerife's paragraph six reads:

> The FDIC, without notice or hearing, obtained a temporary restraining injunction in case number 12-02025 (FAB) before the Federal District Court; the injunction temporarily (during some two months) prevented the execution of the judgment entered by the Superior Court of San Juan in case KCD2011-0142 (**Dkt 45-3, pages 33-35 of 92**).  For the issuance of said injunction WMCM argued that plaintiffs were attempting to avoid payment of the judgment.  When the oral deposition of Mr. Francisco Almeida was taken <u>the opposite was established</u>, that the funds and resources had been set aside to assure compliance with payment of the judgment. Dkt 45-3, page 76 of 92, ¶6.

CDSMF ¶ 6 (emphases in original).

WM admits in part and denies in part Tenerife's statement of material fact six.  DRCDSMF ¶ 6.  It admits that the FDIC-R obtained a TRO but denies the rest of Tenerife's assertions as argumentative, conclusory, and not adequately supported by the record citation.  *Id.*

The Court agrees and omits the remainder of the assertion.  D.P.R. LOC. R. 56(a) ("A motion for summary judgment shall be supported by a separate, short, and concise statement of material facts . . . <u>as to which the moving party contends there is no genuine issue of material fact to be tried</u>") (emphasis supplied).    Tenerife must have known that WM would not agree with Tenerife's argumentative description in paragraph six and in any event, the Court is required to view contested facts in the light most favorable to the non-movant.

The Court has inserted other information in the preliminary injunction order from *FDIC-R v. Juan Almeida-León*, 3:12-cv-2025-FAB (ECF No. 54), to provide relevant background to the eventual dissolution of the injunctions.

On July 28, 2014, Juan Almeida-León, Francisco Almeida-León, Wanda Cruz-Quiles, the Conjugal Partnership between Francisco Almeida-León and Wanda Cruz-Quiles, and Tenerife executed the Agreement with the FDIC-R.   CDSMF ¶ 8; DRCDSMF ¶ 8; DASMF ¶ 7.[14]   Under the Agreement, the parties stipulated that as "assignment for payment" to satisfy the judgment in the related federal case, *FDIC-R v. Juan Almeida-León*, the Almeida Plaintiffs and Tenerife would "assign the FDIC[15] an undivided one-half interest" in four promissory notes guaranteed by the mortgage deed of a realty referred to as the "Kennedy Property."  *Agreement* ¶ 3.1.2; DASMF ¶¶ 8-10.  One of the notes, referred to as the "GMAC Note," was the object of a collection and mortgage foreclosure lawsuit before another Puerto Rico state court in *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera-Isuzu Puerto Rico Inc.*, KCD2009-0708, in which Tenerife obtained a judgment in its favor (the GMAC Judgment).  *Agreement* ¶ 2.5; DASMF ¶ 11; *Tenerife's Mot.*, Attach 2 at 17-18 (ECF

---

[14]     Tenerife's statement of material fact eight states:

> On or about July 28, 2014, Mr. Juan Almeida León, being owner in joint tenancy of 50% of the promissory notes and the judgment in civil case no. KCD2011-0142, jointly with co-plaintiffs Mr. Francisco Almeida León, Mrs. Wanda Cruz Quiles and their Conjugal Partnership, executed with the FDIC an assignment of the 50% undivided interest of Mr. Juan Almeida in the three Kennedy notes and judgment "for payment," in Spanish "Dación para Pago." Dkt 45-3, pages 4-16 of 92, and 76 of 92, ¶ 8.

CDSMF ¶ 8 (emphasis omitted).
      WM admits in part and denies in part Tenerife's statement of material fact eight.  DRCDSMF ¶ 8.  It admits that the Plaintiffs and Tenerife executed an Agreement to Satisfy Judgment; and Assignment of Mortgage Notes on July 28, 2014.  *Id.*  It denies the rest of the assertion because it says it either mischaracterizes the provisions of the agreement or is incomplete in terms of what the agreement includes.  *Id.*  Moreover, in the subsequent two statement of material facts, the parties assert what the Agreement includes.  *See* CDSMF ¶¶ 9-10; DRCDSMF ¶¶ 9-10.  The Court inserted the terms of the Agreement as needed. *See supra* note 10.
[15]     Thereafter, WM substituted the FDIC-R by virtue of an assets purchase through which WM became its assignee. *Order on Litigious Credit and Co-Owner Redemption Claims* at 4; *Order on Pl.'s Breach of Contract* at 2.

No. 108-2).[16]  The GMAC case was a lawsuit for the collection for money originally filed by General Motors Acceptance Corporation (GMAC) against EER-IPR with judgment entered in favor of GMAC on November 7, 2011.  DASMF ¶ 11.  After the judgment was entered, Francisco Almeida-León acquired the GMAC Note and the GMAC judgment.  *Id.* ¶ 12.  The Almeida Plaintiffs thereafter transferred the GMAC judgment to Tenerife.  *Id.*

The GMAC Note is the first-rank lien encumbering the Kennedy Property among the four promissory notes pertinent to this case.  CDSMF ¶¶ 19-20; DRCDSMF ¶¶ 19-20.[17]  The other three notes, referred to as the "Kennedy Notes,"

---

[16]    The Court refers to the bold pagination in the bottom right corner to identify specific pages for pincites.

[17]    The first sentence of Tenerife's statement of material fact nineteen reads:

Tenerife was created to embed in its structure an acknowledgement and protection to all those persons that contributed funds and resources to acquire the first mortgage on the EER-IPR Realty; the Operating Manager is Mr. George Pérez Borrero.

CDSMF ¶ 19.  WM denied this statement because it was not supported by a citation to the record. DRCDSMF ¶ 19.  The Court agrees and has not included Tenerife's unsupported assertion.

The next sentence of Tenerife's nineteen reads:

The Operating Agreement was also signed by others.  Tenerife owns the mortgage note and credits which encumber[] the Kennedy Realty, which is the subject of the execution in case no. KCD2009-0708, with a rank senior to the mortgages being foreclosed in case KCD2011-0142.  Dkt 45-3, page 79 of 92, ¶18; Dkt 45-3, pages 71-73 of 92.

CDSMF ¶ 19,  WM admits that Tenerife has purported to be the owner of the mortgage note which purports to have the first rank over the Kennedy Property and the corresponding judgment. DRCDSMF ¶ 19.

Tenerife's statement of material fact twenty reads:

The Mortgage note and judgment owned and held solely by Tenerife is secured by a mortgage of senior rank, with priority over the rank held by the mortgage notes that were assigned on a 50% basis on July 28, 2014, where WM Capital and Mr. and Mrs. Francisco Almeida jointly participate. Dkt 45-3, page 79 of 92, ¶19; Dkt 45-3, pages 71-73 of 92.

were the object of a similar claim before state court in *Francisco Almeida León, et al. v. Emérito Estrada Rivera-Isuzu Puerto Rico Inc.*, KCD2011-0142. *Agreement* ¶¶ 1.1, 2.3-2.4. The Agreement bestowed upon WM an undivided one-half interest in "each of the Kennedy Notes, GMAC Note, and GMAC Judgment." *Agreement* ¶ 3.1.2; DASMF ¶ 14.

### 2.  Method of Payment[18]

In consideration of the assignment for payment under the Agreement, the FDIC-R would allow the foreclosure sale of the Kennedy Property by seeking the dissolution of a preliminary injunction it obtained in Francisco Almeida-León's state court case. *Id.* ¶¶ 3.1.1 −1.3 ("FDIC-R will immediately cause the Injunction to be dissolved"). The parties agreed to file a joint motion in the state court case, no. KCD2011-0142, "requesting that the judgment entered in that case be amended to include FDIC-R as co-plaintiff and judgment creditor." *Id.* ¶ 3.1.3. Then "[a]s soon as such amended judgment is entered, the Parties, subject to Section 3.2 . . . will seek . . . to conduct the Foreclosure Auction as soon as possible." *Id.*

Under paragraph 3.2, the parties stipulated that the FDIC-R's completion of an environmental site assessment (EAS) was to be done "as quickly as possible." *Id.* ¶ 3.2; CDSMF ¶¶ 11, 13, 17, 26; DRCDSMF ¶¶ 11, 13, 17, 26.[19] At the time, there

---

CDSMF ¶ 20 (emphasis omitted). WM denies as drafted Tenerife's statement of material fact twenty claiming that it is duplicative of its previous statement of material fact and that it mischaracterizes the Agreement. DRCDSMF ¶ 20. The Court inserted the terms of the Agreement. *See supra* note 10.

[18]   As noted earlier, the parties dispute much of how each other characterizes (or mischaracterizes) the terms of the Agreement. Rather than resolve each objection, the Court references the Agreement itself and quotes its pertinent provisions.

[19]   Tenerife's statement of material fact eleven states:

was an environmental report dated July 22, 2014.  CDSMF ¶ 11; DRCDSMF ¶ 11.

Paragraph 3.2 further provided, however, "[u]ntil such time as the FDIC-R completes

its [EAS] or otherwise provides authorization in writing, the Foreclosure Auction will

not occur."  *Id.* ¶ 3.2.[20]

> Unknown to Plaintiffs Francisco Almeida Leon, Wanda Cruz Quiles, Juan Almeida León and Tenerife, the assignee had on hand the Phase I Environmental Report and did not inform such fact to any of the parties. The Environmental Phase I Report had been ordered on July 1, 2014 via RUSH request, Dkt 85-2, page 5 of 8, entry of 07/01/2014, the report is dated July 22, 2014, Dkt 85-1; the internal Comment LOG report informs and contains the following entries: On July 16, 2014 (the same initial date of the Phase I report), contracting, "Requested AEI advice if they had the necessary information to provide us with a complete report. If so what is the newly anticipated due date..." Dkt 85-2, page 5 of 8. On July 23, 2014, the next day of the final report date "The Phase I has not yet posted to RRD.3 Rec'd the invoice." Dkt 85-2, page 5 of 8.

CDSMF ¶ 11 (emphasis omitted). WM admits in part and denies in part this assertion.  DRCDSMF ¶ 11.  It admits that there is an environmental report dated July 22, 2014.  *Id.*  It denies the first sentence as being unsupported to a citation to the record, and thus violating the District's local rules.  *Id.*  It denies the remainder of the statement because it argues that Tenerife or Almeida Plaintiffs do not have the requisite level of personal knowledge to make assertions as to it contents and this assertion is immaterial because the FDIC-R had no obligation to report anything.  *Id.*

The Court includes the fact that there was an environmental report dated July 22, 2014. The Court omits the first portion of the assertion because it does not provide a specific citation to the record. D.P.R. LOC. R. 56(e).  The Court omits the remaining portions of the proffered fact under the doctrine of the law of the case: the environmental study's timing in terms of being initiated and posted is immaterial because the Court has already determined "the completion *vel non* of the Environmental Study is irrelevant . . .."  *Pl.'s Breach of Contract Order* at 5, n.5.

The majority of Tenerife's statements of material fact thirteen and seventeen pertains to, what they view, as various improprieties concerning when the environmental study was initiated and disclosed.  The Court does not consider these assertions under the doctrine of the law of the case. *See supra* Part II, subsection B.  To the degree, Tenerife quotes the Agreement's text, Court refers directly to those portions of the Agreement as needed.  *See supra* note 10.  In its statement of material fact seventeen, Tenerife refers to the GMAC note being first in rank over the Kennedy Property, which WM admits.  CDSMF ¶ 17; DRCDSMF ¶ 17.  The Court already included this fact and does not repeat it.

The Court omits Tenerife's statement of material fact twenty-six on multiple grounds.  First, it is neither concise nor short, and thus violates the District of Puerto Rico's local rules.  *See supra* Part II, subsection A.  Such long and partially supported statement of facts make it difficult for the responding party to object and for the Court to properly analyze the proposed undisputed facts.  Second, all its assertions, except the last three, go against the doctrine of the law the case as they center on Tenerife's belief that the FDIC-R and WM engaged in improprieties with their handling of the environmental study.  Additionally, the last three assertions are not supported by a record citation and are argumentative. *See supra* note 8.

