# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

FRANCISCO ALMEIDA-LEÓN,    )
et al.,                        )
                             )
         Plaintiffs,        )
                             )
        v.                )     Civil No. 3:16-cv-01394-JAW-BJM
                             )
WM CAPITAL MANAGEMENT,    )
INC.                        )
                             )
        Defendant.       )

## ORDER ON DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs/counter-defendants brought suit against the defendant/counter-plaintiff asserting breach of contract as well as litigious credit and co-owner redemption claims arising out of an agreement whereby the parties resolved how to satisfy defendant's federal judgment against one of the co-plaintiffs. A contentious and lengthy litigation ensued. The sole remaining claim is the defendant/counter-plaintiff's counterclaim against the plaintiffs/counter-defendants seeking specific performance pursuant to the agreement. Concluding there are no genuine issues of material fact, the Court grants the defendant's motion for summary judgment pursuant to the unambiguous terms of the agreement and Puerto Rico contract law.

## I.    PROCEDURAL HISTORY[1]

This case originated on March 7, 2016, when WM Capital Management, Inc. (WM) removed a lawsuit filed by Francisco Almeida-León, Wanda Cruz-Quiles, their Conjugal Partnership, and Juan Almeida-León (the Almeida Plaintiffs) against WM claiming (1) breach of contract; (2) litigious credit, and (3) co-owner redemption under Puerto Rico law.  *Notice of Removal*, Attach. 5, *Compl.* (ECF No. 1-5); *Second Am. Compl.* (ECF No. 21) (*Am. Compl.*).  On June 7, 2016, WM answered the Almeida Plaintiffs' Amended Complaint and asserted a counterclaim for specific performance. *WM Capital's Answer to Second Am. Compl. and Countercl.* (ECF No. 25) (*WM's Counterclaim*).

On August 4, 2016, WM filed a motion to join Tenerife Real Estate Holdings, LLC (Tenerife) as an indispensable party under Federal Rule of Civil Procedure 19. *Mot. to Join Indispensable Party* (ECF No. 35).  In support, WM asserted that Tenerife (among others) executed the agreement that is the object of this litigation, and that Francisco and Juan Almeida-León are co-owners of Tenerife.  *Id.* at 1-2.  On August 30, 2016, Tenerife opposed the motion to join it as a party.  *Opp'n Mot. to Join Party (DKT. #35)* (ECF No. 36).  On March 3, 2017, the Court ruled that WM's request for

---

[1]    The Court has written extensively about this case's complex procedural history in its previous dispositive orders dismissing the Almeida Plaintiffs' litigious credit, co-owner redemption, and breach of contract claims and denying their respective motions to alter and amend as well as denying Tenerife's motion for summary judgment.  *See Op. & Order* (ECF No. 56) (*Order on Litigious Credit and Co-Owner Redemption Claims*); *Partial J.* (ECF No. 57) (*J. on Litigious Credit and Co-Owner Redemption Claims*); *Op. and Order* (ECF No. 105) (*Pls.' Breach of Contract Order*); *Order Den. Co-Pls./Counter-Defs.' Mot. to Alter and Am.* (ECF No. 262); *Order on Co-Pl./Counter-Def.'s Mot. for Summ. J.* (ECF No. 263) (*Order on Tenerife's Mot. for Summ. J.*).  The Court refers to the procedural history in those orders to provide this lawsuit's complete procedural posture.

joinder did not meet the criteria for an indispensable party under Rule 19. *Op. & Order* (ECF No. 61). The Court, however, stated that "WM Capital's claim for breach of contract against Tenerife is identical to the one levied against the Almeida Plaintiffs, such that it arises from the same 'transaction' or 'occurrence,' and will require the adjudication of common issues of fact and law." *Id.* at 8. On April 3, 2017, WM requested Tenerife's joinder as a co-plaintiff and counter-defendant under Federal Rule of Civil Procedure 20, which the Court granted on April 18, 2017. *Mot. to Join Tenerife Real Estate Holdings, LLC Pursuant to Rule 20 of the Federal Rules of Civil Procedure* (ECF No. 68); *Order* (ECF No. 72) (*Order Joining Tenerife*). On December 5, 2017, Tenerife answered WM's counterclaim. *Ans. to Countercl.* (ECF No. 96) (*Tenerife's Answer*).

On May 1, 2018, WM filed a motion for summary judgment on its counterclaim for specific performance together with a statement of material facts. *WM Capital's Mot. for Partial Summ. J.* (ECF No. 119) (*Def.'s Mot.*); *Statement of Uncontested Material Facts in Support of WM Capital's Mot. for Summ. J.* (ECF No. 119-1) (DSMF). On May 21, 2018, the Almeida Plaintiffs responded in opposition to WM's motion and filed an opposing statement of material facts and a statement of additional material facts. *Opp'n to WM Capital's Rule 56 Mot. (DKT. #119); Lack of Jurisdiction, Lack of Standing and Fictitious Controversy; Colorado River Abstention* (ECF No. 123) (*Pls.' Opp'n*); *Plaintiffs['] Statement of Material Uncontested Facts in Opp'n to Docket 119*, Attach. 1 (ECF No. 123-1) (PASMF)*; Resp. to Def.'s, WMC, Purported Uncontested Facts*, Attach. 2 (ECF No. 123-2) (PRDSMF); *Pls.' Opp'n,*

Attach. 1, *App.* (ECF No. 124-1), *Not. of Filing of Exs. to Opp'n to WM Capital's Rule 16 Mot., Attachs.* (ECF Nos. 125-30) (*Pls.' Appendix*).

On May 22, 2018, Tenerife filed a response in opposition to WM's motion whereby it "join[ed], adhere[d] and subscribe[d]" to the Almeida Plaintiffs' response in opposition to WM's motion for summary judgment. *Opp'n to WM Capital's Mot. for Summ. J.*, at 1 (ECF No. 131) (*Tenerife's Opp'n*).

On June 25, 2018, WM filed its reply and a reply statement of material facts to the Almeida Plaintiffs' additional statement of material facts. *Reply to the Opp'n to the Mot. for Summ. J. Filed by Tenerife and the Almeida Pls. (ECF Nos. 123 and 131)* (ECF No. 142) (*Def.'s Reply*); *Reply Statement of Material Facts* (ECF No. 143) (DRPASMF).

Tenerife filed a sur-reply on July 24, 2018. *Sur-reply Regarding Lack of Subject Matter Jurisdiction Not Addressed by WMCM In D.E. 142* (ECF No. 156) (*Tenerife's Reply*). On February 21, 2019, the Court heard the parties' oral arguments regarding the pending dispositive motions. *Min. Entry* (ECF No. 251).

## II. Local Rule 56, Federal Rule of Civil Procedure 56, Law of the Case, and Judicial Notice

The Court explained in its Order on Tenerife's Motion for Summary Judgment "what it will and will not consider in resolving the pending motion for summary judgment." *Order on Tenerife's Mot. for Summ. J.* at 5-16. The Court reiterates it will only consider those proffered facts that comply with the District of Puerto Rico's local rules as well as the Federal Rules of Civil Procedure.

The Court recounts the facts in the light most favorable to the non-movant's

theory of the case consistent with the record, in accordance with "conventional summary judgment praxis." *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002). However, a large number of the Almeida Plaintiffs' responses to WM's statement of material facts as well as their additional statement of material facts, do not comply with the District of Puerto's local rules and Rule 56 of the Federal Rules of Civil Procedure. For the reasons explained in the Court's Order on Tenerife's Motion for Summary Judgment, the Court will not consider those portions of proffered facts that do not comply with these rules. *Order on Tenerife's Mot. for Summ. J.* at 6-8, 15-16; *see also CMI Capital Mkt. Inv., LLC v. González–Toro*, 520 F.3d 58, 62 (1st Cir. 2008) (stating one of the purposes of the local rules is to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute"). "Like Rule 56 itself, the local rule makes clear that its focus is on *facts*, not speculation or argumentation. Moreover, these facts must be material." *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 57 (1st Cir. 2011) (emphasis in original).

The Court will also not consider those portions of these responses or additional proffered facts aimed at relitigating claims this Court previously dismissed. The Court considers those "prior decisions' analyses and conclusions sound and will not disturb them." *Order on Tenerife's Mot. for Summ. J.* at 10-11. Lastly, to the degree the parties' proffered facts implicate judicial notice of other court proceedings, the Court will consider the holdings of the relevant state court cases cited by the parties, but it will not consider those courts' findings of fact where such findings can be

reasonably disputed. *Id.* at 15. As before, the Court deploys these rules as "a scalpel, not a butcher knife." *Perez v. Volvo Car Corp.*, 247 F.3d 303, 315 (1st Cir. 2001).

## III. STATEMENT OF FACTS[2, 3]

### A. The Parties

Francisco Almeida-León, Wanda Cruz-Quiles and the Conjugal Partnership formed between them, are natural persons and residents of San Juan Puerto Rico and Miami, Florida. PASMF ¶ 1; DRPASMF ¶ 1. All Almeida Plaintiffs are citizens of the commonwealth of Puerto Rico. *Second Am. Compl.* ¶ 3; *WM's Counterclaim* ¶ 3.

Tenerife was incorporated on June 23, 2012. DSMF ¶ 1; PRDSMF ¶ 1.[4] Its

---

[2] The Court incorporates the factual findings in its orders dismissing the Almeida Plaintiffs' litigious credit, co-owner redemption, and breach of contract claims, and denying Tenerife's motion for summary judgment, which are the law of the case.

[3] The Court revises certain proffered facts to clarify full names of parties and the state court cases involved. Additionally, the Court considered other pertinent motions and supporting admissible evidence on the record as necessary. *See* FED. R. CIV. P. 56(c)(3).

[4] The Almeida Plaintiffs deny WM's statement that Tenerife was incorporated on June 23, 2012, because they say it is "another step to distort and disguise the true controversy." PRDSMF ¶ 1. They also argue it is irrelevant and cite various exhibits they say show WM engaged in "a series of frauds perpetrated against plaintiffs, which [include] fraud, deceit, abuses, breach of contract and criminal conduct." *Id.*

The Court rejects the Almeida Plaintiffs' denial. First, the majority of the denial fails to directly respond to WM's proffered fact, and thus fails to properly controvert WM's statement. D.P.R. LOC. R. 56(c); *Reyes-Perez v. State Ins. Fund*, No. CIV. 11-1070 JAF, 2012 WL 4863714, at *2 (D.P.R. Oct. 12, 2012), *aff'd sub nom. Reyes-Perez v. State Ins. Fund Corp.*, 755 F.3d 49 (1st Cir. 2014); *Cintron v. Pavia Hato Rey Hosp.*, No. CV 05-2077(SEC), 2008 WL 11357813, at *1 (D.P.R. July 10, 2008). Second, the date of Tenerife's incorporation is not irrelevant to WM's counterclaim. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be with the evidence . . . and the fact is of consequence in determining the action." FED. R. EVID. 401(a)-(b). The record reflects the facts of this case go back to 2009 and encompass three separate cases in federal and state court. Tenerife holds one of the four mortgage notes at issue and WM asserts this mortgage note was transferred to Tenerife to avoid satisfying the WM's judgment against Juan Almeida-León. *WM's Mot.* at 3. Moreover, Tenerife was a party to the agreement in dispute and was joined to this suit because "WM Capital's claim for breach of contract against Tenerife is identical to the one levied against the Almeida Plaintiffs . . . ." *Op. & Order* (ECF No. 61).

When and how Tenerife came to existence as well as its relation to the Almeida Plaintiffs is relevant to determine whether WM is entitled to specific performance under the Agreement against all the parties.

members are Francisco Almeida-León, Juan Almeida-León, and El Hipopótamo, Inc., all of whom have limited roles in Tenerife's operations. DSMF ¶ 2; PRDSMF ¶ 2.[5] George Perez Borrero is Tenerife's operating manager, and Francisco Almeida-León, Juan Almeida-León and El Hipopótamo, Inc. signed its operating agreement; Tenerife also owns a mortgage note, the GMAC note, which has a first rank over the Kennedy Property as well as the related GMAC state court judgment. PASMF ¶ 21; DRPASMF ¶ 21.[6]

WM is organized under the laws of the state of New York. PASMF ¶ 2; DRPASMF ¶ 2; *WM's Counterclaim* ¶ 2.[7] WM regularly conducts business in and its

---

[5] The Almeida Plaintiffs deny and object to WM's statement of material fact two. PRDSMF ¶ 2. The Court rejects the Almeida Plaintiffs' denial. Although Almeida Plaintiffs deny WM's assertion, they say the identified members "have no function in the entity or its operation" and object to its inclusion based on relevancy. For the reasons just explained, the Court finds the circumstances surrounding Tenerife are relevant to resolving the dispute at issue. The Court notes the Almeida Plaintiffs assertion that Francisco Almeida-León and Juan Almeida-León have limited in roles in Tenerife's operations.

[6] The Almeida Plaintiffs' additional statement of material fact twenty-one asserts:

> The corporation Tenerife Holdings, LLC, was created and the Operating Manager is George Perez Borrero. The Operating Agreement was signed by others. Tenerife owns 100% of the mortgage note and credit (or has a substantial ownership interest therein), which encumbers the Kennedy Realty, which is the object of execution in case K CD2011- 0142, with a rank senior to the mortgages being foreclosed in case KCD2011-0142.

PASMF ¶ 21 (citing Dkt 45-3 Page79/92 ¶18, Dkt 45-3 Pages 71-74/92). WM admits and denies in part this assertion. DRPASMF ¶ 21. WM admits "that Tenerife LLC has purported to be the owner of the mortgage note which purports to have the first rank over the Kennedy Property and the corresponding judgment." *Id.* WM denies the remainder of the statement because it says it is not supported by citations to the record and the affidavit it relies on is inadmissible. *Id.*

The Court disagrees and rejects WM's denial. The record reflects that Francisco Almeida-León is one of the members of Tenerife and therefore, it is reasonable to assume he knows who created Tenerife and what Tenerife owns. Though the statement's first assertion is not supported by a record citation, the Agreement and WM's prior pleading show that George Perez Borrero is Tenerife's operating manager and thus, the Court includes it. *Mot. to Join Indispensable Party*, Attach. 4, at 11 (ECF No. 35-4).

[7] The Almeida Plaintiffs' additional statement of material fact two reads:

portfolio from Puerto Rico, and has officers and personnel, including Mr. Garret and

Jim Barr Coleman, in Puerto Rico.  PASMF ¶¶ 49-51; DRPASMF ¶ 49-51.[8]

---

WM Capital Management, Inc., upon information and belief, as represented by defendant, is a corporation organized and existing under the laws of another jurisdiction, has not been registered to do business in Puerto Rico (see copy of Negative Certificate by the Department of State, Exhibit 1 of the amended complaint) notwithstanding that Puerto Rico is where it has and produces a high volume of its principal business in a consistent manner.

PASMF ¶ 2.  In support of this statement, the Almeida Plaintiffs cite docket number 45, attachment 3, page 74 of 92, ¶ 2.

WM admits in part and denies in part the Almeida Plaintiffs' statement of material fact two. DRPASMF ¶ 2.  It admits that it is organized under the laws of another jurisdiction but denies the rest of the assertion because it is not based on personal knowledge, but on information and belief which is not admissible.  *Id.*  For an affidavit to be admissible "to support . . . a motion [for summary judgment] it must be made on personal knowledge."  *See* FED. R. CIV. P. 56(C)(4); *Perez*, 247 F.3d at 315-16.  The Almeida Plaintiffs' assertion is not based on personal knowledge and the Court alters the assertion accordingly.

[8]     The Almeida Plaintiffs' additional statement of material fact forty-nine states:

In the February 4, 2016 meeting, Mr. Jim Barr Coleman informed that WM Capital Management Inc., consistently makes and has done business in Puerto Rico, including purchasing, processing, collection and execution of about one thousand one hundred loan contracts (1,100). WM Capital Management, Inc., has extensive contacts with Puerto Rico, which validates and makes the exercise of jurisdiction as to their person and assets appropriate; even though it has not registered to do business in Puerto Rico. Dkt 45-3 page 86/92 ¶46.

PASMF ¶ 49 (emphasis omitted).  WM denies this statement on the basis that it lacks a sufficient foundation of personal knowledge and is argumentative.  DRPASMF ¶ 49.

The Almeida Plaintiffs' additional statement of material fact fifty reads:

WM Capital Management, Inc., consistently and systematically does business in Puerto Rico, makes decisions, evaluates, decides, buys, sells and negotiates, making the decisions in Puerto Rico and administers its portfolio from Puerto Rico, maintains frequent presence of its officers and personnel, including Mr. Garret and Mr. Jim Barr Coleman in Puerto Rico. Dkt 45-3 page 86/92 ¶47.

PASMF ¶ 50. (emphasis omitted). WM denies these proffered facts because it says it lacks sufficient specificity.  DRPASMF ¶ 50.  WM also argues that the statement is argumentative and conclusory. *Id.*

The Court rejects WM's denial to both proffered statements. The Almeida Plaintiffs' record citation asserts they were told by WM that it regularly conducts business in Puerto Rico.  PASMF ¶ 50 (citing docket 45-3, page 86 of 92, ¶ 47) ("we were informed by WMC that it consistently and systematically does business in Puerto Rico . . ..") (emphasis omitted)).  In taking all reasonable inferences in the nonmovant's favor, it is a reasonable inference that they were present at the meeting. The record citation proffers sufficient personal knowledge, which, in conjunction with viewing the facts most favorable to the Almeida Plaintiffs as the nonmovant, warrants its inclusion.  The Court alters

## B.    The Background

Previously, the Almeida brothers borrowed approximately $2.6 million from RG Premier Bank (RG Premier) and re-lent that money to third party Emérito Estrada at a higher interest rate, but Mr. Estrada defaulted on his payments to the Almeidas, and the Almeidas in turn defaulted on their payments to RG Premier. DSMF ¶ 3; PRDSMF ¶ 3.[9]

On October 10, 2011, in *Francisco Almeida León, et al. v. Emérito Estrada Rivera-Isuzu Puerto Rico Inc.*, case KCD2011-0142, before the San Juan Superior Court, Francisco Almeida-León and Wanda Cruz-Quiles obtained a judgment against Emérito Estrada Rivera, Isuzu Puerto Rico, Inc. for collection and foreclosure of three mortgage notes.  PASMF ¶ 3; DRPASMF ¶ 3.[10]  At some point, Juan Almeida-León

---

the assertion to omit legal conclusions.  *See Irobe v. United States Dep't of Agric.*, 890 F.3d 371, 381 (1st Cir. 2018)*; Torrech–Hernandez v. General Elec. Co.,* 519 F.3d 41, 47 (1st Cir. 2008).

   The Almeida Plaintiffs' additional statement of material fact fifty-one asserts it will provide the various ways WM concealed the truth and asserts WM engaged in illegal appropriation and forgery.  The Court omits the statement as argumentative and conclusory, not adequately supported by the record citation for one assertion and failing to provide a record citation for the other.  *See* D.P.R. LOC. R. 56(b), (e); *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st Cir. 2000).

[9]   The Almeida Plaintiffs deny WM's statement of material fact three.  PRDSMF ¶ 3.  The Almeida Plaintiffs say the paragraphs cited from their Amended Complaint from their other federal case, *Francisco Almeida-León et al. v. R-G Premiere Bank of Puerto Rico et al.*, 3:10-cv-02209-JAG, are irrelevant.

   The Court disagrees.  WM's statement of material fact three is relevant because it explains how the Almeida Plaintiffs came to default on their loan obligation to RG Premier, a default that precipitated the judgment entered against Juan Almeida-León in *FDIC-R v. Juan Almeida-León, Emérito Estrada Rivera-Isuzu of Puerto Rico, Inc.*, 3:12-cv-02025-FAB, and in turn at issue in the current case as the agreement sought to resolve the satisfaction of WM's judgment, as assignee of the FDIC-R, against Juan Almeida-León.

[10]   The Almeida Plaintiffs assert:

   On or around October 10, 2011, in the case KCD2011-0142, before the San Juan Superior Court, Mr. Francisco Almeida León and Mrs. Wanda Cruz Quiles obtained a judgment against Emérito Estrada Rivera, Isuzu Puerto Rico, Inc., for collection and foreclosure of three mortgage notes.  The judgment and notes, at all pertinent times prior to 2013, solely belonged to Mr. Francisco Almeida and his wife Wanda Cruz.

PASMF ¶ 3. WM admits and denies in part the Almeida Plaintiffs' statement of material fact three. DRPASMF ¶ 3. WM admits that in October 2011, San Juan Superior Court entered judgment in KCD2011-0142 in favor of Francisco Almeida-León and Wanda Cruz-Quiles. *Id.* WM denies that Mr. Francisco Almeida-León and Wanda Cruz-Quiles solely owned the judgment and notes from the state court case, KCD2011-0142, and say Juan Almeida-León had an interest before 2013. *Id.* In support, WM cites multiple submissions from related state and federal court cases. *Id.*; *see also Mot. Submitting English Translations*, Attachs. 1-4 (ECF No. 163).

In 2008, in *Francisco Almeida-León et als. v. Emerito Estrada Rivera-Isuzu Puerto Rico, Inc., et als.*, KCD 2008-4513(508), Francisco Almeida-León, Wanda Cruz-Quiles, and Juan Almeida-León sued Emérito Estrada Rivera-Isusu Puerto Rico, Inc, Emérito Estrada Rivera, and Edith Delia Colón Feliciano, and their Community Property Partnership seeking to collect on defaulted promissory notes. *Mot. Submitting English Translations*, Attach. 2, *Compl.*, at 1-3 (ECF 163-2) (*2008 Compl.*). The Complaint shows all three plaintiffs had an interest in the promissory notes at issue. *2008 Compl.* at 1-3. In October 2009, in the same state court case, the Court ordered the following promissory notes delivered to the plaintiffs:

> Promissory Note in the amount of $2,000,000.00 (2 million dollars.) The Promissory Note is guaranteed by Deed Number 40 dated September 3, 2003.
>
> Promissory Note in the amount of $500,000.00, guaranteed by Deed Number 23, executed on November 6, 1998.
>
> Promissory Note in the amount of $1,365,000.00, guaranteed by Mortgage dated December 12, 1997.

*Mot. Submitting English Translations*, Attach. 3, at 1 (ECF No. 163-3) (*2008 Order*). In 2010, Francisco Almeida-León and Wanda Cruz-Quiles sued Emérito Estrada Rivera-Isusu Puerto Rico, Inc to collect on the same notes:

> On or about December 12, 1997 . . . defendant granted a Promissory Note in the amount of $1,365,000 . . . through affidavit 30376 . . ..
>
> Back on November 6, 1998 defendant subscribed a Promissory Note in the amount of $500,000 . . . through affidavit 3166 . . ..
>
> Back on September 3, 2003 defendant granted a promissory note in the amount of $2,000,0000 . . . through affidavit 9322 . . ..

