## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| FRANCISCO ALMEIDA-LEÓN et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 3:16-cv-01394-JAW-BJM |
| WM CAPITAL MANAGEMENT, INC., | ) ) ) | |
| Defendant. | ) ) | |

### ORDER ON POST-JUDGMENT MOTIONS

By this post-judgment order, the Court grants a motion for execution of a final judgment and resolves multiple post-judgment motions, paving the way to the completion of a foreclosure proceeding in this long-running and acrimonious dispute.

## I.    BACKGROUND

To describe the factual and legal background to this complex and bitter dispute would take volumes.  For purposes of this Order, however, the story begins at the end of the lawsuit in this Court.  On May 8, 2019, after over three years of intense litigation in this Court, the Court issued a series of orders in which it granted summary judgment in favor of WM Capital Management, Inc. (WM Capital) and against Francisco Almeida-León, Wanda Cruz-Quiles, their Conjugal Partnership, and Juan Almeida-León (collectively the Almeida Plaintiffs), as well as Tenerife Real

Estate Holdings LLC (Tenerife).[1]  *Order Denying Co-Pls./Counter-Defs.' Mot. to Alter or Amend* (ECF No. 262); *Order on Co-Pl./Counter-Defs.' Mot. for Summ. J.* (ECF No. 263); *Order on Def./Counter-Pl.'s Mot. for Summ. J.* (ECF No. 264); *Am. Order*.  These orders themselves resulted in motions and orders, but on June 27, 2019, the Court issued a final judgment.  *Final J.* (ECF No. 289).  On July 19, 2019, the Almeida Plaintiffs filed a notice of appeal to the Court of Appeals for the First Circuit.  *Notice of Appeal* (ECF No. 301).  The case remains on appeal to the First Circuit.

In virtually all cases, the filing of a notice of appeal, a jurisdictional event, shifts the arena from the trial to the appellate court.  But this case is not all cases.  After the docketing of the Final Judgment, the parties filed sixteen documents of note:

(1)  WM Capital's Emergency Motion for Contempt, Sanctions and Injunction Against the Almeidas dated July 17, 2019, *Emergency Mot. for Contempt, Sanctions and Inj. Against Almeidas* (ECF No. 296) (*WM's Mot. for Contempt*);

(2)  the Almeida Plaintiffs' Response to WM Capital's Emergency Motion for Contempt, Sanctions and Injunction Against the Almeidas dated August 7, 2019, *Resp. to WMC's "Emergency Mot. for Contempt, Sanctions and Inj. Against Almeidas"* (ECF No. 312) (*Almeida Pls.' Contempt Opp'n*);

(3)  Tenerife's Response to WM Capital's Emergency Motion for Contempt, Sanctions and Injunction Against the Almeidas dated August 8, 2019, *Resp. in*

---

[1]  On May 9, 2019, the Court issued an amended order on its order on the Defendant/Counter-Plaintiff's motion for summary judgment to correct a technical mistake.  *Am. Order on Def./Counter-Pl.'s Mot. for Summ. J.* (ECF No. 265) (*Am. Order*).

*Opp'n to Emergency Mot. for Contempt, Sanctions and Inj. Against Almeidas* (ECF No. 315) (*Tenerife's Contempt Opp'n*);

(4)     WM Capital's Reply to the Almeidas' and Tenerife's Motions in Response to Emergency Motion for Contempt, Sanctions and Injunction dated August 22, 2019, *Reply to Almeidas' and Tenerife's Mots. in Resp. to Emergency Mot. for Contempt, Sanctions and Inj.* (ECF No. 327) (*WM's Contempt Reply*);

(5)     the Almeida Plaintiffs' Response to Docket 327, Reiteration of Request for Investigation of Conduct Displayed by Counsels and Sanctions under 28 U.S.C. § 1927 dated August 29, 2019, *Mot. Requesting Leave to File Resp. to "Reply to Almeidas' and Tenerife's Mots. in Resp. to Emergency Mot. for Contempt, Sanctions and Inj." (Dkt. #327)*, Attach. 1, *Resp. to Docket 327, Reiteration of Req. for Investigation of Conduct Displayed by Counsels and Sanctions Under 28 U.S.C. § 1927* (ECF No. 330) (*Almeida Pls.' Contempt Sur-Reply*);

(6)     WM Capital's Motion for Execution of Judgment dated November 22, 2019, *WM Capital's Mot. for Execution of J.* (ECF No. 338) (*WM's Execution Mot.*);

(7)     the Almeida Plaintiffs and Tenerife's Response to WM Capital's Motion for Execution of Judgment dated November 27, 2019, *Resp. to WM Capital's Mot. for Execution of J.* (ECF No. 340) (*Pls.' Execution Opp'n*);

(8)     WM Capital's Motion to Deem Reply at ECF No. 327 Unopposed dated December 6, 2019, *Mot. to Deem Reply at ECF No. 327 Unopposed* (ECF No. 343) (*WM's Mot. to Deem*);

(9)     WM Capital's Reply to the Almeidas' Opposition to Motion for Execution of Judgment dated December 6, 2019, *WM Capital's Reply to Almeidas' Opp'n to Mot. for Execution of J.* (ECF No. 344) (*WM's Execution Reply*);

(10)    the Almeida Plaintiffs and Tenerife's Response to WM Capital's Reply to the Almeidas' Opposition to Motion for Execution of Judgment dated December 16, 2019, *Mot. for Leave to Reply to WM Capital's Reply to Almeidas' Opp'n to Mot. for Execution of J.*, Attach. 1, *Resp. to WM Capital's Reply to Almeidas' Opp'n to Mot. for Execution of J. (ECF 344)* (ECF No. 348) (*Pls.' Execution Sur-Reply*);

(11)    WM Capital's Sur-Response to the Almeidas' Sur-Reply to Request for Execution of Judgment dated January 13, 2020, *WM Capital's Sur-Resp. to Almeidas' Sur-Reply to Req. for Execution of J.* (ECF No. 354) (*WM's Execution Sur-Resp.*);

(12)    the Almeida Plaintiffs and Tenerife's Motion to Strike Filings Under ECF #352 and #354 dated January 23, 2020, *Mot. to Strike Filings Under ECF #352 and #354* (ECF No. 359) (*Pls.' Mot. to Strike*);

(13)    WM Capital's Opposition to the Almeidas' Motion to Strike (ECF No. 359) dated January 27, 2020, *WM Capital's Opp'n to Almeidas' Mot. to Strike (ECF No. 359)* (ECF No. 360) (*WM's Strike Opp'n*);

(14)    the Almeida Plaintiffs and Tenerife's Motion in Response to Docket No. 364, *Mot. In Resp. to Docket No. 364* (ECF No. 367) (*Pls.' Resp. to WM's Resp.*); and

(15)    WM Capital's Omnibus Motion to Strike the Almeidas' and Tenerife's Response to the Interim Orders (ECF Nos. 363 and 365) and ECF No. 367, *Omnibus Mot. to Strike Almeidas' and Tenerife's Resp. to Interim Orders (ECF Nos. 363 and 365) and ECF No. 367* (ECF No. 368) (*WM's Mot. to Strike*); and

(16)    the Almeida Plaintiffs and Tenerife's Joint Opposition to WM Capital's Omnibus Motion to Strike the Almeidas' and Tenerife's Response to the Interim Orders (ECF Nos. 363 and 365) and ECF No. 367, *Jt. Opp'n to WMC's Omnibus Mot. to Strike Almeidas' and Tenerife's Resp. to Interim Orders (ECF Nos. 363 and 365) and ECF No. 367* (ECF No. 372) (*Pls.' Strike Opp'n*).

On April 17, 2020, nearing the issuance of this Order, the Court issued an order seeking clarification on the parties' perceptions of the mechanics of the upcoming public sale, and on April 20, 2020, the Court issued a second order asking the parties whether they could agree to avoid the public sale and proceed to a sale through the auspices of a reputable real estate broker.  *Interim Order* (ECF No. 361); *Suppl. Interim Order (*ECF No. 362) (*Suppl. Order*).  The parties each responded on April 24, 2020.  *Mot. in Compliance with Order* (ECF No. 363) (*Almeida Pls.' Suppl. Resp.*); *WM Capital's Mot. in Compliance with Interim Order at ECF No. 361 and Suppl. Interim Order at ECF No. 362* (ECF No. 364) (*WM's Suppl. Resp.*); *Tenerife's Mot. in Compliance with Orders at Docket 361 & 362* (ECF No. 365) (*Tenerife's Suppl. Resp.*).

## II.    THE POST-JUDGMENT MOTIONS: A SUMMARY

### A.    The Motion for Contempt, Sanctions, and Injunction

#### 1.    WM Capital's Motion for Contempt

On July 17, 2019, WM Capital filed an emergency motion for contempt, sanctions, and injunction against the Almeida Plaintiffs; WM Capital attached forty documents to the motion. *WM's Mot. for Contempt*; *id.*, Attachs. 1-40. WM Capital begins by reciting the terms of the Final Judgment in this case dated June 27, 2019. *WM's Mot for Contempt* at 1. In WM Capital's words, the judgment "set out a procedure to foreclose on four mortgage notes." *Id.* The Almeida Plaintiffs and Tenerife were "to consign four mortgage notes that are the underlying subject of the Agreement to Satisfy Judgment[] and Assignment of Mortgage Notes (the 'Agreement') in State court case No. KCD2011-0142 (602) the ('Kennedy Court') within three business days." *Id.* Moreover, "they were to foreclose on all of these mortgage notes jointly with WM Capital—including the senior lien or the 'GMAC note.'" *Id.* at 1-2. Finally, "after a public sale, the proceeds were to be consigned to this Court so that WM Capital is paid what it[']s owed **first**." *Id.* at 2 (emphasis in original). WM Capital states that "[a]s of today, the Almeida[ Plaintiffs and Tenerife] are in contempt of the Final Judgment and are obstructing its fulfillment." *Id.*

WM Capital acknowledges that "[t]he Almeida[ Plaintiffs and Tenerife] did consign the four (4) mortgage notes but did so belatedly and writing into the notes indorsements meant to limit the notes' negotiability and to subject the notes to the terms of a State Court resolution, instead of the Final Judgment." *Id.* WM Capital

asserts that the Almeida Plaintiffs and Tenerife "obdurately refuse to abide by the terms of the Final Judgment." *Id.* WM Capital claims that they (referring to Tenerife) "continue to seek to foreclose the GMAC Note in Case No. KCD2009-0708 (the 'GMAC case')—**without the participation of WM Capital**. *Id.* (emphasis in original).