[20]   In Tenerife's statement of material fact fifty-two, it states "[t]he Environmental Report dated July 16 and July 22, 2014 was produced by WMCM in July, 2017."  CDSMF ¶ 52.  WM admits and

24

Once those conditions were met, the parties would "seek without delay and use their best efforts to conduct" the foreclosure sale of the Kennedy Property. *Id.* ¶ 3.1.3. The Almeida Plaintiffs and Tenerife were to consign with the state court in Francisco Almeida-León's state case, no. KCD2011-0142, the four mortgage notes in the Agreement, *id.* ¶ 3.1.2, and "[u]pon any sale of the Kennedy Property [to a third party], the proceeds of such sale up to the full amount of the Judgment will be immediately paid first to the FDIC-R as full satisfaction of the Judgment." *Id.* ¶ 3.1.7. Alternatively, paragraph 3.1.8.3 outlined how the parties were to proceed if a third party did not purchase the Kennedy Property for the minimum bid amount as defined in paragraph 3.1.6. *Id.* ¶¶ 3.1.6, 3.1.8.3. Similar to paragraph 3.1.2, the alternative method for how the parties were to proceed if a third party did not buy the Kennedy Property, provided the FDIC-R would "receive all amounts owed under the Judgment from the first sale proceeds paid by the purchaser." *Id.* ¶ 3.1.8.3; CDSMF ¶¶ 12, 14, 32; DRCDSMF ¶¶ 12, 14, 32.[21]

---

denies this in part. DRCDSMF ¶ 52. It admits that "an Environmental Report dated July 22, 2014 was produced by WM Capital on January 31, 2017." *Id.* It denies the rest of the statement but provides no basis for its denial. *Id.*

     Tenerife and WM did not provide a specific and adequate record citation for either of their assertions. Although Tenerife provides a record citation, its citation is a general reference to a 169-page document. But the record otherwise confirms that AEI Consultants completed the report on July 22, 2014. *Opp'n to Pls.' Suppl. Mot.*, Attach. 1 at 1 (ECF No. 85-1). The Court finds the Environmental Report was dated July 22, 2014.

[21]    Tenerife asserts that the Agreement provides:

> The parties were obligated to immediately, after using their best efforts, proceed with the execution of the judgment in case KCD2011-0142 through public sale of the mortgaged realty, so that 50% of the proceeds from the judicial sale, which would have corresponded to Juan Almeida León, would flow to the FDIC-R to satisfy its judgment credit against Mr. Juan Almeida, for payment, all excess funds on the participation of Juan Almeida would flow to him, "Para Pago."

### 3.      Issues Arise

Notwithstanding the terms of the Agreement, the foreclosure sale contemplated under the Agreement did not take place.  The FDIC-R would not consent to the foreclosure until it was substituted in the state court case no. KCD2011-142 as provided for in the Agreement.   CDSMF ¶ 23; DRCDSMF ¶ 23.[22]

---

CDSMF ¶ 12 (citing in part ¶¶ 3.1.9, 3.2).  WM denies this assertion, stating this is not what the agreement provides and it is "demonstrably false."  DRCDSMF ¶ 12 (citing ¶¶ 3.1.7, 3.1.8.3).  Tenerife further claims that "the FDIC bound itself to immediately arrange and use its best efforts to conduct an environmental study . . . once the Phase I study was conducted and completed, the foreclosure auction would proceed."  CDSMF  ¶ 14.  WM denies this and states that Tenerife is mischaracterizing what the Agreement actually states and is repeating previous claims.  DRCDSMF ¶ 14.

The Court includes the relevant portions of the Agreement to reconcile the different claims of the parties.  However, contrary to Tenerife's assertion, "the state court had to amend the judgment to include the FDIC-R as a co-plaintiff and judgment creditor" before the foreclosure could proceed.  *Pl.'s Breach of Contract Order* at 4.  As a second precondition, "the FDIC had to complete the environmental study <u>or</u> provide its written consent to the sale."  *Id.* (emphasis in original).

Tenerife statement of material fact thirty-two asserts:

> Mr. Francisco Almeida and his wife have at all times had great interest in making payment to assignee (originally the FDIC, now WMCM) in case K CD2011-0142, and thereby preserve their participation and value therein. Each month, the realty object of execution generates substantial rents (more than $15,000.000 per month, and increased negotiated higher rent, plus other benefits), which plaintiffs have been deprived of, due to defendant's (WM Capital and its predecessor) breach of contract and that of its successor. Dkt 45-3, page 81 of 92 ¶ 31; Dkt 45-3 Page 10 of 92 ¶ 3.1.8.4) ("Rental Income").

CDSMF ¶ 32 (emphasis omitted).  WM denies this proffered fact.  DRCDSMF ¶ 32.  WM argues that the first portion of the statement is argumentative and conclusory, not factual.  *Id.*  It denies the second portion as lacking sufficient indicia of personal knowledge as to how this alleged rent was calculated or with what individuals or entities.  *Id.*

 The Court omits the first portion of this assertion because it is not supported by a citation to the record.  *See supra* note 18.  Moreover, it is argumentative and conclusory.  *See supra* note 8.  The Court omits the second assertion because it lacks sufficient specificity as to how these stated rent amounts were calculated and is also argumentative.  *See supra* note 8.

[22]      Tenerife's statement of material fact twenty-three states:

> The FDIC gave no explanation whatsoever, it did not allow the sale at public auction to go forward, did not permit the execution of the judgment, nor did it permit the issuance of any provisional remedy to secure funds and judgment, such as attachment of rents. Neither has WMCM to-this-day. The FDIC represented to State Court that the federal court had prohibited any provisional remedy to be issued. Plaintiffs have never been notified of any such Order by any court, including the United States District Court. Dkt 45-3, page 80 of 92, ¶ 22.

On August 12, 2014, the Almeida Plaintiffs and the FDIC-R filed the joint motion in

state court.  CDSMF ¶¶ 15-16, 31-32; DRCDSMF ¶¶ 15-16, 31-32.[23]  Approximately

_____

CDSMF ¶ 23 (emphasis omitted).  WM admits in part and denies in part this assertion.  DRCDSMF ¶ 23.  It admits that the FDIC-R did not consent to the foreclosure until it had been substituted in the state court case as identified in the Agreement.  *Id.*  WM denies the remainder of the assertion as failing to comply with the District's local rules and lacking specificity as well as a personal knowledge foundation to support the claim.  *Id.*

 The Court includes the assertion that WM did not consent to the foreclosure until it was substituted into the state court case.  The Court omits the first two portions of the assertion because Tenerife does not provide a specific citation to the record.  D.P.R. LOC. R. 56(e).  The Court omits the last portion of this proffered fact for lack of specificity.  *See Pérez,* 247 F.3d at 315.

[23] Tenerife's statement of material fact fifteen reads:

> On or about August 12, 2014, the FDIC, as part of the process to secure title "for payment" (dación para pago"), appeared before the Superior Court of Puerto Rico, San Juan Part, and requested that it be substituted **as co-plaintiff and co-judgment creditor only and exclusively in case KCD2011-0142 on a 50% of joint undivided tenancy with Mr. and Mrs. Francisco Almeida (Dkt 45-3, page 77 of 92, ¶ 14; Dkt 45-3, page 20-24 of 92).**  The motion was drafted by counsel for the assignee, to accumulate the FDIC as co-plaintiff in State Court case KCD2011-0142; the July 28, 2014 Agreement was not appended to the motion.  The actual disposition of the party accumulation was delayed until the Court was submitted a copy of the July 28, 2014 Agreement, accumulation took place on early 2016.

CDSMF ¶ 15 (emphasis in original).  WM denies Tenerife's statement of material fact fifteen on multiple bases.  DRCDSMF ¶ 15.  It says the draft motion is not authenticated and thus, not admissible, and that much of the proffered fact is "extremely misleading," mischaracterizes the evidence, or is not supported by the cited material.  *Id.*  WM points out that the August 12, 2014 motion was a joint motion by Plaintiffs Francisco Almeida-León and Wanda Cruz-Quiles and FDIC-R.  *Id.*

 Tenerife's failure to authenticate the draft motion does not preclude the Court from considering it on summary judgment.  *See Perez-Maspons v. Stewart Title P.R., Inc.,* 208 F. Supp. 3d 401, 408-09 (D.P.R. 2016).  WM itself submitted what it represented was a "true and correct copy of the Joint Motion" when it filed its October 5, 2016 statement of material facts in support of its motion for summary judgment.  *Statement of Uncontested Material Facts in Support of WM Capital's Mot. for Summ. J.* at 2 (ECF No. 41-3).  WM is hardly in a position to complain that a copy of what it previously filed with the Court is not authentic.

 When the Court considers the contents of the Joint Motion, however, it agrees that the assertions largely are not supported by the cited material.  The Court alters the assertion to reflect the actual record.

 WM also denies Tenerife's statement of material fact sixteen where Tenerife claims that neither WM nor the FDIC-R, submitted a copy of the Agreement and that "when WMCM moved for a ruling, after this case had been filed in State Court, the Court required copy of the assignment contract in order to approve and include the assignee as co-party in the case."  CDSMF ¶ 16; DRCDMSF ¶ 16.  To support this assertion, Tenerife cited pages forty and seventy-eight of attachment three to docket number 45.  Page forty is a reference to the Plaintiffs' own motion for protective order the Plaintiffs themselves filed in this case.  *See Mot. for Provisional Remedy, Status Quo* (ECF No. 10).  An attorney's prior assertion in a motion filed in the same case is hardly proof of the existence of an asserted fact.  Page seventy-eight is part of an affidavit that Francisco Almeida-León and Wanda Cruz-Quiles filed in support of their opposition to WM's earlier-filed motion for summary judgment.  Assuming a court

a year before the state court ruled on the joint motion, in December 2015, WM acquired the FDIC-R's rights to the subject loan, judgment, Agreement, and related collateral, as part of a Loan Sale Agreement, and sought to be substituted in place of the FDIC-R in the state court case no. KCD2011-0142.  CDSMF ¶¶ 34, 49, 51; DRCDSMF ¶¶ 34, 49, 51.[24]

---

order could be authenticated by an affidavit of the parties, paragraph fifteen tracks Tenerife's assertion.  *Opp'n to Mot. for Partial Summ. J.* Attach. 3, *Sworn Statement* at 5 (original pagination) (ECF No. 45).

The record reflects the motion submitted to the state court was a joint motion on behalf of both parties and the order Tenerife cites does not say what they claim it states.  Apart from these defects, there is dispute of material fact, and the Court must draw all reasonable inferences in favor of the nonmovant.  *See supra* note 5.  The Court omits Tenerife's statement of material fact sixteen.

Tenerife's statement of material fact thirty-one states:

> On various occasions, and consistently up to late 2017, the FDIC, its successor, WMCM, and their counsel, actively prevented the Almeidas could obtain as provisional remedy seizure of the rental income, including having made questionable representations to the Superior Court, namely, that a Federal Court Order prevented attachment of the rents. Dkt 45-3, page 81 of 92 ¶ 28; Dkt 45-3 pages 82-83 ¶ 31. On or about August 12, 2014 Francisco Almeida, his wife Wanda Cruz and Tenerife attempted to present a motion in State Court case no. KCD2011- 0142 to deposit four mortgage notes, as contemplated in the July 28, 2014 agreement. The Superior Court rejected and did not permit the deposit in Court of the four original mortgage notes. Dkt-45-3 Page 81 of 92 ¶ 29.

CDSMF ¶ 31 (emphasis omitted).

WM denies this assertion.  DRCDSMF ¶ 31.  WM argues that the first assertion is too generalized and vague to be admissible.  *Id.*  The Court agrees and omits the first portion of this proffered statement for lack of specificity.  *See supra* note 8.