*Mot. Submitting English Translations*, Attach. 4, at 1-2 (ECF No. 163-4) (*2010 Compl.*). These same three notes appear in the Agreement as the Kennedy Notes:

> The three Kennedy Notes are as follows: (i) Mortgage Note for the principal sum of $1,365,000 subscribed by EER-IPR on December 12, 1997 under affidavit 30,376 and payable to the bearer; (ii) Mortgage Note for the principal sum of $500,000 subscribed by EER-IPR on November 6, 1998 under affidavit 3,166 and payable to the bearer; (iii) Mortgage Note for the principal sum of $2,000,000 subscribed by EER-IPR on September 3, 2003 under affidavit 9,322 and payable to the bearer.

*Pls.' Statement of Material Uncontested Facts*, Attach. 3, *Agreement to Satisfy Judgment and Assignment of Mortgage Notes*, at ¶ 2.4 n.1 (ECF No. 45-3) (*the Agreement*). However, in the state court case, KCD2011-0142, only Francisco Almeida-León and Wanda Cruz-Quiles sought to foreclose on the three Kennedy Notes. Thus, it is evident from the record that Juan Almeida-León, prior to

obtained an undivided co-ownership in the three mortgage notes in the state court case KCD2011-0142. PASMF ¶ 4; DRPASMF ¶ 4.[11]

On September 26, 2013, in *FDIC-R, et al. v. Juan Almeida-León, Emérito Estrada Rivera-Isuzu of Puerto Rico, Inc.*, 3:12-cv-02025-FAB, the FDIC-R, as receiver of failed RG Premier, obtained judgment for $2,828,850.11 plus post-judgment interest against Juan Almeida-León. DSMF ¶ 4; PRDSMF ¶ 4; PASMF ¶ 5; DRPASMF ¶ 5.[12]

On May 28, 2014, believing that Juan Almeida-León and Francisco Almeida-León were diverting funds from Juan Almeida-León's interest in the three mortgage notes implicated in its federal judgment, the FDIC-R filed an emergency TRO and asserted that one of the four mortgage notes the Almeida brothers claimed joint

---

2013, had some interest in these notes. But the record is not clear if Juan Almeida-León's interest subsequently changed before the state court case under docket number KCD2011-0142. The Court alters the second portion of the assertion viewing the facts in the light most favorable to the nonmovant but consistent with the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

[11] The Almeida Plaintiffs assert that "Mr. Juan Almeida León, acquired an undivided co-ownership in half of the credits, rights, judgment and the three mortgage notes object of foreclosure in case KCD2011-0142, mortgages and judgment identified in the previous paragraph, which are the object of collection and execution in the identified case." PASMF ¶ 4. They say Francisco Almeida-León gave this to his brother to enable him to pay off the judgment entered against him in *FDIC-R v. Juan Almeida-León*, 3:12-cv-02025. *Id.*

 WM admits and denies this assertion in part for the same reasons in their response to the Almeida Plaintiffs additional statement of material fact three. DRPASMF ¶ 4. The Court alters the assertion as it did in the preceding note. *See supra* note 10.

[12] In their additional statement of material fact five, the Almeida Plaintiffs assert the FDIC-R obtained a judgment against Mr. Juan Almeida-León in the amount of $2,828,850.11. PASMF ¶ 5. The Almeida Plaintiffs also assert "[t]he participation of Mr. Juan Almeida in the three mortgage notes in case 2011-0142 is accommodation made by Mr. Francisco Almeida intended to assist his brother in making payment of judgment in case 12-0225." *Id.*

 WM denies this assertion. DRPASMF ¶ 5. It responds that the FDIC obtained a judgment for $2,828,850.11 plus post-judgment interest. *Id.* It also denies that Mr. Juan Almeida-León was given an interest in the three mortgages from the state court case, KCD2011-0142. *Id.* The record, as well as the judgment from the *FDIC-R v. Juan Almeida-León* case, 3:12-cv-02025, *J.* (ECF No. 25), show that the Court awarded the FDIC post-judgment interest in its judgment against Juan Almeida-León. The Court adopts WM's version of this fact and modifies the second contention for the reasons mentioned previously. *See supra* note 10.

ownership of was transferred to Tenerife and that the other three notes were being

foreclosed upon without Juan Almeida-León.  DSMF ¶ 5; PRDSMF ¶ 5; PASMF ¶ 6;

DRPASMF ¶ 6.[13]  The TRO was granted and was later converted into a preliminary

---

[13]    WM's statement of material fact five states:

> On May 28, 2018, in order to prevent Juan and his brother, Francisco Almeida, from diverting funds from the liquidation of Juan's interest in three mortgage notes, the FDIC-R filed an Emergency Motion for Issuance of Temporary Restraining Order. Civil Case No. 12- 2025, ECF No. 27. Therein, the FDIC-R noted that whereas Juan and Francisco Almeida claimed to have "joint ownership" of four mortgage notes, one of those had been transferred to Tenerife Real Estate LLC ("Tenerife") and the other three were in the process of foreclosure by Francisco (without Juan).  *Id.* at 2-4.

DSMF ¶ 5 (emphasis omitted).  The Almeida Plaintiffs deny WM's statement of material fact five. PRDSMF ¶ 5.  They assert:

> Paragraph five is denied, Juan Almeida had secured resources with which to fully pay the judgment in case 12-2015(FAB), but counsel Jairo Mellado interfered with the process by making false representations to the Court, obtained a unilateral not notified TRO, a wrongful injunction, detained the legal means with which Juan Almeida would generate the money to make full payment of the judgment. **See SMUF #26 and 38**. Counsel Jairo Mellado and its now client have since the year 2014 been consistently wrongfully detained plaintiffs property, through fraudulent misrepresentations, dollus, ideological falsehood, and extortion; by which it has breached the Jul[y] 28, 2014 contract. **See RULE 11 Letter Ap.p. 182 to 209**, and its appendix at Ap.p. 343 to 1598. 31 LPRA §3343; OBJECTION.

*Id.* (emphasis in original).  The Court rejects the Almeida Plaintiffs' denial because it fails to adequately and directly respond to WM's statement.  The Court, however, alters WM's assertion to reflect it was their belief, as opposed to a conclusive finding, that Juan Almeida-León may have been diverting funds as the basis for their filing of TRO.

The Almeida Plaintiffs' additional statement of material fact six reads:

> The FDIC, without notice or hearing, obtained an exparte temporary injunction in case number 12-2025 (FAB) before the Federal District Court; alleging that there was intent to defraud (when the opposite was the truth), the injunction temporarily (during some two months) prevented the execution of the judgment entered by the Superior Court of San Juan in case K CD2011- 0142.(**Dkt 45 Page 76/92**. Plaintiff and its counsel in case 12-0225, to obtain the issuance of said injunction represented to the Court under penalty of perjury, that an attempt was being made to avoid payment of the judgment. When the deposition of Mr. Francisco Almeida was taken in mid year 2014 in San Juan Puerto Rico, by counsel Jairo Mellado, the opposite was established, i.e. that the funds had been set aside to assure compliance with payment of the judgment. **Ap.p. 331 to 333.** Counsel Jairo Mellado then refused to transcribe the Oral Deposition he had commenced and imposed. Judicial record Case 12-0225.

PASMF ¶ 6 (emphasis in original).

injunction and a hearing date was set to see if the injunction should be continued, but following settlement discussions, the injunction was dissolved on August 8, 2014, in light of the parties' Agreement to Satisfy Judgment and Assignment of Mortgage Notes (the Agreement) dated July 28, 2014. DSMF ¶¶ 6-7; PRDSMF ¶¶ 6-7; PASMF ¶¶ 6-7; DRPASMF ¶¶ 6-7.[14]

The Agreement was among Francisco Almeida-León, Wanda Cruz-Quiles, their Conjugal Partnership, Juan Almeida-León, Tenerife, and the FDIC-R. DSMF ¶

---

WM admits in part and denies in part the Almeida Plaintiffs' additional statement of material fact six. DRPASMF ¶ 6. WM admits that the FDIC-R obtained a TRO which precluded the auctioning of the Kennedy property. *Id.* WM denies the rest of Tenerife's assertions as argumentative, conclusory, in violation of the District of Puerto Rico's local rules, and not adequately supported by the record citation. *Id.*

The Court includes the fact that WM's TRO was granted as consistent with the record but omits the remaining portions of the proffered fact. The record citation, contrary to Almeida Plaintiffs' assertion, is not to a deposition of Francisco Almeida-León in 2014, but to Wanda Cruz-Quiles' deposition in February 23, 2018. The Court omits the remainder of the assertion as argumentative and failing to comply with the District's local rules. P.R. Loc. R. 56(c), (e).

[14] The Almeida Plaintiffs admit the TRO was granted but argue it was on false representations. PRDSMF ¶ 6. Because the Almeida Plaintiffs admit WM's underlying factual assertion and because the record shows that the TRO was granted, the Court includes it.

The Almeida Plaintiffs deny that settlement conversations followed the granting of the TRO but assert that "discussions as to how the Judgment in case 12-2025 would be paid[]" followed. PRDSMF ¶ 7. The Court rejects the Almeida Plaintiffs' denial. To support its assertion, WM cites the Joint Informative Motion and Request for TRO Extension submitted on behalf of both the FDIC-R and the Almeida Plaintiffs which states that "real significant progress towards a settlement on the matter has been made." *See Jt. Informative Mot. & Request for TRO Extension*, 3:12-cv-02025-FAB, at 2-3 (ECF No. 33). The Court alters WM's assertion to exclude Tenerife because it is not clear from the record if Tenerife took part in the joint motion.

The Almeida Plaintiffs' additional statement of material fact seven states, "[t]he referenced injunction was dissolved approximately on July 27, 2014 in exchange for grate concessions by the Almeida brothers, namely an assignment for payment of the 50% undivided interest of Mr. Juan Almeida." PASMF ¶ 7 (citing Dkt 45-3 page 76/92, ¶ 7 ; Dkt 45-3 page 6/92, ¶ 3.1.1).

WM admits and denies in part the Almeida Plaintiffs' additional statement of material fact seven. DRPASMF ¶ 7. WM says, "the preliminary injunction was dissolved on August 8, 2014 in light of the execution of the Agreement." *Id.* (citations omitted). It denies the remainder of the statement as argumentative and conclusory. *Id.*

The record reflects that the injunction was dissolved on August 8, 2014, *Order*, *FDIC v. Juan Almeida- León*, 3:12-cv-2025, (ECF No. 69), because of the execution of the Agreement on July 28, 2014. *FDIC as Receiver for RG Premier Bank's Mot. to Set Aside Prelim. Inj., FDIC v. Juan Almeida-León*, 3:12-cv-2025, (ECF No. 68). The Court also alters the second portion of the Almeida Plaintiffs' statement because it is not adequately supported by the record citation and is argumentative. *See supra* note 8. The Court refers to the Agreement's actual language as needed.

8; PRDSMF ¶ 8; PASMF ¶¶ 8-12; DRPASMF ¶¶ 8-12.[15]

---

[15]     The Almeida Plaintiffs deny that a true and correct copy of the Agreement is on the record. PRDSMF ¶ 8. They say "[t]he July 28, 2014 assignment agreement in the negotiations unequivocally excluded any and all assignment by Tenerife, who has never owed any amount to assignee[,]" and WM's counsel distorted the contract language and his conduct "is a crime named **IDEOLOGICAL FALSEHOOD**." *Id.* (emphasis in original). The Almeida Plaintiffs cite their Rule 11 letter dated August 21, 2017, as support. *Id.*

The Court rejects the Almeida Plaintiffs' denial.

First, in their response to WM's motion for partial summary judgment on their breach of contract claim, the Almeida Plaintiffs submitted their own copy of the Agreement in dispute. *Opp'n to Mot. for Partial Summ. J., Docket 40* (ECF No. 45); *Pls.' Statement of Material Uncontested Facts*, Attach. 3 at 1-16 (ECF No. 45-3). The Almeida Plaintiffs' Agreement is identical to the Agreement submitted by WM except in all but two minor respects. *Compare Pls.' Statement of Material Uncontested Facts*, Attach. 3 at 1-16 *with Statement of Uncontested Material Facts in Support of WM Capital's Mot. for Summ. J.*, Attach. 2 at 1-15 (ECF No. 41-2). One difference is that WM's version of the Agreement includes a document signed by George Perez Borrero, Tenerife's Chief Executive Manager, stating "that the following resolutions were adopted by Unanimous Written Consent in Lieu of a Special Meeting of the Members of the Company, duly approved pursuant to Company's Operating Agreement, as of the 28th day of July, 2014 . . .." *Statement of Uncontested Material Facts in Support of WM Capital's Mot. for Summ. J.*, Attach. 2 at 15. The other is that WM's version of the Agreement includes the signature of the FDIC-R's attorney-in-fact, Glen Kinard. *Id.* at 14.

However, as part of their appendix in opposition to WM's motion for summary judgment, the Almeida Plaintiffs submitted another copy of the Agreement completely identical to the Agreement WM submitted. *See Pls.' Appendix.*, at 226-40.

Second, in their additional statement of material fact nine, the Almeida Plaintiffs state "Tenerife Real Estate Holdings LLC also consented to the assignment made." PASMF ¶ 9 (citing Dkt 45-3 Pages 4-16). They further state, "Tenerife signed the Assignment Agreement, but is no longer part of said contract due to WMC's default and contract resolution." In other words, the Almeida Plaintiffs do not assert that they or Tenerife had not contracted under the Agreement, instead that Tenerife is no longer a party with contractual obligations because WM breached its contractual obligations to Tenerife and the Almeida Plaintiffs. This largely tracks Tenerife's arguments in its motion for summary judgment on WM's counterclaim. *Tenerife's Mot. For Summ. J.*, at 11-14, 19-21 (ECF No. 108).

Third, the record citation to their own response letter to WM's counsel's letter informing the Almeida Plaintiffs he intended to seek sanctions against them does not properly controvert WM's assertion because the record citation is not factual, but legal assertions. An attorney's prior arguments in a response to a Rule 11 letter sent by opposing counsel stating they may seek sanctions in the same case is hardly proof of the existence of an asserted genuine fact. The Almeida Plaintiffs' cited paragraph reads:

> Surreptitiously you again included a variation of the language late at night after a full day of negotiations and drafting, using definitions to disguise the reincorporation. Again you office distorted the negotiated terms and through disguised conduct obtained the signature on something that was specifically deleted and discarded from the negotiations and agreement. See *Colon v. Promo Motor Imports, Inc.,* 144 D.P.R. 659 (1997).

*Pls.' Appendix* at 192. Attorney's arguments are not facts. *See Figueroa-Olmo v. Wesinghouse Elect. Corp.*, 616 F. Supp. 1439, 1442 (D.P.R. 1985).

In sum, the Court disagrees that there is not a true copy of the Agreement on the record. The Court will however use the Almeida Plaintiffs' version to refer to any provisions of the Agreement. To

the degree the Almeida Plaintiffs dispute what the Agreement provides in terms of the parties' contractual obligations, the Court resolves those issues in its discussion of whether WM's counterclaim for specific performance is warranted. Lastly, the Court alters the date WM submitted in light of the record.

The Almeida Plaintiffs' additional statement of material fact eight reads:

> After having in June 2014 signed a "Term Sheet" which contains the intent of the parties, on or about July 28, 2014, Mr. Juan Almeida Leon, then, as a result of the accommodation, being owner of the joint tenancy of 50% of the three promissory notes and the judgment object of collection in case K2011-0142, jointly with co-plaintiffs Mr. Francisco Almeida Leon, Mrs. Wanda Cruz Quiles and their Conjugal Legal Partnership, executed with the FDIC an assignment of the 50% undivided interest of Mr. Juan Almeida in the three Kennedy notes and judgment "for payment", in Spanish "Dación para Pago". Dkt 45-3 Page. 76/92- ¶ 8; Dkt 45-3-Pages 4 -16. The assignment was "for payment". The assignment was "for payment" and not "in Payment" because at the moment there were various interested purchasers for amounts exceeding EIGHT MILLION DOLLARS ($8,180,000.00), and also potential rental Tenants that could yield sufficient to pay in excess of the judgment. Dkt 79-4 page 26/155. That is, there was plenty of equity in the EERIPR Realty.

PASMF ¶ 8 (emphasis omitted).

WM admits that on July 28, 2014, the Almeida Plaintiffs executed the Agreement to Satisfy Judgment and Assignment of Mortgage Notes. DRPASMF ¶ 8. It denies the remainder of the statement as unsupported by the record citations, argumentative and conclusory, and mischaracterizing the Agreement. *Id.*

The Almeida Plaintiff's record citations largely do not support their assertions. The Almeida Plaintiffs' assertion mischaracterizes the Agreement. *See Agreement* ¶¶ 1.1, 3.1.2 ("Borrower, Co-Holders and Tenerife hereby assign to the FDIC-R, as of the Effective Date of this Agreement, an undivided one-half interest in each of the Kennedy Notes, GMAC Note, and GMAC Judgment"). The Court refers to exact terms of the Agreement as needed. The record shows that the Kennedy Property was appraised at a little over eight million dollars. *Pl[s.'] Suppl. Mot. in Opp'n to Docket 40 and 41 (Mot. for Partial Summ. J.), New Facts and Date Resulting from Disc. Performed Statement of Material Uncontested Facts*, Attach. 4 at 26, (ECF No. 79-4). It does not show there were multiple interested purchasers. The Court includes the Kennedy property's market valuation reflected in the record. The Court omits the Almeida Plaintiffs' first and last assertions because they are not supported by the record citation or there is no record citation. *See supra* note 8.

The Almeida Plaintiffs' additional statement of material fact nine reads:

> The Assignment for payment ("Dación Para Pago") executed a by Mr. Juan Almeida Leon was also consented to and signed by Francisco Almeida Leon and his wife Wanda Cruz with the FDIC, and was of the 50% of Mr. Juan Almeida Leon in the judgment entered in case K CD2011-0142 before the Superior of Puerto Rico, San Juan Chambers. Mr. Francisco Almeida, provided the FDIC complied with its obligations under the contract, agreed to permit the FDIC to collect from the mortgage notes being foreclosed in case KCD2011-0142 in first instance, which was no risk given the lined up purchasers. Mr. Juan Almeida has always had a substantial interest the strict compliance with the terms and conditions of the "Assignment for Payment Agreement" by the assignee. Dkt 45-3 Page, 76/92, including ¶9-12 . Tenerife Real Estate Holdings LLC also consented to the assignment made. Dkt 45-3 Pages 4-16.

PASMF ¶ 9 (emphasis omitted). WM admits in part and denies in part this assertion. DRPASMF ¶ 9. WM admits that Juan Almeida-León, Francisco Almeida-Léon, Wanda Cruz-Quiles, their Conjugal

In early December 2015, the FDIC-R sold its rights to the notes, mortgages, and the Agreement to WM under an Assignment and Assumption of Interests and Obligations. DSMF ¶ 21; PRDSMF ¶ 21; PASMF ¶ 52; DRPASMF ¶ 52.[16] WM also

---

Partnership, Tenerife, and the FDIC executed and consented to the Agreement. *Id.* It denies the remainder of the statement as either in violation of the District of Puerto Rico's local rules or inadequately supported by the record.

The Court includes the proffered assertions the parties agree on. The first two assertions of the Almeida Plaintiffs do not include a record citation contrary to the District of Puerto Rico's local rules. *See supra* note 8. The third assertion pertaining to Juan Almeida-León's interest in complying with the Agreement is supported by a record citation to Francisco Almeida-León and Wanda Cruz-Quiles' affidavit, but it is improper because it is not evident how they have personal knowledge of Juan Almeida-León's interest. *See supra* note 7. The Court alters the assertion.

The Almeida Plaintiffs' additional statement of material fact ten states:

> In the July 28, 2014 Assignment Agreement the Assignee represented that it was then actually performing an Environmental Study and bound itself ("...shall complete such due diligence as quickly as possible"...) to expeditiously perform and complete the environmental study of the realty object of foreclosure in case KCD2011-0142, (Dkt 45-3 Page 12/92, ¶ 3.2.). The parties contracted that "Until such time as the FDIC-R completes its due diligence or otherwise provides authorization in writing, the Foreclosure Auction will not occur". id. quote is from the sixth and seventh lines in paragraph 3.2.Dkt 45-3 Page74, ¶11; Dkt 45-3 Page 4-16 Page 7 and 12/92 ¶3.1.3 and 3.2.

PASMF ¶ 10 (emphasis omitted). This statement relates to the Almeida Plaintiffs' perceived issues with the FDIC-R's actions concerning when the environmental study was initiated and disclosed. The Court does not consider these assertions under the doctrine of the law of the case. *See supra* Part II; *Ellis v. United States*, 313 F.3d 636, 647-48 (1st Cir. 2002). The Court includes those portions of the Agreement as needed.

The Almeida Plaintiffs' additional statement of material fact eleven does not provide record citation to support their assertion, contrary to the District of Puerto Rico's local rules, and the Court does not consider it. *See supra* note 8.

The Almeida Plaintiffs' additional statement of material fact twelve states:

> The environmental assessment site visit to the premi[]ses was performed by the surveyor accompanied by Attorney Liza Delgado they working at the Offices of attorney Jairo Mellado, representing the assignee. Assignee received the report on or about July 23, 2014, when the Log Comment commence reflecting consecutive receipts and reviews of invoice, review of the Report, and cessation of inquiries about the whereabouts of the Environmental Assessment Report. Ap.p. 182 to 184 and sources cited therein. Rule 11 Letter pages 1 to 4.

PASMF ¶ 12. (emphasis omitted). The first assertion is not supported by a record citation contrary to the District of Puerto Rico's local rules. *See supra* note 8. Moreover, the proffered assertion relates to a matter precluded under the doctrine of the law of the case, and the Court omits it. *See Ellis*, 313 F.3d at 647-48.