WM Capital avers that "[b]y attempting to foreclose the first lien on the property without WM Capital, the Almeida[ Plaintiffs and Tenerife] are in contempt of both the letter and intent of the Final Judgment—the intent of which was to enforce the Agreement as written." *Id.* WM Capital continues, "As plainly stated in the Agreement and acknowledged in this Court's Summary Judgment Order and Judgment, the Almeida[ Plaintiffs and Tenerife] assigned a one-half interest on the GMAC note to FDIC-R (now WM Capital) and the proceeds of any public sale are meant to **first** be used to pay WM Capital." *Id.* (emphasis in original). WM Capital says that the "agreed upon clauses are imperiled when the Almeida[ Plaintiffs and Tenerife] continue to seek to foreclose the GMAC note without WM Capital's participation." *Id.*

WM Capital writes that "[a]t the same time, in the Kennedy Court, the Almeida[ Plaintiffs and Tenerife] request that the three (3) mortgage notes (with 2nd, 3rd and 4th ranks) be foreclosed on—without the filing of a joint motion with WM Capital as required." *Id.* at 3 (footnote omitted). WM Capital states that the Almeida Plaintiffs and Tenerife asked the Kennedy Court to "make the determination that the Final Judgment issued by this Court in the case of caption is null and void, and that

the resolution issued by the GMAC Court (denying the intervention of WM Capital) is controlling." *Id.* Further, WM Capital says, before depositing the notes, the Almeida Plaintiffs and Tenerife "unilaterally indorsed all four mortgage notes to themselves with language that is apparently intended to restrict the manner in which the notes can be foreclosed to abide by the January 2018 resolution by the GMAC Court." *Id.* Although WM Capital concedes that the Almeida Plaintiffs' and Tenerife's motions in state court are "confusing and equivocal," WM Capital views the state court motions as attempting to foreclose on the four notes without including WM Capital in the process, without depositing the proceeds in this Court so that WM Capital could be paid first, and with the state courts issuing a judgment that this Court's Final Judgment is null and void. *Id.*

With this background, WM Capital seeks an order holding the Almeida Plaintiffs and Tenerife in contempt, imposing an economic sanction of $10,000 per day for each day that the Almeida Plaintiffs and Tenerife refuse to abide by the Court's Final Judgment, and issuing a cease and desist order. *Id.* Alternatively, WM Capital proposes that the Court hold that the Almeida Plaintiffs and Tenerife's actions have been "vexatious, disruptive, and oppressive so as to merit sanctions under the Court's inherent powers." *Id.*

WM Capital itemizes the efforts it claims the Almeida Plaintiffs and Tenerife were undertaking in state court to undermine this Court's Final Judgment. *Id.* at 4. According to WM Capital, in addition to displaying what WM Capital says is "a clear disdain and contempt for the legal process, the rules of civil procedure, and this

Honorable Court's authority and dignity," the Almeida Plaintiffs and Tenerife have forced WM Capital to "relitigate matters that this Honorable Court already adjudicated." *Id.* WM Capital states that "[i]f the Almeida[ Plaintiffs and Tenerife] disagree with this Court's Final Judgment **[their] sole** remedy is to appeal to the United States Court of Appeals for the First Circuit" and they "cannot disobey a Final Judgment under the guise of multiple actions in State Court." *Id.* at 4-5 (emphasis in original).

WM Capital seeks an order mandating that the Almeida Plaintiffs and Tenerife "cease and desist their efforts to re-litigate the same issues decided by this Court in several fora" and pay WM Capital the attorney's fees it has expended in re-litigating these matters in state court. *Id.* at 5. WM Capital suggests that this Court consider holding the Almeida Plaintiffs and Tenerife in criminal contempt. *Id.*

After detailing the complicated history of this matter in both this Court and in the courts of Puerto Rico, WM Capital asks this Court to hold not only the Almeida Plaintiffs and Tenerife but also their attorneys in contempt of court and to enjoin them from further litigation in state court. *Id.* at 14-27.

### 2. The Almeida Plaintiffs' Opposition to WM Capital's Motion for Contempt

On August 7, 2019, the Almeida Plaintiffs filed their opposition to WM Capital's motion for contempt. *Almeida Pls.' Contempt Opp'n* at 1-15. After reviewing WM Capital's motion, the Almeida Plaintiffs deny that their indorsement of the four notes was delayed. *Id.* at 3. The Almeida Plaintiffs say they consigned the four notes on "July 15, 2019, nearly two weeks after the Final Judgment was

issued . . ..” *Id.* Quoting Federal Rule of Civil Procedure 62(a), the Almeida Plaintiffs aver that an execution on a final judgment is automatically stayed for thirty days after it was entered unless the Court orders otherwise. *Id.* at 4. The Almeida Plaintiffs say that Rule 62(a) provides "a would-be appellant the full period of appeal time to arrange a stay by other means, if so desired." *Id.* In the Almeida Plaintiffs' view, this Court's June 27, 2019, Final Judgment was automatically stayed until July 27, 2019, and so the Almeida Plaintiffs' indorsement of July 15, 2019, was timely. *Id.* at 5.

The Almeida Plaintiffs turn to whether the Court should hold them in contempt. *Id.* at 6. The Almeida Plaintiffs dispute the meaning of this Court's Final Judgment, arguing that the Court conditioned its relief on whatever the Agreement to Satisfy Judgment and Assignment of Mortgage Notes (Agreement) provided. *Id.* ("This Honorable Court's Final Judgment states that '[T]he parties shall file a joint motion to the Puerto Rico Court of First Instance, KCD 2011-0142, to foreclose on the four mortgage notes identified in 3.1.2 of the Agreement and sell the Encumbered Property via public auction *as provided for under the Agreement*'" (alteration in original) (emphasis in original)). The Almeida Plaintiffs argue that because the Agreement does not provide for the relief WM Capital is seeking, the Court's Final Judgment essentially begs the question of what relief it ordered. *Id.* at 6-8. The Almeida Plaintiffs stress that they "objected to WM[ Capital]'s Proposed Judgment in its entirety, and how they are in disagreement with and did not consent to any action contrary to the final, firm and binding state Resolution/Judgment dated

January[ ]17, 2018 entered by the state court in case number KCD2009-0708." *Id.* at 7-8.

Despite their disagreement with the terms of the Final Judgment, the Almeida Plaintiffs profess that "as officers of the Court, [they] comply with all constitutional valid orders, while assisting the court in dispensing correct, valid justice, and correctly illustrate on the facts, the law, and every relevant principle." *Id.* at 8. The Almeida Plaintiffs view this Court's Final Judgment as conflicting with the judgment of the state court and foresee a "constitutional confrontation." *Id.* at 8 n.7. They also observe that they have appealed this Court's Final Judgment to the Court of Appeals for the First Circuit. *Id.* at 8. Even so, they say, "on July 15, 2019, the appearing parties consigned the Kennedy Notes in case no. KCD2011-0142 in compliance with the Final Judgment and subsequently, in order to protect [their] rights, filed their Notice of Appeal in the instant case on July 19, 2019 (see docket entry no. 301)." *Id.*

Responding to WM Capital's concerns about their restricted indorsements of the four mortgage notes, the Almeida Plaintiffs describe WM Capital's position as "not only misguided but also erroneous." *Id.* at 9. They insist that their indorsements are "congruous with the Final Judgment and follow both the letter and intent of the Agreement incorporated to the Final Judgment." *Id.* They claim their indorsements will have no effect on the public auction as contemplated by the Agreement. *Id.*

The Almeida Plaintiffs dispute WM Capital's view of their state court injunction action. *Id.* at 10-13. They say that they initiated the state court action before this Court issued its Final Judgment "in order to avoid an unnecessary

jurisdictional and constitutional confrontation resulting from WM[ Capital]'s continued refusal to abide by the final and firm orders, decrees, mandates and Judgments entered by the Commonwealth Court[]s of Puerto Rico, specifically the Resolution/Judgment dated January 17, 2018 in case no. KCD2009-0708." *Id.* at 10-11. They stress that all the proceedings in the state court action, both in this Court and in the Commonwealth courts, took place before the expiration of the thirty-day automatic stay under Rule 62(a). *Id.* at 12-13.

Finally, regarding their failure to file a joint motion with the state court, the Almeida Plaintiffs protest that they attempted to comply with the Final Judgment but also sought to protect their own legal rights while the issues are being resolved on appeal. *Id.* at 13-14.