WM denies the remainder of the statement under Federal Rule of Evidence 1002 because "Tenerife purports to use the affidavit to prove (using a self-serving characterization) the content of writings (a motion and an order)" and thus, it argues, is inadmissible under Rule 1002 of the Federal Rules of Evidence.  *Id.*  Rule 1002 provides that "[a]n original writing, recording, or photograph is required in order to prove its content," unless an exception applies.  Fed. R. Evid. 1002.  The Court disagrees that Tenerife is attempting to prove the truth of the contents.  Nevertheless, a copy of the motion and order is on the record.  *See Jt. Mot. by the Pls. and FDIC-R to Join FDIC-R as Co-Plaintiff and Amend Oct. 10, 2011 J. Accordingly* (ECF No. 41-3).  The Court refines the assertion in light of the record.  *See* Fed. R. Evid. 1003 ("A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate").

[24]   In its response to Tenerife's statement of material fact forty-nine, WM admits it executed an Assignment and Assumption of Interests and Obligations but denies Tenerife's characterization of the document and states it speaks for itself.  DRCDSMF ¶ 49.  For clarity, the Court refers to the title of the agreement reflected in the record.

On November 3, 2014, Attorney Mellado sent an email to a number of attorneys who had represented the Almeida Plaintiffs in their federal and state cases outlining the status of the potential sale of the Kennedy Property and indicating that the FDIC-R wished to move forward.  CDSMF ¶¶ 33, 35; DRCDSMF ¶¶ 33, 35.[25]

---

Tenerife's statement of material fact fifty-one reads:

> The price that WMCM paid for the purchase of the 50% interest in the judgment and credit in case KCD2011-01452 before the Superior Court of Puerto Rico where Mr. Juan Almeida was co-owner and has enforced the co-Owner right of redemption was approximately $92,840.71. The information was determined by the conjunction of the information admitted by WMMCM in this case and the information the FDIC-R published on the total price for which the FDIC-R sold Loan Pool number MR3-15-23025, and breakdown of said information. (Total price WMCM paid for the portfolio in Loan Pool Number MR3-15-23025 was $2,730,609.00, where the total book value was $80,319,503.21, the value assigned to the 50% co.-ownership of the judgment in case KCD2011-01452, was $2,828,850.11; that is WM Capital paid approximately 3.4¢ for every dollar, or 3.4% of every book value dollar). Dkt 45-3, page 87 of 92 ¶51.

CDSMF ¶ 51 (emphasis omitted). WM denies this statement and argues "[t]he only evidence cited in support of this statement is the Affidavit. There is no basis for personal knowledge other than a general reference to 'information the FDIC published.'" DRCDSMF ¶ 51.

The Court agrees.  The assertions are not adequately supported by a record citation.  The first few assertions are not supported by any record citation.  *See supra* note 18.  The only citation is to Francisco Almeida-León and Wanda Cruz-Quiles' affidavit but their affidavit does not refer to what documents they considered that the FDIC-R published or the source of the figures they used to arrive at their approximation.   The second assertion is precluded on under the doctrine of the law of the case. *See supra* note 18.

[25]     Tenerife's statement of material fact thirty-three states:

> During the subsequent twelve months (October 2014 to October 2015) and until the commencement of the present case, the FDIC intentionally and deliberately obstructed and did not permit the execution of the judgment to take place. On November 2014, assignee, through its counsel, demanded that, as a condition to permit public sale, Tenerife relinquishes and waives its first mortgage and judgment in case no. KCD2009-0142. See email from Mr. Jairo Mellado, Esq., dated November 3, 2014, Appendix to Tenerife's Motion for Summary Judgment to which this Statement of Uncontested Facts is appended, pages 30-31. Plaintiffs responded rejecting such unwarranted demand, and warning WMCM. See email from Edilberto Berríos Pérez, Esq., dated November 4, 2014, to Mr. Jairo Mellado, second paragraph. In February 2015 assignee deliberately discontinued all efforts to complete the environmental study and decided to intentionally breach the contract by continuously and indefinitely obstructing the public sale and payment. Dkt 85-2, page 2 of 8 entries for February 4, 2015 and for February 6, 2015 item 4. Assignee, during three years did not provide any document regarding the environmental study, did not report any details about the efforts displayed nor results attained regarding the environmental study that they were obligated to conduct, generate and produce. The FDIC, at a personal meeting,

On December 14, 2015, Juan and Francisco Almeida-León offered the FDIC-R

payment of $1.5 million in total release of the amounts that the FDIC-R claimed

under the Agreement, which was less than the FDIC-R was set to receive as part of

the Agreement.  CDSMF ¶ 36; DRCDSMF ¶ 36.[26]  Juan and Francisco Almeida-León

---

only stated that a phase two study may be necessary, but provided no information related to any environmental study. Dkt 45-3, page 82 ¶ 32.

CDSMF ¶ 33 (emphasis omitted). WM denies in part and admits in part this assertion.  DRCDSMF ¶ 33. WM admits on November 3, 2014 its counsel sent an email to a number of attorneys involved in this and other related cases.  *Id.*  It denies Tenerife's characterization of the email, and says the email speaks for itself.  *Id.*  WM denies the rest of the assertion stating it is improper under the District of Puerto Rico's local rules and standing orders.  *Id.*  It denies Tenerife's assertion as to the response email because it is not supported by a record citation.  *Id.*  It denies the latter assertions as restating previous assertions and that environmental study was waivable.  *Id.*
    The Court agrees that this statement of material fact is neither concise nor short contrary to the District of Puerto Rico's local rules.  *See supra* note 18.  The first portion of this proffered fact is omitted because it is argumentative and conclusory.  *See supra* note 8.  The Court omits the remaining assertions, except for WM's admission to sending the November 3, 2016 email, as unsupported by a record citation, as argumentative, and as otherwise precluded under the doctrine of the law of the case. *See supra* notes 8, 18.  The Court refers to email to provide clarity as to its contents.
    Tenerife's statement of material fact thirty-five lists the numerous ways it claims WM breached its obligations under the parties' Agreement, spanning five pages and often substituting legal conclusions for proffered facts.  The Court omits it. *See supra* notes 8, 18.
[26]    Tenerife proffers:

> During November and December, 2015, Mr. Francisco Almeida Leon and Mrs. Cruz Quiles informed the FDIC, through its attorney, Atty. Jairo Mellado, that, given the extensive delays that had been incurred by the FDIC in obtaining the environmental study, and in permitting the foreclosure public sale, and to mitigate the damages resulting from the delays, Mr. Juan and Mr. Francisco Almeida had procured funds from other sources to pay the FDIC and mitigate the damage caused by the breach of contract that the FDIC had incurred.

CDSMF ¶ 36 (emphasis omitted). WM admits in part and denies in part this assertion.  DRCDSMF ¶ 36.  It admits that in a letter dated January 14, 2016, the Almeida Plaintiffs offered the FDIC-R $1.5 million in total satisfaction of the Agreement.  *Id.*  It notes that this offer was not a full payment pursuant to the Agreement and denies the remainder of the assertion because it lacks factual specificity.  *Id.*
    The record reflects that the Almeida Plaintiffs made their offer on December 14, 2015, and the Court rejects WM's assertion that it was submitted on January 14, 2016. *See Opp'n to Mot. for Partial Summ. J.* Attach. 3, *Appendix to Opp'n Mot.* at 27-28 (*Letter from Edilberto Berrios Pérez and Francisco Almeida Leon to Mellado & Mellado-Villareal* (Dec. 14, 2015)).  The Court omits Tenerife's conclusory legal statements but rejects WM's claim that Tenerife's proffered assertion lacks factual specificity in light of the record.  At the same time, the Court is curious why an offer to settle this dispute is admissible and, if so, for what purpose, FED. R. EVID. 408, but as WM did not object on this basis, the Court considers the settlement offer for what it is worth.

also attempted to find buyers and tenants for the Kennedy Property.  CDSMF ¶¶ 24-25; DRCDSMF ¶¶ 24-25.[27]

In January 2016, the Almeida Plaintiffs attempted to ascertain the buyer of FDIC-R's interest in the Agreement.  CDSMF ¶ 44; DRCDSMF ¶ 44.[28]  On January

---

[27]     Tenerife's statement of material fact twenty-four states:

> Mr. Francisco Almeida and Mr. Juan Almeida, in order to assure that disposition of the realty would generate sufficient funds to fully pay the FDIC's claim and judgment, plaintiffs arranged for and obtained buyers and tenants for the property to be auctioned, and in that manner assured that the sale at public auction or at the sale subsequent to the auction, or other business with the property (such as financing with the proceeds of any rent as a source of repayment) would generate sufficient funds to fully pay for the claims of the FDIC with only a small fraction of the 50% of the proceeds generated by the sale. Dkt 45-3, page 80 of 92, ¶ 23; Dkt 45-3, page 9 of 92, ¶ 3.1.8.3. Assignee appraised the Realty at over EIGHT MILLION DOLLARS IN 2014.

CDSMF ¶ 24 (emphasis omitted).
Tenerife's statement of material fact twenty-five asserts:

> Specific negotiations were held and agreements reached with the Tenant, Auto Grupo Puerto Rico, Messrs. Pedro Hernández, and Gerardo Pascual, and with others alternatively, such as Motor Ambar and Volvo. Additionally, after severe delays in having the public sale of the realty be scheduled, financing was sought and approved with a cooperative, to complete the funds to fully pay the FDIC claim under the judgment, all of which was informed to the FDIC through its counsel Jairo Mellado verbally and in writing. Dkt 45-3, pages 79-80 of 92, ¶ 24; see also Dkt 45-3, page 9 of 92, ¶ 3.1.8.3, lines 5-8, which references the potential sale to Motor Ambar and/or Cabrera Hermanos.

CDSMF ¶ 25 (emphasis omitted).
WM denies both assertions. DRCDSMF ¶¶ 24-25. WM denies the former because it says its record references are only to Agreement, which speaks for itself, and to Francisco Almeida-León and Wanda Cruz-Quiles' affidavit, which WM asserts "lacks the required specificity to be admissible." DRCDSMF ¶ 24. WM denies Tenerife's statement of material fact paragraph twenty-five because it lacks a record citation as required by the local rules and mischaracterizes the Agreement's text which it cites for support. DRCDSMF ¶ 25.
The Court reject's WM's denial as to Tenerife's statement of material fact twenty-four because while the assertion is not overtly detailed, it contains enough specificity to be considered. The Court omits the last portion because it is not supported by a specific citation to the record. *See supra* note 18. The Court refers to the Agreement as needed. *See supra* note 10.
The Court omits the first portion Tenerife's statement of material fact twenty-five because it does not provide a specific citation to the record. *See supra* note 18. The Court omits the second portion of this proffered statement for lack of specificity and because the Court must view the facts in the light most favorable to the nonmovant. *See supra* notes 5, 8. The Court includes those portions of the Agreement as needed.
[28]     Tenerife avers:

14, 2016, Francisco Almeida-León sent a letter to FDIC-R, through counsel, declaring WM "in default under the July 25, 2014, Agreement"[29] on various alleged bases. CDSMF ¶¶ 37-41; DRCDSMF ¶¶ 37-41.[30]   On January 22, 2016, the Almeida

_____

> During January, 2016, Mr. Francisco Leon Almeida, his attorney Antonio Bauzá, and Atty. Edilberto Berríos Pérez, inquired and undertook multiple efforts to ascertain the identity of the buyer of the joint ownership, including asking Atty. Jairo Mellado by telephone and inviting him to a meeting. The identity of the purchaser was not disclosed early enough that the name of the purchaser and the terms of the purchase was known when the complaint that initiates this case was filed.

CDSMF ¶ 44 (emphasis omitted).  WM denies this proffered fact as lacking factual specificity and personal knowledge.  DRCDSMF ¶ 44.  The Court agrees that the proffered fact lacks specificity as to how and when Mr. Francisco Almeida-León and his attorneys "undertook multiple efforts to ascertain the identity of the buyer."  However, the Court rejects WM denial on the basis that the proffered facts lack sufficient indicia of personal knowledge.  The Court modifies the assertion accordingly.