[16]    In its response to WM's statement of material fact twenty-one, the Almeida Plaintiffs state:

agreed "to assume all of the Obligations of the Failed Bank or Seller under and with respect to all the Notes and Collateral Documents" as part of a Loan Sale Agreement. PASMF ¶¶ 20, 37, 53-56; DRPASMF ¶¶ 20, 37, 53-56.[17] Thus, the only parties to the

---

It is admitted that the co ownership in title or trust was sold by the FDIC to WMC for the price of $92,840.71, and th[r]eat redemption was promptly, timely and correctly performed. This Court in docket 59 (a proposed judgment adopted by late Judge Casellas), purposely disregarded binding State Law, including Ortiz Roberts v. Ortiz Roberts 103 DPR 628 (1975), followed in Moreno v. Moreno 187 DPR 429 (2012). The performed redemption divested WMC of any and all title of any, every and all kind, including interest in the trust that could result in a "Dación para Pago" assignment for payment. Therefore, **WMC LACKS STANDING.** All the distortion of fact and law made by WMC are only a continuation of its obstructive fraudulent conduct. Which has been adjudged by State Court, **Ap.p. 1658 to 1666.** 31 LPRA 3343; OBJECTION.

PRDSMF ¶ 21 (emphasis in original). The Court deems WM's statement of material fact admitted because the Almeida Plaintiffs fail to provide an adequate record citation for their qualification of how WM acquired the FDIC's rights, asserts arguments outside the scope of WM's assertion, and goes against the doctrine of the law of the case. *See supra* note 15.

The Almeida Plaintiffs' additional statement of material fact fifty-two reads:

WM Capital Management, Inc. executed a contract with the FDIC on December 10, 2015, entitled **Assignment and Assumption of Interests and Obligations**, Loan Pool Number MR3- 15-23-23025, information admitted by WM Capital Management in attachment to docket 1 in this case. **Supra; Dkt 45-3 Page 85 ¶49, fact admitted by WM Capital, Dkt .** 79-1 pages 17 to 32, **specially page 28 to 29 of 150- lines 6 to 9**. The full text of the contract was submitted to the Court Record in docket 79, **Dkt 79-1pages 99 to 150.**

PASMF ¶ 52 (emphasis in original). WM admits in part and denies in part this proffered fact. DRPASMF ¶ 52. WM admits that it and the FDIC-R executed an Assignment and Assumption of Interests and Obligations. *Id.* WM denies the Almeida Plaintiffs' characterization of the docket and contend the document speaks for itself. *Id.*

The Court refers to the document to resolve disputes between the parties as to its contents.

[17] The Almeida Plaintiffs' additional statement of fact twenty asserts:

There are no other persons or entities that have asserted any claims whatsoever as joint owners over the credits, promissory notes and judgment in case KCD2011–0142; except defendant WM Capital Management Inc. as successor to the FDIC by purchase at a significant discount, price was approximately $92,840.71. Dkt 45-3 Page 78-79/92 ¶ 17.

PASMF ¶ 20 (emphasis omitted). WM admits in part and denies in part this assertion. DRPASMF ¶ 20. WM admits that "the only parties to the Agreement and therefore with standing to make claims as to the object of the Agreement, are the Almeidas, Ten[e]rife, and WM Capital." *Id.* It denies the rest of the assertion as inserting legal conclusions and attempting to relitigate the Almeida Plaintiffs' redemption claims. *Id.*

The Court alters the assertion to omit legal conclusions. The Court also omits the Almeida Plaintiffs' estimate as what WM paid as the FDIC-R's assignee because it is not adequately supported by a record citation. The Almeida Plaintiffs cite Francisco Almeida-León's and Wanda Cruz-Quiles' affidavit for support but, the cited paragraph only states "a significant discount, price [of] approximately $92,840.71. Determined by investigation." *Pls.' Statement of Material Uncontested Facts*, Attach. 3, at 79, ¶ 17 (ECF No. 45-3). This lacks sufficient specificity to establish the Almeida Plaintiffs have personal knowledge as to WM's buying price, rather than mere information and belief.

The Almeida Plaintiffs' additional statement of fact thirty-seven states:

> WM Capital, in the December 10, 2015 signed a **Loan Sale Agreement (LSA)**, by which it purchased assignee's rights under the July 28, 2014 Agreement and all rights and obligations associated with the document. Under article 2.1 of the LSA **expressly assumed the obligations and responsibility of the FDIC** under the July 28, 2014 Agreement, as per the terms of the contract signed between the FDIC and WMC. **See Dkt 79-1 Page 110/150 ¶2.1, and State Court Judgment dated January 17, 2018 in Dkt 108-2 pages 13/31 and 21/31.** After the redemption case had been filed and the redemption funds had been deposited in Court, WM Capital in January 2016 requested to be in turn substituted in place of the FDIC in the State Court Case 2011-0142. WM Capital was included as co-plaintiff in case 2011-0142 in March, 2016 **Dkt 45-3 page 86 to 87/92 ¶48 to 51; supra.**

PASMF ¶ 37 (emphasis in original).

WM admits in part and denies in part the Almeida Plaintiffs' assertion. DRPASMF ¶ 37. It admits that WM acquired the "FDIC-R's rights to the subject loan, judgment, Agreement, and related collateral" and that it sought "to be substituted in place of FDIC-R and that the Commonwealth court granted this request." *Id.* It denies the remainder of the statement because it says it is "supported by Francisco Almeidas' affidavit which fails to establish any foundation or personal knowledge." *Id.*

The Court rejects WM's denial. The Almeida Plaintiffs' additional statement of material fact thirty-seven in part cites and is supported by the Loan Sale Agreement executed between the FDIC-R and WM. The Court includes the assertion as reflected in the record. The Court alters the first portion of the Almeida Plaintiffs' citation in light of the record. Lastly, the Court includes that WM was substituted as a co-plaintiff in the state case KCD2011-0142.

The Almeida Plaintiffs' additional statement of fact fifty-three reads:

> Under the December 10, 2015 agreement WM Capital Management, Inc. agreed and bound itself (Upon information in article II, section 2.1 of said contract) as follows: "Whereas, Assignee has agreed to **accept and assume all of assignor's duties, obligations and liabilities** under the Agreement to Pay, Collateral Documents, Real Estate Interests and Miscellaneous Agreements related to the Assets (The Obligations)" (Emphasis Supplied) **Supplemental motion Docket 79-1 Page. 110/150-¶2.1, Judgment of January 17, 2018, Dkt 108 pages 11-29. Res Adjudicata, Ap.p. 1662 Judgment.**

PASMF ¶ 53 (emphasis in original). WM denies this assertion. DRPASMF ¶ 53. It says the "evidence cited includes the inadmissible evidence not based on personal knowledge and an unauthenticated boilerplate document with no signatures." *Id.* (citing docket number 27-1, at 56-60).

The Court rejects this argument. The Almeida Plaintiffs' failure to authenticate the draft motion does not preclude the Court from considering it on summary judgment. *See Perez-Maspons v. Stewart Title P.R., Inc.*, 208 F. Supp. 3d 401, 408-09 (D.P.R. 2016). However, the Almeida Plaintiffs' record citation does not support their proffered fact. The Court omits it.

The Almeida Plaintiffs' additional statement of material fact fifty-four reads:

Agreement and therefore with standing to make claims as to the object of the Agreement, are the Almeida Plaintiffs, Tenerife, and WM. PASMF ¶ 20; DRPASMF ¶ 20.

## C. The Agreement

Under the Agreement, the parties stipulated that as "assignment for payment" to satisfy the judgment in the FDIC-R's federal case, the Almeida Plaintiffs and Tenerife would "assign the FDIC an undivided one-half interest" in four promissory notes guaranteed by the mortgage deed of a realty referred to as the "Kennedy Property." *Agreement* ¶ 3.1.2; DSMF ¶ 9; PRDSMF ¶ 9; PASMF ¶¶ 13-14; DRPASMF ¶¶ 13-14.[18] The Kennedy Property has been appraised at an approximate market

---

The price that WM Capital Management, Inc. paid for the purchase of the 50% interest in the judgment and credit in case KCD2011-01452 before the Superior Court of Puerto Rico where Mr. Juan Almeida was Co-owner and has enforced the Co-Owner right of redemption was approximately $92,840.71. The information was determined by the conjunction of the information admitted by WM Capital Management, Inc., in Docket #1 in this case and the information the FDICR published on the total price for which the FDIC-R sold Loan Pool number MR3-15-23025, and breakdown of said information. (Total price WM Capital Management, Inc., paid for the portfolio in Loan Pool Number MR3-15-23025 was $2,730,609.00,where the total book value was $80,319,503.21, the value assigned to the 50% co.-ownership of the judgment in case KCD2011- 01452, was $2,828,850.11; that is WM Capital paid approximately 3.4¢ for every dollar, or 3.4% of every book value dollar). Dkt 45-3 Page 87/92 ¶51.

PASMF ¶ 54 (emphasis omitted). WM denies this proffered statement. DRPASMF ¶ 54. WM contends that "[t]here is no basis for personal knowledge other than a general reference to 'information the FDIC published.'" *Id.*

The Court agrees that the assertion is not supported by an adequate record citation based on a sufficient foundation of personal knowledge and omits it. *See supra* note 7.

The Almeida Plaintiffs' additional statement of material fact fifty-five asserts, "[t]he environmental Report dated July 16 and July 22, 2014 was produced by WMCM on January, 2017. Dkt 40 and 41 Pages 182 to 250." PASMF ¶ 55. The Court omits this assertion because it is not supported by a specific citation to the record and is irrelevant under the doctrine of the law of the case. *See supra* notes 8, 15. The Court also omits the Almeida Plaintiffs' additional statement of material fact fifty-six under the doctrine of the law of the case. *See supra* note 15.

[18] WM asserts that "[t]he Agreement stipulated that prior to execution, the Almeidas and Tenerife owned four mortgage notes over the following property owned by Emérito Estrada Rivera." DSMF ¶ 9. The Almeida Plaintiffs deny WM's "drafting of the paragraph 9" and say "Mr[.] Francisco Almeida in order to accommodate and enable Mr. Juan Almeida to make payment of the judgment in

value of eight million dollars.  PASMF ¶ 8; DRPASMF ¶ 8.  One of the notes, the GMAC note, was previously owned by Francisco Almeida-León and is a first rank mortgage note, and relates to the GMAC Judgment, which was entered in the state court case, KCD2009-0708.  *Agreement* ¶ 2.5 ("In addition to the Kennedy Notes, the Borrower, Co-Holders, and/or Tenerife also own . . . "the GMAC Note" . . . [and] "the GMAC Judgement"); DSMF ¶ 10; PRDSMF ¶ 10.[19]

The Almeida Plaintiffs are co-holders of the other three notes, the Kennedy

---

case, agreed to have Mr. Juan Almeida obtain a 50% interest in the three mortgage notes that have second, third and fourth rank over the identified realty."  PRDSMF ¶ 9. They also assert they had lined up third parties to buy the Kennedy property and that WM's conduct prevented the carrying out of the intent of the Agreement.  *Id.*

    WM's citation to § 2.4 of the paragraph does not support its assertion.  Paragraph 2.4 only refers to the "three mortgage notes obtained . . . from Emerito Estrada Rivera . . . ."  *Agreement* ¶ 2.4. However, the record citations by the Almeida Plaintiffs largely do support their assertions.  PRDSMF ¶ 9 (citing PASMF ¶ 26 (citing *Pls.' Statement of Material Uncontested Facts*, Attach. 3, at 79-80 and *Agreement* ¶ 3.1.8.3)).  The Court refers to the specific page numbers or paragraphs identified in the Agreement when referring to specific portions to clarify the parties' representations of its contents.

    Viewing the facts in the light most favorable to the Almeida Plaintiffs consistent with the record, the Court includes that Juan and Francisco Almeida-León attempted to find buyers for the Kennedy property.  *See supra* note 10.

    The Almeida Plaintiffs' additional statement of material fact thirteen asserts the Agreement provides, "the parties were obligated to immediately . . . with the execution of the judgment in case K CD2011-0142 through public sale of the mortgaged realty, so that the proceeds of 50%  . . . would flow to the FDIC-R as 50% owner to satisfy its judgment credit . . . ." PASMF ¶ 13. WM denies this assertion and says it mischaracterizes the Agreement.  DRPASMF ¶ 13.

    The Court refers to the Agreement as necessary to resolve the parties' competing views.  *See supra* note 14.

    The Almeida Plaintiffs' additional statement of material fact fourteen is nearly a page long and largely pertains to what they view as various improprieties concerning when the environmental study was initiated and disclosed.  The Court does not consider these assertions under the doctrine of the law of the case.  *See supra* note 15.  The Court includes those portions of the Agreement as needed.

[19]    WM asserts: "the Borrower, Co-Holders, and/or Tenerife owned a Mortgage Note for the principal sum of $2,635,000 subscribed by EER-PR on July 8, 1989 ("the GMAC Note"); and (ii) a $2,221,245.93 judgment on the GMAC Note entered in the State Court in case number CD 2009-0708(505) (the "GMAC Judgment")."  DSMF ¶ 10.  The Almeida Plaintiffs deny WM's assertion. PRDSMF ¶ 10.  They claim "[t]he first rank Mortgage notes is and at all pertinent times has been owned by Tenerife, more so since the year 2013, prior to that it was Owned exclusively by Mr. Francisco Almeida."  *Id.*  The Court refers to the text of the Agreement to resolve the parties' differing positions, but in viewing the facts in the light most favorable to the nonmovant, the Court includes the Almeida Plaintiffs' assertion that the GMAC note was previously owned by Francisco Almeida-León.  *See supra* note 10.

Notes. *Agreement* ¶ 2.4; DSMF ¶ 11; PRDSMF ¶ 11.[20] The Kennedy Notes are the subject of a judgment in the state case, *Francisco Almeida León, et al. v. Emérito Estrada Rivera-Isuzu Puerto Rico Inc.*, KCD2011-0142. DSMF ¶ 12; PRDSMF ¶ 12. WM has been joined as a co-plaintiff in the Kennedy Notes state case, KCD 2011-0142, but has not been joined as a plaintiff in the GMAC state case, KCD 2009-0708, where Tenerife is the plaintiff. DSMF ¶ 12; PRDSMF ¶ 12; PASMF ¶¶ 22-23; DRPASMF ¶¶ 22-23.[21]

---

[20]    WM asserts "the Almeidas owned the following three [Kennedy] mortgage notes" reflected in the Agreement. DSMF ¶ 11. The Almeida Plaintiffs deny this assertion. PRDSMF ¶ 11. They state "Mr. Francisco Almeida some time prior to the July 28, 2014 agreement was the sole owner of three notes over the EER-IPR Realty. Mr. Francisco Almeida in order to accommodate and enable Mr. Juan Almeida to make payment of the judgment in case, agreed to have Mr. Juan Almeida obtain a 50% interest in the three mortgage notes . . . ." *Id.* The Court does not view WM's assertion and the Almeida Plaintiffs' response as necessarily contradicting each other because it views WM's statement as referring to the ownership of the Kennedy notes at the time of the Agreement.

     The Court excludes portions of the Almeida Plaintiffs' response as failing to directly respond to WM's assertion and not being supported by adequate record citations. *See supra* notes 4, 8.

[21]    In response to WM's statement of material fact twelve, the Almeida Plaintiffs write:

> There are two different separate State Court judgments and two separate cases in State Court; one case 2009-0708 where only and exclusively Tenerife is plaintiff. The other 2011-0142 where plaintiffs are WMC and Mr. Francisco Almeida versus EER-IPR are the parties. WMC became party in said 2011.0142 case as agreed and provided in the consent given and in the language drafted in the July 28, 2014 agreement to that effect. State Court Judgment in case 2009-0708 (**App. 1650 to 1669**) 31 LPRA § 3343; OBJECTION.

PRDSMF ¶ 12 (emphasis in original). The Almeida Plaintiffs fail to state if they admit, deny, or qualify WM's paragraph twelve. The Court views their response as a qualification and includes their assertions consistent with the record.

     The Almeida Plaintiffs' additional statement of material fact twenty-two reads:

> The Mortgage note and judg[]ment (case 2009-0142) held solely by Tenerife Holdings, LLC is secured by a mortgage of senior rank, with priority over the rank held by the mortgage notes that are jointly owned, or semantically, with joint 50% interest, (if, and only if, in reality true honest legal consequence, the redemption did not take place under the laws of Puerto Rico and the Ortiz Roberts v. Ortiz Robles 103 D.P.R. 628 (19785), which is binding State law and jurisprudence) by WM Capital and Mr./Mrs. Francisco Almeida. Dkt 45-3 Page 79/92 ¶19; Ap.p. 1650-1669- Judgment.

PASMF ¶ 22 (emphasis omitted). The Almeida Plaintiffs' proffered fact is largely legal argument and the Court omits it. *See supra* note 8. The Court notes the GMAC's senior rank elsewhere in the order.

The Agreement defines the "Parties" as the Almeida Plaintiffs, Tenerife, and the FDIC-R, all of which signed the Agreement. *Agreement* ¶ 1.1; DSMF ¶ 13; PRDSMF ¶ 13.[22] The Parties each represented and warranted to having read the Agreement, having understood its contents fully, and having had the opportunity to consult with their counsel prior to signing it. *Agreement* ¶ 3.3; DSMF ¶ 14; PRDSMF ¶ 14.[23] The Agreement specifies a "Procedure to Satisfy Judgment" and provides that

---

*See supra* page 7. The Court omits the Almeida Plaintiffs" additional statement of material fact twenty-three because it is entirely comprised of legal argument. PASMF ¶ 23 ("As a matter of law . . . . any claim against Mr. Juan Almeida Leon ceased as a consequence of the redemption . . ..").

[22] The Almeida Plaintiffs deny WM's statement of material fact thirteen. PRDSMF ¶ 13. They aver "the contract refers to parties to the contract not to any case, WMC wrongfully characterizes. Tenerife signed the Assignment Agreement, but is no longer part of said contract due to WMC's default and contract resolution." *Id.* The Court rejects the Almeida Plaintiffs' denial because it is premised on inadmissible evidence as the Court may not take judicial notice of the state court order's findings referred to by the Almeida Plaintiffs denying WM's motion to intervene in the state court case, KCD 2009-0708. *See supra* Part II; *Nadherny v. Roseland Prop. Co.*, 390 F.3d 44, 51–52 (1st Cir. 2004) (citation omitted).

[23] The Almeida Plaintiffs deny WM's statement of material fact fourteen. PRDSMF ¶ 14. The Almeida Plaintiffs say the Agreement does not represent the intent of the parties:

> The document does not represent the intent of the parties; **Paragraph 14 is denied.** The parties read the prior version and demanded th[a]t language not consented to be excluded, Counsel Jairo Mellado resorted to definitions to disguise the idea that was to be deleted, That is when plaintiffs lea[r]ned the conduct that displayed by Mr. Jairo Mellado of surreptitiously repeatedly including language -in documents to be signed that has not been agreed and has in fact been firmly rejected. There started the repeated uninformed inclusion of yet additional language in every document where Tenerife would give WMC its multi million judgment to WMC, but every ti[m]e the language has been detected, by which Counsel Jairo Mellado has been representing to this Court that the public sale has not taken plane due to plaintiffs while the truth is that WMC has been extorting and purposely inflicting damage to plaintiffs by obstructing the public sale. **Ap.p. 1650 TO 1669, Ap.p. 192 3 paragraph- rd**. RULE 11 Letter, 31 LPRA 3343 OBJECTION[.]

*Id.* (emphasis in original).

The Court rejects the Almeida Plaintiffs' denial. First, the Almeida Plaintiffs fail to provide a record citation for the majority of their factual assertions. *See* P.R. Loc. R. 56(e). Second, the Almeida Plaintiffs cite the state court order denying WM's motion to intervene in KCD2009-0708 as support for their assertions. The Court may not take judicial notice of the state court's findings and that ruling does not have a preclusive effect on this case. *See supra* note 22. Third, the Court does not consider the Rule 11 letter as factually controverting WM's assertion for the reasons explained previously. *See supra* note 15.

the "Parties agree that the Judgment will be satisfied" in the manner described in paragraph 3.1. *Agreement* ¶ 3.1; DSMF ¶ 15; PRDSMF ¶ 15.[24] Paragraph 3.1.2 of the Agreement states:

> Borrower, Co-Holders and Tenerife hereby assign to the FDIC-R, as of the Effective Date of this Agreement, an undivided one-half interest in each of the Kennedy Notes, GMAC Note, and GMAC Judgment. The Kennedy Notes and GMAC Note will be consigned by the FDIC-R, Co-Holders and Borrower to the State Court in the Foreclosure Action as of the date of the execution of this Agreement until: (i) the sale of Kennedy Property, (ii) termination of this Agreement under Section 3.2 below, (iii) or cancellation of the Kennedy Notes and GMAC Notes. While the Kennedy Notes and GMAC Note are consigned to the State Court, the Parties and any potential purchaser of the Kennedy Property accompanied by one or more of the Parties may obtain access to inspect such notes.

*Agreement* ¶ 3.1.2; DSMF ¶ 16; PRDSMF ¶ 16.[25]

---

[24]    The Almeida Plaintiffs fail to state if they admit, deny, or qualify WM's assertion in statement of material fact fifteen. PRDSMF ¶ 15. The Almeida Plaintiffs assert:

> The Agreement specifies that WMC will be joined in State Court case 2011-0142, NOT in State Court Case 2009-0708. **State Court Final Judgment (Ap.p. 1667 to 1666)** That it will be paid from the proceeds of the sale if the public sale takes place expeditiously, because the purchasers were ready to buy in amounts exceeding EIGHT MILLION DOLLARS **(SMUF #8),** and the Judgment against Juan Almeida was significantly less at that time. Never was included any idea that WMC would be joined in case 2009-0708, or own any portion of the judgment in said case, id.. That is the method for payment, which is the idea by which Mr. Juan Almeida acquired 50% interest in the three mortgage notes in case 2011-0142 as an accommodation to enable payment to of the judgment in case 2012-2025. NOTE that the procedure identified does not include any idea of assignee participating or becoming a party in case 2009-0708, id. Which has been adjudged by State Court, **Ap.p. 1658 to 1666.** 31 LPRA 3343; OBJECTION.

*Id.* (emphasis in original). The Almeida Plaintiffs' response fails to directly respond to WM's factual assertion. The Court refers to contents of the Agreement for clarity but omits the statement's legal conclusions, to the extent that those assertions are not supported by a record citation, or require the Court to take judicial notice of another court's findings of fact. *See supra* notes 8, 22.