### 3. Tenerife's Opposition to WM Capital's Motion for Contempt

On August 8, 2019, Tenerife filed its opposition to WM Capital's motion for contempt. *Tenerife's Contempt Opp'n* at 1-16. Addressing first the Tenerife complaint for injunctive relief, Tenerife explains that it and the Almeida Plaintiffs filed a complaint on May 20, 2019, seeking an injunction and other remedies against WM Capital in Puerto Rico Commonwealth court. *Id.* at 3. Tenerife explains that it filed the complaint "requesting the Court to decide that the proceedings in the Puerto Rico Court that led to the January 17, 2018 decision and its confirmation on appeal were proceedings in rem that granted the Puerto Rico Court exclusive jurisdiction, and that such determinations were binding upon WM Capital." *Id.* Tenerife says that a notice of removal was filed, transferring the case to this Court, and that on June 28,

2019, the Puerto Rico court stayed the proceeding while the removed case was finalized. *Id.* at 3-4. On July 5, 2019, the federal court dismissed the complaint and Tenerife did not appeal the dismissal to the Court of Appeals for the First Circuit. *Id.* at 4. Tenerife explains that it brought to the attention of the Puerto Rico court "this Honorable Court's contradictory Final Judgment." *Id.* at 5. Emphasizing that it holds no interest in the second, third, and fourth ranked mortgage notes, only the first mortgage note, Tenerife recites the rest of the history of this case leading to its appeal of the Court's Final Judgment to the Court of Appeals for the First Circuit. *Id.* at 4-8.

The premise of Tenerife's argument is that the Puerto Rico court order of January 17, 2018, contradicted this Court's later Final Judgment of June 27, 2019; that being first in time, the order of the Puerto Rico court takes precedence over a later order of this Court on the same subject; and that it is this Court and WM Capital that have been in error in refusing to recognize a duly issued and final order of the Puerto Rico court. *Id.* at 9-12. Tenerife contends that it was required to return to Puerto Rico court to clarify which order took precedence and not to do so would have raised significant constitutional and jurisdictional issues. *Id.* Tenerife protests that WM Capital is attempting to "silence" Tenerife by having this Court issue an injunction while WM Capital is free to "express its beliefs and argue against the judgments issued by the Puerto Rico Courts." *Id.* at 13. Tenerife says that if the Court entered the requested injunction, it would raise First Amendment issues. *Id.* at 13-14.

### 4.   WM Capital's Reply to the Almeida Plaintiffs' and Tenerife's Oppositions

On August 22, 2019, WM Capital filed its reply.  *WM's Contempt Reply* at 1-17.  WM Capital maintains that this Court should hold the Almeida Plaintiffs, Tenerife, and their counsel in contempt and fine or imprison them "because they continue to act (as recently as this week), in direct contravention of the Agreement to Satisfy Judgment[] and Assignment of Mortgage Note . . . and this Court's Final Judgment (ECF No. 290), by attempting to foreclose on the Kennedy property without WM Capital's participation."  *Id.* at 1-2.  WM Capital alleges that the Almeida Plaintiffs, Tenerife, and their lawyers "have requested from the GMAC court that it issue a declaratory judgment providing that the Final Judgment in this case is null and void, and to order a foreclosure sale sans WM Capital."  *Id.* at 2 (footnote omitted).  WM Capital says that the Almeida Plaintiffs, Tenerife and their lawyers "refuse to abide by the Final Judgment."  *Id.*

WM Capital provides a "[s]hort [r]ecap" and "[s]upplemental [b]ackground" of the history of this litigation.  *Id.* at 3-4 (emphasis omitted).  Focusing on the supplemental background, the Court notes that WM Capital says that instead of obeying the terms of the Final Judgment, the Almeida Plaintiffs and Tenerife filed two actions in state court attempting to nullify and vacate the order.  *Id.* at 4.  WM Capital observes that when the Almeida Plaintiffs and Tenerife proposed a joint motion, they excluded the GMAC note, knowing that "the foreclosure without the GMAC note is worthless as it would leave the property encumbered by more than $2.2 million in debt . . . ."  *Id.*  WM Capital says it expressly asked the Almeida

Plaintiffs and Tenerife to confirm that they would "agree to foreclose the GMAC Note with WM Capital," but the Almeida Plaintiffs and Tenerife failed or refused to respond. *Id.* at 6.

WM Capital argues that the automatic stay provisions of Rule 62(a) do not justify the Almeida Plaintiffs and Tenerife's failure to comply with the Final Judgment and their resort to state court to attack the Final Judgment. *Id.* at 7-8. WM Capital notes that Rule 62(a) applies only to executions on a judgment, converting the judgment into money, not on compliance with the judgment itself. *Id.* at 8. In addition, the automatic stay provision of Rule 62(a) does not, in WM Capital's view, allow the disappointed litigant the right to file another lawsuit in another forum to attempt to attack a final judgment. *Id.* at 9. Instead, WM Capital says, it is designed to allow the litigant to assess whether an appeal from the judgment should be taken. *Id.*

More importantly, WM Capital states that when the Almeida Plaintiffs and Tenerife indorsed the notes, they did so restrictively in an attempt to obstruct the terms of the Final Judgment by including "indorsements intended to bind the mortgage notes to the state court resolution of January 18, 2018 in the case of *Tenerife v. EER-Isuzu de Puerto Rico* (Case No. K CD2009-0708) . . .." *Id.* at 8.

WM Capital sees the Almeida Plaintiffs and Tenerife's state court action for injunctive relief as the filing of a "parallel case raising the same issues decided by this Court in its Opinions and Orders in an effort to stop it from issuing a Final Judgment." *Id.* at 11. WM Capital is particularly incensed at the lawsuit the Almeida

Plaintiffs and Tenerife filed in this Court against Chief Judge Gustavo Gelpí of the United States District Court for the District of Puerto Rico, this Judge, and the attorneys for WM Capital in their personal capacities that Judge William Young of the United States District Court for the District of Massachusetts promptly dismissed. *Id.* at 11-12. WM Capital describes the filing of that lawsuit as an "obdurate, reckless and vexatious act[] devoid of any merit, calculated to annoy and embarrass the judges and the attorneys for WM Capital." *Id.* at 12.

Moreover, WM Capital contends that the Almeida Plaintiffs and Tenerife proceeded to state court and attempted to re-litigate precisely the same issues that this Court had decided against them. *Id.* at 12-13. WM Capital quotes a passage from a motion filed by the Almeida Plaintiffs essentially asking for a second opinion from the state court as to whether this Court correctly decided the question of the impact of the January 17, 2018, order. *Id.* at 13-14. WM Capital points to a phrase in the Almeida Plaintiffs' motion in which they claim that the Final Judgment in this Court was procured "through fraud in various forms . . .." *Id.* at 14.

Citing *In re González*, 795 F.3d 288 (1st Cir. 2015), *De Jesús-González v. Segarra-Miranda*, 476 B.R. 376 (D.P.R. 2012), and *In re González*, 507 B.R. 775 (D.P.R. 2014), WM Capital says that this is not the first time counsel for the Almeida Plaintiffs has provoked a court to question his tactics as an attorney. *Id.* at 15-16.

WM Capital is doubtful that the Almeida Plaintiffs and Tenerife will ever "abide by the orders of this Court voluntarily." *Id.* at 16. It requests that the Court

order that the United States Marshal may sign documents on behalf of the Almeida Plaintiffs and Tenerife so that the orders of this Court can be carried out. *Id.*

### 5. The Almeida Plaintiffs' Sur-Reply

On August 29, 2019, the Almeida Plaintiffs filed a sur-reply. *Almeida Pls.' Contempt Sur-Reply* at 1-10. First, referring to the arguments in their response, the Almeida Plaintiffs reiterate their position that they "never breached the July 28, 2014 Agreement . . .." *Id.* at 1.

Next, the Almeida Plaintiffs contend that WM Capital made demands in this case in excess of its rightful remedies, pointing to a portion of the Court's June 26, 2019, Order on Judgment (ECF No. 288) that it issued to explain the contents of the Final Judgment. *Id.* at 1-2. The Almeida Plaintiffs claim that the Court's June 26, 2019, order is "exactly what the State Court decided on January 17, 2018 . . .." *Id.* at 2. The Almeida Plaintiffs stress that they have faced these same excessive demands from WM Capital during "FIVE years." *Id.* The Almeida Plaintiffs reiterate that the Court rejected a portion of WM Capital's demands in its June 26, 2019, order. *Id.* at 3. The Almeida Plaintiffs maintain that this Court "only demanded and adjudged **parties are to proceed 'in accordance with the agreement'**" and "**WM C[apital] has not so proceeded**." *Id.* (emphasis in original).

The Almeida Plaintiffs announce that "[t]here has never been any agreement that Tenerife was or is to sign any stipulation to foreclose on its own mortgage with anyone else, FDIC, WM[ Capital] or otherwise." *Id.* This, the Almeida Plaintiffs declare, is an "**indubitable fact**." *Id.* (emphasis in original).

17

Despite the fact that Tenerife, in the Almeida Plaintiffs' view, never agreed that its note, which the Almeida Plaintiffs say is improperly named the GMAC note, be cancelled, the Almeida Plaintiffs say WM Capital's counsel "slipped or included the identified language in its proposed judgment, ready for the Court to sign . . . ." *Id.* at 4. The subheading for this section reveals that the Almeida Plaintiffs appear to be claiming that WM Capital's attorneys surreptitiously inserted unjustified language into the proposed judgment. *Id.* ("**AGAIN, SURREPTITIOUS LANGUAGE INSERTED**" (emphasis in original)). The Almeida Plaintiffs point to this Court's June 26, 2019, language about WM Capital's claim of relief being broader than what the record justified as vindication of their position that WM Capital has taken the position for five years "that as a condition for assignee to cease obstructing the public sale in case no. KCD2011-0142, Tenerife has to cancel its mortgage note, the real estate mortgage and judgment in case no. K CD2009-0708." *Id.* at 5 (emphasis in original). The Almeida Plaintiffs state that "State Courts have also decided that WM[ Capital] is not entitled in contract, law, equity or process to have Tenerife's rights, mortgage, judgment and note cancelled, nor to obstruct the 'Foreclosure Auction' demanding such cancellation of judgment, lien and note." *Id.*

The Almeida Plaintiffs conclude:

> Regardless of the lack of legal consequence this Court ascribed to WM[ Capital]'s five year persistent conduct, the result is that now there are **THREE COURTS THAT HAVE DECREED (State, State Appeals and this Court),** that WM[ Capital] is not entitled to what it has been demanding during five years as a condition for complying with the July 28, 2[]014 Agreement. **How many judgments or decrees are required for the rights that flow from WM[ Capital]'s**

> **wrongful demands and obstruction to become enforceable against WM[ Capital] and in favor of plaintiffs herein?**

*Id.* at 6 (emphasis in original).