[29]   Specifically, the Almeida Plaintiffs state that they "hereby resolve the agreement (self executing) pursuant to the laws of Puerto Rico, and reserve all further rights and remedies that result from contract [ ] law and equity . . . All mutual considerations are reversed and returned within twenty four hours, automatically[.]"  *App.* at 30 (ECF No. 45-3) (*Letter*).

[30]   In its statement of material fact thirty-seven, Tenerife states:

> In the afternoon of January 14, 2016, Mr. Francisco Almeida sent a letter to the FDIC, through counsel, Jairo Mellado, reiterating the inquiries regarding the breach of the contract for not having performed the environmental study nor having permitted the public sale on mortgage foreclosure to take place, declaring default **on to the FDIC-R, to be effective twenty four hours thereafter**.  The letter was hand delivered to the FDIC's attorney in the afternoon of January 14, 2016.  **Dkt 45-3, page 29-30 of 92; Dkt 45-3, page 83 of 92 ¶ 36**.  Before the expiration of the 24 hours, Mr. Francisco Almeida informed his decision to enforce redemption of community property, which he did by commencing this lawsuit.
>
> On July 1st 2016 Tenerife tendered a letter to WMCM through its counsel, Jairo Mellado, admonishing that WMCM had again breached the contractual obligations by demanding, as a condition of complying with the agreement and moving forward with the public sale, that Tenerife waives its rights and gives it property rights to WMCM, then **default was declared onto WMCM by Tenerife**.  **Dkt 45-3, pages 48-49 of 92**.  Tenerife resolved its participation in the July 28, 2014 agreement.  The Almeidas did not resolve the July 28, 2014 Agreement, supra.

CDSMF ¶ 37 (emphasis in original).
Preliminarily, the Court again observes that Tenerife's statement of material fact thirty-seven violates Local Rule 56(b) since these two paragraphs are neither short nor concise and are only partially supported by record citations.  Such long and partially supported statement of facts make it difficult for the responding party to object and for the Court to properly analyze the proposed undisputed facts.  Although the basis of the Court's ruling on the majority of statement of material fact thirty-seven is for substantive reasons, the Court would not include in its recitation of the facts any statements not properly supported by a proper record citation.

WM admits in part and denies in part Tenerife's assertions in its statement of material fact thirty-seven. DRCDSMF ¶ 37. It admits that on January 14, 2016, the Almeida Plaintiffs sent FDIC-R a letter declaring the Agreement "to be resolved." *Id.* It also admits that Tenerife sent WM a letter dated July 1, 2016. *Id.* It denies the rest of the assertion as either inadmissible hearsay or lacking foundation based on the necessary personal knowledge.

The Court need not resolve WM's objections because the Court alters the assertion in light of its holding under the doctrine of the law of case. The majority of Tenerife's statement of material fact paragraph thirty-seven pertaining to the January 14, 2016 letter concerns the Almeida Plaintiffs' redemption claim and its assertions that WM breached the Agreement by failing to perform the environmental study as well as not conducting the public sale, both of which go to matters resolved in the Court's orders on the Plaintiffs' breach of contract, litigious, and redemption claims. The Court includes the fact that Almeida Plaintiffs sent a letter on January 14, 2016 asserting that the Agreement was resolved and on July 1, 2016, Tenerife also sent a letter, as WM admits, but the Court omits the contents of the January 14, 2016 letter and Tenerife's statement of fact paragraph thirty-seven, which is based on the letter. The Court omits the statements' legal conclusions. *See supra* note 8.

Tenerife's statement of material fact thirty-eight reads:

> Only after the delivery of the letter (of January 14, 2016), did Atty. Jairo Mellado place a telephone call to the attorney for the Almeida family inquiring as to the declaration of default, and then for the first time, informed that the FDIC-R, without prior notice or offer, had sold its rights under the agreement, judgment, credits and promissory notes, and that then foreclosure sale should immediately be requested and proceed with, because he also represented and informed to represent the purchaser of the 50% ownership of the credit, and judgment on case KCD2011- 0142, whose identity he refused to disclose. Dkt 45-3 Page 83-84 of 92 ¶ 37; Dkt 45-3 pages 29-30.

CDSMF ¶ 38. WM denies this assertion as failing to contain the personal knowledge necessary to support its admissibility and based on hearsay grounds. DRCDSMF ¶ 38. The Court omits these assertions because the record citations either do not adequately support them or are insufficient under Rule 56 of the Federal Rule of Civil Procedure. Tenerife's last record citation is to the January 14, 2016 letter, but the assertion pertains to events after this letter was allegedly delivered. Furthermore, in the first record citation, Francisco Almeida-León and Wanda Cruz-Quiles' affidavit lacks sufficient specificity to establish they have the requisite level of personal knowledge to proffer to the conversation. *See supra* note 8.

Tenerife's statement of material fact thirty-nine states:

> Attorney Jairo Mellado refused to provide the name or identity of the purchasing entity, or any data or price related thereto.

CDSMF ¶ 39. The Court omits the assertion because its lacks sufficient specificity to establish Francisco Almeida-León and Wanda Cruz-Quiles have personal knowledge of the event. *See supra* note 8.

The Court omits Tenerife's statement of material fact forty because its lacks sufficient specificity to establish Francisco Almeida-León and Wanda Cruz-Quiles have personal knowledge of the telephone conversation and because the Court must draw all reasonable inferences in favor of the nonmovant. *See supra* notes 5, 8.

Tenerife's statement of material fact forty-one asserts:

> In the morning of January 15, 2016, before the 24 hours had elapsed, Mr. Juan Almeida, through his attorney, sent and hand delivered a letter to Atty. Jairo Mellado, informing and conforming that, in light of the information provided by the FDIC-R on

Plaintiffs filed the instant complaint.  CDSMF ¶ 42; DRCDSMF ¶ 42.  The Almeida Plaintiffs also filed a proof of claim with the FDIC-R.  CDSMF ¶ 43; DRCDSMF ¶ 43.[31]

The state court, however, did not rule on the joint motion to join the FDIC-R until February 11, 2016.[32]  CDSMF ¶ 15; DRCDSMF ¶ 15.  In its order, the state court ordered the joinder of FDIC-R as a party to the case and thus a co-plaintiff, but held that the judgment would not be amended because the FDIC-R was not a party at the time it was entered.  CDSMF ¶ 28; DRCDSMF ¶ 28.  Then, in early March 2016, the state court ordered the substitution or "replacement" of the FDIC-R for WM.  CDSMF ¶¶ 28-30, 45-46; DRCDSMF ¶¶ 28-30, 45-46.[33]

---

the sale of its fifty percent undivided interest, Mr. and Mrs. Francisco Almeida and Mr. Juan Almeida had decided to, were exercising and enforcing the redemption of community property and redemption of the debt in dispute, alternatively. Id; Dkt 45-3, page 84 of 92 ¶40; Dkt 45-3, pages 31-32 of 92.

CDSMF ¶ 41 (emphasis omitted).  WM denies this statement because it says it is not based on Francisco Almeida-León's and Wanda Cruz-Quiles' own personal knowledge and is conclusory and argumentative. DRCDSMF ¶ 41.

The Court agrees and omits the assertion because its lacks sufficient specificity to establish Francisco Almeida-León and Wanda Cruz-Quiles have personal knowledge of the event as it relates to Juan Almeida-León's actions and because the Court must draw all reasonable inferences in favor of the nonmovant.  *See supra* note 5.  The last portion of the statement is precluded under the doctrine of the law of the case.  *See supra* note 18.

[31]    Tenerife's statement of material fact forty-three is neither concise nor short contrary to the District of Puerto Rico's local rules.  *See supra* note 18.  It is nearly a page long.  The majority of the assertions in this statement are either argumentative and/or precluded under the doctrine of the law of the case and/or cannot be considered by the Court because they require this Court to take as true another Court's findings of fact.  *See supra* notes 8, 18.  WM admits that the Almeida Plaintiffs filed a proof of claim with the FDIC-R, but denies the rest of the statement on a variety of grounds. DRCDSMF ¶ 43.  The Court includes the fact the parties agree on, but omits the statement for reasons just stated.

[32]    The state court granted the inclusion of FDIC-R as party plaintiff and held that "it is appropriate to continue the proceedings with the new party."  *Order* at 3 (ECF No. 41-4); *Mot. Submitting English Translation*, Attach. 1 (ECF No. 43-1).  However, the state court held that "[t]he amendment to the Judgment is not appropriate, as the FDIC was not a party at the time it was entered."  *Order* at 3.

[33]    Tenerife asserts:

> After the severe delays caused by the assignee, in early 2016, Mr. Francisco Almeida submitted to the Superior Court copy of the July 28, 2014 assignment agreement. The Superior Court issued an order by which WMCM replaced the FDIC as party to the Superior Court case no. KCD2011-0142 on a 50% ownership of title to the judgment. In the same Order the Superior Court refused to amend the final judgment.

CDSMF ¶ 28 (citations and emphasis omitted).

WM admits in part and denies in part this assertion. DRCDSMF ¶ 28. It admits that on February 11, 2016, the state court ordered the joinder of the FDIC-R as party to the case and concluded that the judgment would not be amended. *Id.* It also admits that in early March 2016, the state court ordered the substitution or "replacement" of the FDIC-R for WM. *Id.* It denies the rest of Tenerife's statement as conclusory or lacking record support. *Id.*

The Court will not consider the claim that there were "several delays" on the part of WM, because the assertion is conclusory and not supported by a record citation. The Court alters the remaining portion of Tenerife's assertion under the doctrine of law of the case in light of the Court's previous order dismissing the Almeida Plaintiffs' litigious credit and redemption claims. *See supra* note 18.

In Tenerife's statement of material fact twenty-nine, it says the state court in KCD2011-0142 "acknowledged the FDIC's 50% interest in the proceeds of the judgment" and "approved the transfer of the 50% joint participation" from the agreement and that the Superior Court in KCD2009-0708, while acknowledging this Court's orders, denied WM's motion to intervene and found that WM breached the Agreement and were in default. CDSMF ¶ 29. The state court order does not support Tenerife's first contention, the Court has included what is reflected in the state court order. Tenerife's assertions are also barred under the doctrine of the law of the case. *See supra* note 18. The Court may not consider the state court's findings of fact which can be reasonably disputed. *See* Part II, subsection C. The Court addresses the state court's denial of WM's motion to intervene later in this order.

Tenerife also asserts, "[t]he judgment in case no. KCD2011-0142, as per Court Order, was not amended, although the caption was modified to include WMCM as co-plaintiff." CDSMF ¶ 30. WM denies this statement. DRCDSMF ¶ 30. WM says this assertion is "solely supported by the Affidavit which in turn attempts to prove the contents of writing" and not admissible under Federal Rule of Evidence 1002. *Id.* WM further states "the characterization of the judgment being 'co-owned' by WM Capital is yet another misleading characterization in support of Tenerife's redemption claims." *Id.* On this point, the Court already noted that the judgment in KCD2011-0142 was not amended and in any event, it is required to view disputed facts in the light most favorable to the non-movant. Furthermore, Tenerife's record citation does not support all its assertions. CDSMF ¶ 30 (citing *App.* at 81, ¶ 27) ("The judgment in case KCD2011-0142, as per Court Order, was not amended, and as plaintiff remains Mr. Francisco Almeida, although title to judgement appears as co-Owned by W.M. Capital"). The Court incorporates the state order on the joint motion by the FDIC-R and the Almeida Plaintiffs as reflected in the record.

In statement of material fact forty-five, Tenerife asserts:

> Thereafter, on or about February 4, 2016, during a meeting at Atty. Jairo Mellado's offices in Hato Rey, Puerto Rico, Attorney Mellado informed the identity of the purchaser of the participation in the credit of the FDIC-R in the credits and judgment in case KCD2011-0142, and therefore, co-owner, as W.M. Capital Management, Corp., located in North Carolina, U.S., also present at the meeting was Mr. Jim Barr Coleman, representative of WMCM, and informed its address as:
>
> **4032 Masonboro Loop Road, Unit 104**
> **Wilmington, NC., 28409 (Dkt 45-3, pages 85-86 ¶ 45).**

In March and April 2016, Francisco Almeida-León attempted to execute the foreclosure sale of the Kennedy property in the Almeida Plaintiffs' state court case. CDSMF ¶¶ 55-56, 67; DRCDSMF ¶¶ 55-56, 67.[34]  However, the state court deemed

---

> Also in February 2016, after WM Capital requested disposition of the motion to include the assignee as co-plaintiff, the State Court in case no. KCD2011-042, and shortly thereafter, on March 3, 2016, WMCM was included a co-plaintiff (after Almeida submitted the Assignment of 50% for Payment Agreement). **Dkt 45-3 page 40 of 92**.