[25]    The Almeida Plaintiffs deny WM's statement of material fact sixteen as drafted. PRDSMF ¶ 16. The Almeida Plaintiffs state "a cont[r]act is construed in its entirety [and] NOTE that procedure identified does not include any idea of assignee participating or becoming a party in case 2009-0708, nor for Tenerife to waive its first lien or judgment." *Id.* They say the state court consignment has already been performed but was rejected by the state court and that Tenerife declared WM in default

23

The Agreement further provides:

> In the event that a third party purchases the Kennedy Property at the Foreclosure Auction for the Minimum Bid Amount, the proceeds of such sale up to the full amount of the Judgment will be immediately paid first to the FDIC-R as full satisfaction of the Judgment. FDIC-R will then deliver or otherwise assign, as necessary, any excess sale proceeds to Borrower and Co-Holders. For the avoidance of doubt, only after the FDIC-R's Judgment is paid in full will any of the sale proceeds be utilized to pay the legal fees granted by the State Court to Co-Holders' counsel in the Foreclosure Action.

*Agreement* ¶ 3.1.7; DSMF ¶ 17; PRDSMF ¶ 17.[26]

Paragraphs 3.1.8 to 3.1.8.5 pertain to how the parties are to proceed if a third party does not purchase the Kennedy Property for the minimum bid defined in paragraph 3.1.6. *Agreement* ¶¶ 3.1.8-8.5. Paragraph 3.1.8.3 provides the FDIC-R receives "all amounts owed under the Judgment from the first sale proceeds paid by the purchaser [and] then deliver or otherwise assign, as . . . any excess sale proceeds to Borrower and Co-Holders." *Agreement* ¶ 3.1.8.3; DSMF ¶ 18; PSMF ¶ 18.[27] Then,

---

"for its pattern of extortion" and "the contract was expressly rescinded, cancelled, and resolved due to" WM's breach. *Id.*

    The Court rejects the Almeida Plaintiffs' denial. WM's assertion quotes the Agreement verbatim. To the degree the Almeida Plaintiffs highlight what the Agreement does not include, the Court will discuss, where appropriate, the parameters and consequences of the Agreement on the parties. The Court will not consider the state court's findings of fact. *See supra* note 22.

[26]     The Almeida Plaintiffs deny WM's statement of material fact seventeen because they contend the quoted language is no longer valid as the "environmental assessment" was not completed as agreed to by the parties. PRDSMF ¶ 17. They argue further "WMC frustrated the mutual intent of the parties and of the contract. Which has been adjudged by State Court" and that also cite the "right of redemption." *Id.*

    The Court rejects the Almeida Plaintiffs' denial. First, their basis for calling into the question the validity of the cited provision implicates the doctrine of the law of the case. The Court concluded it will not revisit its prior orders addressing these contentions. *See supra* note 15. Second, the Court has concluded that the state court order does not have a preclusive effect on this litigation. *See supra* note 22; *Order on Tenerife's Mot. for Summ. J.* The Court refers to the Agreement's content.

[27]     The Almeida Plaintiffs deny WM's statement of material fact eighteen. PRDSMF ¶ 18. Their reasons for denial track largely verbatim their denial in the response to WM's statement of seventeen. *Compare id.* ¶ 17 *with id.* ¶ 18. The Court rejects the denial and refers to the Agreement.

once the FDIC-R receives full payment of its Judgment, it:

> (i) release[s] and deliver[s] to the Borrower and Co-holders the mortgage notes and notes on which the FDIC-R sued to obtain the Judgment; (ii) assign[s] to the Borrower and Co-Holders any remaining sale proceeds or Rental Income from, or interest in, the Kennedy Property; and (iii) assign[s] to the Borrower and Co-Holders any notes or judgment encumbering the Kennedy Property.

*Agreement* ¶ 3.1.9; DSMF ¶ 19; PRDSMF ¶ 19.[28] As to evidence the FDIC-R's one-half interest in the Kennedy Notes as assignment for payment, the Agreement provides that "the Parties will immediately file in the Foreclosure Action [KCD2011-0142] a joint motion . . . requesting that the judgment entered in that case be amended to include FDIC-R as co-plaintiff and judgment creditor. [Once the] amended judgment is entered, the Parties, subject to Section 3.2 . . . will seek . . . to conduct the Foreclosure Auction . . . ." *Agreement* ¶ 3.1.3; DSMF ¶ 20; PRDSMF ¶ 20.[29] Under paragraph 3.2, the parties stipulated that the FDIC-R's completion of an

---

[28]    The Almeida Plaintiffs admit that "WMC has its own mortgage notes that are different, separate and distinct; those are not the same notes as was stated by the drafter in the proposed judgment adopted by late Judge Casellas in docket 56." PRDSMF ¶ 19.  They deny that the quoted language retains any validity on the same grounds they expressed in their responses to WM's statements of material fact seventeen and eighteen.  *Id.*
        The Court deems WM's statement of material fact nineteen admitted as the Almeida Plaintiffs fail to properly controvert WM's assertion.  The Almeida Plaintiffs' admission and their grounds for denial attempt to relitigate previously decided issues.  The Court will not revisit these issues.  *See supra* note 15.  The Court rejects the Almeida Plaintiffs' other arguments for the reasons stated in footnotes twenty-six and twenty-seven and the Court refers to the Agreement as needed.
[29]    The Almeida Plaintiffs admit "the joint motion was only and exclusively in case 2011-0142 and not in case 2009-0708, which evinces and confirms that only a 50% interest in the three mortgage notes in case 2011-0142 was made and was to be implemented. Denied that the quoted language retains any validity." PRDSMF ¶ 20.  They deny the validity of the quoted language on same grounds for their denials in their responses to WM's statement of material facts seventeen through nineteen.  *Id.*
        The Court rejects the Almeida Plaintiffs' denial for the reasons previously expressed.  *See supra* notes 26-28.  The record reflects the joint motion was filed in state court case 2011-0142 and so the Court includes it.  *See Jt. Mot. by the Pls. and FDIC-R to Join FDIC-R as Co-Plaintiff and Amend Oct. 10, 2011 J. Accordingly*, Attach. 3 (ECF No. 41-3). However, the Court alters the Almeida Plaintiffs' assertion that this "confirms that only a 50% interest in the three mortgage notes in case 2011-0142 was made and was to be implemented[]" in light of the record.

environmental site assessment (EAS) was to be done "as quickly as possible." *Agreement* ¶ 3.2. Paragraph 3.2 also provided, however, "[u]ntil such time as the FDIC-R completes its [EAS] or otherwise provides authorization in writing, the Foreclosure Auction will not occur." *Id.*; PASMF ¶ 24; DRPASMF ¶ 24.[30]

### D. Events Shortly After the Execution of the Agreement

On August 12, 2014, Francisco Almeida-León, Wanda Cruz-Quiles, the Conjugal Partnership between them, together with the FDIC-R, filed a joint motion seeking to join and name the FDIC-R a co-plaintiff and amend the judgment in KCD2011-0142 as assignment for payment pursuant to the Agreement, which was eventually granted by the state court on February 11, 2016 to include the FDIC-R as a co-plaintiff, but did not amend the final judgement. PASMF ¶¶ 15, 32, 34; DRPASMF ¶¶ 15, 32, 34.[31] Meanwhile, the Almeida Plaintiffs tried to find potential

---

[30] The Almeida Plaintiffs' additional statement of material fact twenty-four asserts:

> Three months after the execution of the "Assignment of Payment", the gentlemen Juan and Francisco Almeida (during October, 2014), through attorney Jairo Mellado, "Demanded" ("*interpeló*") to the FDIC in writing to fulfil its obligation to perform the environmental study, an asserted that the FDIC had incurred and was causing excessive delays in performing the environmental study the FDIC bond itself to perform, and demanded that they proceed immediately with performing its obligations and permit public auction so as to enable payment to the FDIC. No response given to the demand, although many months after a meeting took place where no evidence of an environmental study was provided. Dkt 45-3 Page 79-80/92 ¶ 21; Dkt 45-3 Page 26.

PASMF ¶ 24 (emphasis omitted). The Court omits this assertion as precluded by the doctrine of the law of the case. *See supra* note 15.

[31] The Almeida Plaintiffs' additional statement of material fact fifteen asserts:

> On or about August 12, 2014, assignee, as part of the process to secure **title** "for payment" ("dación para pago"), appeared before the Superior Court of Puerto Rico, San Juan Chambers, and requested that it included as co-plaintiff and co-judgment creditor, as agreed, only and exclusively in case KCD2011-0142 on a 50% of joint undivided tenancy with Mr./Mrs. Francisco Almeida. (**Dkt 45-3 page 77/92, ¶14; Dkt 45-3 page 20-24/92**). The motion was drafted by counsel for the assignee, to accumulate the FDIC as co-plaintiff in State Court case KCD2011-0142; the July 28,

buyers and tenants for the property so as to carry out the Agreement, which the they

2014 Agreement was not appended to the motion. Superior Court requested that the assignment be evidenced, as a condition to grant the motion. Because the assignment Agreement was not submitted to the State Court, the actual disposition of the accumulation matter was delayed until the Court was submitted a copy of the July 28, 2014 Agreement, accumulation took place on early 2016. **Ap.p. 45-3 Page 77/92 ¶ 14; Dkt 45-3 Page 40/92.**

PASMF ¶ 15 (emphasis in original).

WM denies in part and admits in part the Almeida Plaintiffs' statement. DRPASMF ¶ 15. WM's denial is based on multiple grounds. DRPASMF ¶ 15. First, WM says the Almeida Plaintiffs rely on a draft of a motion that is undated, unsigned, unauthenticated, and not admissible. *Id.* Second, WM contends the Almeida Plaintiffs mischaracterize the motion because it was submitted as a joint motion and that the motion's contents show it was assigned for payment. *Id.* According to WM, the Almeida Plaintiffs may be trying to support their dismissed redemption claims. *Id.* WM further argues that the Almeida Plaintiffs' second contention is not supported by record citation. *Id.* As to the Almeida Plaintiffs' last contention, WM admits that the state court did not grant its joinder to the state court action in KCD2011-0142 until February 11, 2016 but denies the rest of the statement as false because it says "[t]he evidence it proffers in support merely constitutes the substitution of FDIC-R with WM Capital- not the addition of FDIC-R into the case[]" and that "[b]y then, FDIC-R had already been joined into the case as a party." *Id.*

While the draft motion is unauthenticated, the Court is not precluded from considering it on summary judgment. *See Perez-Maspons*, 208 F. Supp. 3d at 408-09. However, the record illustrates, contrary to the Almeida Plaintiffs' assertions, the motion was submitted as a joint motion and Francisco Almeida-León, Wanda Cruz-Quiles, and their Conjugal Partnership "assigned for payment to the FDIC-R an undivided one-half interest" in the mortgage notes and judgment of KCD2011-0142. *See Jt. Mot. by the Pls. and FDIC-R to Join FDIC-R as Co-Plaintiff and Amend Oct. 10, 2011 J. Accordingly* at 1-3. The Court alters the assertion to reflect the record. The Court also omits the second portion of the Almeida Plaintiffs' additional statement of material fact because it does not provide a record citation to support it. P.R. Loc. R. 56(e). Lastly, the Almeida Plaintiffs' last contention's record citations only show that WM was substituted for the FDIC-R on March 3, 2016 in the state court case, KCD2011-0142. The Court alters the assertion in light of the record.

The Almeida Plaintiffs additional statement of material fact thirty-four asserts:

> On or about August 12, 2014 Francisco Almeida, his wife Wanda Cruz and Tenerife attempted to present a motion in State Court Case KCD2011-0142 to deposit four mortgage notes, as contemplated in the July 28, 2014 agreement. The Superior Court rejected and did not permit the deposit in Court of the four original Mortgage notes.

PASMF ¶ 34. WM denies this proffered fact as inadmissible under Rule 1002 of the Federal Rules of Evidence as the Almeida Plaintiffs purport to use the affidavit to prove the contents of a writing.

As stated previously, the Court does not find WM's basis for denial persuasive considering it has both cited and submitted the motion the Almeida Plaintiffs reference. *See Jt. Mot. by the Pls. and FDIC-R to Join FDIC-R as Co-Plaintiff and Amend Oct. 10, 2011 J. Accordingly*. At first glance, it is not clear if the Almeida Plaintiffs are referring to the same motion they cite in their additional statement of material fact thirty-one or a separate motion. However, the Almeida Plaintiffs' record citation indicates that it is the same motion they referred to previously as they say it was drafted by the "assignee." The Court alters the assertion to reflect it was a joint motion submitted by the parties. However, the record citation does not support the Almeida Plaintiffs' claim that it was denied, and the Court refines the assertion.

communicated to the FDIC-R.  PASMF ¶¶ 26-28, 33, 35-36, 38; DRPASMF ¶ 26-28, 33, 35-36, 38.[32]

---

[32]     The Almeida Plaintiffs' additional statement of material fact twenty-six asserts:

> Mr. Francisco Almeida and Mr. Juan Almeida, in order to assure that disposition of the realty would generate sufficient funds to fully pay the FDIC's claim and judgment, plaintiffs arranged for and obtained purchasers and tenants for the property to be auctioned, such steps assured that the sale at public auction or at the sale subsequent to the auction, or other business with the property (such as financing with the proceeds of any rent as a source of repayment) would generate sufficient funds to fully pay for the claims of the FDIC with 50% of the sales proceeds.

PASMF ¶ 26.  WM denies this statement.  DRPASMF ¶ 26.  WM argues the proffered fact is not supported by the two portions of the record it cites.  *Id.*  WM avers that the one record citation is a clause within the Agreement "which states that if the property is not bought at the judicial auction, FDIC-R and Plaintiffs would acquire the property and make efforts to sell it."  *Id.*  WM contends the other record citation to Francisco Almeida-León's and Ms. Cruz-Quiles' affidavit is insufficient because it "simply repeats . . . conclusory generalized language."  *Id.*
The Court agrees with WM that the Almeida Plaintiffs' citation of paragraph 3.1.8.3. does not support their assertion.  However, in taking all reasonable inferences in favor of the nonmovant, the Court does not conclude that proffered assertion is too generalized to be considered.  *See supra* note 10.  The Court refines the assertion in light of the record.
The Almeida Plaintiffs' additional statement of fact twenty-seven asserts:

> Specific negotiations were held and agreements reached with the Tenant Auto Grupo Puerto Rico, Mr. Pedro Hernandez, and Gerardo Pascual, and with others alternatively, such as Motor Ambar and Volvo. Additionally, after severe delays in having the public sale of the realty be scheduled, financing was sought and approved with a cooperative, to complete the funds to fully pay the FDIC claim under the judgment, all of which was informed to the FDIC through its counsel Jairo Mellado verbally and in writing.

PASMF ¶ 27.  WM denies this statement. DRPASMF ¶ 27. WM denies the first assertion because it is not supported by a record citation.  *Id.*  WM argues that the second sentence lacks specificity to be admissible under Rule 56(c)(4) of the Federal Rules of Civil Procedure.  *Id.*
The Court agrees that the first assertion is not supported by a record citation contrary to the District of Puerto Rico's local rules.  *See supra* note 8.  However, in taking all reasonable inferences in favor of the nonmovant, the Court does not conclude that entire proffered assertion is too generalized to be considered.  *See supra* note 10.  The Court refines the assertion in light of the record.
The Almeida Plaintiffs' additional statement of material fact twenty-eight is nearly two pages long and neither concise nor short as required by the District of Puerto Rico's local rules.  *See supra* note 8.  Additionally, the proffered facts are not factual; instead, they insert various legal arguments and are otherwise precluded by the doctrine of the law the case.  *See supra* note 8.
The Almeida Plaintiffs additional statement of material fact thirty-three asserts:

> On various occasions, and consistently up to late 2017, the FDIC, its successor WMC and its counsel Mellado, actively prevented plaintiffs could obtain as provisional remedy seizure of the rental income, including having made representations to the Superior Court, the truthfulness of which have not been verified and which is

The state court in KCD2011-0142 required a copy of the Agreement be provided with the joint motion, but one was not provided when the joint motion was filed. PASMF ¶ 18; DRPASMF ¶ 18.[33] The FDIC-R did not wish to conduct the foreclosure

---

> understood to be incorrect. Dkt 45-3 Page 81/92 ¶28. Dkt 45-3 pages 82-83 ¶31;, namely that a Federal Court Order prevents attachment of the rents.

PASMF ¶ 33 (emphasis omitted). WM denies this assertion. DRPASMF ¶ 33. WM believes the assertion is too vague, generalized, and conclusory to be admissible. *Id.*

The Court agrees. The only record citation that supports the Almeida Plaintiffs' assertion is Francisco Almeida-León and Wanda Cruz-Quiles' affidavit which largely mirrors the assertion. However, the record citation fails to provide adequate details as to how the FDIC-R or WM prevented the Almeida Plaintiffs from obtaining rental income or how those alleged representations were incorrect. *See supra* note 7. The Court has noted that the Almeida Plaintiffs' attempted to find buyers and tenants for the Kennedy property.

The Almeida Plaintiffs' additional statement of material fact thirty-five asserts:

> Francisco Almeida-León and his wife have at all times had great interest in making payment to the Co-Owner of the judgment (The FDIC, now WMC) in case K CD2011-0142, and thereby preserve their participation and value therein. Each month, the realty object of execution generates substantial rents (more than $15,000.000 per month, and increased negotiated higher rent), which plaintiffs herein have been deprived of, due to defendant's (WM Capital and its predecessor) breach of contract and that of its successor. Dkt 45-3 page 81/92 ¶30, Dkt 45-3 Page 10 ¶ 3.1.8.4-- "Rental Income", Dkt 108-2 Pages 11 to 29- Judgment.

PASMF ¶ 35 (emphasis omitted). WM denies this proffered statement. DRPASMF ¶ 35. WM says the statement is largely argumentative and conclusory. *Id.* According to WM, the first assertion is subjective, not factual, and subtly tries to aid the Almeida Plaintiffs' redemption claims. *Id.* WM denies the second assertion because it says it is not based on firsthand knowledge and the citation to the Francisco Almeida-León's and Wanda Cruz-Quiles' affidavit does not, in WM's view, generate a sufficient foundation to support its admissibility. *Id.*

The Court disagrees with WM in that a subjective view of a fact precludes it from being considered by the Court since it may be sufficiently based on a fact supported by the record. However, the first assertion in paragraph thirty-five lacks a record citation and violates the District of Puerto Rico's local rules. *See supra* note 8. There is a record citation for the second assertion, but the citation does not support the assertion. Moreover, as highlighted by WM, the assertion fails identify how the Almeida Plaintiffs have the requisite personal knowledge to proffer the claimed amount of deprived rent. *See supra* note 7. The Court notes that the Almeida Plaintiffs attempted to find buyers and tenants for the Kennedy property but omits the assertion's legal conclusions.

The Court omits the Almeida Plaintiffs' additional statement of material fact thirty-six because they provide no record citation. *See supra* note 8. The Almeida Plaintiffs' additional statement of material fact thirty-eight is more than seven pages long and asserts numerous legal arguments. PASMF ¶ 38 ("no need to exhaust the alphabet" in listing the number of ways the Almeida Plaintiffs say WM or the FDIC breached the Agreement). It violates the District of Puerto's local rules and Rule 56 of the Federal Rules. *See supra* note 8. The Court will not consider it. The rules are designed to prevent a party from asserting such an overly-long and argumentative statement.

[33] In their additional statement of material fact eighteen, the Almeida Plaintiffs assert:

pursuant to the Agreement until it was substituted to the state court case KCD2011-0142, which did not happen until February 2016. PASMF ¶¶ 25, 30; DRPASMF ¶¶ 25, 30.[34]

---

> After this case had been filed in State Court; the State Court in case 2011-0142 was supplied with copy of the assignment agreement, which enabled the inclusion of the FDIC as co-plaintiff in said case, copy of the assignment Agreement had been required by the State Court in order to approve and include the assignee as co-party in the case. Dkt 45-1 page 5/92 ¶ 15; Dkt 45-3 page 40/92.

PASMF ¶ 18 (emphasis omitted). WM admits that the state court in KCD2011-0142 did not grant the motion to substitute until February 11, 2016 but denies the rest of the Almeida Plaintiffs' assertion as not adequately supported by the record or admissible evidence. DRPASMF ¶ 18.

While the Almeida Plaintiffs cite a previous opposing statement of material fact, that previous material fact cites the affidavit of Francisco Almeida-León and Wanda Cruz-Quiles. PASMF ¶ 18 (citing, *Opp'n to Mot. for Partial Summ. J., Docket 40*, Attach. 1, *Pls. Statement of Material Uncontested Facts*, at 5, ¶ 15 (ECF No. 45-1) (citing Attach. 3, *Pls. Statement of Material Uncontested Facts*, App., at 75 ¶ 15). The Court considers this permissible but hews the assertion in light of the record.

[34] The Almeida Plaintiffs' additional statement of material fact twenty-five states:

> The FDIC gave no explanation whatsoever, it did not allow the sale at public auction to go forward, did not permit the execution of the judgment, nor did they permit the issuance of any provisional remedy to secure funds and judgment, such as attachment of rents. Subsequently in the year 2017 acquiesced to an attachment of rents which are being deposited in State Court. WMC See Ap.p. 182 to 209, Dkt 45-3 Page 80/92 ¶22. The FDIC represented to State Court that the federal court had prohibited any provisional remedy to be issued. Plaintiffs have never been notified of any such Order by any court, including the US District Court. (Dkt 45-3 Page 79/92 ¶21.)

PASMF ¶ 25 (emphasis omitted). WM admits in part and denies in part this assertion. DRPASMF ¶ 25. WM admits that the "FDIC-R did not consent to foreclose until it had been substituted into the state court case pursuant to the Agreement." *Id.* It denies the remainder of the assertions. It denies the first and third sentence because it is not supported by a record citation. *Id.* It denies the second assertion as "being incomprehensible" and is "only supported by an inadmissible affidavit and inadmissible letter" because the latter contains hearsay. *Id.* WM denies the last sentence because it claims it is based on an inadmissible affidavit. *Id.*

The Court largely agrees with WM. The first and third sentences are not supported by a record citation contrary to the local rules. *See supra* note 8. It is not clear what the second sentence asserts exactly, and the Court cannot determine its legitimacy. The last sentence is not supported by its record citation. *See supra* note 8. The Court includes the proffered statement to the degree the parties agree.

The Almeida Plaintiffs assert:

> After the severe delays incurred by the assignee, early 2016 Mr. Francisco Almeida submitted to the Superior Court copy of the July 28, 2014 assignment agreement, the Superior Court on February 11, 2016 issued an order by which W.M. Capital was included as party to the superior case on a 50% ownership of title to the judgment. In the same Order The Superior Court refused to amended the final judgment. **Dkt 45-3 Page. 81/92 ¶25; Dkt 45-3 Page 40/92.** In other words, having assignee decided since February 2015 that the public sale would not take place, it discontinued all efforts to

## E.     Issues Arise

On November 4, 2014, Francisco Almeida-León's attorney sent an email to the FDIC-R stating his views as to what the Agreement provided and his belief that the FDIC-R was not complying with its obligations.  PASMF ¶¶ 16-17; DRPASMF ¶¶ 16-17.[35]

---

promote, cooperate and enable the public sale to take place, and consequently did nothing to place the State Court in a position to order the inclusion of assignee as party, and to permit the public sale from going forward and taking place. **Dkt 108-2 page 2 entries dated January to February 2015.**

PASMF ¶ 30 (emphasis in original).