The Almeida Plaintiffs then accuse WM Capital of "not acting in good faith" and state, "Be [it] always remembered that Tenerife, Francisco Almeida, nor Wanda Cruz <u>have never owed any money or debt to WM[ Capital]</u> or its predecessor, the FDIC." *Id.* (emphasis in original). After discussing the requirement and meaning of good faith, the Almeida Plaintiffs demand that WM Capital act in good faith. *Id.* at 7.

Next, the Almeida Plaintiffs attack counsel for WM Capital. *Id.* at 8. They say that in August 2017, they presented the attorneys for WM Capital with a twenty-page letter and an appendix in which they itemized "many of the occasions in which WM[ Capital] and its attorneys have deceived, extorted and defrauded plaintiffs herein." *Id.* The Almeida Plaintiffs say that in 2017 they demanded that the Court investigate WM Capital and its attorneys because in the Almeida Plaintiffs' view, WM Capital and its counsel "have not acted ethically, truthfully and/or ha[ve] abused the process." *Id.* The Almeida Plaintiffs write that "[t]hat request stands and is again renewed." *Id.*

The Almeida Plaintiffs recite the principle, Exceptio Non Adipleti Contractus, and caselaw addressing the concept but do not explain how this principle applies to their dispute with WM Capital. *Id.* at 9.

Finally, the Almeida Plaintiffs demand that pursuant to 28 U.S.C. § 1927, after investigation, the Court impose sanctions against Attorney Jairo Mellado Villareal

and other WM Capital counsel for "the lack of good faith, obstinacy and demands for remedies WM[ Capital] has never been entitled to . . .." *Id.* at 9.

### B.   WM Capital's Motion for Execution of Judgment

#### 1.   WM Capital's Motion for Execution

On November 22, 2019, WM Capital filed a motion for execution. *WM's Execution Mot.* at 1-4.   In its motion, WM Capital recites the recent history of this case. *Id.* at 1-3.   WM Capital notes that this Court issued the Final Judgment on June 27, 2019, that the thirty-day automatic stay provisions of Rule 62(a) have lapsed, and that the Almeida Plaintiffs and Tenerife have appealed the Final Judgment to the Court of Appeals for the First Circuit, but that none has posted a bond or moved for a stay of execution pursuant to Rule 62. *Id.* at 1-2.

WM Capital quotes provisions of this Court's June 27, 2019, Final Judgment and represents that only one of the actions the Court ordered has been complied with, namely "consigning the mortgage notes in State Court." *Id.* at 2-3.   WM Capital says that the Almeida Plaintiffs have refused to sign the joint motion the Court ordered in which they would proceed, with WM Capital, with the foreclosures on the four notes. *Id.* at 3.   If the Almeida Plaintiffs refuse to comply with the execution on the Final Judgment, WM Capital urges the Court to authorize the United States Marshal to act in their stead pursuant to Federal Rule of Civil Procedure 70(a). *Id.*   Finally, WM Capital requests that the Court order that the proceeds of the public sale be deposited into the registry of this Court pending resolution of the Almeida Plaintiffs' appeal to the First Circuit. *Id.* at 3-4.

### 2.   The Almeida Plaintiffs and Tenerife's Opposition to WM Capital's Motion for Execution

On November 27, 2019, the Almeida Plaintiffs and Tenerife filed their opposition to WM Capital's motion for execution. *Pls.' Execution Opp'n* at 1-6. The Almeida Plaintiffs and Tenerife write that they "do not oppose and also request execution of the June 27, 2019 judgment." *Id.* at 2. However, they impose a caveat: They "request execution of the June 27, 2019 judgment under the exact terms of the July 28, 2014 Assignment Agreement, including the mathematical terms the parties agreed, stipulated and contracted." *Id.* The Almeida Plaintiffs and Tenerife quote from the July 28, 2014, Agreement:

> 3.1.6  At Foreclosure Auction, *the minimum and only price of the first and only bid will be $3,850[,]000.00* (Minimum Bid Amount).

*Id.* (emphasis in original) (quoting *Opp'n to Mot. for Partial Summ. J., Docket 40*, Attach. 3, *Agreement to Satisfy J; and Assignment of Mortgage Notes* at 5 (ECF No. 45)). The Almeida Plaintiffs note that the July 28, 2014, Agreement refers to three mortgage notes, which total $3,865,000, more than the minimum bid provision. *Id.* at 3. The Almeida Plaintiffs demand "[m]athematical precision and exact compliance with the minimum bid requirements in the foreclosure process," stating that "[d]eparture therefrom will cause the foreclosure auction to be null and void." *Id.* at 4. In support, the Almeida Plaintiffs quote *Ponce Fed. Sav. & Loan Ass'n of P.R. v. Gómez*, 8 P.R. Offic. Trans. 621 (1979). *Id.*

The Almeida Plaintiffs object to the order proposed by WM Capital as "vague as to what is the process by which the judgment will be executed, while the

Assignment Agreement contract dated July 28, 2014 provides for the process and amount of the only single auction to take place." *Id.* at 5. Thus, the Almeida Plaintiffs argue that "there will be only one auction, one bid where the minimum and only bid will be the minimum bid price (which was stated be sum of $3,850,000.00) for the three mortgage notes herein before identified with a minimum bid of $3,865,000.00." *Id.* They say the "public sale will take place on the three mortgage notes with a minimum and only bid price of $3,865,000.00, subject to the first mortgage lien exclusively owned by Tenerife, and any other lien that legally survives the public sale, which is what the contract provides for." *Id.* at 5-6.

### 3.    WM Capital's Reply to the Almeida Plaintiffs and Tenerife's Response

On December 6, 2019, WM Capital filed its reply. *WM's Execution Reply* at 1-10. After noting that the Almeida Plaintiffs and Tenerife do not object to the issuance of an execution, WM Capital points out that the Almeida Plaintiffs and Tenerife "again challenge the findings of the Final Judgment." *Id.* at 2. WM Capital writes, "That is, they—for the nth time—oppose that WM Capital foreclose on the GMAC note and request that only the Kennedy notes be foreclosed on." *Id.* WM Capital views the Almeida Plaintiffs and Tenerife's position as an attempt "to relitigate issues already decided by the Final Judgment" and urges the Court to reject it. *Id.* Apart from "untimely," WM Capital says that the Almeida Plaintiffs' arguments are "substantively wrong." *Id.*

WM Capital quotes the Final Judgment and clearly states, contrary to the Almeida Plaintiffs and Tenerife's position, that not only the Almeida Plaintiffs, but

also Tenerife was compelled under the plain terms of the Agreement to assign to the FDIC-R (now WM Capital) "**an undivided one-half interest in each of the Kennedy Notes, <u>GMAC Note, and GMAC Judgment</u>**." *Id.* at 3-4 (emphasis in original) (quoting *Am. Order* at 59). This fact is buttressed, in WM Capital's view, by the terms of the Final Judgment, which provided that WM Capital shall be paid first "up to $2,828,850.11 . . .." *Id.* at 4 (quoting *Am. Order* at 1-2).

WM Capital rejects the Almeida Plaintiffs' contention that the proposed judgment is vague and not precise enough to assure the validity of a public sale or adherence to legal requirements. *Id.* at 5. It disputes the validity of the Almeida Plaintiffs and Tenerife's proposed order as an attempt to relitigate previously resolved issues. *Id.*

WM Capital objects to what it characterizes as the Almeida Plaintiffs and Tenerife raising "[n]ew [a]rguments," including that the public sale is subject to a minimum bid. *Id.* at 6 (emphasis omitted). It says that this argument was never raised during this litigation and is therefore waived. *Id.* Further, it maintains that this argument "is substantively wrong." *Id.* WM Capital cites *Arroyo v. Ortiz y Franco*, 133 P.R. Dec. 62 (1993), which it says distinguishes *Ponce Federal* and "conclusively holds that a minimum bid price different to the one in a mortgage deed is permissible if it is consented to by the creditor and does not prejudice the debtor." *Id.* at 6-7. WM Capital argues that the "purpose of requiring that mortgage deeds include a minimum bid amount is to avoid prejudicing **the mortgage debtor** by allowing the creditor to credit bid on the property for an unreasonably low amount."

*Id.* at 7 (emphasis in original).  Finally, WM Capital reiterates its request that under Rule 70, the Court should order the United States Marshal to execute documents in the face of the Almeida Plaintiffs and Tenerife's refusal to do so.  *Id.* at 9.