CDSMF ¶ 45 (emphasis in original).

WM admits in part and denies in part these assertions.  DRCDSMF ¶ 45.  WM says the assertion is only support by the affidavit of Francisco Almeida-León and Wanda Cruz-Quiles but fails to explain how either of them had first-hand knowledge of the meeting.  *Id.*  The Court agrees.  There is nothing in paragraph forty-five of the Almeida-León and Cruz-Quiles affidavit that suggests that Francisco Almeida- León and/or Wanda Cruz-Quiles were present at the February 4, 2016 meeting.  The Court omits the first sentence of Tenerife's statement of material fact forty-five because it lacks indicia of personal knowledge to support its admissibility.  Regarding the second portion of paragraph forty-five, WM admits that it filed a motion on January 26, 2016 to substitute itself for the FDIC-R in the state court case, which was granted on March 3, 2016, but WM denies Tenerife's characterization of the state court order.  DRCDSMF ¶ 45.

The Court compares the contents of Tenerife's second part of paragraph forty-five with the state court order and it alters Tenerife's second assertion in statement of material fact forty-five in light of the record.

Tenerife's statement of material fact forty-six states:

> In the February 4, 2016 meeting, Mr. Jim Barr Coleman informed that WMCM, consistently makes and has done business in Puerto Rico, including purchasing, processing, collection and execution of about one thousand one hundred loan contracts (1,100). WMCM, has extensive contacts with Puerto Rico, which validates and makes the exercise of jurisdiction as to their person and assets appropriate; even though it has not registered to do business in Puerto Rico. Dkt 45-3, page 86 of 92 ¶46.

CDSMF ¶ 46 (emphasis omitted).  WM denies this assertion.  DRCDSMF ¶ 46.  WM argues "there is no basis for the purported personal knowledge of Francisco Almeida and Wanda Cruz of this statement. It lacks specificity with regards to who Mr. Coleman allegedly informed and how. This statement is therefore inadmissible." *Id.*  WM also contends the second sentence is conclusory and argumentative. *Id.*

The Court agrees.  While the assertion identifies the date of the meeting, it provides no other detail as to who was present, where this meeting took place, and whether Francisco Almeida-León and Wanda Cruz-Quiles attended.  Because the Court must take all reasonable inferences in favor of the nonmovant, the assertion lacks sufficient indicia of personal knowledge to be admissible.  *See supra* note 5.  The assertion is also not supported by a record citation.  *See supra* note 18.  The Court omits the second assertion because it is argumentative and conclusory.  *See supra* note 8.

[34]  Tenerife's statement of material fact fifty-five asserts:

> Mr. Francisco Almeida, after having redeemed the sale of the 50% ownership participation on the mortgage notes, on the credit and judgment in case KCD2011-0142, on or about March 2016, sought to have the public sale on foreclosure take place, notified the State Court, obtained issuance of the edicts for notice of Public Sale,

that the proceedings had been initiated improperly, and it cancelled the attempted

auction. *Id.*[35]  On April 1, 2016, in this case, the Almeida Plaintiffs filed a motion for

---

published the edicts, and notified all parties, including WMCM. Dkt 45-3, page 88 of 92 ¶ 56.

CDSMF ¶ 55 (emphasis omitted). WM denies this assertion. DRCDSMF ¶ 55. WM says the statement is misleading and false. *Id.* It contends the assertion that Francisco Almeida-León redeemed a 50% participation is a legal conclusion and further argues that Tenerife mischaracterizes the actions which the state court deemed fraudulent. *Id.*

The Court agrees. The Court omits the first assertion as a legal conclusion and alters the assertion in light of the record.

Tenerife claims that "[o]n March 31, 2016, WMCM appeared before the State Court and requested cancellation of the public sale scheduled. The State Court cancelled the foreclosure Public Sale." CDSMF ¶ 56 (citing **Dkt 45-3, page 88 of 92 ¶ 58**) (emphasis in original).

WM admits in part and denies in part Tenerife's statement of material fact fifty-six. DRCDSMF ¶ 56. It admits that the state court cancelled the auction but denies the remainder of the statement as not supported and in fact contradicted by the record. *Id.* WM says that the state court's order "was based on an 'Urgent Motion to Set Aside Attempted Auction' filed on April 4, 2016." *Id.* The Court agrees that WM's characterization is more accurate, and in any event, it is required to view contested facts in the light most favorable to the non-movant. The Court modifies the timeframe to be consistent with the record.

Tenerife's statement of sixty-seven states:

Plaintiffs, after having filed the redemption complaint in January 22, 2016, scheduled the public sale of the Kennedy Realty in foreclosure, only to have WM Capital on April 11, 2016, again prevent the public sale from taking place, and obtained an Order to cancel the public sale.

CDSMF ¶ 67. WM admits in part and denies in part this assertion. DRCDSMF ¶ 67. WM admits that the Almeida Plaintiffs filed the instant complaint on January 22, 2016, and that in April 2016, the state court canceled the public action. *Id.* WM says the state court concluded the Almeida Plaintiffs' actions "'bordered on the fraudulent and imposed a show cause order for why sanctions should not be imposed." *Id.* WM denies the rest of statement as being conclusory and not being based on the requisite amount of personal knowledge. *Id.*

The Court includes the filing date of the Almeida Plaintiffs' Complaint. The Court finds WM's version of these events more closely hews to the record and the Court alters the assertion accordingly.

[35] The state court order reads:

Having seen the "Urgent Motion to Set Aside Attempted Auction" of April 4, 2016 . . . Our investigation revealed that Francisco Almeida-Leon and Wanda Cruz-Quiles asked the Bailiffs' Auctions Office to schedule an auction by presenting an order from 2012. This is a very serious irregularity, since they know that the auction scheduled pursuant to that order had been cancelled and that the undersigned judge has not been asked for a new order. With their actions, Almeida and Cruz led a Court functionary to error, moved the judiciary machinery for an improper purpose, and acted behind the Court's back. This sort of action borders on fraud. It is even more surprising that they acted through their lawyers, who are officers of the Court and are subject to a Code of Ethics. Therefore, the auction scheduled for April 20, 2016 is set aside, and the order

a provision remedy so as to have the foreclosure proceed, WM opposed, and on February 17, 2017, the Court denied the motion.  CDSMF ¶ 54; DRCDSMF ¶ 54.[36]

On May 26, 2016, at a hearing in the state court case, the parties stated they were in favor of foreclosing on the Kennedy Property and depositing the proceeds in federal court.  CDSMF ¶¶ 27, 57-58, 60; DRCDSMF ¶¶ 27, 57-58, 60.[37]  At that

---

for execution of Judgment entered on May 24, 2012 is set aside.

*WM Capital's Resp. to Pls.' Mot. for Provisional Remedy* (ECF No. 18), Attach. 3 at 1-2 (ECF 18-3).

[36]     WM admits Tenerife's statement of material fact fifty-four.  However, the Court alters the assertion in light of the record to reflect that the Court denied the motion.  The record reflects that on April 1, 2016, the Almeida Plaintiffs filed their motion for a provisional remedy.  *Mot. For Provisional Remedy, Status Quo* (ECF No. 10).  The record establishes that on February 17, 2017, the Court denied the motion.  *Order* (ECF No. 58).  The Court includes the parties' agreement that the motion was filed and opposed but notes that it denied the motion.

[37]     Tenerife's statement of material fact twenty-seven states:

> In case no. KCD2011-0142 before the State Court, on April 26, 2016, an **open court stipulation** was entered by which WMCM and Mr. Francisco Almeida León contracted to jointly proceed with the public sale of the EER-IPR Realty **(Dkt 45-3, page 54 of 92, Open Court Stipulation for joint public sale, consistently breached by WMCM)** and then <u>refused to comply with the contract unless a first lien be given to assignee.</u>  **Dkt 79-4 pages 20-21 of 155.  In other words, in 2016 WMCM reiterated its outrageous extortive demands.**  That is, the position and conduct previously displayed by assignee was <u>continued</u> by WMCM preventing the Public Sale of the EER-IPR Realty, and sustained a firm position <u>not to perform the joint public sale, i.e. breach the contractual obligation and cause damages</u>, unless millions of dollars are relinquished in favor of and for the unjust enrichment of assignee; **duress, *dolus*, extortion** and **fraud**.  See *Canales v. Pan American*, 112 D.P.R. 329 (1982).  As of that time, it had been two years of the consistent and deliberate breach, demanding multi-million dollar concessions in order to comply and fulfill its obligations under the July 28, 2014.  And, as of this date 2018, it has been four years of such sustained conduct.  **See State Court Judgment dated January 17, 2018, Appendix to Tenerife's Motion for Summary Judgment, pages 9-25**.

CDSMF ¶ 27 (emphasis in original).

WM admits in part and denies in part Tenerife's statement of material fact twenty-seven. DRCDSMF ¶ 27.  It admits that on May 26, 2016, a hearing was held in state court in case number KCD2011-0142, that the foreclosure could not take place due to a disagreement between the parties, and that both WM and the Almeida Plaintiffs subsequently filed informative motions expressing their versions of what occurred.  *Id*.  The parties' differing views centered around the implications of the GMAC note.  *Id*.  WM denies the remainder of Tenerife's statement of material fact twenty-seven as argumentative, asserting legal conclusions, and violating the District of Puerto Rico's local rules.  *Id*. The Court agrees that the majority of Tenerife's statement of material fact twenty-seven asserts legal conclusions is argumentative.  The Court omits those portions and addresses the assertions WM admits in the following paragraph.

Tenerife asserts, "[a]t the May 26, 2016 court hearing **a stipulation and agreement** was reached by and between WMCM and Mr/Mrs Almeida to take the realty to Public Sale <u>as a provisional remedy</u>, to mitigate damages, without waiving any rights and reserving any and all rights on the redemption." CDSMF ¶ 58 (citing **Dkt 45-3, page 88 of 92 ¶ 58 and page 54 of 92**) (emphasis in original).

WM admits in part and denies in part Tenerife's statement of material fact fifty-eight. DRCDSMF ¶ 58. WM admits "that the events of the hearing took place as per the minutes of the hearing proffered by the Almeida Plaintiffs." *Id.* WM denies what it deems subjective characterizations of those events, and it says that Francisco Almeida-León did not attend the hearing and so cannot have personal knowledge of the events. *Id.* WM says the state court minutes of the meeting speak for themselves. *Id.*

First, it is not clear if Francisco Almeida-León was present at the meeting in state court regarding KCD2011-0142 or, if present, whether he was present for the full hearing. The minutes of the hearing state that Edilberto Berrios Perez and Fernando E. Longo Quinones appeared on behalf of Francisco Almeida-León, Wanda Cruz-Quiles, and their Conjugal Partnership. *Mot. Submitting English Translation on Exs.*, *Min. of Her'g* at 4 (ECF No. 52-1). However, later the minutes state that "Counselor Berrios reports that he spoke briefly with his client in the Courtroom . . .." *Id.* at 8. The Court views these statements as ambiguous because at the beginning the minutes list not only the attorneys, but also "Mr. Jim Bark, representative of WM Capital Management, Inc." as "[p]resent in the courtroom." Francisco Almeida-León is not listed as present. Whether he came late to the hearing, whether he was present briefly and left, or whether during a break, Attorney Berrios spoke in the courtroom by telephone to Mr. Almeida-León is unclear. In light of this ambiguity, the Court is required to view the facts in the light most favorable to the non-movant and assumes that Francisco Almeida-León was not present.