WM admits in part and denies in part this assertion. DRPASMF ¶ 30.  It admits that on February 11, 2016, the state court ordered the joinder of the FDIC-R as a party to the case and concluded that the judgment would not be amended.  *Id.*  It denies the other portions of the Almeida Plaintiffs' assertion on several bases.  *Id.*  First, WM argues that the "statement is solely supported by the Affidavit which in turn attempts to prove the contents of [the judg[]ment but the] judgment is not cited in violation" of Federal Rule of Evidence 1002.  *Id.*  WM also says the Almeida Plaintiffs mischaracterize what the judgment states to support their previously dismissed redemption claims.  *Id.*  WM argues that there is no evidence of WM causing "several delays" and that the affidavit the Almeida Plaintiffs utilize lacks personal knowledge, foundation, and "is too amorphous to pass muster." *Id.*

The Court rejects WM's first basis for its denial premised on the Almeida Plaintiffs' reference to the state court judgment as  inadmissible because it fails to cite the state court judgment.  The state court judgment is a matter of record and both parties have used it previously, so the Court refers to the state court judgment as reflected in the record.

However, the claim that there were "several delays" by WM is conclusory and not supported by a record citation, and the Court omits it.  The Court alters a portion of the Almeida Plaintiffs' assertion under the doctrine of law of the case in light of the Court's previous order dismissing the Almeida Plaintiffs' litigious credit and redemption claims.  *See supra* note 15.  The Court omits the last portion of the Almeida Plaintiffs' assertion because the record citation does not adequately support it.

[35]     The Almeida Plaintiffs' additional statement of material fact sixteen reads:

In November 2014 when demands were made for the public sale to do take place and the environmental report be completed and disclosed, the real reason for the delays incurred by assignee commenced to surface. Assignee and its counsel Jairo Mellado were demanding (Dkt 108-2 page 29/31-email dated November 4, 2014 exchanged where Counsel Jairo Mellado was informed that the Tenerife first mortgage would not be waived or assigned) that Tenerife, the holder of the First Mortgage, waived and relinquished its credit, mortgage and judgment( Dkt 85-2 Page 3/8 entry of January 16, 2015 ), or the public sale would be inordinately delayed, because a Phase II study would 6 take a long time. In reality shortly after assignee cancelled and never reinstated a request for e Phase II study of the Realty, Dkt 85-2 page 2/8 entry 02/04/15 and 2/06/15 item 4, Ap.p. 182 to 186. In other words, the inordinate delay was an intentional imposition of damages and breach of contract by Assignee to submit

On January 14, 2016, Francisco Almeida-León sent a letter to the FDIC-R, through counsel, declaring WM "in default under the July 25, 2014, Agreement" on various alleged bases, and FDIC-R's counsel called Francisco Almeida-León's attorney after receiving the letter. PASMF ¶¶ 39, 41-44; DRPASMF ¶¶ 39, 41-44.[36]

---

plaintiffs and Tenerife into waiving the first Mortgage note and judgment. Dkt 85-2 page 2/8 entries for January 29, 2015 and February 4, 2015 ("Phase II has been cancelled").

PASMF ¶ 16 (emphasis omitted). WM denies this statement on multiple grounds. DRPASMF ¶ 16. WM argues the first sentence is argumentative and not supported by a record citation. *Id.* It claims the second assertion is not supported by a record citation. *Id.* WM also argues that the remaining assertions are argumentative and attempt to relitigate issues the Court already decided. *Id.*

The Court largely agrees. The first assertion is not supported by a record citation and is argumentative contrary to the District of Puerto Rico's local rules. *See supra* note 8. The first part of the second assertion is premised on Almeida Plaintiffs' own email to WM arguing their view of what the Agreement provides. The Court refers to the Agreement as needed and notes that an attorney's argument is not a fact. *See supra* note 14. However, the second portion of the second assertion, contrary to WM's position, is adequately supported by a record citation. The Court includes it as reflected in the record but omits its legal conclusions and refines the assertion in light of record. The Court omits the remaining assertions as argumentative and/or precluded under the doctrine of the law of the case. *See supra* notes 8, 15.

The Almeida Plaintiffs' additional statement of material fact seventeen states:

On January 29, 2015 assignee took the deliberate decision not to perform the agreement, to prevent the public sale, to get hold of the rents generated and to sell the loan documents. Dkt 85-2 entries for January 29, 2015("...we need to immediately move toward the sale of our settlement") and February 6, 2016 ("...foreclosure cannot continue unless the guidance changes").

PASMF ¶ 17. WM denies this proffered fact. DRPASMF ¶ 17. WM says it is argumentative and "relies on a statement from an anonymous 'asset manager' at key bank . . .." *Id.* WM also argues that it is based on inadmissible hearsay and is contrary to this Court's prior order on the Almeida Plaintiffs' breach of contract claim. *Id.*

The Court agrees. The record citation does not support the Almeida Plaintiffs' assertion. The assertion is also argumentative or otherwise precluded under the doctrine of the law of the case, and the Court omits it. *See supra* notes 8, 15.

[36]     The Almeida Plaintiffs' additional statement of material fact thirty-nine reads:

In the afternoon of January 14, 2016, Mr. Francisco Almeida sent a letter to the FDIC, through counsel Jairo Mellado, reiterated the inquiries as to the breach of the contract for not having performed the environmental study nor having permitted the public sale on mortgage foreclosure to take place; in the January 14, 2016 letter default was declared on to the FDIC-R, to be effective twenty four hours thereafter. The letter was hand delivered to the FDIC's attorney in the afternoon of January 14, 2016. Dkt 45-3 page 29/92; Dkt 45-3 page 83/92 ¶36.

PASMF ¶ 39 (emphasis omitted). WM admits in part and denies in part this proffered fact. DRPASMF ¶ 39. WM admits the Almeidas sent a letter to WM Capital dated January 24, 2016. *Id.* It denies the remainder of the statement as argumentative and conclusory. *Id.* WM asserts that the first sentence contains no record citation and thus contravenes the District of Puerto Rico's local rules. *Id.* WM argues the second sentence should be disregarded because no personal knowledge or foundation has been established as to how the Almeida Plaintiffs were aware of the letter being delivered. *Id.*

The Court agrees that the first assertion is not supported by a record citation and is argumentative. *See supra* note 8. The Court rejects WM's denial as to the second assertion because they admit that the Almeida Plaintiffs sent the letter. Since the assertion is altered because of the Almeida Plaintiffs' failure to comply with the local and federal rules, the Court need not further modify it under the doctrine of the law of the case.

The Almeida Plaintiffs additional statement of material fact forty-one asserts:

> Only after the delivery of the letter (of January 14, 2016), did Atty. Jairo Mellado place a telephone call to the attorney for the Almeida family inquiring as to the declaration of default, and then for the first time, informed that the FDIC, without prior notice or offer, had sold its community property rights under the judgment, credits and promissory notes, and that then foreclosure sale should immediately be requested and proceed with, because he also represented and informed to represent the purchaser of the 50% ownership of the credit, and judgment on case KCD 2011- 0142, the identity of whom he refused to disclose. 83/92 ¶37; Dkt 45-3 pages 29-30.

PASMF ¶ 41 (emphasis omitted). WM denies this statement. DRPASMF ¶ 41. WM asserts "no explanation as to how Mr. Almeida or Ms. Cruz have personal knowledge of an alleged conversation between Attorney Berríos and Attorney Mellado. To the extent Plaintiffs argue that it can be inferred that they were informed of this conversation by their attorney, it is inadmissible hearsay stated with no personal knowledge." *Id.*

The Court agrees. Although it may be a reasonable inference that that Francisco Almeida-León and Wanda Cruz-Quiles would have personal knowledge from their attorney of the fact that this conversation took place, the content of the attorney's conversation with FDIC-R's counsel would be inadmissible hearsay to the degree the Almeida Plaintiffs are asserting the content for the truth of the communications. FED. R. EVID. 801-02. To be clear, it would be admissible if the Almeida Plaintiffs were part of the conversation, as the FDIC-R's counsel statements would fall under the admission of a party-opponent's agent, FED. R. EVID. 802(1)(2); *United States v. McKeon*, 738 F.2d 26, 33 (2d Cir. 1984); however, there is no indication that the Almeida Plaintiffs were part of the conversation between the two lawyers. Therefore, the content of their attorney's conversation is inadmissible double hearsay because the Almeida Plaintiffs are presenting what their lawyer told them about a conversation he had with someone else. The Court alters the assertion to reflect that the Almeida Plaintiffs' attorney received a phone call from the FDIC-R attorney after their attorney sent a letter on their behalf to FDIC-R.

The Court omits the Almeida Plaintiffs' additional statement of material facts forty-two and forty-three as they depend on the truth of the matters asserted in the conversation in which they were not personally involved. PASMF ¶¶ 42-43. The last assertion of additional statement of material fact forty-three also improperly incorporates legal conclusions and is precluded under the doctrine of the law of the case. PASMF ¶ 43 ("the Almeida Family did thereby, as of that moment, demanded and enforced the right of redemption on the sale performed by the FDIC, as Right of Co-Owner Redemption and right of litigious sale redemption"); *see supra* notes 8, 15.

The Almeida Plaintiffs' additional statement of material fact forty-four asserts:

> In the morning of January 15, 2016, before the 24 hours had elapsed, Mr. Juan Almeida, through his attorney, sent and hand delivered a letter to Atty. Jairo Mellado, informing and conforming that, in light of the information provided by the FDIC-R on

The Almeida Plaintiffs filed a proof of claim with the FDIC-R. PASMF ¶ 46; DRPASMF ¶ 46.[37]

On January 22, 2016, the Almeida Plaintiffs commenced the present lawsuit in state superior court and deposited a bond in the amount of $800,000 to support their redemption claims. PASMF ¶ 45; DRPASMF ¶ 45.[38] The identity of the buyer

---

the sale of its fifty percent undivided interest, Mr./Mrs. Francisco Almeida and Mr. Juan had decided to, were exercising and enforcing the redemption of the joint tenancy and redemption of the debt in dispute, alternatively. Id; Dkt 45-3 page 84/92 ¶40; Dkt 45-3 pages 31-32/92.

PASMF ¶ 44 (emphasis omitted). WM denies this paragraph on two bases. DRPASMF ¶ 44. First, WM argues that the record citation is to Francisco Almeida-León and Wanda Cruz-Quiles' affidavit but they do not indicate how they could have personal knowledge of Juan's actions. *Id.* Second, WM says the statement is argumentative and improperly attempts to relitigate the Almeida Plaintiffs' redemption claims. *Id.*

The Court agrees. It may be a reasonable inference that Francisco Almeida-León and Wanda Cruz-Quiles have personal knowledge of Juan's actions because all three share the same attorney and thus, the attorney could have possibly informed them of Juan's intention. The Court, however, omits the assertion under the doctrine of the law of the case. *See supra* note 15.

[37] The Court omits the vast majority of the Almeida Plaintiffs' additional statement of material fact forty-six because it is neither concise nor short and is argumentative. *See supra* note 8. The Court includes the Almeida Plaintiffs' claim that they filed a proof of claim with the FDIC-R because, contrary to WM's assertion, the Court does not view that assertion as contradicting the law of the case.

[38] The Almeida Plaintiffs additional statement of material fact forty-five asserts:

Immediately thereafter, on/or about January 22, 2016, the present case was commenced before the Superior Court of Puerto Rico against the unknown purchaser, on that same date a bond, in the amount of EIGHT HUNDRED THOUSAND DOLLARS **($800,000.00),** was deposited in court to guarantee payment of the then unknown price paid by the now known purchaser WM Capital, and the actual reasonable expenses incurred by W. M Capital in acquiring the community property. **Dkt 45-3 page 84/92 ¶40 and 41; Judicial Notice, Court Record, attachments to docket 1.**

PASMF ¶ 45 (emphasis in original). WM admits in part and denies in part this assertion. DRPASMF ¶ 45. WM admits that the Almeida Plaintiffs commenced the present lawsuit on January 22, 2016 in state court and that they "alleged that they had secured an $800,000 bond in order to support their redemption claims." *Id.* WM denies the rest of the statement claiming that the Almeida Plaintiffs are trying to relitigate their redemption claims. *Id.*

The record reflects that the Almeida Plaintiffs secured a $800,000 bond "to exercise the right to repurchase . . . against unknown purchasers of a fifty percent undivided interest on a disputed credit . . ." *Not. of Removal*, Attach. 4 (ECF No. 1-4). While WM states it admits this assertion, it qualifies it by admitting "that Plaintiffs alleged that they had secured an $800,000 bond . . .." DRPASMF ¶ 45. The Court rejects this indirect qualification. The Court adheres to its previous orders

of the FDIC-R's interest was not ascertained before the Almeida Plaintiffs filed their

Complaint. PASMF ¶ 47; DRPASMF ¶ 47.[39] On February 4, 2016, WM was

identified as the buyer of the FDIC-R's interest. PASMF ¶¶ 18-19; DRPASMF ¶¶ 18-

19.[40]

and will not relitigate dismissed claims, but in the Court's view, the Almeida Plaintiffs' assertion does not contradict those orders. The Court rejects WM's denial.

[39]    The Almeida Plaintiffs' additional statement of fact forty-seven asserts:

> During January, 2016, Mr. Francisco Leon Almeida, his attorney Antonio Bauzá, and the undersigned Atty. Edilberto Berríos Pérez, inquired and undertook multiple efforts to ascertain the identity of the buyer of the joint Ownership, including asking Atty. Jairo Mellado by telephone and inviting him to a meeting. The identity of the purchaser was not disclosed early enough that the name of the purchaser and the terms of the purchase was known when the complaint that initiates this case was filed. **(Dkt 45-3 Page 85/92 ¶44; Judicial Notice Court Record, original complaint filed against unknown defendant.**

PASMF ¶ 47 (emphasis in original). WM denies this assertion. DRPASMF ¶ 47. It says the statement is only supported by the Francisco Almeida-León's affidavit which lacks sufficient specificity to be considered. *Id.*

The Court rejects WM's denial. The Court agrees that the proffered fact lacks specificity as to how and when these efforts were taken, but it contains sufficient indicia of personal knowledge to be considered, taking all reasonable inferences in favor of the nonmovant. *See supra* note 10. The Court omits the first sentence of the Almeida Plaintiffs' statement because it is not supported by a citation to the record. *See supra* note 8.

[40]    The Almeida Plaintiffs' additional statement of material fact eighteen asserts:

> After this case had been filed in State Court; the State Court in case 2011-0142 was supplied with copy of the assignment agreement, which enabled the inclusion of the FDIC as co-plaintiff in said case, copy of the assignment Agreement had been required by the State Court in order to approve and include the assignee as co-party in the case. Dkt 45-1 page 5/92 ¶ 15; Dkt 45-3 page 40/92.

PASMF ¶ 18 (emphasis omitted). WM admits in part and denies in part this assertion. DRPASMF ¶ 18. WM admits "that the state court in case 2011-0142 granted the Joint Motion to Substitute on February 11, 2016." *Id.* It denies the remainder of the statement as not supported by the record or the record citations. *Id.* The Court includes what WM admits but alters the assertion as it is not adequately supported by the provided record citations. *See supra* note 8.

The Almeida Plaintiffs' additional statement of material fact nineteen states:

> As of this day, March 2018 one Environmental Report has been informed has generated on the EER-IPR Realty since July 16 and 22 2014, which assignee and its counsel had on hand at the closing time. (Dkt 79-1 Pages 37/150; 39/150; 44/150; 48-49/150 lines 20 to 15; Dkt 79-2 pages 32 to 100/100). During the many demands that the Almeidas made to the Assignee demanding compliance with moving forward (See Dkt 45-3 Pages 26 to 32/92), to do perform the environmental study that purportedly had been

On March 3, 2016, WM was substituted for the FDIC-R in KCD2011-0142.

PASMF ¶ 48; DRPASMF ¶ 48. [41] That same month, Francisco Almeida-León

---

commenced before the July 28, 2014 Agreement was signed ( See Dkt 45-3 Page 12/92) first sentence of article 3.2. " The FDIC-R is currently performing a Phase I Environmental Study...."), to report on the progress and findings, and to permit public sale and payment, the assignee never alluded to any action or inaction by the State Court as a purported justification for not performing under the contact. See sworn statement by Mr.-Mrs. Francisco Almeida; Dkt 45-3 Page 79/92 ¶ 16, supra. Assignee nor any of them ever complied with the Agreement in any important way, nor with any significant part of it. Dkt 45-3 79/92 ¶16; Dkt 45-3 Page 88/92 ¶56 to 64 ; Dkt 45-3 Page 83-84/92 ¶34-65. The real reason is admitted in the Comment Log Docket 82-2 (Entries from November 2014 to March 2015), the decision had been deliberately made. Simply, the Public sale of the Realty would not take place, assignee would indefinitely prevent it, obstruct it and breach the Assignment Agreement. Supra. Party substitution in case 2011-0142 had no relation at all with moving forward with the public sale. If there is any doubt, the matter has been adjudicated by State Court (judgment of January 17, 2018 in case 2009-0708, (Ap.p. 1650 to 1669), no evidence is admissible except a reversing appeal judgment; and any remaining factual issue on causation is for the JURY to decide.

PASMF ¶ 19 (emphasis omitted). This statement is neither short nor concise and does not comply with the District of Puerto Rico's local rules. *See supra* note 8. Such a long and partially supported statement of facts makes it difficult for the responding party to object and for the Court to properly analyze the proposed undisputed facts. Moreover, the majority of the assertion is precluded under the doctrine of the law of the case. *See supra* note 15. The last assertion is argumentative, and the Court does not consider it. *See supra* note 8.

[41] The Almeida Plaintiffs' additional statement of material fact forty-eight claims:

Thereafter, on or about February 4, 2016, during a meeting at Atty. Jairo Mellado's offices in Hato Rey, Puerto Rico, Attorney Mellado informed the identity of the purchaser of the participation in the credit of the FDIC in the credits and judgment in case KCD2011-0142, and therefore, co-Owner, as W.M. Capital Management, Inc., located in North Carolina, U.S., also present at the meeting was Mr. Jim Barr Coleman, representative of W.M. Capital . , W.M. Capital Management, Inc. informed **(Dkt 45-3 pages 85/86 ¶45 )**. Also in February 2016, after WM Capital requested disposition of the motion to include the assignee as co-plaintiff, the State Court in case KDC 2011-0142 included assignee as co-plaintiff, and immediately after in March 3, 2016 in turn included WMCM as co-plaintiff in the place of the FDIC. **Dkt 45-3 page 40/92.**

PASMF ¶ 48 (emphasis in original). WM denies in part and admits in part this assertion. DRPASMF ¶ 48. WM admits that it "filed a motion on January 26, 2016 to substitute itself in place of FDIC-R as co-plaintiff in the state court case" which was granted on March 3, 2016. *Id.* WM denies the first portion of the Almeida Plaintiffs' statement because it says the affidavit it relies upon lacks specificity and provides no explanation for how Francisco Almeida-León or Wanda Cruz-Quiles has personal knowledge of this meeting. *Id.* WM further argues that to the degree the Almeida Plaintiffs are attempting to prove the contents of a motion through an affidavit, they are barred under Rule 1002. *Id.*

scheduled an auction to foreclosure on the mortgage notes in KDC2011-0142, WM opposed, and the state court canceled the scheduled auction as being improperly initiated. PASMF ¶¶ 58-59; DRPASMF ¶¶ 58-59.[42]

On April 1, 2016, the Almeida Plaintiffs filed a motion for a provisional remedy in this case, which WM opposed, and which this Court denied. PASMF ¶ 57;

---

The Court agrees. The affidavit lacks adequate foundational details to establish that either Francisco Almeida-León or Wanda Cruz-Quiles were at this meeting. The Court therefore omits the first sentence of the Almeida Plaintiffs' statement of material fact forty-eight. *See supra* note 7. The Court already noted that WM requested it be substituted for the FDIC-R and that its request was granted.

[42] The Almeida Plaintiffs assert:

> Mr. Francisco Almeida, after having redeemed the sale of the 50% ownership participation on the mortgage notes, on the credit and judgment in case KCD2011-0142, on or about March 2016, sought to have the public sale on foreclosure take place, notified the State Court, obtained issuance of the edicts for notice of Public Sale, published the edicts, notified al[l] parties, including WM Capital. **45-3 page 88/92 ¶56**

PASMF ¶ 58 (emphasis in original). WM denies this proffered fact as misleading and false. DRPASMF ¶ 58. First, WM says the Almeida Plaintiffs' only record citation is a single affidavit. *Id.* Second, WM argues "the statement that Francisco Almeida redeemed a 50% 'participation' is a legal conclusion." *Id.* Lastly, WM says the Almeida Plaintiffs "attempt to cover up actions that the state court deemed to be fraudulent." *Id.* (citing docket numbers 45-3 at 43-44).

The Court agrees that the first portion of the statement is a legal conclusion and the Court alters it accordingly. As to WM's second contention, the record provides that the auction was canceled because it was improperly scheduled without Court approval. The state court order reads:

> Having seen the "Urgent Motion to Set Aside Attempted Auction" of April 4, 2016 . . . Our investigation revealed that Francisco Almeida-León and Wanda Cruz-Quiles asked the Bailiffs' Auctions Office to schedule an auction by presenting an order from 2012. This is a very serious irregularity, since they know that the auction scheduled pursuant to that order had been cancelled and that the undersigned judge has not been asked for a new order. With their actions, Almeida and Cruz led a Court functionary to error, moved the judiciary machinery for an improper purpose, and acted behind the Court's back. This sort of action borders on fraud. It is even more surprising that they acted through their lawyers, who are officers of the Court and are subject to a Code of Ethics. Therefore, the auction scheduled for April 20, 2016 is set aside, and the order for execution of Judgment entered on May 24, 2012 is set aside.

*WM Capital's Resp. to Pls.' Mot. for Provisional Remedy (ECF No. 10)*, Attach. 3 at 1-2 (ECF 18-3); *Mot. Submitting English Translation on Exs.*, Attach. 1, at 4-5 (ECF No. 52-1). The Court hews the assertion in light of the record.