> ### 4.    The Almeida Plaintiffs and Tenerife's Sur-Reply to WM Capital's Reply

On December 16, 2019, the Almeida Plaintiffs and Tenerife filed their sur-reply to WM Capital's reply to the WM Capital motion for execution.  *Pls.' Execution Sur-Reply* at 1-6.  In their sur-reply, the Almeida Plaintiffs and Tenerife claim that WM Capital is "us[ing] words disassociated to their meaning."  *Id.* at 2.  The Almeida Plaintiffs and Tenerife say that WM Capital, confronted with the minimum bid price of $3,850,000, "argues that such refers to the bid price to the Tenerife mortgage note alone and for the benefit of the mortgage debtor (in this situation Emerito Estrada[ ]Rivera-Isuzu de Puerto Rico, Inc. [EER-IPR], who is not party to[] this case)."  *Id.*  The Almeida Plaintiffs and Tenerife stress that in its Final Judgment, the Court ordered foreclosure on all four mortgage notes, not just one note.  *Id.*  The Almeida Plaintiffs and Tenerife say that to proceed with the foreclosure of only one mortgage would be contrary to the terms of the Final Judgment.  *Id.* at 2-3.  They say that "the foreclosure is to take place in case no. KCD2011-0142 on all <u>four mortgage notes</u>, where only one single bid in the amount of $3,850,000.00 may occur and there may not be another foreclosure auction."  *Id.* at 3.  The Almeida Plaintiffs and Tenerife recite the content of their own motions and court orders, which they claim supports their view of how the foreclosure and the public sale must occur.  *Id.* at 3-4.

The Almeida Plaintiffs and Tenerife assert that WM Capital "sustains that only and exclusively the Tenerife mortgage note is to be taken to foreclosure auction." *Id.* at 4. They say that this "is not what the contract nor the judgment provide for." *Id.* The Almeida Plaintiffs and Tenerife say that the WM Capital's position in "ECF #344," which is WM Capital's reply to the Almeida Plaintiffs and Tenerife's response to its motion for execution, "seeks to amend the final judgment, not to enforce it." *Id.*

The Almeida Plaintiffs and Tenerife argue that WM Capital, "confronted with the fact that the minimum bid for the foreclosure of the four mortgage notes will probably result [in an] insufficient and . . . vitiated auction process," "changes its position and argues that . . . . it is a legal impossibility to auction for the minimum bid price of $3,850,000.00." *Id.* at 5. The Almeida Plaintiffs and Tenerife say that WM Capital is proposing that

> only the Tenerife (so called GMAC Mortgage note) is to be taken to public sale, and never foreclose on the three mortgage notes that are to be foreclosed in case no. KCD2011-0142 . . ., **resulting in a loss of over five million dollars to plaintiffs** (i.e. the totality of the judgment and value of the mortgage notes in case no. KCD2011-0142), which value will be unjustly transferred to WM[ Capital], at an extreme unjust enrichment to WM[ Capital], which the contract nor the judgment provide for and which this Court has decreed is part of the excessive demands that WM[ Capital] has insisted upon.

*Id.* (emphasis in original). The Almeida Plaintiffs and Tenerife stress that they too wish to have the Final Judgment executed, but they "must insist on a[n] order in strict compliance with the terms of the Final Judgment and the Agreement." *Id.* at 5-6.

### 5.   WM Capital's Sur-Response to the Almeida Plaintiffs and Tenerife's Sur-Reply

On January 13, 2020, WM Capital filed its sur-response to the Almeida Plaintiffs and Tenerife's sur-reply.  *WM's Execution Sur-Resp.* at 1-12.  WM Capital says that after it requested an execution in this case, the Almeida Plaintiffs and Tenerife stated that they did not oppose an execution, but they "propose[d] their own version of the execution under three principle arguments":

1)   that "the GMAC Note should not be foreclosed on because it's not part of the Agreement;"

2)   that under Puerto Rico law, "all foreclosures have an immutable minimum bid requirement (that the amount must conform to that stated under the mortgage deed, under penalty of nullity;" and

3)   that the Court may not order the United States Marshal to execute the necessary document in their stead and at their expense.

*See id.* at 2.  WM Capital argues that in its reply, it demonstrates that this was a new argument by the Almeida Plaintiffs and Tenerife and had been waived, that the Court's Final Judgment concluded that the GMAC note was included in the Agreement, and that the Almeida Plaintiffs and Tenerife's minimum bid requirement position was contrary to Puerto Rico law.  *Id.*

WM Capital says that the Almeida Plaintiffs and Tenerife's sur-reply is "more remarkable for the arguments it fails to address than for the arguments it actually makes."  *Id.* at 3.  First, WM Capital points out that the Almeida Plaintiffs and Tenerife fail to address WM Capital's contention that the Almeida Plaintiffs and

26

Tenerife failed to raise the minimum bid argument prior to their response and therefore should be held to have waived it. *Id.* Next, WM Capital notes that the Almeida Plaintiffs and Tenerife fail to mention WM Capital's analysis of *Arroyo*. *Id.* Indeed, WM Capital observes that the Almeida Plaintiffs and Tenerife fail to cite even one court case in support of its arguments. *Id.*

By contrast, WM Capital describes the Almeida Plaintiffs and Tenerife's actual arguments as "unremarkable." *Id.* WM Capital says that rather than presenting a responsive argument, the Almeida Plaintiffs and Tenerife put up a strawman: "They misrepresent WM Capital's arguments in the Reply by conjuring up an argument that WM Capital never made and then proceed to attack it." *Id.* But, according to WM Capital, the Almeida Plaintiffs and Tenerife "trip over their strawman argument" by agreeing with WM Capital "that indeed, the Agreement requires the foreclosure of all four mortgage notes." *Id.* at 3-4.

Quoting *Arroyo*, WM Capital disputes the Almeida Plaintiffs and Tenerife's view of the way a minimum bid auction price works in Puerto Rico. *Id.* at 6-7. WM Capital argues that because the minimum bid under the Agreement of $3,850,000 is higher than the GMAC mortgage's minimum bid of $3,250,000, the higher amount inures to the benefit of the debtor and thereby satisfies the *Arroyo* criterion that the amount of the minimum bid must not prejudice the debtor. *Id.* at 7-8. WM Capital also contends that the second *Arroyo* criterion is also met: that the Almeida Plaintiffs and Tenerife agreed in the Agreement to the higher minimum bid figure of $3,850,000. *Id.* at 9.

Finally, WM Capital accuses the Almeida Plaintiffs and Tenerife of switching their argument: first arguing that the Agreement covered only three Notes, not including the GMAC note, and then arguing that it included all four notes. *Id.* at 9-11.

### C.    WM Capital's Motion to Deem

On December 6, 2019, WM Capital filed a motion to deem unopposed its reply to the Almeida Plaintiffs and Tenerife's response to its motion for execution. *WM's Mot. to Deem* at 1-3. WM Capital notes that after it filed its July 17, 2019, emergency motion for contempt, the Almeida Plaintiffs filed their response on August 7, 2019, and Tenerife filed its response on August 8, 2019.[2] *Id.* at 1. On August 22, 2019, WM Capital filed its reply. *Id.*

On August 29, 2019, the Almeida Plaintiffs filed a motion for leave to file a sur-reply. *Mot. Requesting Leave to File Resp. to "Reply to the Almeidas' and Tenerife's Mots. in Resp. to Emergency Mot. for Contempt, Sanctions and Inj." (Docket # 327)* at 2-3). The Almeida Plaintiffs attached the proposed sur-reply. *Id.* (citing *Almeida Pls.' Contempt Sur-Reply*). On November 26, 2019, the Court granted the Almeida Plaintiffs' motion over WM Capital's objection but restricted the Almeida Plaintiffs' sur-reply to matters raised in WM Capital's reply. *Order on Mot. Requesting Leave to File Sur-Reply* (ECF No. 339) at 3. The Court allowed WM Capital to file a response to the Almeida Plaintiffs' sur-reply within seven days of the date the Almeida Plaintiffs file the sur-reply. *Id.*

---

[2]    WM Capital does not refer to the dates of filing, but the Court added them for clarity's sake in this numerically complex docket.

WM Capital states that under Puerto Rico Local Rule 7(c), a sur-reply must be filed within seven days after the date the court allows the sur-reply. *WM's Mot. to Deem* at 2. (citing P.R. LOC. R. 7(c)). WM Capital's motion is premised on the view that because the November 26, 2019, Court order required the Almeida Plaintiffs to file their sur-reply with the Court under Local Rule 7(c), by failing to do so, the Almeida Plaintiffs waived the right to file the sur-reply. *Id.* Alternatively, WM Capital argues that the Court should order the Almeida Plaintiffs to file their sur-reply within a short time. *Id.* The Almeida Plaintiffs did not respond to WM Capital's motion to deem.

### D.    The Almeida Plaintiffs and Tenerife's Motion to Strike

#### 1.    The Almeida Plaintiffs and Tenerife's Motion

On January 23, 2020, the Almeida Plaintiffs and Tenerife filed a motion to strike WM Capital's sur-reply to their sur-response to WM Capital's motion for execution.[3] *Pls.' Mot. to Strike* at 1-11. In their motion to strike, the Almeida Plaintiffs and Tenerife begin with the premise that while a case is on appeal, a district court may not alter or amend the judgment that is being appealed. *Id.* at 1. In brief, they point to WM Capital's sur-response to their sur-reply to WM Capital's motion

---

[3]    The Almeida Plaintiffs and Tenerife's motion to strike also references WM Capital's filing in docket number 352. But directly after filing its sur-response under docket number 352 on January 13, 2020, WM Capital moved to withdraw the filing because it discovered that it filed the wrong draft. *WM Capital's Mot. to Withdraw Doc. (ECF No. 352)* (ECF No. 353). WM Capital immediately filed a new sur-response. *WM's Execution Sur-Resp.* On January 16, 2020, the Court granted WM Capital's motion to withdraw the filing in docket number 352. *Order Granting Mot. to Withdraw Doc. ECF No. 352* (ECF No. 358). As of January 16, 2020, the filing under docket number 352 has been deemed withdrawn and the only operative document is the filing under docket number 354. The Court sua sponte STRIKES all references to docket number 352 in the Almeida Plaintiffs and Tenerife's motion to strike as unnecessarily confusing this dense record.

for execution and claim that the sur-response improperly invites the district court to violate this principle of law by amending its Final Judgment while the matter is on appeal. *Id.*