Second, however, the material Tenerife cited does not support the proffered fact, and the characterization runs afoul of the doctrine of the law of the case. The Court alters the assertion in light of the record.

Tenerife's statement of material fact sixty states:

WM Capital, through its attorney Jairo Mellado refused to approve any language of a proposed order for public sale unless Tenerife, the holder of the first rank senior mortgage note, waived, and, for free, canceled the millionaire first mortgage note it holds over the realty to be taken to public sale on the junior mortgage notes. Id. (specific reference is made to the GMAC mortgage note (which is the property of Tenerife) in the demand by WMCM, Dkt 45-3 page 69 of 92 ¶ 4); and State Court Judgment of January 17, 2018, Appendix to Tenerife's Motion for Summary Judgment to which this Statement of Uncontested Facts is appended, pages 9 to 25. In other words, WMCM, expressly and unequivocally, refused to comply with the July 28, 2014 assignment agreement, and with the Stipulation entered in Open Court on May 26, 2016 unless and until Tenerife gives in to WMCM's demands that Tenerife surrenders and relinquishes millions of dollars in value. Such conduct may constitute a felony. See 33 LPRA §5261. And, WMCM has acted upon its threats, it has in fact obstructed and prevented the public sale of the EER-IPR Realty, unless Tenerife relinquishes millions of dollars in value; its first ranks lien. See Judgment of January 17, 2018, appendix to this Motion pages 9 to 25.

CDSMF ¶ 60. (emphasis omitted). WM admits in part and denies in part this assertion. DRCDSMF ¶ 60. WM admits that on May 26, 2016, there was hearing in the state court case, KCD2011-0142 and that the foreclosure did not take place because there was a disagreement between the parties. *Id.* It denies the remainder of statement as being argumentative, conclusory, and because it would require the Court to improperly take judicial notice of another court's findings of fact which are reasonably disputed. *Id.*

hearing, the parties made representations and arguments in light of their view of the status of the state and federal cases.  *See generally Mot. Submitting English Translation on Exs.*, *Min. of Her'g* at 6 (ECF No. 52-1) (*Min. of May 26, 2016 Hr'g*). At the conclusion of the hearing, the Court ordered that "[t]he plaintiffs must submit a new draft order and command that comply with the current law and registration certificate within a 15 days period," and in light of the agreements reached by the parties, the state court annulled the sanctions imposed on Francisco Almeida-León, Wanda Cruz-Quiles, and their Conjugal Relationship.  *Id.* at 8.  Subsequently, a draft of a proposed order was sent to WM in light of the agreements reached at the May 26 hearing.  CDSMF ¶ 59; DRCDSMF ¶ 59.[38]

---

The Court includes WM's admission but otherwise omits the statement.  The first assertion is not adequately supported by their record citation as the cited affidavit paragraph does not pertain to the assertion.  *See supra* note 18.  The Court may also not take judicial notice of another court's findings of fact. *See supra* note 32.  The remaining asserts are omitted as argumentative, conclusory, and not adequately supported by a record citation. *See supra* notes 8, 18.

[38]   Tenerife avers:

In conformity with the stipulation, a draft of a proposed Order was sent to attorney for WMCM, Jairo Mellado, to approve the language, including a citation of the Open Court Stipulation to take the realty to public sale as a provisional remedy, to mitigate damages, Mr./Mrs Almeida and Mr. Juan Almeida reserving any and all rights and remedies under the redemption notified and filed in court. Dkt 45-3, page 89 of 92 ¶ 60; Dkt 45-3, pages 53 to 55; and Dkt 45-3, pages 66 to 70.

CDSMF ¶ 59 (emphasis omitted).  WM denies this assertion.  DRCDSMF ¶ 59.  WM states that the statement "is supported by an unsigned, unauthenticated document" and is inadmissible.  *Id.* Furthermore, WM argues "the hearing took place before the alleged draft of the stipulation was sent" and thus, does not support Tenerife's assertion.  *Id.*
The Court rejects WM's denial on two bases.  First, as explained in footnote 22, the fact that the document has not been presently unauthenticated does not render it inadmissible.  Second, its argument that the draft of the proposed order does not support Tenerife's assertion because the hearing took place before it was sent to WM is misplaced because that response tracks Tenerife's assertion.  However, the Court refines Tenerife's assertion in light of the record.  *See Min. of May 26, 2016 Hr'g.*

However, the foreclosure could not proceed due to a disagreement among the parties regarding the GMAC Note and the implications of the GMAC Note under the terms of the Agreement.  CDSMF ¶ 60; DRCDSMF ¶ 60.[39]  Specifically, according to WM, the Agreement required Tenerife to consign the GMAC Note with the state court

---

[39]   Tenerife asserts:

> WM Capital, through its attorney Jairo Mellado refused to approve any language of a proposed order for public sale unless Tenerife, the holder of the first rank senior mortgage note, waived, and, for free, canceled the millionaire first mortgage note it holds over the realty to be taken to public sale on the junior mortgage notes.  *Id.* (specific reference is made to the GMAC mortgage note (which is the property of Tenerife) in the demand by WMCM, Dkt 45-3 page 69 of 92 ¶ 4); and State Court Judgment of January 17, 2018, Appendix to Tenerife's Motion for Summary Judgment to which this Statement of Uncontested Facts is appended, pages 9 to 25.  In other words, WMCM, expressly and unequivocally, refused to comply with the July 28, 2014 assignment agreement, and with the Stipulation entered in Open Court on May 26, 2016 unless and until Tenerife gives in to WMCM's demands that Tenerife surrenders and relinquishes millions of dollars in value. Such conduct may constitute a felony. *See* 33 LPRA § 5261. And, WMCM has acted upon its threats, it has in fact obstructed and prevented the public sale of the EER-IPR Realty, unless Tenerife relinquishes millions of dollars in value; its first ranks lien. *See* Judgment of January 17, 2018, appendix to this Motion pages 9 to 25.

CDSMF ¶ 60 (emphasis omitted).  WM admits in part and denies in part Tenerife's assertion.  DRCDSMF ¶ 60.  It denies the latter portion of Tenerife's assertion as being argumentative and conclusory.  *Id.*  The Court agrees and adds that the latter part of the assertion is not supported by the record citation and omits it.  WM admits that the May 26, 2016 state court hearing took place and that the foreclosure did not occur because there was a disagreement between the parties.  DRCDSMF ¶ 60.  WM asserts this was because it took the view, contrary to Tenerife's position, that the Agreement required that the GMAC note "be deposited and canceled upon sale . . . [because] no reasonable person would buy a property with a $2 plus million first mortgage still encumbering it." *Id.*  There is genuine dispute about why the foreclosure did not occur, and the Court adopts WM's position for the purposes of summary judgment. *See supra* note 5.  However, the Court alters the assertion to omit legal conclusions.

With its filings, the Almeida Plaintiffs submitted a draft motion dated June 2016.  *Mot. Submitting English Translation on Exs.*, Attach 1, *Joint Mot. Soliciting Execution of Mortgage and Sale of Goods*, at 11-13 (ECF No. 52-1).  The draft motion states "WM Capital and Almeida agree that after the property is sold at public auction the 3 promissory notes subject to this lawsuit and the other promissory note on the property described in paragraph 5 called the promissory note of GMAC and the sentence be canceled." *Id.* at 12, ¶ 6.  The Court is uncertain what impact, if any, this motion should have on Tenerife's dispositive motion.  First, Tenerife is not mentioned in the draft motion.  Next, the motion is not signed and is in draft form.  As a result, the Court does not assign the draft motion much weight.  Yet, if it represents the positions of WM and the Almeidas in June 2016, given the language of the joint motion, the Court wonders about the fervor with which the Almeida Plaintiffs and Tenerife have taken issue with WM's position regarding the GMAC note.

in Francisco Almeida-León's state court case, which Tenerife did not do, and to cancel it upon the sale of the realty, which Tenerife was not willing to do.  DRCDSMF ¶ 60.[40] On July 1, 2016, Tenerife sent WM a letter dated July 1, 2016 claiming WM was in default and the Agreement to be resolved based on various allegations.  CDSMF ¶¶ 37, 61; DRCDSMF ¶¶ 37, 61.[41]

On August 17, 2017, WM filed a motion to intervene as a co-plaintiff in Tenerife's state court case because it wanted to participate in the foreclosure of the GMAC Note that was object of the GMAC judgment pursuant to the Agreement. CDSMF ¶¶ 62-66, 68, 70-72; DRCDSMF ¶¶ 62-66, 68, 70-72; DASMF ¶ 13.[42]  Tenerife

---

[40]    Conversely, as Tenerife averred to WM in a letter of July 1, 2016, through counsel, claiming that WM was in default and that it was resolving the agreement:

Tenerife Real Estate Holdings, LLC signed said agreement for the limited purpose of reflecting its consent to the assignment made by Mr. Juan Almeida León 'for payment' and to cooperate in the agreed sale of the real estate under a public sale process by execution of the three mortgage notes identified in footnote one of the July 28, 2014 agreement. In the negotiations Tenerife specifically made a stand stating that it retained all its property and would not assign anything to the FDIC-R. The refusal to assign by Tenerife included retaining all title and interest to the [GMAC] mortgage note. However, counsel for the FDIC, without Tenerife's consent included language in the document rejected by Tenerife, which now counsel for WM Capital uses to argue contrary to what was negotiated and agreed.

CDSMF ¶ 61 (citing *Pls.' Statement of Material Uncontested Facts*, Attach. 3, *Index to App. of Opp'n to Mot. for Partial Summ. J., Docket 40*, at 48-49 (ECF No. 45-3)).

[41]    WM admits in part and denies in part Tenerife's statement of material fact sixty-one. DRCDSMF ¶ 61. WM admits that Tenerife sent it a letter dated July 1, 2016 but denies the rest of the assertion as conclusory, legal argument, or not factual.  *Id.*  The Court alters the remainder of Tenerife's assertion to omit legal conclusions and arguments.

[42]    Tenerife's statement of material fact sixty-two reads:

On August 2017, WMCM requested intervention/accumulation as party plaintiff in case styled *Tenerife v. Emerito Estrada Rivera-Izusu PR*, civil case no. KCD2009-0708. The matter was duly considered and litigated in State Court, and on January 17, 2018 a final Judgment was entered denying WMCM´s request for intervention/accumulation. State Court Judgment of July 17, 2018, Appendix to Tenerife's Motion for Summary Judgment to which this Statement of Uncontested Facts is appended, in Spanish at pages 11-16, and duly translated into English at pages 19-25. See also *Doral Mortg. Corp v. Alicea*, 147 DPR 862, 870 (1999).

opposed, and the state court denied WM's request to intervene, holding that the

request for intervention was untimely under the Puerto Rico Rules of Civil Procedure,

as there was a final and binding judgment in that case dating back more than five

years.  CDSMF ¶¶ 62-64; DRCDSMF ¶¶ 62-64[43];  DASMF ¶ 15;  *Tenerife's Statement*

*of Fact*, Attach. 2, *Resolution*, at 19-25 (ECF No. 108-2) (*State Court Order*).  WM

---

CDSMF ¶ 62 (emphasis omitted).  WM admits that it "requested to be joined as a party in the state court case of *Tenerife Real Estate Holdings LLC v. Francisco Almeida Leon K CD2009-0708* . . . [and] that Tenerife opposed WM Capital's request and the Court denied the request for joinder."  DRCDSMF ¶ 62 (italics in original).  It denies Tenerife's characterization of the state court order denying their motion to intervene.  *Id.*

 The Court alters the assertion to reflect the state court's holding but omits Tenerife's characterizations not supported by the record and because it would require the Court to take judicial notice of another court's findings of fact.  *See supra* note 32.