DRPASMF ¶ 57.[43]

On May 26, 2016, the state superior court in case KCD2011-0142 held a hearing discussing the foreclosure of the Kennedy property. PASMF ¶ 60; DRPASMF ¶ 60. The parties agreed that the foreclosure should occur but represented their respective differing positions to the state court as to how the foreclosure should proceed. PASMF ¶¶ 29, 61; DRPASMF ¶¶ 29, 61. Francisco Almeida-León and Wanda Cruz-Quiles agreed, as a "stopgap measure," that the public auction could occur, but they reserved all their rights. PASMF ¶¶ 29, 61; DRPASMF ¶¶ 29, 61. The Court ordered that "[t]he plaintiffs must submit a draft order and command that comply with the current law and registration certificate within a 15 days period" and in light of the parties' agreements, the Court annulled the sanctions imposed against Francisco Almeida-León and Wanda Cruz-Quiles. PASMF ¶¶ 29, 61; DRPASMF ¶¶ 29, 61.[44] The Almeida Plaintiffs subsequently sent WM proposed draft orders and

---

[43]    The Almeida Plaintiffs' additional statement of material fact fifty-seven claims, "[o]n April 1, 2016 plaintiffs in docket 10 in this case moved the Court for issuance of a provisional remedy, to enable the foreclosure public sale to take place. Defendant opposed. No disposition of the Motion for Provisional Remedy has taken place." PASMF ¶ 57 (emphasis omitted). WM admits in part and denies in part this assertion. DRPASMF ¶ 57. WM admits the Almeidas filed a Motion for Provisional Remedy, which it opposed. *Id.* It denies the remainder of the statement, claiming that the Almeida Plaintiffs mischaracterize the motion. *Id.* WM argues "the Almeidas speciously sought to get a provisional remedy in the name of WM Capital and presumed that their redemption claims had succeeded," but their motion became moot after their redemption claims were denied. *Id.*

    The record reflects that on April 1, 2016, the Almeida Plaintiffs filed their motion for a provisional remedy. *Mot. For Provisional Remedy, Status* Quo (ECF No. 10). The record establishes that on February 17, 2017, Judge Salvador E. Casellas denied the motion. *Order* (ECF No. 58). The Court accordingly includes the parties' agreement that the motion was filed and opposed but also notes that the Court denied the motion.

[44]    The Almeida Plaintiffs' additional statement of material fact twenty-nine asserts:

    In case 2011-0142 before State Court, on April 26, 2016 an open court stipulation was entered by which WMCM and Mr. Francisco Almeida León contracted to jointly proceed with the public sale of the EER-IPR Realty (Dkt 45-3 Page 54/92, Open Court Stipulation for joint public sale, consistently breached by WMCM ) and then refused to comply with the contract unless a first lien be given to assignee, Dkt 79-4 pages 20-

38

writs to foreclose on the Kennedy Property, while reserving their respective rights in other lawsuits. PASMF ¶ 62; DRPASMF ¶ 62.[45] WM did not agree to the proposed

21/155; Dkt 115-1 Pages 12-13 Lines 23 to 6; Dkt 79-1 Pages 79 to 79 lines 19 to 3. That is the position continued by the Law Office of Mellado and its successive clients preventing the Public Sale of the EER-IPR Realty, and a firm position not to perform the joint public sale, i.e. breach the contractual obligation and cause damages, unless millions of dollars are relinquished in favor of and for the unjust enrichment of assignee, client of the law firm; duress, dollus, extortion and fraud. See Canales vs. Pan American, 112 D.P.R. 329 (1982). As of that time it had been two years of consistent deliberate breach, demanding multi million dollar concessions, as this date May 2018 it has been four years. See; Judgment dated January 17, 2018, pages 1-5, Dkt 108-2 Pages 11 to 29.

PASMF ¶ 29 (emphasis omitted). WM denies this assertion on multiple grounds. DRPASMF ¶ 29. First it says the statement is argumentative and should not be considered. *Id.* Second, it says the state court's order speaks for itself and that the Almeida Plaintiffs are trying to support their redemption claims. *Id.* WM says the second sentence is not supported by a record citation in violation of local rule 56(e). *Id.* Lastly, WM contends the third sentence is argumentative. *Id.*

The Court notes that the record reflects the date in question was May 26, not April 26. *Min. of May 26, 2016 Hr'g.* It is also not clear if Francisco Almeida-León or Wanda Cruz-Quiles was present at the meeting in state court regarding KCD2011-0142. The minutes state that "Counselor Berrios reports that he spoke briefly with his client in the Courtroom . . .." *Id.* at 8. In viewing the record in light most favorable to the nonmovant, the Court concludes Francisco Almeida-León and Wanda Cruz-Quiles were present and have the requisite personal knowledge. The Court refers to the minutes from the state court hearing for clarity and refines the Almeida Plaintiffs' assertions in light of the record. The Court agrees with WM that the second assertion lacks a record citation and is argumentative. The last assertion is also argumentative, and the Court omits it. *See supra* note 8.

The Almeida Plaintiffs' additional statement of material fact sixty-one states:

At the May 26, 2016 court hearing a **stipulation and agreement** was reached by and between WM Capital and Mr/Mrs Almeida to take the realty to Public Sale as a provisional remedy, to mitigate damages, without waiving any rights and reserving any and all rights on the redemption. **Id., 45-3 page 89/92 ¶ 58, page 54/92; supra.**

PASMF ¶ 61 (emphasis in original). WM admits in part and denies in part this assertion. DRPASMF ¶ 61. It admits that the hearing took place and says the hearing minutes speak for itself. *Id.* It denies "[a]ny subjective characterization" by the Almeida Plaintiffs. *Id.* WM says the hearing's minutes show the Almeida Plaintiffs were not present at the hearing, and thus can have no personal knowledge as to what transpired. *Id.* WM explains "[t]he parties were both in favor of foreclosing on the property and depositing the proceeds in federal court. However, a disagreement existed as to [the GMAC Note." *Id.* WM says no final agreement was reached. *Id.*

In viewing the record in the light most favorable to the nonmovant, the Court concludes Francisco Almeida-León and Wanda Cruz-Quiles were present and have the requisite personal knowledge. The Court refers to the hearing's minutes to reconcile the parties' characterizations and as needed.

45       The Almeida Plaintiffs assert:

In conformity with the stipulation, a draft of a proposed Order was sent to attorney for WM Capital, Jairo Mellado, to approve the wording, including a citation of the Open

orders and writs because it disagreed with how the notes encumbering the Kennedy

Property should be handled at the foreclosure auction and in light of its view of the

Agreement's obligations.  PASMF ¶ 63; DRPASMF ¶ 63.[46]

---

Court Stipulation **to take the realty to public sale as a provisional remedy**, to mitigate damages, Mr./Mrs Almeida and Mr. Juan Almeida reserving any and all rights and remedies under the redemption notified and filed in court. **45-3 page 89/92 ¶60; Pages 53 to 55; and 66 to 70.**

PASMF ¶ 62 (emphasis in original).  WM admits in part and denies in part this proffered fact. DRPASMF ¶ 62.  WM admits that the Almeida Plaintiffs sent drafts of proposed writs of execution and orders.  *Id.*  WM denies the remainder of the proffered fact "to the extent it makes conclusory legal assertions and arguments."  *Id.*

The Court largely rejects WM's denial because it does not view the latter portion of the Almeida Plaintiffs' statement as asserting improper conclusions,  but as asserting that the orders reserved the parties' rights.  The Court omits "to mitigate damages" in light of the record and because it is a legal conclusion.

[46]    The Almeida Plaintiffs claim:

WM Capital, through its attorney Jairo Mellado refused to approve any wording of a proposed order for public sale unless the holder of the first rank senior mortgage note, Tenerife, Corporation would waive, and for free cancels the millionaire first mortgage note it holds over the realty to be taken to public sale on the junior mortgage notes. **Id. (reference to the GMAC mortgage Note in the demand by W M Capital Dkt 45-3 page 69-92 item 4) and Dkt 108-1 page 68- title study, Judgment of January 17, 2018, Ap.p. 1650-1669.** In other words, WM Capital expressly, terminally and unequivocally refused to comply with the July 28, 2014 assignment agreement, and with the Stipulation entered in Open Court on May 26, 2016 ( **Id) unless and until plaintiffs would give WMCM millions of dollars that WMCM insists in extorting. See 33 LPRA §5261.** The menace WMCM threatened with has been enforced, WMCM has prevented the public sale of the EER Realty to take place because the demands for value to be given have not been met. See Judgment of January 17, 2018, Dkt 108-2 Pages 11 to 29 of 31, **Specially pages 13 to 15 of docket 108-2.**

PASMF ¶ 63 (emphasis in original). WM admits in part and denies in part this assertion.  DRPASMF ¶ 63.  WM admits "the foreclosure could not take place due to a disagreement between the parties." *Id.* WM denies the remainder of the statement.  *Id.*  WM says it and the Almeida Plaintiffs "filed informative motions expressing their versions of what occurred" and there was a disagreement over the first ranked mortgage note, the GMAC note, which WM believes "should be deposited and canceled upon sale as per the Agreement."  *Id.*  WM argues the documents cited by the Almeida Plaintiffs "are unsigned, unauthenticated documents marked 'draft-for discussion purposes only'" and thus, are inadmissible.  *Id.*  WM says the last sentence of the Almeida Plaintiffs' should be disregarded because it is argumentative and conclusory.  *Id.*

The fact that the documents the Almeida Plaintiffs cite are draft motions and are not unauthenticated does not preclude the Court from considering them.  *See supra* note 17.  While WM denies the remainder of the proffered fact, the substance of the Almeida Plaintiffs' first sentence is that WM believes the GMAC Note should be canceled upon sale of the realty.  This conforms with the informative motions filed by WM and the Almeida Plaintiffs that WM cites.  *See Mot. Submitting English Translation On Exs.*, Attach 1., *Informative Mot. On Efforts Of WM To Comply With The Order*

On July 1, 2016, Tenerife sent a letter to the WM asserting that the FDIC-R

had breached its contractual obligations and claiming that WM was in default under

the Agreement. PASMF ¶¶ 40, 64; DRPASMF ¶¶ 40, 64.[47]

---

*By The Court And Execute The J. Delivered On October 10, 2011 And Hr'g Request*, at 19-20, ¶ 4 (ECF No. 52-1). The Court adopts but alters the Almeida Plaintiffs' assertion to omit editorializations and legal conclusions. The Court omits the Almeida Plaintiffs' last sentence because it includes both legal conclusions and arguments and is premised on a state court's findings of fact that the Court cannot consider. *See supra* note 22.

[47]      The Almeida Plaintiffs aver:

> On July 1 2016 Tenerife tendered a letter to WMC through Jairo Mellado admonishing that WMC has again breached the contractual obligations by demanding as a condition for complying with having the public sale, that Tenerife waives its rights and gives its property rights to WMCM, and **default was declared onto WMCM**. **Dkt 45-3 page 48-49/92.** Tenerife resolved the July 28, 2014 agreement. The Almeidas did not resolve the July 28, 2014 Agreement. Supra.

PASMF ¶ 40 (emphasis in original). WM admits in part and denies in part this assertion. DRPASMF ¶ 40. It admits that on July 1, 2016, Tenerife sent a letter to the FDIC-R "declaring the Agreement to be resolved." *Id.* It denies the remainder of the assertion as being argumentative, conclusionary, and failing to provide a record citation. *Id.*

     The Court accepts WM's admission that Tenerife sent it (or FDIC-R) a letter on July 1, 2016, declaring the Agreement to be resolved. The Court omits the Almeida Plaintiffs' legal conclusions and arguments contained in their statement and those assertions not adequately supported by a record citation. *See supra* note 8.

     The Almeida Plaintiffs' additional statement of material fact sixty-four asserts:

> Tenerife, through letter dated July 1st 2016 **(Dkt 79-4 pages 20 to 21 of 155 )**, declared WM Capital in default under the July 28, 2014 Agreement for its demand that Tenerife waive and give WM Capital over a million dollars to enable the public sale, effective in 24 hours. Tenerife **resolved** the July 28, 2014 Assignment of 50% for Payment contract, effective on that date. **Id, and Docket 79-4 page 20 and 21, such has been adjudged was correct in law see Judgment of January 17, 2018, Dkt 108-2 Pages 11 to 29.**

PASMF ¶ 64 (emphasis in original). WM admits in part and denies in part this proffered fact. DRPASMF ¶ 64. WM admits Tenerife sent a letter dated July 1, 2016. *Id.* It denies on hearsay grounds the remainder of the sentence to the degree the Almeida Plaintiffs attempt to provide the truth of the letter's contents and it asserts that the record contains no evidence that Francisco Almeida-León or Mrs. Wanda Cruz-Quiles have personal knowledge of the letter or its contents. *Id.*

     Taking the facts in the light most favorable to the nonmovant, the Court assumes the Almeida Plaintiffs proffered assertions about the July 1 letter are not for their truth, but to prove notice to WM. *See Jenks v. N.H. Motor Speedway*, No. 09-CV-205-JD, 2012 WL 274348, at *3 (D.N.H. Jan. 31, 2012). Additionally, as a member of Tenerife, it is a reasonable inference that Francisco Almeida-León had a sufficient amount of personal knowledge as to Tenerife's actions. *See supra* note 10. The Court alters the assertion to omit legal conclusions and the Court omits the last portion of the assertion because it is based on a state court's finding of fact. *See supra* note 22.

On August 16, 2017, WM filed a motion to intervene as a co-plaintiff in the state court in case KCD2009-0708, Tenerife opposed, and on January 17, 2018, the state court denied the motion. PASMF ¶¶ 31, 65-66; DRPASMF ¶¶ 31, 65-66.[48] WM

---

[48] The Almeida Plaintiffs' additional statement of material fact thirty-one reads:

> The Superior Court in case 2011-0142 early 2016 (when Francisco Almeida submitted the evidence the Court demanded) acknowledged the FDIC's 50% interest in proceeds of the judgment for payment, and approved the transfer of the 50% joint participation resulting from the July 2014 signed contract. Dkt 45-3 Page 81/92 ¶26; Dkt 45-3 page 40. While the US District Court decreed that assignee WMCM is not a joint owner of the judgment in case 2011-0142 or in the three mortgage notes foreclosed therein, Dockets 56 and 57. Subsequently on January 17, 2018 the Superior Court in case 2009-0708 issued a Final Judgment against WMC denying joinder/intervention of WMC as co-plaintiff, there the Court honored the decree by this Court that WMC is not co Owner of any of the notes or judgments. The State Court in January 17 2018 Judgment in case 2009-0708 declared, among other things, that WMC has breached the July 28, 2014 Agreement and that Tenerife correctly Resolved said contact. Dkt 108-2 page 11 to 29; this Motion Ap.p. 1650 to 1669.

PASMF ¶ 31 (emphasis omitted). WM admits in part and denies in part this assertion. DRPASMF ¶ 31. It admits that the state court, in case KCD2011-0142, joined the FDIC as a co-plaintiff, and that in state court case KCD2009-0708, the state court denied its motion to join as a co-plaintiff. *Id.* It denies the remainder of the Almeida Plaintiffs' statement as argumentative and conclusionary. *Id.*

The Court previously noted that the FDIC was joined as a co-plaintiff but the judgment in KCD2011-0142 was not amended; the Court will not repeat it. The Almeida Plaintiffs' record citation does not wholly support their assertion and the state court order itself contradicts their characterization. PASMF ¶ 31 (citing docket number 45-3, page 81 of 92, ¶ 26 (citing App. at 37)). Lastly, the Court includes the state court's conclusion denying WM's motion to intervene in KCD2009-0708 but omits its finding of facts for the reasons previously explained. *See supra* note 22.

The Almeida Plaintiffs; additional statement of material fact sixty-five reads:

> On August 2017 WMCM requested intervention/accumulation as party plaintiff in case Tenerife v. Emerito Estrada Rivera Izusu PR Case #2009-0708. The matter was fully litigated in State Court and on January 17, 2018 a final Judgment was entered denying WMCM´s request for intervention/accumulation. Id. *Doral Mortg. Corp v. Alicea*, 147 DPR 862, 870 (1999).

PASMF ¶ 65 (emphasis omitted). WM admits in part and denies in part this assertion. DRPASMF ¶ 65. WM admits it filed a motion for intervention in the state court case KCD2009-0708. *Id.* (*citing Mot. Submitting English Translations*, Attach. 2, *Mot. to Add WM Capital As Co-Pl.* (ECF 132-2). It denies the remainder of the assertion as improperly attempting to argue that the state court's judgment has a preclusive effect under res judicata. *Id.*

The Court includes the assertion that WM filed a motion to intervene in the state case KCD2009-0708 as WM admits. The Court omits that the second assertion as argumentative. *See supra* note 8.

The Almeida Plaintiffs' additional statement of material fact sixty-six reads:

filed a motion for reconsideration, which was denied.  PASMF ¶¶ 68-70; DRPASMF

¶¶ 68-70.[49]

---

In August 2017 WMCM filed in case Tenerife v. EER-IPR 2009-0708 a request for Intervention/accumulation of WMCM as coplaintiff, and invoked its rights under the July 28, 2014 Assignment of 50% for Payment, and submitted an appendix in support thereof. Tenerife opposed the intervention/accumulation and also submitted an appendix which included the transcript of the Oral deposition to WMCM taken on May 11, 2017 (part of docket 79-1 in this case, and all attachments thereto. WMC replied with yet additional documents, evidence and arguments. The Superior Court of Puerto Rico in case KCD 2009-0708 issued a Final Judgment dated January 17, 2018, to which WMC, Tenerife and Mr. Francisco Almeida are parties. The Final Judgment denied the intervention/accumulation requested by WMC. Said Judgment made several necessary findings of fact, as well as holds and decrees that WMC was twice correctly declared in default under the July 28, 2014 Assignment Agreement. Further decreed that Tenerife rightfully and correctly resolved the July 28, 2014 Assignment Agreement. See Judgment of January 17, 2018, Dkt 108-2 pages 11 to 29. RES JUDICATA/*/*binding effect, Full Faith and Credit. *Doral Mortg. Corp v. Alicea*, 147 DPR 862, 870 (1999).

PASMF ¶ 66 (emphasis omitted).  As the Court previously stated, the parties agree WM filed a motion for intervention, Tenerife opposed, and the motion was denied.  The Court notes, however, that this statement is neither concise nor short contrary to the District of Puerto Rico's local rules.  *See supra* note 8.  Moreover, it is argumentative and improperly asks this Court to take as true another court's findings of fact.  *See supra* note 8, 22.  The first two sentences are also not supported by a specific citation to the record.  *See supra* note 8.  Accordingly, the Court disregards the remainder of the statement.

[49]  The Almeida Plaintiffs' additional statement of material fact sixty-eight asserts:

> WMC requested reconsideration, was provided opportunity to submit additional evidence, Tenerife opposed the requested reconsideration and submitted evidence of the continuous dollus, fraud and abuses sustained by WMC and its agents, including the **August 21, 2017 RULE 11 Letter** with its large appendix. WMC did not deny, dispute or attempted to rebut the evidence submitted of its prolonged fraudulent conduct. State Court **denied WMC's Request for reconsideration on May 11, 2018. Ap.p. 1667-1669.**

PASMF ¶ 68 (emphasis in original).  WM admits in part and denies in part this assertion.  DRPASMF ¶ 68.  WM admits that the state court denied its motion for reconsideration but says it appealed that decision.  *Id.*  WM denies the rest of the Almeida Plaintiffs' assertions because it says they are argumentative, conclusory, nonfactual, and because it "it fails to comply with the Anti-Ferret Rule because all it does is cite to a letter by the Almeidas' attorney and 'its large appendix' without citing to a specific page."  *Id.*

The Court includes the assertion that WM's motion for reconsideration was denied as the parties agree.  The Court omits the rest of the assertion because it is not supported by a specific citation to the record.  *See supra* note 8.  Their letter dated August 21, 2017, is twenty-four pages long.  *See Pls.' App.* at 182-204.  Their "large" entire appendix is over 1,600 pages.

The Court omits the Almeida Plaintiffs' additional statement of material fact sixty-nine as it is precluded under the doctrine of the law of the case and is argumentative.  *See supra* notes 8, 22.

## IV. THE POSITIONS OF THE PARTIES

### A. WM's Memorandum

WM contends that under the clear terms of the Agreement and pursuant to Puerto Rico contract law, it is entitled to be paid first from the proceeds of the foreclosure sale of the Kennedy Property. *WM's Mot.* at 1-2. According to WM, the controversy centers around how the proceeds from the sale of the Kennedy property should be distributed among the parties. *Id.* at 2. WM asserts:

> The Court should enter summary judgment ordering (1) that WM Capital can proceed with the judicial sale of the property, (2) the deposit of all the proceeds from said judicial sale in this Court, and (3) distribute the proceeds first to WM Capital up to the full amount of its judgment against Juan Almeida León.

*Id.*

WM argues that the Court must determine whether the contract is ambiguous, which under Puerto Rico law is defined as if the contract is "reasonably susceptible to more than one interpretation," but if the Court finds no ambiguity, it should "proceed to interpret the contract." *Id.* at 6-7 (citing *Torres Vargas v. Santiago Cummings,*149 F.3d 29, 33 (1st Cir. 1998); *Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo Inc.*, 96 F.3d 10, 15–16 (1st Cir. 1996)). WM asserts "the Agreement is susceptible to only one interpretation - the FDIC-R (now WM Capital) has the right to liquidate the mortgage notes to receive the first proceeds from the sale of the property up to the full payment of its judgment against Juan Almeida León." *Id.* at

---

The Court also omits the Almeida Plaintiffs' additional statement of material fact seventy as argumentative. *See supra* note 8.

7.

WM "expects the Almeidas to resort to using their fully-controlled entity - Tenerife- as their primary cudgel to oppose this Motion by insisting that it plays a limited role in the Agreement[,]" but WM maintains that "this argument . . . is futile for several reasons." *Id.* at 8. According to WM, "the Almeidas and Tenerife all signed the Agreement. All of them are jointly defined as the "Parties" . . . [and] the Parties each represented and warranted to having read the Agreement, having understood its contents fully, and having had the opportunity to consult with their counsel prior to signing it." *Id.* WM says the parties agreed "that the Agreement is to satisfy the judgment obtained by the FDIC-R (now WM Capital) against Juan Almeida" and WM would be paid first out of the sale proceeds. *Id.* at 8-9 (citing *Agreement* ¶¶ 3.1.7, 3.1.8.3; P.R. Laws Ann., tit. 31 § 3471). WM highlights the "procedure to satisfy" WM's "judgment against Juan Almeida-León." *Id.* at 9. According to WM, "[t]he first step in this procedure involved Almeidas **and Tenerife** assigning for payment ("dación para pago") an undivided one-half interest in the all the Kennedy Notes, the GMAC note, and the GMAC judgment." *Id.* (emphasis in original). WM argues this procedure would be "rendered meaningless" if Tenerife were entitled to being paid first out of the Kennedy property sale proceeds. *Id.*

In sum, WM says "the Agreement is only susceptible to one reasonable interpretation that the FDIC-R (now WM) is to be made whole from the proceeds of the sale of the property before the Almeidas and/or Tenerife receive a single penny." *Id.* at 10.