The Almeida Plaintiffs and Tenerife start with the Final Judgment's directive that the public sale must involve all four mortgage notes in controversy: notes in the amounts of $2,000,000, $1,365,000, $500,000 and $2,635,000, all issued by EER-IPR. *Id.* at 1-2. Each note has a minimum bid and, according to the Almeida Plaintiffs and Tenerife, when the minimum bid of $3,250,000 for the first rank mortgage (the GMAC note) is added to the minimum bids for the other three notes (the Kennedy notes), "[t]he minimum bid amount for such a foreclosure sale of . . . all four mortgage notes collectively is $7,715,000.00." *Id.* at 2. The Almeida Plaintiffs and Tenerife claim that, contrary to Puerto Rico law, WM Capital is insisting that the minimum bid for the foreclosures of all four mortgage notes must be only $3,850,000, the amount provided under the Agreement. *Id.* ("How can a minimum sum total bid amount of $7,7[]15,000.00 be attained by bidding only $3,850,000.00?"). They say that the "wisdom of Puerto Rico Mortgage Law in demanding a minimum bid price for the foreclosure sale of each mortgage encumbering a real estate, again becomes self-evident." *Id.* They assert that WM Capital "pursues to foreclose by public sale only and exclusively the GMAC mortgage note (owned by Tenerife), disregarding the Court's judgment and deliberately failing to foreclose on the four (4) mortgage notes, as the Final Judgment commands." *Id.* at 3. The Almeida Plaintiffs and Tenerife claim that WM Capital is "disregarding the command of the Final Judgment (dkt.

30

#289) while creating only an appearance of conformity." *Id.* The Almeida Plaintiffs and Tenerife accuse WM Capital of playing "fast and loose with the Court," disregarding court orders and the Final Judgment and being "in contempt thereof." *Id.*

The Almeida Plaintiffs and Tenerife assert that WM Capital's current position contradicts its earlier positions, that its sur-response is scandalous, that the sur-response is subject to judicial estoppel for assuming a position contrary to its prior position, that WM Capital's position greatly prejudices the Almeida Plaintiffs and Tenerife, and that it will result in a "multi million dollar windfall" to WM Capital. *Id.* at 4-10. They urge the Court to strike the sur-response. *Id.* at 9-10.

Finally, the Almeida Plaintiffs and Tenerife assert that the United States Marshal "does not have jurisdiction nor authority to act contrary to the Court's Final Judgment." *Id.* at 10. They insist that all arguments to the contrary "are also irrelevant, redundant and immaterial." *Id.*

### 2.    WM Capital's Response

On January 27, 2020, WM Capital filed its response. *WM's Strike Opp'n.* at 1-4. Noting that the issues in the Almeida Plaintiffs and Tenerife's motion to strike have been "argued to exhaustion," WM Capital says that the Almeida Plaintiffs and Tenerife's motion is a sur-sur-reply in the guise of a motion to strike, filed, it says, so that the Almeida Plaintiffs and Tenerife can "get in the last word" and without leave of Court. *Id.* at 2. WM Capital states that Federal Rule of Civil Procedure 12(f), the provision of the civil rules that allows motions to strike, is limited to pleadings only

and its sur-reply is not a pleading. *Id.* at 2-3. WM Capital says that the motion to strike telegraphs the unacceptable view that the Court may not consider any argument but the Almeida Plaintiffs and Tenerife's arguments. *Id.* at 3. Furthermore, WM Capital views the Almeida Plaintiffs and Tenerife's accusations as "groundless" and urges the Court to impose sanctions for the Almeida Plaintiffs and Tenerife's filing of this motion. *Id.* at 3-4.

### E.    The Orders to Supplement and Responses

#### 1.    The Court Orders

On April 17, 2020, noting that it was about to issue an order on the pending motions, the Court issued an interim order requiring the parties to supplement the record to clarify what the parties envisioned happening once the Court ordered an execution in favor of WM Capital. *Interim Order* at 1-4. Before it issued the post-judgment order, the Court wanted to make certain that it understood what was to happen next and whether the parties were truly in disagreement. Shortly thereafter, on April 20, 2020, the Court issued a supplemental interim order, asking the parties to address whether they could agree to skip the public sale and place the Kennedy property with a reputable real estate broker, thereby garnering a higher price at sale than might be achieved at a public sale. *Suppl. Order* at 1-3.

#### 2.    WM Capital's Response

WM Capital responded on April 24, 2020. *WM's Suppl. Resp.* at 1-11. WM Capital provides a detailed history of the complicated transactions leading to this point in the litigation. *Id.* at 1-4. It also presents an overview of the Puerto Rico law

on foreclosure and explains the procedure by which the foreclosed property would come to public sale.  *Id.* at 4-7.  WM Capital then answers the Court's specific questions about how the foreclosure process in Puerto Rico would unfold in this case and why the parties are not able under Puerto Rico law to skip the public sale and proceed directly to a real estate brokered sale.  *Id.* at 7-10.

### 3.    The Almeida Plaintiffs' Response

The Almeida Plaintiffs also responded on April 24, 2020.  *Almeida Pls.' Suppl. Resp.* at 1-10.  They first correct the Court's statement that they had agreed that the so-called GMAC note had attained first priority status and that the foreclosure on all four mortgage notes could proceed, noting that they "must acknowledge the judgment entered" and "will not incur in contempt of Court."  *Id.* at 2-3.  The Almeida Plaintiffs then take the opportunity to reargue their earlier-rejected positions in this complex litigation.  *Id.* at 3-5.  In the Almeida Plaintiffs' view, the state court does not have jurisdiction over the GMAC note and may proceed only on the Kennedy notes and the GMAC note may not proceed to auction at the same time as the Kennedy notes.  *Id.* at 5-6.  Claiming that the Court's Final Judgment was caused by WM Capital's "deceit," the Almeida Plaintiffs nevertheless acknowledge that the Court may not modify the Final Judgment, which is now on appeal.  *Id.* at 8.  The Almeida Plaintiffs review their attempts to resolve the "deadlock" among the parties but concede that "[o]nly the result of the appeal may break the actual deadlock."  *Id.* at 9.

### 4.    Tenerife's Response

Tenerife responded to the Court's orders on April 24, 2020.  *Tenerife's Suppl. Resp.* at 1-11.  As do the Almeida Plaintiffs, Tenerife begins its response by correcting the Court's statements about WM Capital's current acquiescence in a foreclosure proceeding on all four mortgage notes.  *Id.* at 2.  Tenerife stresses that it retains the position that the Agreement does not allow the foreclosure to proceed against all four mortgage notes.  *Id.*  Tenerife then revisits some of the arguments that the Court rejected in its orders leading to the Final Judgment.  *Id.* at 2-8.  Tenerife then describes how it foresees the foreclosure procedure contemplated by the Final Judgment will take place.  *Id.* at 8-11.  Lastly, like the Almeida Plaintiffs, Tenerife is not optimistic about a global resolution of this complicated case.  *Id.* at 11.

### 5.    WM Capital's Motion to Strike

On May 8, 2020, the Almeida Plaintiffs and Tenerife filed a response to WM Capital's response to the Court's interim orders.  *Pls.' Resp. to WM's Resp.* at 1-10.  The response lists eight questions arising from WM Capital's response, including why the minimum bid price is listed as $3,865,000 instead of $3,850,000.  *Id.* at 1-4.

On May 18, 2020, WM Capital filed a motion to strike the Almeida Plaintiffs' and Tenerife's responses to the Court's interim orders and their response to WM Capital's response to the Court's interim orders.  *WM's Mot. to Strike* at 1-12.  WM Capital argues that the Almeida Plaintiffs and Tenerife's three responses "test the limits of how often they get to attack the Final Judgment . . .."  *Id.* at 2.  WM Capital adds that their "use of the Interim Orders and WM Capital's response as an excuse

to raise new arguments and/or seek a reconsideration is impermissible and should not be allowed," and so "ECF Nos. 363, 365 and 367 should be stricken from the record." *Id.* at 2-3 (footnote omitted). WM Capital states that the Almeida Plaintiffs and Tenerife answer only three of the Court's ten questions. *Id.* at 3. Additionally, according to WM Capital, the new arguments raised in these motions "are raised many years too late" and are waived. *Id.* at 7-9. WM Capital also notes that its reference to the minimum bid price as $3,865,000 was a clerical error. *Id.* at 10 n.18. Finally, WM Capital states that the Almeida Plaintiffs and Tenerife's three responses misrepresent the state court's record. *Id.* at 11.

On May 29, 2020, the Almeida Plaintiffs and Tenerife filed a joint opposition to WM Capital's motion to strike. *Pls.' Strike Opp'n* at 1-10. They argue that all three filings WM Capital seeks to strike "have been filed to comply with this Court's order in docket no. 361)." *Id.* at 1.

## III. DISCUSSION

### A. An Overview

WM Capital, the Almeida Plaintiffs, and Tenerife represent that they wish to have an order granting the motion for execution and that the order strictly conform to the exact language in the Final Judgment. The Court agrees that completing the foreclosures and proceeding to a public sale would be in the best interest of the parties.[4] Once the numbers are in, the proceeds have been deposited in the court

---

[4]        Despite the parties' persistent pessimism about the likelihood of a global resolution, the Court has been involved in similarly intractable and bitter disputes in the past and maintains the view that there is no case, including this one, that cannot be resolved. It may be necessary to revisit the possibility of resolution as each successive stage in the proceeding is finalized, but the Court urges the

registry, and the parties are dealing with what did happen, rather than what could happen, the Court still holds out hope that the gap between the Almeida Plaintiffs and Tenerife and WM Capital will narrow, but it is important to move this part of the case to fruition.

## B.    The Motion for Execution

The Court agrees with WM Capital that an order of execution on the Final Judgment is appropriate in this case. The Court addresses four issues the parties discuss regarding the motion for execution.