 Tenerife's statement of material fact sixty-three states:

> In August 2017, in the case styled *Tenerife v. EER-IPR*, civil case no. KCD2009-0708, WMCM filed a request for Intervention/accumulation of WMCM as co-plaintiff, and invoked its rights under the July 28, 2014 Assignment of 50% for Payment, and submitted an appendix in support thereof.  Tenerife opposed the intervention/accumulation and also submitted an appendix which included the transcript of the Oral deposition to WMCM taken on May 11, 2017 (part of docket 79-1 in this case, and all attachments thereto).  WMCM replied with yet additional documents, evidence and arguments.  The Superior Court of Puerto Rico issued a Resolution dated January 17, 2018, which has the effect of a final adjudication on the merits, i.e., a final judgment, where intervention/accumulation of WMCM is denied.  Said Judgment holds and decrees that default and contract resolution were correctly declared in fact and law.  See State Court Judgment of July 17, 2018, Appendix to Tenerife's Motion for Summary Judgment to which this Statement of Uncontested Facts is appended, pages 11-16 in Spanish, and pages 19-25, English translation, which has the binding effect of res judicata, and must be given Full Faith and Credit.  *Doral Mortgage Corp v. Alicea*, 147 DPR 862, 870 (1999).

CDSMF ¶ 63 (emphasis omitted).  WM admits in part and denies in part this assertion for the same reasons it stated in its response to Tenerife's statement of material fact sixty-two.  DRCDSMF ¶ 63.  The Court omits the last assertion as argumentative and conclusory.  *See supra* note 8.  The Court adopts its previous reasoning in and alters the assertion accordingly.

 Tenerife's statement of fact sixty-four outlines the state court's various findings of fact which the Court may not consider.  Furthermore, Tenerife's statement of fact sixty-four is neither short nor concise contrary to the District of Puerto Rico's local rules.  *See supra* notes 18, 32.

 Tenerife's statements of sixty-five to sixty-six, sixty-eight, seventy through seventy-two are argumentative and conclusory and the Court omits them.  *See supra* note 8.

[43] The Court includes the state court's holding but omits its factual findings which WM disputes.  The Court alters the parties' respective assertions.

appealed the state court's ruling before the Puerto Rico Court of Appeals, which upheld the denial.  DASMF ¶ 14; *Informative Mot. on J. by State Ct. of Appeals* (ECF No. 178); *WM Capital's Resp. to the Informative Mot. Filed by the Almeida Pls. at ECF No. 178* (ECF No. 180); *Informative Mot. on Resolution by State Ct. of Appeals* (ECF No. 205); *WM Capital's Opp'n to Suppl. Mot. and in Compliance with Mins. of November 1, 2018* (ECF No. 212);  *Informative Mot. Joining Docket Entry 201* (ECF No. 214); *Mot. Submitting English Translation of the Exhibit at ECF No. 212* (ECF No. 216); *Resp. to WMC's Opp'n to Suppl. Mot. on Resolution by State Ct. of Appeals* (ECF No. 217).

## IV.   THE POSITIONS OF THE PARTIES

### A.   Tenerife's Memorandum

Tenerife's main argument is that WM's counterclaim for specific performance of the Agreement is precluded by the doctrine of res judicata.  *Tenerife's Mot.* at 1, 14-15, 18-25.  Specifically, Tenerife claims:

> The Superior Court of Puerto Rico entered final judgment against [WM] declaring that [WM] breached the July 28, 2014 agreement, and that Tenerife correctly declared [WM] in default and resolved the contract under the laws of Puerto Rico. See Tenerife's Statement of Material Facts ¶¶29, 63, 64 and sources quoted therein. The breach of contract for which Tenerife declared default is the persistent demands by [WM] that Tenerife waive and relinquish the first mortgage lien [the GMAC Note] and Judgment [in Tenefire's state court case] against Emérito Estrada Rivera-Isuzu de PR (EER-IPR), as a condition for moving forward and cooperating with the agreed and contracted public sale of the EER-IPR Realty. *Id.*, and ¶ 26. The judgment entered is final; therefore, the principles of Res Judicata, Collateral Estoppel by Judgment, Law of the Case and Full Faith and Credit require that Tenerife be granted dismissal of any and all claims presented against it, and/or purportedly on its behalf, regardless of their denomination. Presumption of res judicata may only be rebutted by a reversal

judgment on appeal. 31 LPRA 3343. "[A] final judgment on the merits precludes parties from re-litigating claims that were or could have been brought in a prior action." *Universal Ins. Co. v. Office of Ins. Com'r*, 755 F.3d 34, 37–38 (1st Cir. 2014) ("A federal court must give preclusive effect to a state-court judgment if the state court would.").

*Id.* at 14-15 (emphasis omitted).  Tenerife argues that the state court order—to which Tenerife refers as a "final judgment"—warrants full faith and credit before this Court pursuant to 28 U.S.C. § 3343.  *Id.* at 18.  Tenerife outlines the state court order and asserts "under State Law those determinations are presumed correct and are binding; the presumption may only be rebutted by a reversal on appeal." *Id.* at 20-21 (citations omitted).  Tenerife lists a string of cases, which it says illustrate that "[u]nder the laws of Puerto Rico, denial on the merits of a request for intervention constitutes an adjudication on the merits, constitutes a judgment, may be appealed and has the binding effect of Res Judicata" *Id.* at 23 (emphasis and citations omitted).

Tenerife contends evidence that arose during discovery constitutes admission of a party opponent and precludes WM's claim for specific performance of the Agreement against Tenerife as it demonstrates that the FDIC-R, and later WM, intentionally and wrongfully obstructed the sale of the Kennedy Property.  *Id.* at 12-14.  According to Tenerife, comment logs from FDIC-R file records establish that the FDIC-R and WM intentionally withheld notification of Phase I of the EAS of the Kennedy Property from July 2014 to July 2017 and chose not to pursue the completion of Phase II of that report.  *Id.* at 13-14.  Tenerife highlights the deposition of WM representative Jim Barr Coleman, in which he "admitted having demanded that Tenerife waive and relinquish its title, value and judgment" in its state court

case "as a condition to cease obstructing the foreclosure sale" of the Kennedy property. *Id*. at 20.   Accordingly, Tenerife claims WM's non-compliance with its obligations under the Agreement led Tenerife to declare WM in default and rescind the Agreement.  *Id*. at 14-15, 19-20.

Lastly, Tenerife argues that the Court's order and judgment dismissing the Almeida Plaintiffs' litigious credit and co-owner redemption claims is inapplicable to the instant case because Tenerife was not yet a party on the date the Court issued its ruling.  *See Order on Litigious Credit and Co-Owner Redemption Claims*; *Tenerife's Mot*. at 2, 9-10.  Tenerife asserts that it opportunely exercised its right of redemption as co-owner, or alternatively, had community property rights as a participant in a trust under Puerto Rico law.  *Tenerife's Mot*. at 2-9.

### B.   WM's Opposition Memorandum

WM contends that the doctrine of res judicata does not apply to its claim against Tenerife in relation to the state court order denying WM's motion for joinder as a party plaintiff in Tenerife's state court case.  *WM's Opp'n* at 2, 6-9.  Specifically, WM avers that

> The ruling from which Tenerife is attempting to attach *res judicata* was a denial of WM Capital's request for joinder. In that denial, the judge improperly ruled that the contract at issue was cancelled based upon a letter of cancellation sent by Tenerife. WM Capital never had an opportunity to litigate that issue since it was not before the court. Regardless, an order denying joinder is not a ruling upon which principals of res judicata apply.

*Id*. at 2 (internal citations omitted).  WM asserts that the other requirements under res judicata—perfect identity of thing or cause and perfect identity of parties—is

missing between Tenerife's state court case and the instant case.  *Id.* at 7 (citing *Universal Ins., Co. v. Officer of Ins. Comm'r*, 755 F.3d 35, 38 (1st Cir. 2014)).

Furthermore, WM avers that the Court's order dismissing the co-owner's redemption claim is fully applicable to Tenerife, because the latter had already been joined as a party when the Court issued its final adjudication denying the Almeida Plaintiffs' motion to alter and amend the Court's dismissal of that cause of action. *Id.* at 9-12.  As a result, WM asserts that the Court's dismissal of the co-owner's redemption claim is the law of the case and is applicable to all parties, including Tenerife.  *Id.* at 12-13.  WM contends that in any event, Tenerife failed to timely enforce a co-owner's redemption claim within the nine-day term  under Article 1414 of the Puerto Rico Civil Code, Puerto Rico Laws Annotated, title 31 section 3924.[44] *Id.* at 14.

As to the evidence proffered by Tenerife to prove the FDIC-R's and WM's wrongful acts and omissions, WM contends the Almeida Plaintiffs had previously brought the same evidence before the Court in a supplemental motion to their opposition to WM's motion for partial summary judgment regarding the breach of contract claim.  *Id.* at 15-16.  WM says the Court dismissed the breach of contract claim and denied the supplemental motion as moot, ruling that "the completion *vel non"* of the environmental  study was irrelevant as to the breach of contract claim in light of the case's facts.  *Id.* at 16 (citing *Order on Pls.' Breach of Contract Claim*

---

[44]      "The right to a co-owners redemption has to be enforced within nine (9) days from the date of the inscription of the property in the Registry or in its defect, 9 days from the date the party requesting the redemption right has knowledge of the sale of the property."  *WM's Opp'n* at 14 (quoting P.R. Laws Ann. tit. 31, § 3924).

at 5 n.5).  Likewise, WM asserts the Court summarily rejected Tenerife's alternative argument about its community property rights in a trust.  *Id.* at 16-17; *see Order on Litigious Credit and Co-Owner Redemption Claims* at 12 n.9.

## V.    LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is "material" if it "has the potential to change the outcome of the suit."  *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010)).  A dispute is "genuine" if "a reasonable jury could resolve the point in favor of the nonmoving party."  *Id.* (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

Once the moving party has supplied this evidence, the non-movant must "produce 'specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'"  *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (quoting *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994)).  In other words, the non-moving party must "present 'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims."  *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993)).  The Court then "views the facts and draws all reasonable inferences in favor of the nonmoving party."

*Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011).  However, the Court "afford[s] no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.'"  *Tropigas*, 637 F.3d at 56 (quoting *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001)); *accord Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 325 (1st Cir. 2009).

### B.      Specific Performance

"Obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations."  P.R. Laws Ann., tit. 31 § 2994.  Courts may not "not relieve a party of its obligations to do whatever the party agreed to do by contract."  *Roosevelt Cayman Asset Co. II v. Colon*, No. CV 16-1265 (CVR), 2017 WL 90349, at *3 (D.P.R. Jan. 9, 2017) (listing cases).  Courts "cannot relieve one party of fulfilling what it obliged itself in a contract, when this contract is legal and valid, and does not contain any vice."  *Id.* at *4 (citations omitted).  When one party breaches a contractual obligation, the other party may choose to pursue specific performance of the contract or seek damages from the breaching party.  *See* P.R. LAWS ANN., tit. 31, § 3052; *Colon*, 2017 WL 90349, at * 4.

WM's counterclaim is for specific performance.  *See WM's Counterclaim* at ¶ 16 (citing § 3052).  For section 3052 to be applicable, "the unfulfilled obligation must be the principal one," such that it "exhibits both mutuality and essentiality—what one might term mutual essentiality."  *Dopp v. Pritzker*, 38 F.3d 1239, 1243-44 (1st Cir. 1994) (citing *Ramirez v. Club Cala de Palmas*, 123 D.P.R. 339 (1989); *Ponce v. Vidal*,

65 P.R.R. 346, 351 (1945)) (internal quotation marks omitted).  In other words, "there are obligations and correlative obligations so interdependent between themselves that one is the consequence of the other, and the performance of said obligation by a contracting party constitutes the motive of the contract for the other party, and vice versa." *Castillo-Perez v. Bosques-Cordero*, No. CV 10-1584 (JAF/BJM), 2011 WL 13233491, at *9 (D.P.R. July 15, 2011) (internal quotation marks omitted), *report and recommendation adopted*, No. CV 10-1584 (JAF), 2011 WL 13233446 (D.P.R. Aug. 30, 2011) (quoting *Pritzker*, 38 F.3d at 1243; *Dopp v. HTP Corp.*, 947 F.2d 506, 511 (1st Cir. 1991)).  If satisfied, a claimant can select either specific performance or rescission, and in both instances ask for accessory damages, but "[w]here the unfulfilled obligation is not reciprocal, the plaintiff is entitled to recover full damages, but is not entitled to resolution."  *Id.* (citations omitted).