## B. The Almeida Plaintiffs' and Tenerife's Opposition Memoranda[50]

### 1. Res Judicata and Collateral Estoppel

The Almeida Plaintiffs argue that the Puerto Rico Court of First Instance issued a "final judgment" in Tenerife's state court case, KCD2009-0708, which declared that WM had breached it contractual obligations and was in default. *Pls.' Opp'n* at 2. The Almeida Plaintiffs say WM's counterclaim for specific performance is mooted by the state court order because it ended this case's controversy. *Id.* at 3. They contend, as reflected in the state court order, that WM cannot seek specific performance because it failed to comply with its obligations under the Agreement. *Id.* at 4 ("[U]nder applicable State law, a party to a contract must have complied with the contract to be able to demand performance"). The Almeida Plaintiffs claim the state court order "predates the Opinion and Order in docket 105 [and] [a]s a matter of fact, no Judgment has been entered on Dkt #105." *Id.*

The Almeida Plaintiffs aver that the state court order must be given effect under the doctrines of res judicata and collateral estoppel. *Id.* at 12-13. According to the Almeida Plaintiffs "WMC, Tenerife and Francisco Almeida are '**parties to the State Court Judgment**' . . . (although WMC never became a general '**party to the**

---

[50]        Tenerife's opposition memorandum primarily relies on the Almeida Plaintiffs' arguments in their own opposition memorandum. *Tenerife's Opp'n* at 1. Outside of incorporating the Almeida Plaintiffs' arguments, Tenerife directs the court's attention to the state court order denying WM's motion to intervene. *Id.* at 1-3. Tenerife asserts the Court should dismiss the claim against Tenerife because there is a "lack of subject matter jurisdiction, since the controversy alleged by WM Capital is fictional, and continuing to proceed against Tenerife would be a violation of constitutional principles of due process and takings jurisprudence." *Id.* at 3. According to Tenerife, "[t]he Commonwealth Court Judgment ended the controversy between WM Capital and Tenerife, precluding this Honorable Court from exercising jurisdiction due to the lack of any case of controversy, and establishing without a doubt that the controversy presented by WM Capital is fictitious." *Id.* at 4.

**case**' precisely because intervention/partial substitution was denied); i.e. there is identity of parties, and issues (compliance with the . . . Agreement, and default incurred by WMC . . . fro[m] which reason collateral estoppel . . . and *res* judicata . . . are applicable." *Id.* at 5 (emphases in original).

The Almeida Plaintiffs assert that "[t]he laws of Puerto Rico establish a presumption that the content of a judicial decree or judgment is true, which presumption may only be rebutted by a reversing judgment on appeal." *Id.* at 7 (emphasis omitted). The Almeida Plaintiffs cite the state court's various findings and contend:

> Based on adjudicated presumed facts and law determined by the State Court Final Judgment, WMC substantially breached its obligations under the July 28, 2014 Assignment Agreement, it was correctly declared in default twice (once by Francisco and Juan Almeida and another by Tenerife), Tenerife correctly resolved the July 28, 2014 Assignment Agreement. WMC, Tenerife and Mr. Francisco Almeida are all parties to that Judgment.

*Id.* at 9-10. "The State Court Final Judgment collaterally estops inconsistent arguments by WMC[]" according to the Almeida Plaintiffs. *Id.* at 13 (citing *Allen v. McCurry*, 449 U.S. 90, 104-05 (1980) (emphasis in original)). The Almeida Plaintiffs further maintain that under the Full Faith and Credit clause, the Court must give effect to the state court order and should "at least stay or abstain while the State Court Judgment becomes firm." *Id.* at 6. They argue "WMC's request runs afoul of the Penal Code of P.R. and the U.S. Constitution as it pretends to deprive the appearing plaintiffs of their right to Trial by Jury (ample triable facts are present)." *Id.* at 10.

## 2.     Lack of Jurisdiction and Standing

The Almeida Plaintiffs argue WM lacks standing, and the Court has no jurisdiction over WM's counterclaim because of the state court order concluded WM was in default. *Id.* at 2. In the Almeida Plaintiffs' view, the state courts "have exclusive jurisdiction over the *res* as those cases predate this case. While this case is not about mortgage foreclosure, the ability to enforce the judg[]ment depends on the *in rem* public sale in the State Court cases." *Id.* at 5 (italics in original). The Almeida Plaintiffs say they are, and have been willing, to conduct the public sale in the state court case KCD2011-0142 on three of the assigned mortgage notes, but WM has refused. *Id.* at 11. The Almeida Plaintiffs write:

> WMC has been flaunting to this court an apparent controversy and facts, while behind the record and stage has acted **as the State Court determined and concluded in the State Court Final Judgment**, i.e. obstructed the public sale extorting money and property it is not entitled to (Criminal extortion, 33 L.P.R.A. §5261). All the other actions displayed by WMC and its counsel have been to disguise the true events, purpose and illegal goal. **See MUF number 38 letters a to s**, pages 18 to 24 of the Statement of Material Uncontested Facts(MUF) appended to this Motion. The sham continues.

*Id.* at 17 (emphasis in original). The Almeida Plaintiffs contend this case presents fictious controversy because:

> WMC filed a complaint in this case on behalf of Tenerife, rendering Tenerife an "Involuntary Plaintiff". There WMC selected the facts, pleadings and causes of action that as defendant WMC wished Tenerife to file, present and prosecute against WMC itself; see **docket 108** and *Alicea v. Cordoba*, 17 D.P.R. 676 (1986)(a cause of action is property). WMC and this Court performed a Judicial Taking against Tenerife, **see docket 108, see Ap.p. 193 ¶1)**. That way WMC is both plaintiff and defendant presenting a fictitious factual, legal and controversy against itself, that is not real, **all with the deliberate intent of depriving all plaintiffs of their rights and property thereby defrauding** them

48

and the Court.

*Id.* at 18 (emphasis in original).  The Almeida Plaintiffs say they have outlined all of

this in their Rule 11 letter to WM's counsel.  *Id.* at 19-20 (listing the Rule 11 letter's

contents and arguments).

### 3. Colorado River Abstention Doctrine

The Almeida Plaintiffs assert that the Court should abstain from adjudicating

WM's counterclaim pursuant the United States Supreme Court in *Colorado River*

*Water Conservation District v. United States*, 424 U.S. 800 (1983) (the Colorado River

Abstention doctrine).  *Id.* at 5-6 & n.6.  The Almeida Plaintiffs argue the Court must

apply a two-part test under the Colorado River Abstention doctrine and contend that

test is met here because the proceedings are sufficiently parallel to each other and

exceptional circumstances are present to justify abstention.  *Id.* at 14-15.  The

Almeida Plaintiffs lay out various factors which "strongly emphasize[] abstention and

remand to State Court."  *Id.* at 15.  The Almeida Plaintiffs expand on one of these

factors, the adequacy of the forum:

> Docket 63 has been ignored for over a year just to be also brushed aside
> without a breath of rectification. See also dockets 115 and 108. As the
> record stands, it is this federal Court which has shown on record is not
> adequate to protect the rights of the parties. While the State Court
> acknowledged and applied clear evidence and admissions of party
> opponent, which had been long shouting on this record of highly
> improper conduct by WMC and blatant abuse of the process. Evidence
> this Court had on record for a long time, but consistently ignored it and
> brushed it aside.  Abstention will redeem the Court's dignity, the respect
> for State law and forms, and send a clear message.

*Id.* at 16 (emphasis omitted).

### 4. Anti-injunction Act

The Almeida Plaintiffs aver:

> WMC also requests an injunction for plaintiffs not to act in their own case before State Court. 28 U.S.C. §2283 commands that "[A] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Considering also principles of equity, comity, and federalism, it is not wise to cause a clash between the two judicial systems.

*Id.* at 7 (citations omitted); *id.* at 12.

### 5.  WM's Burden

Lastly, the Almeida Plaintiffs argue that WM has not met its burden:

> In docket 119 WMC did not submit nor refer to any sworn statement or equivalent, nor referred to any on the record. WMC purposely distorts the record by conflating facts, parties, rights and property. Such is another step in the long concatenation of deceit, dollus and fraud that WMC has embarked on . . . . The issue presented by WMC is fictitious, it is WMC who obstructs the public sale of the Real Estate, as was determined in the State Court Final Judgment . . . .
>
> WMC's controversy is a sham, is fictitious, and consists of wrongful intentional representations to both courts by WMC and its counsel. The true correct facts consist of deliberate extortion by WMC against Plaintiffs using the court as its involuntary ignorant conspirator. Plaintiffs had to document, consolidate the evidence and provide WMC and its counsel with every opportunity, but neither has rectified. This Court's repeated disregard of the facts evidenced by plaintiffs and disregard of the clear cut unequivocal State Law forced a more detailed ascertaining, and longer period, a detailed organization and documentation of the frauds committed by WMC, to assure that Plaintiffs could actually have an opportunity to be **actually heard by this Court**, really attaining a mental comprehension of the words spoken. A State Court judgment provides the additional reliability as to what is the actual truth, although WMC says the State Court Final Judgment and the fraudulent criminal conduct **it decrees are immaterial (see Dkt 122 page 9-22)**.

*Id.* at 20-21 (emphasis in original).  The Almeida Plaintiffs argue that their Rule 11

50

letter and the state court order show there is a genuine issue of material fact, and WM has not met its initial burden because its statement of material facts did not incorporate an affidavit or a statement of a witness with personal knowledge. *Id.* at 22-23.

### C.    WM's Reply

WM emphatically objects to what it deems to be Almeida Plaintiffs' improper use of summary judgment proceedings to pursue meritless "*ad hominem*" attacks against it and counsel. *WM's Reply* at 3 (italics in original). WM asserts it will pursue available remedies in the future in light of these assertions. *Id.*[51] WM contends the Almeida Plaintiffs improperly attempt to use their Rule 11 letter to oppose summary judgment, contrary to the intent and scope of Rule 11 under the Federal Rules of Civil Procedure. *Id.* at 6-8.

WM contends the Almeida Plaintiffs' opposition memorandum "presents little

---

[51]    WM contends that the Almeida Plaintiffs distort the background leading to their Rule 11 Letter. *Id.* at 5. WM says:

> Plaintiffs never sent a Rule 11 letter as claimed in the Opposition. The letter that they refer to is just a response to a Rule 11 letter sent by WM Capital to attorney Edilberto Berríos-Pérez on August 16, 2017. That letter was sent after Plaintiffs filed the Supplemental Motion at ECF No. 79 resorting to unwarranted ad *hominem attacks*. There, Plaintiffs claimed that WM Capital and its attorneys supposedly engaged in "deceit, dolus, and fraud". ECF No. 79 at p. 9. When WM Capital sent attorney Berríos-Pérez the letter of August 16th, 2017, it complied with Federal Rule of Civil Procedure 11(b), including the corresponding draft of the proposed Motion for Sanctions as provided by Federal Rule 11(c). With this letter WM Capital gave an opportunity to attorney Berríos-Pérez to withdraw the unfounded allegations from ECF No. 79. Instead of backing down, plaintiffs and their legal counsel doubled down. They sent a response letter on August 21, 2017, that could not be construed as a Rule 11 letter since it did not comply with the terms of the rule. For instance, it neglected to include the proposed motion for sanctions against WM Capital and the undersigned attorneys.

*Id.* at 5-6 (citations omitted).

substance to oppose WM Capital's request for specific performance." *Id.* at 3. WM says it fully complied with its obligations under Federal Rule of Civil Procedure 56, having supported "[e]ach and every fact proposed [with] the corresponding reference to documents that are part of the record of this Court." *Id.* at 8. Because the critical evidence consists of "self-authenticating" documents, WM says it was not necessary to include an affidavit in addition to the references to the record and lists the various documents and records it cites in support of its motion. *Id.* at 8-9.

WM believes the Almeida Plaintiffs' other arguments lack merit. *Id.* at 4. WM argues the Almeida Plaintiffs "misidentify the ruling from the GMAC Court. It is not a judgment but merely a resolution denying WM Capital's petition to be joined as a party plaintiff." *Id.* at 10. Moreover, WM maintains the Almeida Plaintiffs have asserted this argument previously, but there is still "no perfect identity between the things, the causes action and the parties." *Id.* WM dismisses the Almeida Plaintiffs reliance on *Parrilla v. Rodriguez*, 163 D.P.R. 263 (2004), and asserts that "*Parrilla* does not decide that a state court judgment automatically creates a presumption in favor of the prevailing party that can only be defeated by its reversal [but rather explains res judicata's requirements.]" *Id.* at 12.

WM argues the Colorado River Abstention Doctrine is not applicable. *Id.* at 12-14. WM explains in *Colorado River*, the Supreme Court held:

> [A] federal district court may properly dismiss a federal suit due to the presence of a concurrent state proceeding [and] identified four (4) factors for assessing whether such a dismissal is warranted: 1) whether either Court has assumed jurisdiction over a *res*; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; and 4) the order in which the forums obtained jurisdiction.

*Id.* at 13 (emphasis omitted). Although no one factor is determinative, WM contends that subsequent caselaw focuses particularly on "the danger of piecemeal litigation." *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 19 (1982); *Ramirez v. Skeete*, 671 F. Supp. 892, 893 (D.P.R. 1987)). WM notes the Supreme Court later added two more considerations, "whether state or federal law controls" and "the adequacy of the state forum to protect the parties' rights," *id.* at 14 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24), and states "the First Circuit has also considered the vexatious or reactive nature of the federal lawsuit." *Id.* (citing *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 947 F.2d 529, 532 (1st Cir. 1991)). According to WM, the Colorado River Abstention doctrine is inapplicable because "[t]his case and the two (2) state court cases (the GMAC and Kennedy cases) are different cases, involving different parties and different causes of action." *Id.*

WM rejects Almeida Plaintiffs' argument of lack of standing as meritless because it is based on inapplicable pronouncements by the state court in Tenerife's case before that forum and runs against the Court's dispositive opinions and orders in this case. *Id.* at 15-16. WM argues its "standing does not come from the ownership of the notes as plaintiffs claim . . . . Its standing to request specific performance comes from the Agreement, which gives it a right to liquidate the mortgage notes and receive the proceeds from the sale under its terms and conditions." *Id.* at 16.

WM clarifies the nature of its counterclaim and says the controversy is not fictitious because while the parties both wish to sell the Kennedy property, they disagree on how the sale should proceed pursuant to the Agreement. *Id.* at 16-17.

WM makes clear that "Tenerife was joined to this case because it is a party to the Agreement. . . WM Capital's counterclaim . . . includes allegations against Tenerife . . . . specifically request[ing] that Tenerife comply with the Agreement . . . so that the foreclosure could proceed[;] [a]ny other interpretation . . . is unwarranted." *Id.* at 18.

Lastly, WM states it has not requested this Court to enjoin the state court. *Id.* at 18-19. WM asserts it "is requesting this Court to order the Almeida Plaintiffs and Tenerife - not the GMAC or Kennedy Courts - to comply with the Agreement and take all the necessary steps to foreclose on all the mortgage notes." *Id.* at 19. Alternatively, WM argues, if the Court views its request as seeking an injunction, the Anti-injunction Act's exceptions apply because the Court has jurisdiction over the Agreement, which provides for how WM's judgment against Juan Almeida-León will be satisfied. *Id.* at 20.

### D.    Tenerife's Sur-reply

Noting that a party may raise subject matter jurisdiction at any time, Tenerife argues that the Court lacks subject matter jurisdiction over the matter at hand. *Tenerife's Reply* at 2. Tenerife contends that the Puerto Rico Court of First Instance "has exclusive in rem jurisdiction over all matters related to the foreclosure of the GMAC Note, which is the object of Tenerife's state court case." *Id.* Furthermore, according to Tenerife, the "State Court's Judgment" issued in Tenerife's case before that forum "pre-dated and precluded this Court from continuing to exercise subject matter jurisdiction and to issue the Opinion and Order of March 19, 2018 . . . . The State Court Judgment is binding upon this Honorable Court." *Id.* Tenerife says the

Rule 11 Letter is "supported by hard evidence, including the admission of party opponent which precludes this Court from exercising jurisdiction [and the state court] concluded that WMCM required Tenerife to surrender its multimillion dollar asset . . . that such conduct was in breach of the agreement, and therefore Tenerife correctly rescinded the contract." *Id.* at 3.

## V.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if it "has the potential to change the outcome of the suit." *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010).  A dispute is "genuine" if a rational factfinder could resolve the dispute in favor of either party. *Mu v. Omni Hotels Mgmt. Corp.*, 882 F.3d 1, 5 (1st Cir. 2018) (citations omitted).  Once the moving party has supplied this evidence, the non-movant must "produce 'specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (quoting *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994)).

The non-moving party must "present 'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993)).  The Court then "views the facts and draws all

reasonable inferences in favor of the nonmoving party." *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011). The Court "afford[s] no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.'" *Tropigas*, 637 F.3d at 56 (citations omitted).

### B. Specific Performance

WM's counterclaim is for specific performance. *See WM's Counterclaim* ¶ 16 (citing 31 L.P.R.A. § 3052). "Obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." P.R. Laws Ann., tit. 31 § 2994. Courts "cannot relieve one party of fulfilling what it obliged itself in a contract, when this contract is legal and valid, and does not contain any vice." *Roosevelt Cayman Asset Co. II v. Colon*, Civil No. 16-1265, 2010 WL 90349, at *4, 2017 U.S. Dist. LEXIS 4723, at *10-11 (D.P.R. Jan. 9, 2017) (citations omitted). "[W]hen in a bilateral contract one of the contractors does not comply with its obligation, the other has the right to choose between the specific performance of the contract or the resolutions of the obligation of indemnification for damages and payment of interests in both cases." *Colon*, 2017 WL 90349, at *4; *see* P.R. Laws Ann., tit. 31 § 3052.[52]

---

[52]

The right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him. The person prejudiced may choose between exacting the fulfilment of the obligation or its rescission, with indemnity for damages and payment in either case. He may also demand the rescission, even after having requested its fulfilment, should the latter appear impossible.

P.R. Laws Ann., tit. 31 § 3052.

For section 3052 to apply, "the unfulfilled obligation must be the principal one," such that it "exhibits both mutuality and essentiality—what one might term mutual essentiality." *Dopp v. Pritzker*, 38 F.3d 1239, 1243-44 (1st Cir. 1994) (citing *Ramirez v. Club Cala de Palmas*, 123 D.P.R. 339 (1989); *Ponce v. Vidal*, 65 P.R.R. 346, 351 (1945)) (internal quotation marks omitted). In other words, "the unfulfilled obligation must be reciprocal . . . meaning 'there are obligations and correlative obligations so interdependent between themselves that one is the consequence of the other, and the performance of said obligation by a contracting party constitutes the motive of the contract for the other party, and vice versa.'" *Castillo-Perez v. Bosques-Cordero*, No. CV 10-1584 (JAF/BJM), 2011 WL 13233491, at *9 (D.P.R. July 15, 2011), *report and recommendation adopted*, No. CV 10-1584 (JAF), 2011 WL 13233446 (D.P.R. Aug. 30, 2011) (quoting *Pritzker*, 38 F.3d at 1243; *Dopp v. HTP Corp.*, 947 F.2d 506, 511 (1st Cir. 1991)). If satisfied, then a claimant can select either specific performance or rescission, and in both instances ask for accessory damages, but "[w]here the unfulfilled obligation is not reciprocal, the plaintiff is entitled to recover full damages, but is not entitled to resolution." *Id.* (citations omitted).

## VI.    DISCUSSION[53]

### A.    The Agreement is Unambiguous

---

[53]    Under Local Rule 5(g), "[a]ll documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English . . .." D.P.R. LOC. R. 5(g); *see also Redondo Const., Co. v. Izquierdo*, 929 F. Supp. 2d 1, 9 n.13 (D.P.R. 2012) (quoting *Puerto Ricans for Puerto Rico Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir. 2008) ("Where a party makes a motion based on a decision that was written in a foreign language, the party must provide the district court with and put into the record an English translation of the decision[]")). In compliance with this directive, the Court cited Puerto Rico state cases where the parties complied with this rule but not where the parties failed to do so.

Under Puerto Rico contract law:

> [C]ontracting parties will be bound by their contractual obligations, which must be fulfilled in accordance with the terms of the agreement. If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, then the literal terms of the contract will be observed, and a court should not look beyond the literal terms of the contract. Under Puerto Rican law, an agreement is clear when it can be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation. To be clear, the contract has to be sufficiently lucid to be understood to have one particular meaning . . . . Moreover, when interpreting contracts, it is critical that courts read its provisions in relation to one another, giving unclear provisions the meaning which arises from considering all provisions together. The contract's stipulations should be interpreted in relation to one another, giving to those that are doubtful the meaning which may appear from the consideration of them together. Further, a court may state the meaning of a contract on summary judgment if the agreement is clear on its face.

*Plaza Carolina Mall, L.P. v. Municipality of Barceloneta*, 91 F. Supp. 3d 267, 282–83 (D.P.R. 2015) (case citations and internal quotation marks omitted) (citing §§ 2994, 3471, 3475). "[T]here is no need to go beyond the language of a contract when the intentions of the parties are clear." *Hopgood v. Meryll Lynch, Pierce, Fenner & Smith*, 839 F. Supp. 98, 106 (D.P.R. 1993). In other words, extrinsic evidence is inadmissible to refute the intent of the parties as stated in the clear terms of a contract. *Id.* at 106 ("the clear terms of a contract are given preference over subsequent allegations because these terms are supposed to represent in the first place the real intent of the parties at the time they entered into the contract"); *see also Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo, Inc.*, 96 F.3d 10, 15-16 (1st Cir. 1996) (quoting *Hopgood*, 839 F. Supp. at 104) ("several courts have interpreted Article 1233 to be 'strict in its mandate that courts should enforce the literal sense of a written contract,

unless the words are somehow contrary to the intent of the parties'").