### 1.    The Availability of an Immediate Execution

As the parties agree for purposes of the motions before it that the Court should issue an immediate execution on the Final Judgment, the Court will not address whether it can or should issue an execution, except to note that the provisions of Federal Rule of Civil Procedure 62 appear to allow the Court to do so. Rule 62 contains an automatic stay provision of thirty days from the date the judgment was entered, FED. R. CIV. P. 62(a), but the time for the automatic stay has passed. Rule 62(b) allows a party to move to stay a final judgment while the case is on appeal so long as the movant provides "a bond or other security . . .." FED. R. CIV. P. 62(b). No motion to stay has been filed and no bond or other security has been provided. The

---

parties not to despair of a final resolution acceptable to all. Ultimately, the case will end and in ways that may be less than satisfactory to one or all the parties. Unlike the Court, which must rule as a matter of law, the parties are able to compromise their positions and find a middle ground.

The Court of Appeals for the First Circuit provides for pre-argument settlement sessions and authorizes settlement counsel to require the parties to appear either before settlement counsel or before a judge to discuss narrowing the issues or resolving the appeal in its entirety. FIRST CIR. LOC. R. 33.0(b)(1). The First Circuit Court of Appeals' settlement process has been notably successful, and this Court again urges the parties to reconsider their positions on settlement because it is evident that they could do more for themselves than the courts can do for them.

Court's Final Judgment ordered the parties to do certain things and under Rule 62(c), a judgment issuing an injunction is "not stayed" pending appeal "[u]nless the court orders otherwise . . . ."[5]   Here, the Court has not "ordered otherwise" and instead ordered the parties to take actions within tight timeframes of the date of the Final Judgment.   Nor have the Almeida Plaintiffs or Tenerife applied to this Court to suspend any portion of the Final Judgment pending appeal pursuant to Rule 62(d). The Court concludes as have the parties that an immediate execution would comply with the provisions of Rule 62.   *See Acevedo-Garcia v. Vera-Monroig*, 368 F.3d 49, 58 (1st Cir. 2004) ("The federal rules contemplate that, absent a stay, a victorious plaintiff may execute on the judgment even while an appeal of that judgment is pending").

Finally, WM Capital asks that the Court order the proceeds of the public sale deposited in the registry of this Court pending resolution of the appeal and neither the Almeida Plaintiffs nor Tenerife object to that request.   The Court views this request as prudent since it allows compliance with the terms of the Final Judgment and does not prejudice the Almeida Plaintiffs and Tenerife in pursuing their appeals.

## 2.   The Terms of the Final Judgment

The Court addresses briefly the Almeida Plaintiffs and Tenerife's caveat: namely, that they "request execution of the June 27, 2019 judgment under the exact

---

[5]   The Final Judgment in this case orders specific performance, which is a kind of injunctive relief.   *See Ocean Spray Cranberries, Inc. v. Pepsico, Inc.*, 160 F.3d 58, 61 (1st Cir. 1998) ("[I]njunctive relief requiring performance of a contract may ordinarily be granted (if other prerequisites are met) where monetary damages will not afford complete relief.   A common example is agreements involving the sale of real property; specific performance is often granted because property is considered unique").

terms of the July 28, 2014 Assignment Agreement, including the mathematical terms the parties agreed, stipulated and contracted." *Pls.' Execution Opp'n* at 2. But the Final Judgment, as it was docketed, does not set forth "the exact terms of the July 28, 2014 Assignment Agreement," and to accede to the Almeida Plaintiffs and Tenerife's request would require the Court to alter the terms of the Final Judgment while this case is pending on appeal. This the Court may not do. As the Almeida Plaintiffs and Tenerife themselves argue, "[t]he appeal deprives the district court of jurisdiction to amend the final judg[]ment during the appeal process." *Pls.' Mot. to Strike* at 1; *see also Acevedo-Garcia*, 368 F.3d at 58 ("[T]he filing of a notice of appeal divests the district court of jurisdiction over matters related to the appeal").

Secondly, before issuing the Final Judgment, the Court issued an extensive series of orders and in so doing, addressed the meaning of the July 28, 2014, Agreement. *Am. Order* at 59. The Court concluded that the July 28, 2014, Agreement "is clear and unambiguous" and provides that "[t]he FDIC-R [now WM Capital] agreed to dissolve its injunction and have its federal judgment against Juan-Almeida-León satisfied in a stipulated manner so long as its judgment was paid first and full, and the Almeida Plaintiffs and Tenerife agreed to this stipulation to have the injunction dissolved, for the FDIC-R's judgment against Juan-Almeida-León to be satisfied, and to receive excess proceeds from the sale of the Kennedy Property." *Id.* at 60. The Final Judgment incorporated the Court's conclusions and the Almeida Plaintiffs and Tenerife may not now insist that the Court alter the terms of the Final

Judgment to correspond to a view of the July 28, 2014, Agreement that the Court rejected.

### 3. Tenerife As Party to the July 28, 2014, Agreement and Surreptitiously Inserted Terms

In its May 9, 2019, order, the Court considered and rejected Tenerife's claim that it was not a party to the July 28, 2014, Agreement and that the Agreement affected only the Kennedy notes, not the GMAC note. *Am. Order* at 59 ("The Court concludes the Agreement is clear and unambiguous. The parties, defined as Juan-Almeida-León, . . . <u>Tenerife,</u> and the FDIC-R, stipulated that Juan-Almeida-León . . . <u>and Tenerife</u> would 'assign to the FDIC-R . . . an undivided one-half interest in each of the Kennedy Notes, GMAC Note, and GMAC Judgment" (emphasis added)).

In the same order, the Court also rejected the Almeida Plaintiffs and Tenerife's claim that WM Capital surreptitiously slipped in provisions in the Agreement whereby Tenerife agreed to forego its title and interest in the GMAC note. *Id.* at 60 ("Notably, neither the Almeida Plaintiffs nor Tenerife argues the Agreement is ambiguous. Instead, they allege that in the negotiations leading to the Agreement, Tenerife never agreed to forego its title and interest to the GMAC Note—the senior lien over the Kennedy Property—but WM managed to include it in the Agreement and Tenerife and the Almeida Plaintiffs signed the Agreement without realizing this incorporation. <u>The Court is unpersuaded</u>" (emphasis added) (internal citation omitted)).

Despite these conclusions, the Almeida Plaintiffs and Tenerife persist in rearguing their losing positions. Again, the Court cannot now accept the Almeida

Plaintiffs and Tenerife's losing arguments, no matter how vehemently expressed, that Tenerife was not a party to the July 28, 2014, Agreement and that WM Capital slipped provisions into the Agreement without the knowledge of the Almeida Plaintiffs and Tenerife.  The Court resolved these issues against the Almeida Plaintiffs and Tenerife and will not revisit them now, especially in the context of a motion for execution and as the Court of Appeals for the First Circuit has assumed jurisdiction over their appeal.

### 4.     The Windfall and Unfairness Allegations

The Almeida Plaintiffs and Tenerife's main objection to WM Capital's motion for execution rests on their fear that WM Capital will gain a windfall and that they will correspondingly suffer a devastating financial loss of millions of dollars.  *Pls.' Mot. to Strike* at 7-8.  The Court does not doubt that the Almeida Plaintiffs and Tenerife are truly convinced that the process set forth in the Final Judgment will lead to unfair and unconscionable consequences favoring WM Capital and disfavoring them.  Certainly, their discontent is palpable as conveyed by the occasionally hyperbolic language in their filings.

In response, the Court makes two points.  First, the Court ruled as it did, based on the record before it, including the precise terms of the Agreement that the Almeida Plaintiffs and Tenerife and FDIC-R entered into, and the Court applied the law to those facts.  The result was, in the Court's view, dictated by the terms of the Agreement the parties themselves entered into and the Court merely enforced those

terms in accordance with its considered understanding of the language of the parties' own Agreement.

Second, the Court hears the Almeida Plaintiffs and Tenerife's concerns, but it does not understand how what it ordered will work the untoward consequences the Almeida Plaintiffs and Tenerife fear. The Final Judgment provides that

1)      the parties will proceed with the foreclosure in KCD2011-042 on all four mortgage notes;

2)      the parties will proceed to public auction and sell the Kennedy property;

3)      the minimum bid price shall be $3,850,000;

4)      WM Capital shall be paid first out of the proceeds up to $2,828,850.11 pursuant to the judgment entered on September 26, 2013, *J.*, *Federal Deposit Insurance Corporation as Receiver of RG Premier Bank of Puerto Rico v. Almeida-Leon et al.*, 3:12-cv-02025-FAB (ECF No. 25), plus pre-judgment and post-judgment interest;

5)      once WM Capital is paid, any surplus shall be assigned to the Almeida Plaintiffs;

6)      if a third party purchases the Kennedy property, the proceeds will be deposited in the Court registry; and

*7)*      if a third party does not purchase the Kennedy Property, the parties will proceed as proscribed by the Agreement.

*See Final J.* at 1-3. Although the history of transactions leading to this Final Judgment is miserably complicated, the Final Judgment is not.

Despite WM Capital's demand that the Court order the United States Marshal to take action for the Almeida Plaintiffs that they refuse to take themselves, the Court will not order the United States Marshal to take any action at this point because it is not convinced that the Almeida Plaintiffs and Tenerife, once they receive this order, will fail to comply with it.  The Almeida Plaintiffs and Tenerife have reaffirmed their willingness, however wrong they think the Court's judgment is, to comply with it pending appeal.  Also, before ordering the United States Marshal to become involved in this civil matter beyond its traditional roles, the Court should hear first from the Marshal and understand any terms that the Marshal would require before the Marshal's Office became involved.