## VI.   DISCUSSION

### A.    Res Judicata, Collateral Estoppel, and Full Faith and Credit

Tenerife argues that WM's counterclaim for specific performance pursuant to the Agreement fails under the doctrines of res judicata, collateral estoppel, and full faith and credit in light of a "final judgment" in Tenerife's state court case.  *Tenerife's Mot.* at 1.  The Court concludes that neither res judicata nor collateral estoppel is applicable to the state court's order denying WM's motion to intervene in Tenerife's state case, and as a result, the Court does not owe "full faith and credit" to that decision.

### 1.    Res Judicata

Puerto Rico's law of res judicata is codified under Puerto Rico Laws Annotated title 31, § 3343.  *See García-Monagas v. De Arellano*, 674 F.3d 45, 50 (1st Cir. 2012) (quoting *R.G. Fin. Corp. v. Vergara–Nuñez*, 446 F.3d 178, 183 (1st Cir. 2006) (noting that § 3343 has been interpreted as encompassing res judicata and collateral estoppel "albeit with slightly different requirements for each")).  In *Universal Insurance Company*, the Court of Appeals for the First Circuit stated:

> According to the doctrine of res judicata, a final judgment on the merits precludes parties from relitigating claims that were or could have been brought in a prior action.  A federal court must give preclusive effect to a state-court judgment if the state court would. . . . .  A party asserting res judicata under Puerto Rico law must establish (i) the existence of a prior judgment on the merits that is final and unappealable; (ii) a perfect identity of thing or cause between both actions; and (iii) a perfect identity of the parties and the capacities in which they acted.  A prior and current action will share a perfect identity of thing if they involve the same object or matter and will share a perfect identity of cause if they flow from the same principal ground or origin or, put another way, if they derive from a common nucleus of operative facts.  Perfect identity of parties exists when the parties in current action were also parties in the prior action.

755 F.3d at 37-38 (citations and internal quotation marks omitted); *see also García-Monagas*, 674 F.3d at 51 (stating perfect identity of "thing" means "if they involve the same 'object or matter,'" perfect identity of "cause" means "if 'they flow from the same principal ground or origin[,]'" perfect identity of the parties exists if the parties in the prior action are the same in the present action or the present parties are in privity with the prior action parties) (citing § 3343; *Lausell Marxuach v. Diaz de Yanez*, 3 P.R. Offic. Trans. 742, 745-46 (1975))).

Tenerife characterizes the state court order as the "final judgment against [WM] declaring that [WM] breached the [A]greement object of the instant case."

*Tenerife's Mot.* at 14. The Court disagrees. The case's record demonstrates that the state court order is not a final judgment on the merits but an order denying WM's request to intervene as party plaintiff in Tenerife's state court case. *See State Court Order* at 23-25 (discussing the various means a party may utilize to intervene as party in case and concluding that none are applicable to WM's motion). The state court's holding was a procedural order, not a substantive adjudication on the merits, based on the state court's conclusion that the judgment in that case had been final and unappealable for more than five years, making WM's request to intervene untimely.

As the Court sees it, the sole issue before the state court was WM's request for joinder as party plaintiff under the Puerto Rico Civil Procedure Rule 21. As such, the state court's discussion of Tenerife declaring WM in default and rescinding the Agreement due to WM's breach is dicta. *State Court Order* at 22-23. The doctrine of res judicata does not apply to dicta, and the state court's expressions beyond the denial of the requested joinder by WM do not have a binding legal effect upon the Court. *See SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod.*, LLC, 137 S. Ct. 954, 965 (2017) (quoting *Jama v. Immig. and Cust. Enf't,* 543 U.S. 335, 352 (2005) ("dicta 'settles nothing'")); *see also Grenier v. Town of Shrewsbury*, 52 F. Supp. 3d 149, 162-63 (D. Mass. 2014) (concluding res judicata was not applicable because part of its proffered application depended on dicta).

In its motion and at oral argument, Tenerife referred to a number of cases, which it says establish that a denial of a party's motion to intervene has a preclusive

effect under res judicata.  *Tenerife's Mot.* at 23 & n.14.[45]  However, most of these cases

have not been officially translated or been presented to the Court by certified

translation.  Pursuant to Local Rule 5(g), "[a]ll documents not in the English language

which are presented or filed, whether as evidence or otherwise, must be accompanied

by a certified translation into English . . .."  D.P.R. LOC. R. 5(g); *see also Izquierdo*,

929 F. Supp. 2d at 9 n.13 (quoting *Dalmau*, 544 F.3d at 67) ("Where a party makes a

motion based on a decision that was written in a foreign language, the party must

provide the district court with and put into the record an English translation of the

decision[]")).  Thus, the Court will not consider those cases.  The Almeida Plaintiffs

submitted one official translation for *Doral Mortgage v. Alicea*, 147 D.P.R. 862 (1999)

which Tenerife cites in support of its position.  *Mot. Submitting Translation of*

*Jurisprudence Relevant to Translations Submitted by Def. WM Capital*, Attach. 1

(ECF No. 252-1); *Order* (ECF No. 255).

---

[45]    Tenerife cites:

> *Doral Mortgage Corp. v. Alicea* 147 D.P.R. 862, 870 (1999); *De Jesús v. Corp. Azucarera de P.R.*, 145 D.P.R. 899 (1998), *A.F.F. v. Tribunal Superior*, 93 D.P.R. 903 (1967*); Bco. Santander P.R. v. Fajardo Farms Corp.*, 141 D.P.R. 237 (1996); *Arroyo v. Quiñones*, 77 D.P.R. 513 (1954); *Rodríguez v. Tribunal Mpal. y Ramos*, 74 D.P.R. 656, 664 (1953), *Morales Maldonado v. Diversified and Special Serv. Court of Appeal*, November 30, 2004, 2004 WL 3254346*; Parrilla v. Rodriguez*[,]163 D.P.R. 263 (2004); *Bautista Cayman Asset Co. v. Los Faros Development Corp.*[,] Court of Appeal, January 31, 2017, 2017 WL 1132509.

*Tenerife Mot.* at 23 n.14.

        Tenerife also cited cases outside Puerto Rico and the First Circuit that it states support its res judicata argument.  *Tenerife's Mot.* at 24.  None of these cases except one, *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597, 598 (1948), is controlling.  *Sunnen* does not change the Court's conclusion.  The *Sunnen* Court considered the preclusive effect of a Board of Tax Appeals' prior decision.  *Id.* at 597.  The Supreme Court outlined the scope and purpose of collateral estoppel and considered the applicability of the doctrine to income tax liability.  *Id.* at 597-99.  The Court ultimately concluded that collateral estoppel did not apply to "the earlier action before the Board of Tax Appeals."  *Id.* at 602.

In *Doral Mortgage Corporation v. Alicea*, the Puerto Rico Supreme Court examined whether, once a lower court grants a motion to intervene, that order constituted the "law of the case" and "could not be altered by a subsequent determination of the court."  147 D.P.R. at 868.  *Alicea* concerned the appealability of, and the appropriate level of review for, a denial on a motion to intervene, which the Puerto Rico Supreme Court concluded constituted a judgment.  *Id.* at 870-71 & n.6.; *see also id.* at 871 (citing *Levin v. Ruby Trading Corp.*, 333 F.2d 592, 594 (2d Cir. 1964) (discussing the appealability of denying intervention as a matter of right as opposed to permissive intervention)).  While a denial of a party's motion to intervene may constitute a final judgment from which a party may appeal, it does not establish that same denial is a ruling on the merits of a case as required for the application of res judicata.  Nor does this caselaw alter the conclusion that the state court's holding denying intervention in this case does not constitute a ruling on the merits.

Even assuming the state court order were a final judgment on the merits, res judicata is not applicable because there is no perfect identity as to either the object or cause of the cases and no perfect identity of the parties.  *Universal Ins, Co.*, 755 F.3d at 38.  Tenerife's state court case is a case about the collection of money and execution of mortgage note against EER-IPR.  WM has never been a party in Tenerife's state court case.[46]  The current case is a claim by the Almeida Plaintiffs for breach of contract, litigious credit, and co-owner redemption against WM, as well as

---

[46]    As stated by WM, "it is beyond cynical for Tenerife on the one hand to successfully litigate against [WM] being a party to the state court case, and on the other hand to argue that res judicata applies from that same case."  *WM's Opp'n* at 8.

a counterclaim by the latter against the former and Tenerife for specific performance of the Agreement. WM joined Tenerife as Co-Plaintiff/Counter-Defendant pursuant to Federal Rule of Civil Procedure 20, and EER-IPR has never been a party to the instant case. Moreover, while the Agreement is the sole object of the instant case, it is not an object of Tenerife's state court case against EER-IPR.

The Court concludes that res judicata is not applicable to WM's counterclaim.

### 2. Collateral Estoppel

"Under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *U.S. v. Mendoza*, 464 U.S. 154, 158 (1984); *see A&P General Contractors, Inc. v. Asoc. Caná, Inc.*, 10 P.R. Offic. Trans. 984, 996 (1985). Collateral estoppel "forecloses relitigation in a subsequent action of a fact essential for rendering a judgment in a prior action between the same parties, even when different causes of action are involved." *Grajales v. Puerto Rico Ports Auth.*, No. CV 09-2075 (PAD), 2018 WL 1726247, at *6 (D.P.R. Mar. 30, 2018) (citations omitted). Parties "must have actually litigated the facts in question, and those facts must have been essential to a valid and final judgment in a prior action." *Morón-Barradas v. Dep't of Educ. of Com. of Puerto Rico,* 488 F.3d 472, 479 (1st Cir. 2007); *see also Texaco P.R., Inc. v. Medina*, 834 F.2d 242, 245-46 (1st Cir. 1987) (collateral estoppel "forecloses relitigation in a subsequent action of a fact essential for rendering a judgment in a prior action between the same parties, even when different causes of action are involved").

While Tenerife raises collateral estoppel as an alternative argument to res judicata, it does not develop an argument in favor of its applicability. *Tenerife's Mot.* at 1, 14, 15, 18, 22, 24. Tenerife only discusses collateral estoppel in the context of its more specific arguments about res judicata, never sets out the elements for collateral estoppel, and never attempts to apply requirements of collateral estoppel to the facts in this case. *Id.* at 1-25. The Court need not consider skeletal and undeveloped arguments. *See United States v. Freitas*, 904 F.3d 11, 21 (1st Cir. 2018) (citing *Rodríguez v. Mun'y of San Juan*, 659 F.3d 168, 175-76 (1st Cir. 2011); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (alterations in ordering)).

Even so, collateral estoppel is inapplicable for the same reasons. The two cases involve different parties and different issues. One case concerns whether WM should be a party to Tenerife's foreclosure action against a defaulted third party, whereas the current action is a breach of contract, litigious credit, and co-owner redemption action between WM and Tenerife with a counterclaim for specific performance pursuant to the parties' Agreement. The Court concludes collateral estoppel is not applicable to WM's counterclaim.

### 3. Full Faith and Credit

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." U.S. CONST. art. IV, § 1. The full faith and credit clause is applicable in federal court regarding judgments issued by commonwealth of Puerto Rico courts. *See* 28 U.S.C. § 1738; *García-Monagas*, 674 F.3d at 50; *Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 61 (1st Cir. 2000);

*Torres  v. Gardner*, 270 Fed. Supp. 1, 4 (D.P.R. 1967).  Nevertheless, the Court does not grant full faith and credit to the state court's order denying WM's intervention as to WM's counterclaim against Tenerife and the Almeida Plaintiffs because the order does not have a preclusive effect under Puerto Rico law.

## VII.    CONCLUSION

The Court DENIES the Tenerife's Motion for Summary Judgment (ECF No. 108).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 8th day of May, 2019.