The Court concludes the Agreement is clear and unambiguous. The parties, defined as Juan-Almeida-León, Francisco Almeida-León, Wanda Cruz-Quiles, the Conjugal Partnership Almeida-Cruz, Tenerife, and the FDIC-R, stipulated that Juan-Almeida-León, the "Borrower", Francisco Almeida-León, Wanda Cruz-Quiles, and their Conjugal Partnership Almeida-Cruz, the "Co-Holders", and Tenerife would "assign to the FDIC-R . . . an undivided one-half interest in each of the Kennedy Notes, GMAC Note, and GMAC Judgment." *Agreement* ¶¶ 1.1, 3.1.2. The four mortgage notes identified in the Agreement are to be consigned[54] to the Foreclosure Action in state court. *Id.* ¶¶ 2.3 (defining *Francisco Almeida-León, Wanda Cruz Quiles, conjugal partnership Almeida-Cruz v. Emerito Estrada Rivera-Isuu de PR, Inc.*, case number KCD2011-0142 as the "Foreclosure Action"), 3.1.2 ("The Kennedy Notes and GMAC Note will be consigned by the FDIC-R, Co-Holders and Borrower to the State Court in the Foreclosure Action as of the date of the execution of this Agreement . . ..").  This procedure was designed to fulfill the Agreement's primary objective—to satisfy the FDIC-R's judgment against Juan-Almeida-León.

The Agreement further provides if the Kennedy Property was sold to a third party, the FDIC-R—now WM—receives "the proceeds of such sale up to the full amount of the Judgment . . . immediately paid first . . .." *Id.* ¶ 3.1.7. After payment in full to the FDIC-R, the Almeida Plaintiffs are entitled to receive "any excess sale proceeds" from the sale of the Kennedy Property. *Id.* Under paragraph 3.1.8, the

---

[54]     Consign means "[t]o transfer to another's custody or charge." *Consign*, BLACK'S LAW DICTIONARY (10th ed. 2014).

parties also stipulated to how they would proceed if the Kennedy Property was not sold for the agreed upon minimum bid. *Id.* ¶¶ 3.1.6 (defining minimum bid amount), 3.1.8. Still, under that procedure, once the Kennedy Property was sold, the FDIC-R receives "all amounts owned under the Judgment from the first sale proceeds paid by the purchaser." *Id.* ¶ 3.1.8.3.

The Court also concludes there is an unfulfilled reciprocal obligation. Here, the obligations are interdependent such that "the performance of said obligation by a contracting party constitutes the motive of the contract for the other party, and vice versa." *Castillo-Perez*, 2011 WL 13233491, at *9. The FDIC-R agreed to dissolve its injunction and have its federal judgment against Juan-Almeida-León satisfied in a stipulated manner so long as its judgment was paid first and full, and the Almeida Plaintiffs and Tenerife agreed to this stipulation to have the injunction dissolved, for the FDIC-R's judgment against Juan-Almeida-León to be satisfied, and to receive excess proceeds from the sale of the Kennedy Property.

Notably, neither the Almeida Plaintiffs nor Tenerife argues the Agreement is ambiguous. Instead, they allege that in the negotiations leading to the Agreement, Tenerife never agreed to forego its title and interest to the GMAC Note—the senior lien over the Kennedy Property—but WM managed to include it in the Agreement and Tenerife and the Almeida Plaintiffs signed the Agreement without realizing this incorporation. *Pls.' Opp'n* at 18. (citing *App.* at 182-208).

The Court is unpersuaded. First, as previously explained, the Court does not consider the Almeida Plaintiffs' Rule 11 letter as evidence of a genuine factual

dispute; instead the letter proffers various legal arguments and allegations in response to WM's Rule 11 letter. *See Tropigas de Puerto Rico, Inc.*, 637 F.3d at 56. Second, "the Puerto Rico Supreme Court has made clear that good faith on the part of contracting parties is always presumed, and one seeking to rely on [contractual deceit] to invalidate a contract must rebut the presumption of good faith with evidence of intentional fault or bad faith.*" Citibank Glob. Markets, Inc. v. Rodriguez Santana*, 573 F.3d 17, 29 (1st Cir. 2009) (internal quotation marks omitted) (quoting *Citibank, N.A. v. Dependable Ins. Co.*, 121 P.R. Dec. 503, 21 P.R. Offic. Trans. 496, 506, 512 (1988) (citing *Canales v. Pan Am.,* 112 D.P.R. 329, 12 P.R. Offic. Trans. 411 (1982))); *Garcia Lopez v. Mendez Garcia*, 102 D.P.R. 383, 2 P.R. Offic. Trans. 481, 481 (1974) (stating the general rule is that fraud is not presumed and that the claimant must show fraud with reasonable certainty, but not conclusive proof).

Apart from the Almeida Plaintiffs' and Tenerife's accusations, the Court has not been presented with probative evidence confirming that WM concealed or disguised the Agreement's contents as they claim.[55] Indeed, the Agreement provides, and the parties signed, that they had "read [the] Agreement and know[ ] and understand[ ] its contents fully and has voluntarily executed [it] after having had the opportunity to consult with counsel of their choosing, and without being pressured or influenced by any representation or any person acting on behalf of either party." *Agreement* ¶ 3.3.  In taking all reasonable inferences in their favor, the Almeida

---

[55]     Tenerife, in its motion for summary judgment on WM's counterclaim, claims WM engaged in fraud and contractual deceit, based on WM not disclosing the status of the environmental study, not for it allegedly disguising the Agreement's contents. *Tenerife's Mot. for Summ. J.*, at 8 & n.6, 14 (ECF No. 108).

Plaintiffs and Tenerife failed to rebut this presumption and the Agreement is otherwise clear and unambiguous.

## B. Res Judicata And Collateral Estoppel

The Almeida Plaintiffs spend a considerable amount of their memorandum arguing WM is precluded from pursuing its counterclaim because it breached its obligations under the Agreement, for which the Almeida Plaintiffs then rescinded the Agreement, and which they say has been adjudged by the state court in denying WM's motion to intervene. *Pls.' Opp'n* at 2, 4-14.

This argument lacks merit. As the Court explained in its order denying Tenerife's motion for summary judgment on WM's counterclaim, *Order on Tenerife's Mot. For Summ. J.*, the state court's order does not have a preclusive effect on this court under either res judicata or collateral estoppel principles. In *Universal Insurance Company v. Office of the Insurance Commissioner*, the Court of Appeals for the First Circuit stated:

> According to the doctrine of res judicata, a final judgment on the merits precludes parties from relitigating claims that were or could have been brought in a prior action. A federal court must give preclusive effect to a state-court judgment if the state court would. . . . . A party asserting res judicata under Puerto Rico law must establish (i) the existence of a prior judgment on the merits that is final and unappealable; (ii) a perfect identity of thing or cause between both actions; and (iii) a perfect identity of the parties and the capacities in which they acted. A prior and current action will share a perfect identity of thing if they involve the same object or matter and will share a perfect identity of cause if they flow from the same principal ground or origin or, put another way, if they derive from a common nucleus of operative facts. Perfect identity of parties exists when the parties in current action were also parties in the prior action.

755 F.3d 34, 37-38 (1st Cir. 2014) (citations and internal quotation marks omitted)

The Almeida Plaintiffs highlight what the Court views as dicta in the state court's order, which they deem to constitute res judicata and claim divests this Court of subject matter jurisdiction. *Pls.' Opp'n* at 10, *Tenerife's Reply* at 2-3. The Court has ruled that the state court order is not a final judgment on the merits but an order denying WM's request to intervene as party plaintiff in Tenerife's state court case. *Order on Tenerife's Mot. For Summ. J.* at 52. The state court's holding was a procedural, not substantive adjudication on the merits. *Id.* The findings Tenerife and the Almeida Plaintiffs' seize on are dicta and do not have a preclusive effect on this Court. *See id.* (citing *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 965 (2017) (quoting *Jama v. Immig. and Cust. Enf't,* 543 U.S. 335, 352 (2005) ("dicta 'settles nothing'"); *see also Grenier v. Town of Shrewsbury*, 52 F. Supp. 3d 149, 162-63 (D. Mass. 2014))).

In addition, res judicata does not apply because there is no perfect identity as to either the object or cause of the cases and no perfect identity of the parties. *Universal Ins. Co.*, 755 F.3d at 38. The state court cases concern the collection of money and execution of a mortgage. The Almeida Plaintiffs framed this case as a breach of contract case with litigious credit and co-owner redemption claims against WM. WM's counterclaim seeks specific performance under the Agreement. WM has never been a party to Tenerife's state court case. Nor is collateral estoppel applicable because the two cases involve different parties and different issues. *Morón-Barradas v. Dep't of Educ. of Com. of Puerto Rico,* 488 F.3d 472, 479 (1st Cir. 2007); *Grajales v. Puerto Rico Ports Auth.*, No. CV 09-2075 (PAD), 2018 WL 1726247, at *6 (D.P.R. Mar.

30, 2018) (citations omitted).

Accordingly, res judicata and collateral estoppel do not preclude the Court from awarding WM's counterclaim for specific performance.

### C. The Colorado River Abstention Doctrine

Under the *Colorado River* Abstention doctrine, federal courts may "in limited instances [ ] stay or dismiss proceedings that overlap with concurrent litigation in state court." *Jiménez v. Rodríguez-Pagan*, 597 F.3d 18, 21 (1st Cir. 2010). Nonetheless, "concurrent federal-state jurisdiction over the same controversy does not generally lessen the federal court's virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id.* at 27. "This duty, however, is not absolute, and departure from it is permitted in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest." *Nazario-Lugo v. Caribevision Holdings, Inc.*, 670 F.3d 109, 114 (1st Cir. 2012). "The crux of the Colorado River doctrine is the presence of 'exceptional' circumstances displaying 'the clearest of justifications' for federal deference to the local forum in the interest of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 115 (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-19 (1976)).

In determining the doctrine's applicability, the Court must first analyze if there is parallel litigation. *See Bacardi Int'l Ltd. v. V. Suarez & Co.*, 719 F.3d 1, 14 (1st Cir. 2013); *Hatteras Yachts*, 947 F.2d 533. If there is a parallel state action, federal courts then apply the "exceptional-circumstances test" to determine whether

a case warrants the application of that doctrine, based on "considerations of wise judicial administration that counsel against duplicative lawsuits." *Jiménez*, 597 F.3d at 27. Under this test, the Court considers a list of factors:

> (1) whether either court has assumed jurisdiction over a res; (2) the geographical inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*Id.* at 27-28 (citation and internal brackets omitted). In considering these factors, the Court is mindful that "exceptional-circumstance test" favors exercising federal jurisdiction. *Nazario-Lugo*, 670 F.3d at 116 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16). Thus, the "decision to yield federal jurisdiction under the *Colorado River* doctrine must rest on the clearest of justifications displayed by exceptional circumstances." *Id.* (citation omitted).

The Almeida Plaintiffs say the Court should abstain:

> [Because the] State Courts have assumed exclusive jurisdiction over the Res; 2) the federal forum is not convenient, it does not have and may not attain jurisdiction over the res, which is the mechanism by which the judgment is to be enforced; 3) the presence of this cases forces fractional disposition of the controversies and even worse disjunctive appeals and enforcement of any judgment through several courts and jurisdictions; 4) State Court fi[r]st obtained jurisdiction in every single case and judicial action, this case was removed from State Court; 5) there is only and exclusively State Law controlling; and 6) the State Court has in fact already adjudicated a significant portion of the controversy by final judgment, while this Court has not issued any final judgment.

*Pls.' Opp'n* at 16. The Almeida Plaintiffs focus on their last point and assert, "[t]he preliminary judgment issued in dockets 56 and 57 is openly contrary to crisp, clear,

unambiguous, exactly binding State Law and precedent . . . As the record stands, it is this federal Court which has shown on record is not adequate to protect the rights of the parties." *Id.*

The Court concludes it should not abstain from continuing to exercise jurisdiction over this case. First, for many of the same reasons that res judicata and collateral estoppel are not applicable, there is an absence of parallel actions in this Court and in the state court cases to warrant abstention. Though there does not have be perfect identity between the issues and the parties to invoke the *Colorado River* Abstention doctrine, the state and federal proceedings need to address substantially the same legal issues involving the same claims and the same parties. *See Barcardi Int'l Ltd.*, 719 F.3d at 14-15; *Rojas-Hernandez v. Puerto Rico Elec. Power Auth.*, 925 F.2d 492, 496 (1st Cir. 1991). As noted earlier, Tenerife's state court case is about the collection of money and execution of mortgage note against EER-IPR. WM has never been a party in Tenerife's state court case. In the other state court case, WM is a co-plaintiff with the Almeida Plaintiffs against EER-IPR but that case is also about the collection of money and execution of mortgage notes against EER-IPR. EER-IPR is not a party to this case. The Almeida Plaintiffs initiated this case asserting breach of contract, litigious credit, and co-owner redemption claims against WM, seeking damages among other remedies, and what remains is WM's counterclaim seeking specific performance against the Almeida Plaintiffs and Tenerife. The Agreement is the sole object of this case, and it is not an object in either state court case. This is the only forum currently resolving the parties' respective

obligations under the Agreement. While these cases are interrelated to a degree, that is neither uncommon nor what the *Colorado River* Abstention doctrine is designed to avoid. *Rojas-Hernandez*, 925 F.2d at 496 ("[This] narrow exception exists only where piecemeal adjudication gives rise to special complications").

Even assuming the two state court cases and this case are sufficiently parallel, in light of factors the Court must consider in deciding whether to yield federal jurisdiction, the factors are at best balanced. On one hand, the state courts have jurisdiction over the Kennedy property, a res, both predate this litigation, and state law controls because the Court sits in diversity and because there is no federal question present. Contrary to the Almeida Plaintiffs' assertion, even though the state courts have jurisdiction over the res, the forum is not inconvenient because the second factor looks at "geographical inconvenience." *Jiménez*, 597 F.3d at 27-28. This forum is not inconvenient since all forums are in the San Juan metropolitan area of Puerto Rico. *See Moreno v. Doral Fin. Corp.* 719 F. Supp. 2d 194, 197 (D.P.R. 2010). The Court rejects the Almeida Plaintiffs' argument that the sixth factor, the adequacy of the state forum to protect the parties' interest, supports abstention.

The Almeida Plaintiffs say, "it is this federal Court which has shown on record is not adequate to protect the rights of the parties." *Pls.' Opp'n* at 16. Parties' disagreements with a Court's prior rulings does not demonstrate that it is an inadequate forum to protect the parties' rights. This contention neglects the fact that neither state court action is adjudicating the present parties' respective obligations under the Agreement and whether WM is entitled to specific performance. The

Almeida Plaintiffs also overlook that this case was properly removed to this Court and the record does not illustrate this removal was based vexatious or contrived reasons. "[O]ur task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction . . . rather, the task is to ascertain whether there exist 'exceptional' circumstances . . . . justify[ing] the surrender of that jurisdiction." *Moses H. Cone Mem'l Hops.*, 460 U.S. at 25-26.

Abstention is not warranted because there are no parallel actions, the parties and causes of action in the three cases are different, the object of the instant case— the execution of the Agreement—is being litigated only here, and because there are otherwise no exceptional circumstances to justify this Court surrendering jurisdiction.

### D. Lack of Standing

According to the Almeida Plaintiffs,

The lack of standing by WMC is multidimensional, i.e.: it does not have the rights upon which its request is premised; it may not file the complaint on behalf of Tenerife; it sustains it is not owner of any portion of any mortgage note; it is not a party to a contract with Tenerife; it may not invoke in rem jurisdiction or related remedy (foreclosure is an in rem remedy before the State Court). The Final Judgment of January 17, 2018 decrees that WMC substantially breached the July 28, 2014 Assignment Agreement and was correctly declared in default. As per the laws of P.R. a party may not demand performance of a contract unless it has in fact performed. Having WMC defaulted under the July 28, 2014 Assignment Agreement, having the default been declared, having the declaration of contract default been adjudged as legally and correctly performed, WMC may not demand performance under the contract. WMC does not have the right to request the remedy it invokes; thus it lacks standing for that additional reason. The only admissible evidence to the contrary is a reversal judgment on appeal.

*Pls.' Opp'n* at 2-3 (citations and emphasis omitted).

The Court disagrees. First, WM clearly meets the standing requirements to request specific performance of the Agreement as its counterclaim entails allegations of "injury, causation, and redressability." *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012). An injury is concrete only if it "actually exist[s]." *Spokeo, Inc. v. Robins,* 36 S. Ct. 1540, 1543, (2016); *Hochendonor v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016) (citing *Spokeo*, 136 S. Ct. at 1549-50) ("[W]hen an alleged injury is nothing more than 'a bare procedural violation,' there may be no cognizable harm to the plaintiff and thus no concreteness"). WM's injury "actually exists" as it has not been able to satisfy its judgment against Juan Almeida-León as contemplated by the Agreement. This injury was caused by Tenerife and the Almeida Plaintiffs' refusal to follow the Agreement's terms, for which WM seeks specific performance.

Second, dicta pronounced in Tenerife's state court case denying WM's motion to intervene does not undermine WM's standing to pursue its counterclaim before this Court.

Finally, the Almeida Plaintiffs' contention that WM "does not have the rights upon which its request is premised" goes against the Court's Opinion and Order denying the Almeida Plaintiffs' co-owner redemption claim. *See Order on Litigious Credit and Co-Owner Redemption Claims*. This argument is belied by the case's record, which establishes that WM purchased from the FDIC-R its rights to the assets that are the object of the Agreement, and as such, WM is a rightful assignee. *See Agreement* ¶ 3.4 ("This Agreement shall be binding upon the Parties and their heirs, personal representatives, successors, assigns, and/or affiliates").

### E. Fictitious Counterclaim and Subject Matter Jurisdiction

The Almeida Plaintiffs assert that WM's counterclaim is "fictitious" because WM is the party that impeded the foreclosure sale of the Kennedy Property and that the state court in Tenerife's state case has resolved the controversy. *Pls.' Opp'n* at 4-5, 18, 20. The Almeida Plaintiffs also contend that WM's claim is fictitious because it "filed a complaint in this case on behalf of Tenerife, rendering Tenerife an "Involuntary Plaintiff[.]" *Id.* at 18. Tenerife likewise claims, "the action filed by WM Capital against Tenerife, by bringing the appearing party as an 'involuntary plaintiff' into this action, should be dismissed for lack of subject matter jurisdiction since the controversy was already decided by the Commonwealth Court at the behest of WM Capital." *Tenerife's Reply* at 3. Tenerife says the state court order "ended the controversy between WM Capital and Tenerife, precluding this Honorable Court from exercising jurisdiction due to the lack of any case of controversy, and establishing without a doubt that the controversy presented by WM Capital is fictitious." *Id.* at 4.

The parties dispute what mortgage notes are included in the Agreement and how the proceeds from the foreclosure sale of the Kennedy Property should be divided and in what order. The record illustrates the parties agreed to move forward with the foreclosure sale in question but disagreed on how they would proceed regarding the execution of the GMAC note—the first rank lien over the Kennedy Property—and the order of payment of the proceeds of the foreclosure sale. As the Court has previously explained, the state court's order denying WM's motion to

intervene in Tenerife's state court case does not have a preclusive effect on this case and therefore, this action does not lack controversy to resolve. *Cf. Ford v. Bender*, 768 F.3d 15, 29 (1st Cir. 2014) (quoting *Shelby v. Superformance Int'l, Inc.*, 435 F.3d 42, 45 (1st Cir. 2006) ("A case generally becomes moot when the controversy is no longer live or the parties lack a legally cognizable interest in the outcome")). Nor did the state court's order alter this Court's jurisdiction over this case under 28 U.S.C. § 1332(a).

The Almeida Plaintiffs' and Tenerife's argument that Tenerife being joined to this litigation renders WM's counterclaim "fictitious" lacks merit. WM's request to join Tenerife was vigorously litigated by the parties. *See Mot. to Join Indispensable Party* (ECF No. 35); *Opp'n Mot. to Join Party (DKT. #35)* (ECF No. 36); *WM Capital's Reply in Support of its Mot. to Join Tenerife LLC as an Indi[s]pensible, Necessary Party to this Litigation* (ECF No. 39); *Op. & Order* (ECF No. 61); *Mot. to Join Tenerife Real Estate Holdings, LLC Pursuant to Rule 20 of the Federal Rules of Civil Procedure* (ECF No. 68); *Order* (ECF No. 72). In essence, the Court denied Tenerife's motion for joinder as indispensable party under Rule 19 but granted its motion for joinder as Co-Plaintiff and Counter-Defendant under Rule 20, since it was a party to the Agreement that is the object of this case. *Op. & Order* at 7. That joinder does not render WM's counterclaim "fictitious", and to the degree Tenerife and the Almeida Plaintiffs question Tenerife being joined to this litigation, the Court's rulings in that respect are the law of the case and the Court sees no basis to disturb them.

### G.    Anti-Injunction Act

Lastly, the Almeida Plaintiffs assert that WM "requests an injunction for plaintiffs not to act in their own case before State Court[,]" in violation of the Anti-Injunction Act, 28 U.S.C.A. § 2283.  *Pls.' Opp'n* at 7.  WM responds it is "requesting this Court to order the Almeida Plaintiffs and Tenerife—not the GMAC or Kennedy [State] Courts—to comply with the Agreement and take all the necessary steps to foreclose on all the mortgage notes[,]" not an injunction.  *WM's Reply* at 19.

Under § 2283, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Because WM is not seeking an injunction to stay either state court proceedings, the Anti-Injunction is not applicable.

## VII.  CONCLUSION[56]

The Court GRANTS WM Capital Management Inc.'s Motion for Summary Judgment (ECF No. 119).  The Court ORDERS WM Capital Management, Inc. to submit a proposed judgment consistent with this order within seven days of the date of this order.  The Court further ORDERS the Plaintiffs Francisco Almeida-León, Wanda Cruz-Quiles, and their Conjugal Partnership, and Co-plaintiff Tenerife Real

---

[56]    The case's record reveals an extremely acrimonious litigation process. In support of their opposition to WM's motion for summary judgment, the Almeida Plaintiffs make various references to an alleged letter under Rule 11(c) to WM regarding multiple acts of "deceit, dollus and fraud" by WM and counsel.  *Pls.' Opp'n* at 20.

WM counters that it is Plaintiffs who have committed improper acts worthy of a letter under Rule 11(c), which they in fact sent to plaintiffs through counsel, and intend to pursue further remedies in the future. *WM's Reply* at 4-7.  The Court will not address this controversy, as it is not pertinent to the adjudication of the motion for summary judgment at hand.

Estate Holdings, LLC to file any specific objections to the proposed judgment within seven days of WM Capital Management, Inc.'s filing of the proposed judgment.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 8th day of May 2019.