## C.      The Motion to Deem

Even though the Almeida Plaintiffs failed to respond to WM Capital's motion to deem, the Court denies it.  What happened is that on August 29, 2019, the Almeida Plaintiffs filed a motion for leave to file a sur-reply and in their motion, they attached the proposed sur-reply.  On November 26, 2019, the Court granted the Almeida Plaintiffs' motion for leave but stressed that the sur-reply must respond only to the arguments raised in WM Capital's reply.

The Almeida Plaintiffs failed to file the sur-reply, perhaps thinking that their initial filing on August 29, 2019, was sufficient.  Technically, it was not.  The Almeida Plaintiffs should have revised their sur-reply to conform to the Court order, which expressly limited the scope of their sur-reply to matters already raised, and they should have formally filed the sur-reply after they received permission to do so.  But

the Almeida Plaintiffs' inadvertence should not be cause for a sanction and the Court declines to impose one.

### D.    The Almeida Plaintiffs and Tenerife's Motion to Strike

Nor is the Court impressed with the Almeida Plaintiffs and Tenerife's motion to strike WM Capital's sur-reply to their sur-response. The Almeida Plaintiffs and Tenerife provide the Court with no good reason to strike WM Capital's filing and the Court will not do so.

### E.    The Interim Orders and Responses and WM Capital's Motion to Strike

The Court thanks the attorneys for their prompt responses to the Court's interim orders. Preliminarily, the Court appreciates the positions of both the Almeida Plaintiffs and Tenerife that they have not conceded whether the foreclosure may proceed on all four notes and whether the GMAC note takes priority as against the Kennedy notes. In issuing its orders, the Court did not mean to imply that any party to this case had waived anything. The Court only sought clarification from the parties about what would happen next while the Almeida Plaintiffs and Tenerife proceeded with their appeals to the First Circuit and whether the current posture of the litigation presented an opportunity for resolution. The Court is well satisfied by the responses of the parties and concludes at least for the moment that there is no obvious common ground among the parties that could lead to a global resolution without an unexpected change of course from one or more of the parties. The Court

also understands why the statutory requirements of Puerto Rico foreclosure law make its vision of a direct reference to a real estate broker unworkable.[6]

The Court denies WM Capital's motion to strike the Almeida Plaintiffs' and Tenerife's responses to the interim orders. That parts of these responses are non-responsive is not good reason to strike them from the record entirely. However, the Court grants WM Capital's motion to strike the Almeida Plaintiffs and Tenerife's response to WM Capital's response. There must be an end point to litigation and the Court did not permit responses to the parties' responses nor did the Almeida Plaintiffs and Tenerife request permission to file this response. Moreover, regardless of procedure, the response does not provide new information relevant to the questions in the interim orders. *See Pls.' Resp. to WM's Resp.* at 1-10.

### F.     The Motion for Contempt, Sanctions, and Injunction

The Court turns finally to WM Capital's motion for contempt, sanctions, and injunction. The Court understands the degree of frustration that led WM Capital to file the motion for contempt. Even though the Almeida Plaintiffs and Tenerife have a right to appeal this Court's decisions, a right they are exercising, the lengths to which the Almeida Plaintiffs and Tenerife have gone to collaterally attack the Court's rulings are extraordinary.

---

[6]     In its Interim Order, the Court suggested that it would be amenable to a videoconference if the parties wished one. *Interim Order* at 4. WM Capital thought such a conference might be helpful and requested one. *WM's Suppl. Resp.* at 10. The Almeida Plaintiffs and Tenerife did not expressly respond to the Court's offer. However, in reviewing the parties' responses, the Court has thought better of holding such a videoconference. The parties clarified the Court's areas of concern to the Court's satisfaction and the Court does not view a further videoconference as answering unanswered questions or moving the case toward amicable resolution at this stage.

First, WM Capital documents that, in an attempt to collaterally attack this Court's rulings, the Almeida Plaintiffs and Tenerife filed an action in state court against, among others, the attorney representing WM Capital, this Judge, and Chief Judge Gelpi, an action promptly dismissed by Judge Young. *See Order of Dismissal, Almeida-León v. Mellado-Villareal*, Case No. 3:19-cv-01533-WGY (ECF No. 34).  In dismissing the removed action, Judge Young described the joinder of the Puerto Rico attorneys as "fraudulent." *Tr. of Proceedings for Videoconf. Hr'g Before Judge William G. Young* at 11:17-19, *Mellado-Villareal*, Case No. 3:19-cv-01533-WGY (ECF No. 36) ("The Court rules that the joinder of the Puerto Rico attorneys was fraudulent").  Furthermore, Judge Young dismissed the action as "duplicative" and concluded that the Almeida Plaintiffs and Tenerife's arguments were "without merit." *Id.* at 11:20-22, 12:08-10.

Next, the Almeida Plaintiffs attempt in their sur-reply to challenge this Court's rejection of their claims that Tenerife was not a party to the July 28, 2014, Agreement and that WM Capital had surreptitiously inserted provisions in the Agreement.  As this Court has noted, the Court cannot accept in the context of a response to WM Capital's motion for contempt that the Court's decision on these issues was incorrect. If the Almeida Plaintiffs wished to challenge these rulings in this Court, they could have filed a post-judgment motion, but they cannot refuse to obey the rulings on the basis of rejected arguments.

Third, in the same vein, the Almeida Plaintiffs and Tenerife attempt to thwart this Court's Final Judgment by restrictive indorsements on the four mortgage notes.

In its order leading to the Final Judgment, the Court reviewed the Almeida Plaintiffs and Tenerife's interpretation of the July 28, 2014, Agreement and rejected it. The Almeida Plaintiffs and Tenerife may not simply reimpose their rejected view of the terms of the Agreement in an effort to stymie the Court's rulings. If the Almeida Plaintiffs and Tenerife had wished to do so, they could have filed a bond to allow a stay of the execution of the Final Judgment pending appeal, but they did not do so. Instead, they elected to attempt to negate the effectiveness of the Final Judgment by reasserting their failed arguments.

Fourth, Tenerife argues in its opposition that this Court's rulings were erroneous, that the earlier ruling of the Puerto Rico court must take precedence, and that if this Court issued an injunction, it would infringe upon Tenerife's First Amendment rights. The Court views these arguments by Tenerife as frivolous.

Fifth, the language in some of the Almeida Plaintiffs' filings is over the top. The response to the Court's interim orders is the most recent example: "Being deceived, defrauded and extorted for over four years is sufficient to deeply convince of the futility." *Almeida Pls.' Suppl. Resp.* at 8. In its experience, the Court has seen acrimonious disputes but very rarely have the lawyers resorted to accusations of deceit, fraud, and dishonesty on the part of the opposing party and even fellow attorneys.[7] *See Almeida Pls.' Contempt Sur-Reply* at 4 ("Counsel for WM[ Capital]

---

[7]     In its motion for contempt, WM Capital urges the Court to initiate "criminal contempt proceedings" against "the Almeida[ Plaintiff]s and their legal counsel . . .." *WM's Mot. for Contempt* at 20. The Court acknowledges that WM Capital sometimes uses aggressive language, but the Court's strong impression is that the Almeida Plaintiffs began the ad hominem style of attack and WM Capital largely defends itself and responds.

simply slipped or included the identified language in its proposed judgment, ready for the Court to sign, and then argued that the proposed judgment was unopposed").

While acknowledging that the Almeida Plaintiffs and Tenerife's course of conduct of this litigation is extraordinary and disturbing, the Court is reluctant to rule on WM Capital's motion for contempt, sanctions, and injunction at this juncture in the litigation. First, before the Court found the Almeida Plaintiffs, Tenerife, and/or their attorneys in contempt and imposed sanctions, it would accord them full due process by holding, if appropriate, an evidentiary hearing or at a minimum an oral argument and the Court would require more fulsome briefing. Second, the request for an injunction is subsumed by the motion for execution, which this Court is granting. Third, the Court prefers to deal with this issue after the dust from the foreclosure and pending appeal has settled. This controversy, as acrimonious and intractable as it has been, will at some point resolve. Once the case is over and the financial implications have been absorbed, the parties may think differently about the issues presented by the motion. Accordingly, the Court is dismissing the motion without prejudice. If WM Capital wishes to bring the motion again, it may do so.

## IV.   CONCLUSION

The Court DISMISSES without prejudice WM Capital Management, Inc.'s Emergency Motion for Contempt, Sanctions and Injunction Against the Almeidas dated July 17, 2019 (ECF No. 296); GRANTS WM Capital Management, Inc.'s Motion for Execution of Judgment dated November 22, 2019 (ECF No. 338); DENIES WM Capital Management, Inc.'s Motion to Deem the Reply at ECF No. 325 Unopposed

dated December 6, 2019 (ECF No. 343); DENIES the Almeida Plaintiffs and Tenerife Real Estate Holdings LLC's Motion to Strike Filings Under ECF #352 and #354 dated January 23, 2020 (ECF No. 359); GRANTS WM Capital Management, Inc.'s Omnibus Motion to Strike the Almeidas' and Tenerife's Response to the Interim Orders (ECF Nos. 363 and 365) and ECF No. 367 (ECF No. 368) with respect to the response at docket number 367; and DENIES WM Capital Management, Inc.'s Omnibus Motion to Strike the Almeidas' and Tenerife's Response to the Interim Orders (ECF Nos. 363 and 365) and ECF No. 367 (ECF No. 368) with respect to the responses at docket numbers 363 and 365.  The Court ORDERS the proceeds of the public sale deposited in the registry of this Court pending resolution of the appeal to the First Circuit in accordance with Puerto Rico Local Rule 67.

 SO ORDERED.

     /s/ John A. Woodcock, Jr.
     JOHN A. WOODCOCK, JR.
     UNITED STATES DISTRICT JUDGE

Dated this 29th day of May, 2020

48