**COMMONWEALTH OF PUERTO RICO**
**COURT OF FIRST INSTANCE**
**SUPERIOR PART OF SAN JUAN**

| | |
|---|---|
| **TENERIFE REAL ESTATE HOLDINGS, LLC.** *Plaintiff* | **CIVIL NO.: K CD2009-0708** |
| | **SESSION ROOM: 603** |
| **VS.** | **RE:** |
| **EMÉRITO ESTRADA RIVERA, ISUZU, PR, INC.** *Defendant* | **COLLECTION OF MONEY, FORECLOSURE OF MORTGAGE** |

## RESOLUTION AND ORDER

On November 7, 2011, Judgment was rendered in this case. It was entered by agreement and stipulation between the parties to the case. Said Judgment GRANTING the foreclosure of the real estate mortgage, was issued entirely under the laws of Puerto Rico[1], without any ingredient of substantive or federal procedural law. Said judgment provides for the foreclosure of the first mortgage over real estate property. The foreclosure must be carried out through the process of public auction mandated by the Puerto Rico Mortgage Act, 30 LPRA §6107, §6136 to §6145. Foreclosure is the remedy that the judgment grants, the Court must have jurisdiction to issue the very remedy it grants, as well as over the other aspects of the case, i.e. *Remedy Jurisdiction.* See; *Arbaugh v. Y&H Corp*; 546 U.S. 500, 126 S.Ct. 235, 163 L.Ed.2d 1097 (2006), Prou v. U.S. 199 F.3d 37, 45-46, (USCA 1st, 1999) and Bive*ns v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388,91 S.Ct. 1999, 29 L.Ed.2 d 619 (1971), concurring opinion of Justice Harlan, and footnotes 5 and 6; additional sources cited in the text.

---

[1] *Federal courts lack jurisdiction to amend state judgments based on state law. Fox Film Corp. v. Muller, 296 U.S. 207, 210, 56 S. Ct. 183, 184, 80 L. Ed. 158 (1935); Martinez v. Ryan, 566 U.S. 1, 10-11, 32 S. Ct. 1309, 1316, 182 L. Ed. 2d 272 (2012); Coleman v. Maldonado, No. 3:15-CV-1878 (MPS), 2018 WL 1587462. Real property is governed by the laws of the state where it is situated. Articles 49 and 50 of the Civil Code of Puerto Rico of 2020, and 31 LPRA § 10- article 10 of the Civil Code of Puerto Rico of 1930.*
*State Courts lack jurisdiction to modify their own judgments once they become final, binding, and unappealable. The Judgment concludes the controversy, since once the Judgment is final and binding, there is no longer a case or controversy, which constitutionally limits jurisdiction. León v. Rest. El Tropical, 154 D.P.R. 249 (2001). This duality establishes the binding force of the Final Judgment of November 7, 2011. Courts must be zealous guardians of our jurisdiction. Dávila Pollock v. R.F. Mortg., 182 DPR 86, 97, (2011). Rodriguez v. Zegarra 150 D.P.R. 649 (2000); Hernandez v. Marxuach Const. Co., 142 D.P.R. 492 (1997), We have a duty to examine its presence and extent, as well as to act accordingly.*

*K CD2009-0708 | RESOLUTION AND ORDER | 2*

The deed of mortgage, the stipulation submitted in 2011 and the judgment rendered on November 7, 2011, in this case set the minimum price for the first public auction at two million three hundred sixty-five thousand dollars ($2,635,000.00). The Judgment of November 7, 2011, establishes that the principal amount due and secured by the first mortgage is $2,221,245.93 as of that date. The mortgage note provides that the sums due accrue interest at ten percent per annum (10%), consequently accruing $222,124.59 per annum from November 7, 2011, until paid in full.

The motion for the issuance of this Ruling and Opinion is a Request for Relief in Enforcement of the Effectiveness of the Judgment and in Aid of Jurisdiction filed on July 9, 2021. That is the second time *Tenerife* requests Remedy in Enforcement of Judgment; the first time was on June 18, 2019, after the Puerto Rico Court of Appeals affirmed the January 17, 2018 ruling and the Puerto Rico HSC denied to review HCA's judgment and remanded the Writ on February 8, 2019 in appeal CC 2018-1063. But before the Federal First Circuit Court of Appeals affirmed the June 2019 federal judgment. At that time this Court did not issue relief, it precisely afforded the Federal Court every available space and deference to exercise its jurisdiction within the limits of jurisdiction; that is, this Court then, de facto, abstained. Two years have passed, *WM Capital* and its counsel continue to insist on flouting what was ordered and sentenced by this Court, both on November 7, 2011 and January 17, 2018, and to cancel the November 7, 2011 judgment.

The factual legal scenario that this Court has in mind is that again, the same third party to this case, *WM Capital Management, Inc.* who is a party to a certain Assignment Agreement of undivided part "for the payment" of Mr. Juan Almeida León's obligation, and of State Judgment insists on undermining, modifying and annulling what has been Sentenced by this Court and affirmed on appeal. The situation is exacerbated by the existence of several contradictory judgements. *WMC* alleges and argues that what was "assigned to it for payment",

*K CD2009-0708 | RESOLUTION AND ORDER | 3*

includes the 50% joint community rights of *Tenerife Real Estate Holdings, LLC*, in the promissory note and Judgment issued in this case on November 7, 2011. With such a position, *WMC* again disregards the January 17, 2018 ruling of this Court in this case. The Federal District Court for the District of Puerto Rico, issued Final Judgment on June 27, 2019 "*docket* 289" in case 16-cv-01394-JAW, wherein it disposes on several issues, the most relevant to this incident is that that Federal Judgment orders the parties in that Federal Case, to sign a stipulation to proceed with the public auction of the mortgaged property described below, in order to execute the judgments rendered in this case and in case K CD2011-0142 (also about foreclosure on the same property, the mortgages there are second, third and fourth ranking mortgages belonging to Mr. Francisco Almeida León and his wife 100%). What is particularly disturbing about this Federal Judgment is that it orders to proceed with the public auction process in this case and in case K CD2011 0142 for amounts of minimum price and process different from the one decreed by the Judgments of this Court that are sought to be executed. In other words, it seeks to substantially modify the existing Judgments and rulings since 2011 in cases K CD2009-0708 and K CD2011-0142, as well as to deviate from the statutory foreclosure process mandated by the Puerto Rico Mortgage Act. The difference in the minimum price for the first auction is very significant, to the extent that it orders zero dollars to be bid in the first auction with respect to this case. This is equivalent to revoking and annulling the Final Judgment in this case of November 7, 2011, and also annulling and vacating the Resolution and opinion in this case of January 17, 2018, confirmed on appeal. This also seeks to annul the Judgment rendered by the Puerto Rico Court of Appeals in appeal KLCE2018-00824. We have seen that the Federal Courts lack jurisdiction to dispose in such a manner.

In other words, the Federal Court, *WM Capital Management, Inc.* and its attorneys[2] have requested this Court to issue a Writ for Execution of

---

[2] *The attorneys for WMC who have signed motions for relief in this case K CD2009-0708 are Jairo Mellado Villareal-RUA 10,361, Tessie Leal-Garabis-RUA 13,096 and Hector Orejuela-RUA 19,604.*

Judgment that is inconsistent with and contrary to the Judgment sought to be executed, with the actual effect of vacating the very Judgment sought to be executed. Even more disturbing is that the Federal Court has ordered *Tenerife Real Estate Holdings, LLC*, and the other plaintiffs therein, to show cause why they should not be found in contempt and impose heavy economic sanctions on the parties and their counsel, depriving them, outright, of all of their ownership rights to the various mortgages by order of said Federal Court, when the same Federal Judgment decrees that *Tenerife* is the sole owner of the Judgment in this case. The Federal Court requires *Tenerife* and the plaintiffs therein, to stipulate following a process of foreclosure that is contrary to the Judgment in this case of November 7, 2011, it is contrary to the foreclosure process mandated by the Mortgage Act, to change and eliminate the minimum price stipulated for the first auction, all with the actual effect of nullifying the Judgment in this case, which the Federal Court itself decreed *WMC* cannot demand nor is entitled (*docket* #288 in said Federal Case). All of this creates several incompatible and contradictory Judgments between them, establishes contradiction within the same Federal Judgment, and requires *Tenerife* to act in a mutually exclusive manner, resulting in that, no matter how it acts, *Tenerife* is in breach of one of the Judgments. *Tenerife Real Estate Holdings, LLC* understandably refuses to stipulate against the Law, against Post Judgment Due Process, against what it considers Public Order, and against the stipulation in this case with defendant EER-IPR. *Tenerife* faces the crossroads of conflicting judgments requiring incompatible and irreconcilable conduct, and illegal and physically impossible conduct.

*WM Capital Management, Inc.* (*WMC*) in its briefs does not deny that it seeks from this Court Writ of Execution of Judgment which is contrary to the Judgment entered in this case on November 7, 2011; which is the one sought to be enforced. Nor does *WMC* deny that the process it demands to be followed, to enforce the Judgment in this case, deviates from the process provided by the Judgment itself and ordered by the Puerto Rico Mortgage Act. *WMC* has attempted to argue that there is no contradiction                between                the                Federal                Judgment                and

*K CD2009-0708 | RESOLUTION AND ORDER | 5*

the one issued in this case but acknowledges that the minimum price for the first auction and the process to be followed pursuant to those two judgments are not the same. *WMC* acknowledges that its demands disregard the minimum auction price agreed in the deed of mortgage and ordered in the judgment of November 7, 2011, so much so, that it is required to bid zero money for the first foreclosure auction in this case. *Ponce Federal Savings v. Gómez*, 108 D.P.R. 585 (1979)[3]; *WMC* has not legally attempted to support and sustain its legal position in this regard, whereby it can be ordered as requested.

This Court has deployed substantial effort to reconcile what the Federal Court decrees, with what this Court has sentenced and decreed on November 7, 2011 and January 17, 2018, for example, see Resolution of October 10, 2019 at page 7. In said Resolution, it was stated that the Federal Judgment is not contradictory to that set forth in the January 17, 2018 Resolution, that said resolution is not a Jugement, that what was addressed was procedural matter and that *WMC*'s "claim" is of "the entire jurisdiction of the Federal Court"; also that "the resolution issued on January 17, 2018 does not constitute an adjudication on the merits of *WM Capital*'s claim…". That effort to reconcile the various judgments and rulings did not encompass the now demands by *WMC* and its attorneys to eliminate the Minimum Auction Price and omit the process mandated by the Mortgage Act to foreclose on real estate property. The abysmal difference in process, price and contradictions transcends any possible rational effort at reconciliation. There is no deference that can address, resolve the conjuncture, protect the effectiveness of the Judgment rendered in this case and the exclusive, primary, *In Rem* jurisdiction of this Court. The Resolution of October 10, 2019 was the subject of appea, where the Honorable Court of Appeals stated that certainly the Resolution of January 17, 2018 has the effect of judgment to which *WMC* is a party and, therefore, appealed KLCE2018-0824. In Appeal KLANPO19-01350, because the prior appeal (KLCE2018-0824) was

---

[3] *The Courts lack authority to modify the minimum auction price.*

*K CD2009-0708 | RESOLUTION AND ORDER | 6*

actually appeal from a Judgment called "Resolution"[4], the issue of the Writ *Certiorari* on the October 10, 2019 Resolution was denied.

Faced with the new Request for Relief in Enforcement of Judgment and Aid from Jurisdiction, *WMC* has merely requested that this Superior Court refrain from exercising its exclusive primary *In Rem* jurisdiction, to provide room for the Federal Court to impose sanctions, contempt and/or order depriving *Tenerife* and the therein plaintiffs of title for failing to stipulate to depart from the foreclosure process mandated by the Act. *WMC* has not enlightened this Court as to any existing doctrine, or legal principle, whereby the Court with Exclusive Primary *In Rem* Jurisdiction must abstain so that another Court, lacking *In Rem* jurisdiction, can act with respect to the thing under the exclusive primary *In Rem* jurisdiction of another Court.

This Court is aware and has given much weight and consideration to the deference and comity between the Federal and State Courts, and to the operation in harmony and concert that is expected and required between both forums for the benefit of the people and the concert function of multiple governments, and the structural protection of rights that this generates. Also to the full faith and credit required of valid judgments. This Court, for years, has deployed every effort and deference possible. However, now there are inconsistent and contradictory judgments that simultaneously require *Tenerife* to comply with conduct that is mutually exclusive, contrary to the Judgment rendered in this case and contrary to the Mortgage Act. These facts are highly relevant to this opinion.

For the reasons set forth in this Ruling and Opinion this Court **DENIES** the Request for Abstention filed by *WMC* and its counsel. For the facts and reasons set forth below and the conclusions of law we express, the Order, Remedies and Sanctions accurately identified in this Order and Order are hereby issued. The Ruling and Order hereby      issued      is      on      the      substantive      merits,      so      as

---

[4] *See Doral Mortgage v. Alicea, 147 D.P.R. 862, (1999): Although the Court denied intervention in a "judgment," strictly speaking we are dealing with a judgment. See: De Jesús v. Corp. Azucarera de P.R., 145 D.P.R. 899 (1998), citing A.F.F. v. Superior Court, 93 D.P.R. 903 (1967); Bco. Santander P.R. v. Fajardo Farms Corp., 141 D.P.R. 237 (1996); Arroyo v. Quiñones, 77 D.P.R. 513 (1954); Rodríguez v. Municipal Court and Ramos, 74 D.P.R. 656, 664 (1953). The vehicle whereby which such judgment is reviewable on appeal. De Jesús v. Corp. Azucarera de P.R., ante. (Emphasis added, footnote omitted).*

*K CD2009-0708 | RESOLUTION AND ORDER | 7*

to have binding effect upon the parties to this Resolution and Order is required, because the doctrine of Exclusive Primary *In Rem* jurisdiction "is necessary for the *harmonious cooperation of Federal and State Courts.*"; paraphrased in translation from *Princess Lida of Thurn and Taxis v. Thompson,* 305 US. 456, 465-467, 59 S.Ct. 275, 280-281, 83 L.Ed. 285 (1939).

The property subject of the mortgage is described as follows:

---Urban: Located in the Monacillos Ward of Río Piedras, with an area of 10,986.903 square meters. With bounds by the NORTH with the parcel adjudicated to Luis Llorens Torres and Mercedes De La Torre; by the SOUTH with the San Patricio road; by the EAST with Luis Torres and by the WEST with the San Juan to Bayamón Highway, Puerto Rico, today State Highway Number Two (2).

---This description corresponds to the remainder of this property after segregations.

---Recorded in Folio 123, of Volume 785, Third Section of San Juan, Property number 13,936.

---The physical address of the property is the following: Lot. CM, East Marginal, John F. Kennedy Expressway, Bechara Industrial Park, Barrio Monacillos, San Juan, Puerto Rico.

*Tenerife Real Estate Holdings, LLC* has again requested Relief in Enforcement of Judgment and in aid of the Exclusive, Primary, *In Rem* Jurisdiction that this Court has in this case. Foreclosure is an *In Rem* proceeding, directly against the thing and *erga homnes.* See *First Fed. Savs. v. Nazario et als.,* 138 DPR 872, 879 (1995), *C.R.U.V. v. Torres Pérez,* 111 D.P.R. 698, 699 (1981); *P.R. Prod. Credit Assoc. v. Registrador,* 123 D.P.R 231 (1989), *Donovan v. City of Dallas,* 377 U.S. 408, 412, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964).

The right of mortgage is a property right. The Court agrees that it has already afforded ample space and deference to the Federal Court to dispose of the case before it, pursuant to its Federal jurisdiction, the Court having already rendered its Final Judgment and having gone through the process of appeals, all that remains is to enforce the Federal Judgment, the one entered in this case, and the one entered in case K CD2011-0142, but in view of the contradictions, the requirements of law and the post judgment                due                process[5],                and                considering

---

[5] *See R&G v. Sustache, 163 D.P.R. 491, (2004), which provides:*
*"As we have repeatedly stated, once post-judgment judicial remedies are enshrined in a statute, they become part of due process of law, procedurally speaking. Dr. Dominguez Hosp.,*

*K CD2009-0708 | RESOLUTION AND ORDER | 8*

the Exclusive Primary *In Rem* Jurisdiction that this Court has, the remedies requested by *Tenerife* are granted.

To explain and illustrate, especially to every Court and those on appeal, the factual and legal grounds are expressed, the findings of fact are established for the record, the evidence, and the applicable substantive and procedural law are formulated. This is also necessary to place the Courts on appeal in a position to perform their revisory function in a complete manner, thus protecting the rights of all parties and the public interest in the constitutional function we perform. This in special consideration to the deference that the federal jurisdiction requires, deserves and the present situation demands, maintaining the balance of operation in concert of governments, Courts, and constitutions that coexist and operate simultaneously over the population. This Court is mindful of the constitutional role among the various governments, the role that each part of each government has in the dissemination of power and jurisdiction over the land, and over the various aspects of each government. That is, the atomization of power as the guardian of liberty, manifested in the distribution of jurisdiction. This ruling is entered within the limits that this Court has been assigned in that distribution.

### FINDINGS OF FACT

1. This case was initiated on February 25, 2009, in request for foreclosure of a real estate mortgage duly recorded in the Registry of the Property. The mortgage subject to foreclosure is of first rank in the Registry of the Property. Said mortgage secures a mortgage note dated July 18, 1989, for a face value of $2,635,000.00. The encumbered property has already been described in this Resolution and Order.

2. By stipulation between the then parties to this case, plaintiff and defendant, on November 7, 2011, Judgment was entered ordering the foreclosure and the process to follow. It provided for the sale in public auction of the mortgaged property,

_____

*Inc. v. Ryder, 161 D.P.R. 341 (2004); Falcón Padilla v. Maldonado Quirós, 138 D.P.R. 983 (1995); Arroyo Moret v. F.S.E., 113 D.P.R. 379 (1982); Berrios v. Mining Commission, 102 D.P.R. 228 (1974)." (Emphasis added).*

recognizes and establishes the minimum price for the first auction at $2,635,000.00. Said Judgment has been final and binding since 2011. That Judgment is on the substantive merits of the right of the parties and is binding on the parties to that judgment, and weighs directly on the real property, *In Rem.* Judicial Record.

3. Mr. Francisco Almeida acquired by purchase the rights of the initial mortgagee, which was General Motors Acceptance Corporation (GMAC). Francisco Almeida Leon was substituted as plaintiff in this case and was listed as plaintiff until 2018.

4. On July 28, 2014, an "Assignment For Payment" Agreement was signed between the *Federal Deposit Insurance Corporation (FDIC)* of one party and Mr. Juan Almeida León as sole debtor of the FDIC by Partial Judgment dated September 26, 2013.

5. The Federal Judgment rendered in *FDIC v. Juan Almeida León and Emérito Estrada Rivera-Isuzu de Puerto Rico* (EER-IPR) case 12-2025 before the Federal Court, was exclusively against Juan Almeida León. Said Judgment is regarding the collection of money, execution of pledge and mortgage, of three other mortgage notes issued by EER-IPR, two for the principal amount of $1,350,000.00 each, and the third for $270,000.00, issued respectively on April 17, 2007 under affidavit 114, 115, and 116 before notary public Manuel Rivera Meléndez, copy of which was submitted to the Federal Court in the process of case 12-1225. Pages 171 to 179 of the appendix of *WM Capital*'s Opposition to Joinder to case K CD2009-0708. The Judgment in that case is only against Juan Almeida León, it does not provide for foreclosure, there is no additional judgment in that case, it does not provide for finality. Id. at 179.

6. The July 28, 2014, contract was captioned *Assignment to Satisfy Judgment and Assignment of Mortgage Notes*; it is part of the court file at page 180 of the appendix to the motion of

December 13, 2017 in Opposition to Joinder of *WM Capital* as a party to this case. *Agreement For Payment.* Pursuant to said agreement, the parties stipulated to several matters and facts, which are essentially not in dispute. They present a clear picture and account of what happened that is relevant and necessary to know in order to properly dispose of the substantive issue before us. We identify several of the issues and facts that the parties stipulated; for the reader's reference, reference is made to the contractual paragraph where it is set forth, again the contract is located at page 180 of the identified appendix.

A. Identifies and defines Juan Almeida León as *Borrower* ("Debtor"), against whom judgment was rendered in federal case 12-2025, on September 26, 2013 condemning him to pay the sum of $2,828,850.11. Page 1, paragraphs 1.1, 2.1 and 2.2.

B. Signatories to said contract of July 28, 2014 were also Francisco Almeida León, his wife Wanda Cruz Quiles who were referred to as Co-holders translated as "Cotenedores", and plaintiff in this case *Tenerife Real Estate Holdings, LLC.* referred to as *Tenerife.* P. 1, paragraph 1.1. *Tenerife*, Francisco Almeida nor Wanda Cruz are debtors of money to *WM Capital.* They signed only as noteholders and owners of the Judgments in K CD2009-0708 and K CD2011-0142.

C. The FDIC requested from the Federal Court, and on May 28, 2014 obtained an *injunction* against Francisco Almeida León stopping the public foreclosure auction in case K CD2011-0142. The FDIC alleged that said auction would be in fraud of creditors, because it argued that Juan Almeida León is the owner of 50% joint community three

*K CD2009-0708 | RESOLUTION AND ORDER | 11*

mortgage notes being foreclosed in said case. P. 1 and 2, paragraph 2.3.

D.  The three mortgage notes subject to foreclosure in case K CD2011-0142 were referred to as "*The Kennedy Notes*" and are as follows: a) promissory note in the principal amount of $1,365,000.00 issued on December 12, 1997, under affidavit 30,376 and payable to bearer; b) promissory note in the principal amount of $500,000. 00 subscribed by Emérito Estrada Rivera Isuzu Puerto Rico (EER-IPR) dated November 6, 1998 issued under *affidavit* 3,166; and c) mortgage promissory note for the principal amount of $2,000,000.00 issued on September 3, 2003 under affidavit 9,322. Page 2, footnote 1.

E.  *Tenerife* is the owner of the $2,635,000.00 face value promissory note issued on July 8, 1989, and of Judgment in case K CD2009-0708 for the principal amount of $2,221,245.93, said note is called the "GMAC Note", because Mr. Francisco Almeida acquired it from General Motors Acceptance Corporation (GMAC), who transferred it to *Tenerife* who is the plaintiff in this case. Record of this case, and p. 3, paragraph 2.5.

F.  The parties identified "assignment for payment" of a joint community interest in mortgage notes and the judgments rendered in cases KCD2009-0708 and K CD2011-0142, and that the four notes would be consigned to the Superior Court of Puerto Rico p. 3, paragraph 3.1.2;

G.  To evidence the interest assigned to the FDIC in the assigned "*Kennedy Notes*" for payment, it was agreed to immediately file in that case, K CD2011-0142 (referenced by *exhibit*), stipulation to include the Assignee for payment, then the FDIC, as co-plaintiff in that case and to proceed as soon as possible to the public auction in that case. Nothing similar was stipulated with respect to this case K CD2009-0708.

*K CD2009-0708 | RESOLUTION AND ORDER | 12*

H.  It was agreed that the minimum price for the first and only bidding shall be $3,850,000.00 (the parties agreed to bid the credit), which is the exact same minimum price for the first auction pursuant to the Judgment rendered in case K CD2011-0142 in October 2011. P. 5, paragraph 3.1.6. nothing is mentioned in the contract about auction in this case or about this case.

I.  Regarding the auction process itself, the parties agreed that the *co-holders* and the FDIC would jointly bid the minimum price for the first auction, and would acquire title by becoming owners of the Kennedy property. Page 5 paragraph 3.1.8.1. *co-holders* is a defined term that excludes *Tenerife*.

J.  The parties agreed on the methodology for the *co-holders* and the FDIC to sell the title to the property that the c*o-holders* and the FDIC acquire at auction, *Tenerife* is not mentioned. P. 6 paragraph 3.1.8.3. The *co-holders* and the FDIC agreed to maintain co-ownership or community for twelve months, then they can demand its termination. Nothing is mentioned about *Tenerife*.

K.  When and if the FDIC is paid, the FDIC will: i. Release and deliver to the borrower and the *co-holders* the other mortgage notes for which it sued to obtain judgment against Juan Almeida León; ii. Assign to the borrower and the *co-holders* any money on rents received, and iii. Assign to the borrower and the co-holders any promissory notes and judgments encumbering the Kennedy property; P. 8 para. 3.1.9. Nothing adduced or mentioned to *Tenerife*.

L.  The FDIC agreed that it is conducting a phase I environmental study of the property, and will complete it as soon as possible, and that if upon completion of said study it is determined that the result is unsatisfactory, it may terminate the contract. The auction will not take place                              until                              such

phase I environmental study has been completed, or the FDIC gives its written consent. Page 9 paragraph 3.2.

M. General clauses on authorization, applicable law, and separate signatures were established in the remainder of the contract.

7. The joint motion was promptly filed in case K CD2011-0708, nothing was filed in this case.

8. Once the assignment agreement was signed, Mr. Francisco Almeida León repeatedly requested the assignee to proceed with the sale at public auction, which was agreed to be carried out as soon as possible. Deposition of Mr. James Barr, located at pages 16 to 95 of the appendix to the December 13, 2017 Motion, in Opposition to Joinder of *WM Capital* as a party to this case. Pages 56, and 310 to 316 of said appendix.

9. The Environmental Study Report obtained by the FDIC is dated July 16 and 22, 2014, that is, several days before the July 28, 2014 agreement was signed. It concludes on page 15 that there is no threat to the environment (per previous study of 2007). The environmental inspection was carried out on July 14, 2014, together with Liza Delgado (page 17). The inspection of July 14, 2014 reported that no significant risk of environmental contamination was found Pp. 17 and 18, and Executive Summary. Pages 196 et seq. of the appendix to the motion of December 13, 2017.

10. The FDIC and its counsel repeatedly demanded that *Tenerife* waive its first mortgage and judgment in this case, this as a condition to proceed with the public auction in execution of judgment and thus comply with the assignment for payment. See Resolution of January 17, 2018 in this case, affirmed on appeal KLCE2018-0824; *WM Capital* admissions in oral deposition pages 74 and 77-79 (December 13, 2017 Appendix pp. 89, and 92-94). July 9, 2021 motion appendix pp. 138-139; 292-293 entries for January 16, 2015 and

*K CD2009-0708 | RESOLUTION AND ORDER | 14*

February 6, 2016, subsection 4, Page 86 -87 lines 21 through 5; Page 108-109 lines 19 through 3.

11. In December 2015, the FDIC, by *Loan Sale Agreement* sold to *WM Capital Management, Inc.* (appendix December 13, 2017, pages 114 to 117), the sale price for the credit and rights under the Assignment for payment of 50% in joint community of notes and judgment was $92,840.71 (App.p. 48-50, 59 Appendix to the July 9, 2021 Request for Relief in Enforcement of Judgment, and Exhibit 108-1- p. 9 in federal case 16-01394).

12. By letter dated January 14, 2016 Francisco Almeida advised and declared the assignee in default, but chose specific performance of the contract. In response Mr. Jairo Mellado informed that the assignee FDIC sold the rights under the contract of July 28, 2014. (Page 114 of the appendix to the motion of July 9, 2021). Immediately on January 15, 2016 (id p. 136) Almeida informed that it exercised the commonholder's right of first refusal. On January 22, 2016, a suit was filed in commonholder's right of first refusal, case K AC2016-027, and a substantial bond was posted, and a declaration of breach of contract by the assignee, then *WMC*, was requested. See p. 1-8 judicial notice, (Right of First Refusal Complaint, which includes affidavit), in appendix to the Request for Remedy in Enforcement Judgment of July 9, 2021.

13. *WMC* removed the case to Federal Court alleging diversity of citizenship and the case was docketed in Federal Court as case number 16-01394. Jury Trial Demanded. It is in said case that a Judgment has been issued contradictory to the Judgment issued in the present case. As stated at the beginning of this order, this Federal Judgment orders that in this case the auction be for zero dollars, with which *WMC* is actually requesting the cancellation of the mortgage subject to foreclosure in this case and the judgment rendered in this case; to the detriment of EER-IPR. Judicial record.

14. The mortgaged property located on Kennedy Avenue was appraised in the amount of $8,130,000.00 as of August 14, 2014. Appendix of December 13, 2017 page 372.

15. On May 26, 2016, a hearing was held in case K CD2011-0142, at which Francisco Almeida León appeared personally and through counsel, and *WM Capital* through counsel. There it was stipulated to proceed with the auction in said case, and it is so recorded in the minutes (page 13 of the appendix to Request in Enforcement of Judgment of July 9, 2021). Upon drafting the stipulation *WM Capital* again demanded that *Tenerife*'s first mortgage be cancelled as a condition to proceeding with the public auction sale in case K CD2011-0142. *Tenerife* on July 1, 2016 by letter, advised *WM Capital* of breach of contract, demanded performance and found in default, having chosen to terminate the agreement of July 28, 2014. Appendix of December 13, 2017, pp. 366-367, Judicial Knowledge.

16. On August 31, 2017 Francisco Almeida, Wanda Cruz and their attorney Edilberto Berrios Pérez, sent letter to *WM Capital* and its attorneys Jairo Mellado Villareal and Tessie Leal, responding to the cancellation demands, alluded to the pattern of fraud and illegal appropriation in which *WMC* has incurred by persistently demanding the cancellation of the first mortgage to be executed in this case K CD2009-0142, as a condition to proceed with and not hinder the execution of the judgment and conduct the public auction in case K CD2011-0142. Said letter was attached by an extensive appendix correlated to the facts argued. Pages 400 to 423 of the July 2021 Motion in Request for Enforcement of Judgment, the document speaks for itself.

17. On August 17, 2017 *WM Capital*, as a matter of law, moved to be joined as a party plaintiff in this case, as a matter of law. On December 14, 2017 (Hurricane Maria stalled terms) *Tenerife* filed opposition, argued to                    the                    pattern                    of

conduct displayed by *WM Capital* and its attorneys, demanding to cancel the first mortgage on the property, the one foreclosed in this case. This Court, after giving the parties to said motion broad opportunity to present evidence to the record, which each did, adjudicated on the substantive and procedural merits necessary to adjudicate *WM Capital*'s entitlement to the requested joinder. By Resolution dated January 17, 2018, this Court determined the facts contained in that Resolution, and ruled on the correctness, in fact and in law, of the finding of default and termination of agreement made by *Tenerife* to *WM Capital* on July 1, 2016.

18. *WM Capital* requested reconsideration of the resolution of January 17, 2018. This Court appointed and conducted an in person hearing, at which the parties had the opportunity to present evidence. No party to the incident, including *WMC*, and EER-IPR, presented any evidence. This Court denied the Reconsideration.

19. The January 17, 2018 decision was one on the substantive merits of the parties' rights (becasue *WMC* sought rightful intervention) and is binding on *WM Capital*, *Tenerife* and this Court; all the more so as it was affirmed on appeal, in KLCE2018-0824, and the mandate remanded to this Court; this pursuant to the ruling in *Doral Mortgage v. Alicea*, supra.

20.  The opinion of this Court of January 17, 2018, among other things declares and decrees the following:

    a.  *WMC* has no right to demand the cancellation of the mortgage or the Judgment rendered in this case, neither as a condition to proceed with the sale at public auction agreed in the assignment for payment agreement of July 28, 2014;

    b.  *WMC* admitted in oral deposition that it has demanded the cancellation of mortgage and Judgment issued in this case, in order not to hinder the auction in case K CD2011-0142;

*K CD2009-0708 | RESOLUTION AND ORDER | 17*

    c.   Nothing in the agreement of July 28, 2014 provides for *Tenerife* to cancel and waive its rights to the million-dollar credit, mortgage and judgment in this case." Page 3 of the January 17, 2018 Resolution.

    d.   *WMC* was properly interpleaded by *Tenerife*, declared in default and the July 28, 2014 agreement properly terminated by *Tenerife*, thus *WMC* lacks the rights it invokes.

    e.   that determining *Tenerife*'s substantive rights is essential to award the intervention/joinder that *WMC* rightfully requested.

    f.   that Resolution was issued on the substantive merits of the parties' right, and decrees that *WM Capital* is not entitled to be a party to participate in this case, among other reasons due to its repeated willful default, willful misfeasance, and the termination of the July 1, 2016 agreement. *Canales v. Pan American*, 112 D.P.R. 329, 340 (1982), *Constructora Bauzá v. García* 129 D.P.R. 579 (1991); *Flores v. Municipality of Caguas*, 114 D.P.R. 521 (1983); *González Aristud v. Hospital*, 168 D.P.R. 127 (2006), *Sucesión Escalera v. Barreto*, 81 D.P.R. 596 (1959), *and Soriano Tavarez v. River*a 108 D.P.R. 663, 670-671 (1979) (both strands), Civil Code of Puerto Rico of 2020 article 18; Resolution of the Court of Appeals of June 30, 2020, in appeal KLAN201901350.

21.  *WM Capital* appealed from the Resolution of January 17, 2018, which denied its request for rightful intervention or joinder, appeal KLCE2018-00824, The Court of Appeals affirmed the ruling of January 17, 2018. Afterwards in appeal KLAN201901350 (on related incident, infra), the Court of Appeals recognized that appeal KLCE2018-00824 was an appeal, because the ruling has the effect of a judgment, it is binding, citing *Doral Mortgage v. Alicea*, supra.

*K CD2009-0708 | RESOLUTION AND ORDER | 18*

22. In May 2018 (*docket* 123) *Tenerife* and the plaintiffs in Federal case requested the Federal Court to abstain in the Federal case, among other reasons, because Exclusive Primary *In Rem* Jurisdiction is held by the Puerto Rico Court, in this case. It was argued to, and that Court was enlightened as to the Exclusive Primary *In Rem* Jurisdiction of this Superior Court in this case, invoked the *Colorado River*[6] type abstention as well as the precedent on exclusive primary *In Rem* jurisdiction recognized in the landmark case *Princess Lida of Thurn and Taxis v. Thompson* 305 U.S. 456, 465-467, 59 S.Ct. 275, 83 L.Ed. 285 (1939). The federal court declined to abstain.

23. Parallel in time, the Federal Court, in case 16-1394, issued Partial Judgments in which it disposed as follows:

    a. *Docket*s #56 and 57, the 50% joint community interest of the rights by assignment for payment, is not a community interest to which the common holder's right of first refusal applies and cites and rejects *Ortiz Roberts v. Ortiz Roberts* 103 D.P.R. 628, (1975) (beneficiaries of a trust are community members to which the common holder's right of first refusal applies...) July 9, 2021, Motion Pages 15-30.

    b. *Docket* 105, stated that the causation for the delay in holding the auction is not as stated by James Barr Coleman in his deposition, but was due to the superior court's delay in including *WMC* as a party in case K CD2011-0142; that obtaining the environmental study had nothing to do with it, to this day there is no phase II environmental study, the Federal Court dismissed the lawsuit filed by plaintiffs Almeida and Cruz claiming default by *WMC*; Pages 265-271 of the appendix to the July 9, 2021 motion.

    c. *Docket*s 269, 269-1 and 269-2; these are the draft of Judgment, stipulation and orders that *WMC* submitted for

---

[6] *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

*K CD2009-0708 | RESOLUTION AND ORDER | 19*

adoption/affirmance by the Federal Court. *WMC* proposed to order to cancel the mortgage and Judgment in this case K CD2009-0142. Pages 299 to 320 of the appendix to the July 9, 2021 motion.

d. *Docket* 288, Federal Court decree declaring that the Draft Judgment submitted by *WMC* exceeds the rights, claim and pleadings *WMC* has filed; Page 325- "Scope of Order of the appendix to the July 9, 2021 motion.

e. *Docket*s 289 and 290; Final Judgment ordering the sale of the mortgaged property estate number 13,936, by consolidated public auction at which the four mortgages referring to cases K CD2011-01342 and K CD2009-0708 will be foreclosed jointly, and the minimum auction price will be $3,850,000.00, which is the minimum auction price of the three mortgage notes being foreclosed in case K CD2011-0142. Pages 337-338 subsection 3 of the appendix to the July 9, 2021 Motion.

24. None of the Partial Judgments rendered by the Federal Court in case 16-01394 states that what is decided therein is severable from the rest of the controversies in the case, only the Final Judgment in *docket*s 288 and 290 in June 2019 causes the finality of all the Final Judgments as one. What is decided in each of the partial judgments is not separable from what is decided in all, which is necessary to adjudicate in order to determine whether or not to grant relief.

25. On June 19, 2019 *Tenerife* in this Court filed Motion Requesting Provisional Remedy in Enforcement of Judgment. At the time, it was imminent that the Federal Court would issue its Final Judgment, given that *WMC*'s draft judgment was already submitted and contradictory judgments were threatened. See attachments to this motion. This Court did not issue any order, thus de facto abstaining temporarily, in order to provide            the            Federal            Court            with

deference and space to deploy its jurisdiction. This was further stated in this Court's Resolution of October 10, 2019, which was subject of appeal, as explained above.

26. The Federal Court of Appeals for the First Circuit affirmed the Judgment of the District Court. See Appeal 19-1766; 993 F3d 1 (USCA 1st, 2021).

27. The Federal District Court appointed Ms. Dora Monserrate Peñagaricano[7] to sign, on behalf of *Tenerife Real Estate Holdings, LLC,* Mr. and Mrs. Almeida Cruz, and Mr. Juan Almeida León, the stipulation that she deemed proper to comply with the Federal Judgment, auctioning the property in execution of four mortgages for the minimum price of three, and that a writ of execution be issued pursuant to the Judgment of the Federal Court; but contrary to the judgments issued in the cases K CD2011-0142 and K CD2009-0708. Joint Motion of March 29, 2021, so admitted by *WMC*; and requested by *WMC* and Ms. Monserrate.

28. *WMC*, and Ms. Dora Monserrate, without communicating or consulting with *Tenerife* or the Almeida Cruz spouses, or Juan Almeida, signed on behalf of *Tenerife*, Juan Almeida and the Almeida Cruz spouses, the document whereby they stipulate and request the peculiar process of foreclosure, and filed it in this case. It is called Joint Motion, it is dated March 29, 2021, and it is attached to the *Assignment Agreement*, of *docket* 290, which is part of the Federal Judgment, the draft Order and the draft Writ of Mandate. Both the Draft Order and the Writ of Mandate included provisions to:

   a. simultaneously foreclose the mortgaged property through the four mortgages that are the subject of judgment in cases K CD209-0708 and K CD2011-0142, (page 2).

---

[7] *Who represented herself before the Federal Court as having vast experience in the foreclosure process under the laws of Puerto Rico. Data and experience that the Court considered in a particular way.*

*K CD2009-0708 | RESOLUTION AND ORDER | 21*

b.   that the first and only auction will have the price of $3,850,000.00 for the four mortgages, which minimum prices per judgment total $6,215,000.00, page 2 of the proposed Order; (as a result, the amount to be credited to the Judgments against EER-IPR is proposed to be lower than the minimum auction price in the amount of $2,365,000.00, which is exactly the minimum price for the first auction for the judgment in this case). EER-IPR did not appear to such joint stipulation. *Tenerife* pointed out Article 270 of the Puerto Rico Civil Code of 2020, on Lawful Purpose[8], which provides that the purpose of harming third parties is not lawful.

c.   No additional auctions shall be held for lesser price, Page 2 of the draft Order,

d.   d.) Order the Sheriff to execute the deed of judicial sale; Page 3, omit the process of the Court affirming the auction;

e.   Order the cancellation of the three promissory notes enforced in case K CD2011-0142 and the *Tenerife* note executed by the Judgment entered in this case, Page 3 of the draft Order, and any subsequent liens; Page 3, fifth paragraph of the draft Order.

f.   Provide to foreclose other assets of the mortgagor, and if the proceeds are insufficient to satisfy the Plaintiff's Judgment (does not identify who or who or which judgments in which cases), Page 3. Judicial record of this case.

29. The signature of Ms. Monserrate has not been questioned by *Tenerife* or any person whatsoever, that signature was received by this Court as if the document had been signed by *Tenerife* itself and the persons identified therein.

---

[8] *Article 270.-Lawful purpose.*
*The legal transaction must have a lawful purpose in view of the circumstances existing at the time of its execution and at the time of its execution. An end contrary to the law, morality or public order, or prejudicial to the rights of third parties, is not lawful.*

*K CD2009-0708 | RESOLUTION AND ORDER | 22*

30. *Tenerife*, personally and through counsel, filed in this Superior Court a motion informing and stating several of the illegalities that it understands are contained in the Joint Motion, and its attachments, which include the draft Order and Writ of Execution. This Motion filed on April 16, 2021, is entitled "*Motion Informing Illegalities and Excesses*". In it, *Tenerife* points out the rigorous statutory requirements for the process of foreclosure of real estate mortgage, its nature of public order, the lack of authority in the Courts to avoid or omit said process post judgment and the effective result of the peculiar proposed and required process of foreclosure, is to annul the judgment issued in this case, as well as the mortgage that is executed by the same. *R&G v. Sustache* 163 DPR 491(2004) Due Process governs post judgment, and *León v. Rest El Tropical* 154 DPR 249 (2001) once the Judgment rendered becomes final and binding, the Court lacks jurisdiction to modify it.

*Tenerife* emphasized in paragraph 16 that the Writ of Execution of Judgment demanded by *WM Capital* and Dora Monserrate, which it signed on behalf of *Tenerife* and others, is contrary to the provisions of the Judgment to be executed. *Tenerife* invoked Rule 51.2 of Civil Procedure; *Ponce Federal v, Gómez* 108 DPR 585 (1979), (Courts cannot change the minimum auction price) among other sources of law.

*Tenerife* pointed out what was decided by this Court in the Resolution of January 17, 2018, which denied *WM Capital*'s right to be a party to the case, although it is a party to said Resolution, and stated that *WM Capital* lacks the right and *standing* to demand that the judgment in this case be annulled, and the Federal Court lacks the authority to cancel the previous judgment (January 7, 2011) of Puerto Rico. *Tenerife* emphasized that the Federal Judgment in its part that is *docket* 288, expressly stated that *WM Capital* has no right nor can it request that the Judgment rendered in this case be annulled, nor the mortgage that belongs to *Tenerife*. Motion dated July 9, 2021 pages 2-5, and sources cited therein, including *docket* 288 (appendix        to        that        motion        pages        325-326        -Scope

*K CD2009-0708 | RESOLUTION AND ORDER | 23*

of Order -." *WM*'s proposed order exceeds its claim of relief in this lawsuit...", where said Federal Court expressly stated that *WMC* cannot demand the cancellation of the mortgage or the judgment in this case; but simultaneously orders a consolidated auction for the two cases before the courts of Puerto Rico and that in that single joint auction, zero money be bid for the judgment in this case and that *Tenerife*'s mortgage be cancelled. In other words, the Federal Judgment is also contradictory within itself, because it orders a process to be followed that causes the very result that the Federal Judgment says cannot be demanded, obtained or conferred. That is; the first mortgage and judgment in this case be cancelled (Pages. 325 to 326 of the appendix to that motion of July 9, 2021, as compared to the draft Judgment at page 315 *"...the first ranked mortgage note encumbering the same property ('GMAC note') will be cancelled."*), relief that was denied by the Federal Court in verb and text, but granted in process and result.

   *Tenerife,* in its motion, presented jurisdictional and constitutional grounds why it is not feasible or valid to grant the relief that *WM Capital* requests in the Joint Stipulation, including Exclusive Primary *In Rem* Jurisdiction of this Court, absence of jurisdiction of the Federal Court to annul or modify the Judgment rendered by this Court (entirely based on Puerto Rico Law); the *Anti Injunction Act*, and constitutional structural rights on dissemination of power among governments, branches, departments, judges and officials, among others.

  31. On May 25, 2021, this Court denied the Joint Motion and the peculiar auction process created by *WMC*, endorsed by attorney Monserrate on behalf of *Tenerife*, Juan Almeida and the Almeida Cruz spouses, a process that the Federal Judgment in case 16-01394 provides in part.

  32. Later, *WMC* again appealed to the Federal Court, requested *injunction* against this      Superior      Court[9],      among     other

---

[9] *See Atlantic Coast v. Locomotive Engineers, 398 US 281, 287, (1970), injunction against a party to a case from prosecuting the case or enforcing the judgment, is injunction against the Court where the case is heard and/or the judgment is rendered.*

remedies, (*docket* 416 entitled Motion Requesting Permanent *Injunction*, filed on April 21, 2021).

33. The Federal Court ordered *WMC* to return to the Puerto Rico courts and file all documents to convince the Puerto Rico courts of the correctness of complying with *WMC*'s demands and the Federal Court's judgment, (*docket* 421) pages 372 to 373 of the July 9, 2021 Motion appendix.

34. *WMC* filed a Request for Reconsideration with this Court, however, Dora Monserrate did not sign the document, nor has she re-signed or re-filed any document in this case. See: Request for Reconsideration dated April 30, 2021.

35. *Tenerife* replied by motion filed on June 5, 2021. The reconsideration was denied.

36. *WMC* did not appeal to the Court of Appeals regarding its peculiar to foreclose mortgages, different from what is mandated by the Mortgage Act and the substantive law in force. The denial of the peculiar foreclosure process demanded by *WMC*, to foreclose the mortgage in this case by bidding zero dollars, and canceling mortgages and Judgment, binds *WMC* and its attorneys. Judicial record of this case. [sic]

37. *WMC* and its attorneys, instead of filing an appeal in the Puerto Rico Courts, filed a motion in the Federal Court for sanctions against the parties and the attorneys, to hold them in contempt, and to issue a permanent *injunction* against them and this Superior Court to compel this Court to disregard its own judgment, to issue an order and *injunction* contrary to the Final Judgment, all as ordered by the Federal Court. *Docket*s 416, 421, 423-1, 424, 448, 450, 454-1.

38. *Tenerife*, Juan Almeida and the Almeida-Cruz spouses responded to the Order to Show Cause and request for sanctions, *injunction*, contempt and forfeiture of property and rights. *Tenerife* enlightened the federal court on the procedure to foreclose a mortgage in Puerto Rico, the contradictions between the Federal Judgment                    and                    prior                    state

*K CD2009-0708 | RESOLUTION AND ORDER | 25*

judgments in foreclosure, the nature of post-judgment due process contained in the Mortgage Act, the absence of Federal jurisdiction to amend Puerto Rico judgments entered prior to the federal judgment, and the lack of Federal jurisdiction to amend Puerto Rico judgments entered prior to the federal judgment. judgment rendered prior to federal judgment, *docket* 424 (arguing Fraud against *Tenerife*, and requesting investigation), *docket* 429 (lack of Federal jurisdiction to amend State Judgment...), Pages 424; 449; 449; 449; 449; 449; 449; 449; 449. ), Pages 424; 449-1 of appendix to Motion of July 9, 2021(explains the contradiction in the Federal Judgment with the State Judgment in this case K CD2009-0708, and the absence of Federal jurisdiction for it) Page 480 of appendix to motion of July 9, 2021 and *docket* 453 (Opposition to new Federal Judgment this time depriving *Tenerife* of property rights for failing to comply with the judgment rendered in this case on November 7, 2011) Pages 523 of appendix to motion of July 9, 2021; *docket* 460 (Reply *docket* 454-1, argues that a fourth or fifth contradictory judgment is not possible.) Page 544 of the appendix to the July 9, 2021 motion. Examining these documents, what has been stated to the Federal Court has been done in a clear, lucid and reasoned manner.

39. Following the filing of motions seeking sanctions for failure to "consent"[10] to the peculiar process of enforcement of the Federal Judgment in violation of the state judgments, *WMC* asked the Federal Court for an oral hearing. The Federal Court did not schedule an oral hearing, but issued three orders (one modified twice), ordering *Tenerife* and plaintiffs therein to show cause why they should not be found in contempt. In those orders, the court itself states, repeats and reiterates warnings, threats, uses strong language questionable to judicial decorum, to *Tenerife*, the plaintiffs and their attorneys, for not directly signing and consenting again to what *WMC* and its attorneys unilaterally demand

---

[10] *Tenerife correctly states that the consent of the adverse party is not required to enforce a judgment. This raises several questions as to what was actually sought.*
*Tenerife signed the stipulation, and did so through the designated attorney Dora Monserrate. This Court gave full and complete validity to the signature of Dora Monserrate as if it had been signed by Tenerife himself, as provided in the federal judgment. Therefore, the requirement to sign the stipulation in order to enforce the federal judgment, although not necessary, was complied with. The grounds on which the Joint Stipulation was denied is because of what is requested, not because it was signed by Dora Monserrate Peñagaricano on behalf of Tenerife.*

*K CD2009-0708 | RESOLUTION AND ORDER | 26*

to be signed. See *docket*s 462, 463, and 464, at Pages 551 to 597 of the July 9, 2021 motion appendix. It highlights the tone and language used by the Federal Court towards the parties and counsel in ordering to show cause. It also highlights that the judgment issued by the Federal Court contradicts two state judgments dating back to 2011, it is contradictory in itself, in effect, it intends to annul previous state judgments based exclusively on Puerto Rico law. Nothing was done or mentioned by the Federal Court about the contradictions in the rulings.

40. *Tenerife*, Juan Almeida, Francisco Almeida and his wife, filed Motion in Compliance with Order, *docket* 465, Page 584 of the appendix to motion of July 9, 2021) where they explained to the Federal Court the steps taken to comply with the Order and Judgment of the Federal Court which is categorized as an *injunction* against *Tenerife* to sign some stipulation, of unspecified content, to comply with the federal judgment, which is to execute the Judgment in this and another case (K CD2011-0142) in terms different from what is provided for in the judgment in this and that case. Nothing was done or mentioned by the Federal Court about the contradictions in the judgments.

41. *Tenerife*, Juan Almeida, Francisco Almeida and Mrs. Wanda Cruz, inform having exhausted all means of communication with the Federal Court, having explained and illustrated the impossibility for the Federal Court to revoke, annul, modify or ignore the Judgment issued in this case in November 2011, and the opinion of January 17, 2018, the obligation and constitutional and statutory right for the Full Faith and Credit that must be given to a previous judgment of the Courts of Puerto Rico, such as the one issued in this case on November 7, 2011. Despite this, the court referred to *Tenerife*'s illustration and memorials of law as incomprehensible, and as reported by *WMC* nonsensical, the word repeated by the Federal Court is *Gibberish* (*docket*s 424, 429, 449-1, 453, and 460). The Federal Court reported     and     stated     that     it     does     not     understand     the

*K CD2009-0708 | RESOLUTION AND ORDER | 27*

rigorous process of public auction and minimum auction price to foreclose and that it is part of the due process of law. Dora Monserrate, represented herself to the Federal Court as an expert in Puerto Rico Mortgage Act, and signed on behalf of *Tenerife*, Juan Almeida Francisco Almeida and Wanda Cruz the motion that this Court denied on April 13, 2021 (Pages 376-377 of appendix to motion of July 9, 2021). Ms. Monserrate has not signed any document in this case.

    *Tenerife* requested the Federal Court to certify the questions to the Supreme Court of Puerto Rico, and in the alternative to issue the requested *injunction* against the State Court, advising that the Federal Court lacks jurisdiction to do so. *Tenerife* reports that it did so by actually requesting it, and as a demonstration that what *WMC* and the Federal Court threatens is simply improper, null and void and unconstitutional. See motion of July 9, 2021. The Federal Court was advises that its Judgment and Order creates an unnecessary interjurisdictional and constitutional clash.

42. On July 23, 2021 *WM Capital* moved this Court to abstain from acting to enforce the effectiveness of its judgment and its Exclusive Primary *In Rem* Jurisdiction; *WMC*, in its 10-page brief, cited no source of law by which abstention would be proper at this time, and efforts to vacate the judgment entered in this case should proceed. *WMC* at page 6 of its motion acknowledged the very severe sanctions it insists be imposed on *Tenerife* and others for failure to vacate the judgment in this case. *WMC* did not rebut the facts or the law invoked by *Tenerife*.

43. *Tenerife* replied by examining all of the abstention doctrines, and argues that none indicate any grounds for this Court to abstain or to abdicate its exclusive primary *In Rem* jurisdiction, and its constitutional structural function as recognized by the United States Supreme Court. See: *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183, 2020 WL 3492641, (2020); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 501-02,

*K CD2009-0708 | RESOLUTION AND ORDER | 28*

130 S. Ct. 3138, 3157, 177 L. Ed. 2d 706 (2010) and Garc*ia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 581-83, 105 S. Ct. 1005, 1033-34, 83 L. Ed. 2d 1016 (1985).

44.  The federal court has not acted on this issue.

The facts ascertained are necessary and indispensable for this Order and opinion to be complete, coherent, the facts to support the opinion, and for any Court examining, reviewing, questioning, enjoining or challenging what this Court now provides and orders, to understand the origin and evolution of the interjurisdictional confrontation, its actors, the facts, the law, the documents, what was raised, what was demanded, what was disregarded, the parties' positions, the evolution to the present, the consequences, the motive, and what is adjudicated, ordered and provided for in this Order. Each of these elements is a necessary foundation for this decision and Order. It is necessary to determine the facts, because on them depends the substantive entitlement of the parties to this Order which includes and binds *WMC*, and determines the very jurisdiction of each Court, especially because it concerns which of the conflicting judgments takes precedence over the others, and/or exceeds the scope of the jurisdiction of either Court, its standing in the full faith and credit required, and the circumstances in which it is required.

This decision is on the substantive merits of the parties thereto (*WMC*, *Tenerife*, Juan Almeida, Francisco Almeida, Wanda Cruz, EER-IPR, and collaterally Ms. Dora Monserrate Peñagaricano, all pursuant to the jurisdictional limit of each Court and government.

## CONCLUSIONS OF LAW

The term jurisdiction is a word with many meanings and has been used loosely. *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153-55, 133 S. Ct. 817, 824-25, 184 L. Ed. 2d 627 (2013). Particularly relevant to this case and this opinion are *In Rem*[11]                jurisdiction,                 and                 jurisdiction                 to

---

[11] *See: Princess Lida of Thurn and Taxis v. Thompson 305 U.S. 456, 465-467, 59 S.Ct. 275, 83 L.Ed. 285 (1939).*

*K CD2009-0708 | RESOLUTION AND ORDER | 29*

decree a particular remedy[12]. Of special interest to what concerns us is the Exclusive Primary *In Rem* Jurisdiction.

This case is about foreclosure of real estate, which is an *In Rem* proceeding, directly over the thing subject of the lien[13]. The complaint initiating this case was filed on February 25, 2009. Since that date, February 25, 2009, it is this Court the one that has the Exclusive Primary *In Rem* Jurisdiction over the mortgaged real estate with respect to the first rank mortgage being foreclosed. It has not been argued that there is another older case that has *In Rem* Jurisdiction over the same property and/or mortgage. Consequently, this Court rules, in accordance with the *In Rem* jurisdictional principles outlined in *Princess Lida v. Thompson*, supra, that this Court in this case has Exclusive Primary *In Rem* Jurisdiction over the subject matter, which precludes any other Court from acting differently from what this Court has ruled by Judgment over the mortgage and the real property in foreclosure.

Allowing two Courts to act simultaneously over the same thing risks contradictory rulings, which is absurd, illegal, and unconstitutional. See *De La Vega v. Frow* 82 U.S. 552 (1872)[14]. Contradictory judgments do not resolve or adjudicate controversies, but rather multiply them, betraying the constitutional purpose for which Federal and State Courts exist, which is to adjudicate by ending live and real cases or controversies, not to perpetuate them. Several judgments contradictory to each other, as well as a judgment contradictory within itself, makes it impossible to enforce those judgments, and places the parties before the impossible, to act in a mutually exclusive manner. Aptly described as an absurdity by the Supreme Court of the United States. The entire procedural system, principles of res judicata, full faith and credit, consolidation of cases, indispensable

---

[12] *See Arbaugh v. Y&H Corp; 546 U.S. 500, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006), Prou v. U.S. 199 F.3d 37, 45-46, (UBCA 1st, 1999) and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), concurring opinion of Judge Harlan, and footnotes 5 and 6.*
[13] *First Fed. Savs, v. Nazario et als, 138 DPR 872, 879 (1995), C.R.U.V. v. Torres Perez, 111 D.P.R. 698, 699 (1981); P.R. Prod. Credit Assoc. v. Registrar, 123 D.P.R. 231 (1989), Donovan v. City of Dallas, 377 U.S. 408, 412, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964).*
[14] *The United States Supreme Court in that case stated:*
*"... this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law."*
*But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal. (Emphasis added)*

*K CD2009-0708 | RESOLUTION AND ORDER | 30*

party, among many other principles and laws, exist to prevent conflicting judgments. However, this Court finds itself, like *Tenerife*, the Federal Court and the parties to this and this case, faced with contradictory judgments in several dimensions. It is incumbent upon us to untangle and decipher the present mess of rulings and jurisdiction. Precisely because of this reason, it has been indispensable to determine the facts, procedurally, legally, in jurisdiction, constitution and mutual respect between jurisdictions, for the conjuncture to help a more perfect union and work in harmony, in mutual respect of the Courts, judges, parties, and governments. There is neither room nor opportunity for it to be understood that this opinion can be contradictory to anything that remains in force. We therefore begin by vacating the October 10, 2019 Ruling issued by this Court, not doing so risks contradictions that the situation can no longer tolerate. Additionally, the binding effect on the merits of the January 17, 2018 Resolution, affirmed on appeal in Appeal KLCE2018-0894, is recognized and reiterated. Therefore, being this Court the one with the Exclusive Primary *In Rem* Jurisdiction, it is the one to which, in the distribution of power and jurisdiction, corresponds to adjudicate in a binding manner, on the merits the matters pertaining to the conflicting judgments on the disposition of the property subject to execution in this case and the rights related to the mortgage, judgment and property. This is the function of the Exclusive Primary *In Rem* Jurisdiction.

The constitutional structure is built on the dissemination of power among many governments, among the branches of each government, and in turn within each branch; distribution of power and jurisdiction among all those parties, with rules delimiting the scope of function and power for each party to act. The need for each branch, judge, official and party to know and clearly identify the limits within which they can operate and their acts are valid, is essential for the operation in concert of all these courts, governments, officials, and the population to flourish before the clarity and certainty of their rights, their obligations and field of action. This is structural constitutional law. After all, it is imperative that each Court examine its

*K CD2009-0708 | RESOLUTION AND ORDER | 31*

own jurisdiction when acting, and when possible, at the threshold. The jurisdiction of this Court is limited in several respects, but as to the mortgage foreclosed in this case, the rights over it, the judgment rendered in this case, that jurisdiction is complete, exclusive, primary, and *In Rem*.

State and Federal Courts are in the same rank and are co-equal, there is no supremacy between them. *Employees v. Department of Public Health and Welfare*, 411 U.S. 279, 298, 93 S.Ct. 1614, 36 L.Ed.2d 251 (Marshall, J., concurring); *Martin v. Hunter's Lessee*, 1 Wheat. 304, 339-40, 14 U.S. 304, 4 L.Ed. 97 (1816). The supremacy of some federal matters refers to federal laws that Congress issues in the legitimate use of its various powers. Federal Courts lack power[15] to reverse, amend, or vacate a State Court Judgment rendered under state law.

The judgment rendered by the Federal Court in case 16-01394 in its various portions is a single judgment, which is not severable as decided by the Federal Court itself. The diversity of citizenship between *WM Capital* and plaintiffs confers subject matter jurisdiction between those persons, and it has supplemental jurisdiction over indissolubly related matters, however, when entering judgment it must have jurisdiction over the relief it grants. That is, it cannot issue just any remedy, without limits. For example, it cannot issue relief on expropriation or takings claims against the U.S. Government (in excess of $10,000.00), that relief can only be granted by the *Court of Federal Claims. Tucker Act*, 28 U.S.C. § 1491(a), *Brott v. United States*, 858 F.3d 425, 429 (USCA 7th, 2017)[16] .Other circumstances establish exclusive remedies in administrative agencies, *Shalala v. Illinois Council on Long Term Care, Inc,* 529 U.S. 1, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000) (jurisdiction is also required for the judicial remedy          at          issue,          diversity          or          federal

---

[15] *Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S. Ct. 183, 184, 80 L. Ed. 158 (1935); *Martinez v. Ryan*, 566 U.S. 1, 10-11, 132 S. Ct. 1309, 1316, 182 L. Ed. 2d 272 (2012); *Coleman v. Maldonado*, No. 3:15-CV-1878 (MPS), 2018 WL 1587462. *Real property is governed by the laws of the state where it is situated. Articles 49 and 50 of the Puerto Rico Civil Code of 2020, and 31 LPRA § 10– article 10 of the Puerto Rico Civil Code of 1930.*

[16] *See also: Eastern Enterprises v., Apfel*, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998), *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016-19, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)); *Blanchette v. Conn. Gen. Ins. Corps. (Reg'l Rail Reorganization Act Cases)*, 419 U.S. 102, 126-27, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974).

question is not sufficient). Lack of jurisdiction is also not cured by so-called supplemental jurisdiction 28 U.S.C. §1367. See *Ware v. U.S.*, 626 F.2d 1278 USCA 5th 1980); *U.S. Marine, Inc. v. U.S.*, 478 Fed. Appx. 106 (USCA 5th 2012); *Woodbury v. United States*, 313 F.2d 291, 296 (9th Cir.1963). The list is illustrative, not exhaustive.

Recognizing that the Federal Court has diversity of citizenship jurisdiction does not conclude the jurisdictional issue, it is imperative to determine whether it also has jurisdiction for the remedy conferred or intended to be conferred; so-called "Remedy Jurisdiction." This "Remedy Jurisdiction" is part of the dissemination of power and jurisdiction among various governments, branches and forums, and consubstantial with structural constitutional law. See: *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183, 2020 WL 3492641, (2020), from which we quote:

> "The Framers recognized that, in the long term, structural protections against abuse of power were critical to preserving liberty." *Bowsher*, 478 U.S., at 730, 106 S.Ct. 3181. Their solution to governmental power and its perils was simple: divide it. To prevent the "gradual concentration" of power in the same hands, they enabled "[a]mbition ... to counteract ambition" at every turn. The Federalist No. 51, p. 349 (J. Cooke ed. 1961) (J. Madison). At the highest level, they "split the atom of sovereignty" itself into one Federal Government and the States. *Gamble v. United States*, 587 U. S. —,— 139 S.Ct. 1960, 1968, 204 L.Ed.2d 322 (2019) (internal quotation marks omitted). They then divided the "powers of the new Federal Government into three defined categories, Legislative, Executive, and Judicial." *Chadha*, 462 U.S., at 951, 103 S.Ct. 2764. (Emphasis added)

The jurisdictional issue regarding the remedy was presented by *Tenerife*, both to the Federal Court when it applied for abstention in May 2018 (*docket* 123), and to this Court when it applied for Remedy in Enforcement of Judgment on June 19, 2019, which is contemporaneous with the Federal Judgment being rendered. The Federal Appellate process was available and utilized. This Court then did not act on the request, and the Federal Court denied abstention. *Tenerife* has acted with the required diligence. Now that the Federal Court has been afforded all the space and deference that it is possible to afford, *Tenerife*, this Court, the Almeida Cruz and Juan Almeida spouses and *WM Capital* itself are confronted with contradictory judgments, as well as the contradiction subsumed within the same federal judgment in its final form. The contradiction subsumed within the same federal judgment is inseparable

*K CD2009-0708 | RESOLUTION AND ORDER | 33*

from the very process this Court has to deploy to evaluate the weight, validity of said judgment and to what extent it complies with it, whether or not it gives full faith and credit to it, to what extent, if any. This Court does not intend to review the substantive or procedural correctness of the provisions in and by said Federal Judgment, only to fulfill its jurisdictional and constitutional function, as has been elaborated in this opinion.

This Court, confronted with the request to issue a writ of execution of the judgment of November 7, 2011, in terms that are contrary to the judgment itself that is sought to be executed, contrary to the stipulation by which said judgment was issued, contrary to the real estate foreclosure process mandated by the Puerto Rico Mortgage Act, contrary to the due process of law post judgment, and having exhausted all appeals on appeal from the Federal Court Judgment, it is imperative that this Court adjudicate whether to recognize full faith and credit to the federal judgment, and in fact annul the judgment rendered in this case, issuing the requested Writ of Mandate.

In Puerto Rico, the process to foreclose on real estate is Public Policy. P*once Federal Savings v. Gómez,* 108 D.P.R. 585, 589-590 (1979)[17].

Giving full faith and credit to the judgment of another forum in the United States judicial system is neither automatic nor ex proprio vigore. *Rodriguez Contreras v. E.L.*A., 183 D.P.R. 505 (2011). It is necessary to examine both the jurisdiction of the issuing Court, as well as the process followed and ordered, albeit with medium reasonableness, and not rigorously. Full faith and credit is a two way street[18]. The Federal Court is also obliged to give full faith and credit to the binding final judgments of the Puerto Rico Courts. The Judgment rendered in this case on November 7, 2011 has not been challenged at any time or in any forum.  All recognize its character as a judgment, final on the merits, binding with the effect of res judicata. This Court's opinion of January 17, 2018

---

[17] *The Supreme Court of Puerto Rico expressed the following:*
*"The absence of a minimum rate for the auctions as a minimum rate gave rise to numerous abuses, achieving <u>awards for derisory amounts</u>. As we stated in Arroyo v. Registrar, 86 D.P.R. 362, 368-69 (1962), due to the numerous **<u>abuses to which the absence of a minimum price gave rise</u>**, with the consequent adjudication or au<u>ction for derisory amounts</u>, the Legislative Assembly, through Act No. 69 of **May 2, 1931** (Laws, p. 433)..., reestablished Art. 127 of the Mortgage Act, in a new version." (Emphasis added).*
[18] *Full Faith and Credit applies to the Federal Government by express statutory command, see 28 U.S.C. § 1738, Amy v. Adm. Equestrian Sports Adm.; 116 D.P.R. 414, 420 (1985), and Sutton v. Parker, 800 F. App'x 397, 400 (6th Cir. 2020).*

*K CD2009-0708 | RESOLUTION AND ORDER | 34*

expressly stated on the substantive merits and in a binding manner that it is not proper to demand the cancellation of said judgment, and that this is a sustained and willful default by *WM Capital*. The same Federal Court in that part of its final judgment which is *docket* 288 recognizes and declares that *WM Capital* cannot demand and is not entitled to have the judgment rendered in this case nor the mortgage foreclosed here cancelled. The Federal Court did not give full faith and credit to the judgment of November 7, 2011 or to any opinion of this Court. With respect the January 17, 2018 Resolution determined it is only dicta in its entirety, with respect to the November 7, 2011 judgment, it does not address any issue as to its binding effect.

The content of the Federal Judgment, in the words that the Final Judgment uses *docket* 289, orders process that reaches exactly what the same Judgment in *docket* 288 decrees is not possible and is not entitled; this is, to bid zero money in the public auction[,] foreclose the mortgage, award the property others [sic] without *Tenerife* being able participate and cancel mortgage and judgment. The name does not make the thing, the process ordered by the Federal Judgment intends to cancel, annul and set aside the previous Judgment of this Court, and dismisses giving full faith and credit to the Judgment of this Court of January 7, 2011 and the Resolution of January 17, 2018 which has binding effect to *WM Capital*.

It is notworthy that said Judgment orders exactly what *WM Capital* has been demanding since the same year 2014; to cancel the Judgment rendered in this case. It is recognized that said Judgment is the result of proposal and draft submitted by *WM Capital* to the Federal Court. Therefore, this Court concludes and determines that the post judgment jurisdictional, substantive and due process defect contained in the final Federal Judgment is a continuation of the same fraudulent, non-compliant conduct of *WM Capital* and its agents. The Federal Court induced such conduct and judgment. In doing so, it has repeatedly, intentionally and illegally deprived *Tenerife* of its property by not allowing it to enforce its judgment for seven years.

*WM Capital*'s described conduct, is especially disturbing on several dimensions, including that: (a) its duties under the contract of

July 28, 2014 are fiduciary in nature as it has turned over to the "assign for payment" property to manage and in joiontly sell in public auction to generate as much as possible for the benefit of the parties, that is a common fund or trust, (b) openly and intentionally flouting the clear ruling of this Court the Judgment of on November 7, 2011 and Resolution of January 17, 2018, c) using the form and process of the auction to cancel substantive rights and deprive of the valuable property it entails, d) deliberately disregarding the same Federal Judgment it intends to enforce, incurring in subtilitas[19], abuse of law and process, by requiring process that betrays the very substantive ruling of the Federal Court; e) threatening the parties to punish them and demanding *injunction*, because they do not comply with the judgment issued in this case, resorting to intimidation to obtain that which they are not entitled to f) instigating the use of foul and offensive language adopted by the Federal Court such as that contained in the three orders to show cause (*docket*s 462, 463, and 464 unrelated to the required conduct), g) request and even demand that this Court refrain from honoring the validity of its own judgment and disregard the Court of Appeal's Order in KLCE2018-0894, h) demand that *Tenerife* and EER-IPR be deprived of their Post Judgment Due Process of Law, i) the list is not exhaustive. All this leads us to address the request for sanctions that for such conduct *Tenerife* has requested as part of the Remedy in Enforcement of Judgment. This Court declares that *WM Capital* has incurred in insistent recklessness sustained for six and seven years (it assumed the liability of its predecessor). *WM Capital*'s legal representation has been the same, who have breached their obligations under Rule 9.1 of Civil Procedure by insisting on disregarding the orders of this Court and in vacating the judgment of November 7, 2011. Consequently, relief under Rule 9.3 is appropriate, both in the form of monetary and procedural sanctions and disqualification[20] of *WM Capital*'s attorneys, including Mellado, Leal and Orejuela.

---

[19] *Silva v. Industrial Commission, 91 D.P.R. 891 (1995).*

[20] *At great length this aspect has been examined, and the Court concludes that the appearing attorneys (Mellado, Leal and Orejuela, and the Mellado & Mellado law firm), with the express and/or tacit concurrence of their client, WMC admitted in deposition of May 11, 2017 pages 74 and 75), have deliberately caused this*

*K CD2009-0708 | RESOLUTION AND ORDER | 36*

*Tenerife*, as part of the remedy in Enforcement of Judgment, seeks *injunction* against *WM Capital* and its counsel to cease and desist from pursuing to vacate, modify or render ineffective the judgment in this case by joint auction process resulting in zero money bidding and cancellation of mortgage and judgment. Disqualification to some extent secures that conduct, but the Order should be extensive to and effective upon *WM Capital*. A mortgage is property[21], a cause of action is property[22], a Final and Final Judgment is property, id. The actual and credible threat to impair and/or deprive constitutional rights is irreparable harm requiring *injunction. DeNovellis v. Shalala*, 135 F 3d 58, 71-72 (USCA 1st Cir. 1998), from which we quote:

"It is well established that, "[i]f the plaintiff suffers a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel. Thus, a cognizable threat of such harm can support a restraining order." Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir.1996) (emphasis added) (citations omitted); cf. Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689-90, 49. L.Ed.2d 547 (1976) (Deprivation of a constitutional right, "for even minimal periods of time, unquestionably constitutes irreparable injury.)." (Emphasis added).

See also, Elrod v. Burns, supra, al pages U.S. 373-374, where the Court states:
"It is clear therefore that First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. See New York Times Co. v. United States, 403 U.S. 713, 91 s.Ct. 2140, 29 L.Ed.2d 822 (1971). Since such injury was both threatened and occurring at the time of respondents' motion and since respondents sufficiently demonstrated a probability of success on the merits, the Court of Appeals might properly have held that the District Court abused its discretion in denying preliminary injunctive relief. See Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 67, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963)." (Emphasis added).

The admission made by *WM Capital* by its trustee James Barr in deposition to the effect that it requires the first mortgage to be discharged as a condition of not standing in the        way        of        the        auction        sale        in        case

---

*interjurisdictional clash, which was unnecessary and could have been avoided. WMC and its attorneys were alerted early, including by the January 17, 2018 Resolution. What has transpired reverberates and we do not take lightly the displayed conduct. The obligation to deference, collaboration and respect among the various judicial systems is in the first instance in the hands of the litigating lawyers, who are truly ambassadors of goodwill and respect to Courts, judges, parties, laws, governments, dignitaries, and justice. They are the face of the jurisdiction they represent. How the Courts deal with offensive and/or improper conduct communicates what the Courts of a jurisdiction require of their officers and counsel in interjurisdictional dealings. The message must be clear and determined, and its echo must carry the necessary consequences of attention and respect.*

[21] *See: Ashton v. Cameron County District, 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309 (1936); Wright v. Union Central 311 US 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940); Continental Illinois Nat. Bank & T. Co. v. Chicago, Etc. Chicago, Etc., Co, 55 S.Ct. 595, 294 U.S. 648, 79 L.Ed. 1110 (1935). See footnote on the subject in Reply to Request for Abstention dated July 29, 2021.*

[22] *See: Alicea v. Córdoba, 117 DPR 676 (1986).*

*K CD2009-0708 | RESOLUTION AND ORDER | 37*

K CD2011-0142, position sustained for more than six years, which has had the actual direct effect and causation of preventing the auction, the open disregard to the Resolution of January 17, 2018 and the contradictory Federal Judgment (in itself and with respect to others) provides no room for doubt that it is necessary and required to issue the requested *injunction* to *WMC* and its attorneys, the present and future attorneys substituting Rule 57.5 of Civil Procedure. The precise prohibited conduct is in any way, directly or indirectly, hindering the public sale of the mortgaged property with respect to cases K CD2011-0142 and K CD2009-0708 and/or in any way directly, indirectly, procedurally, substantively, undermining, abridging, abusing or misrepresenting rights or process, impairing the judgment rendered in this case on November 7, 2011, including, but not limited to as was declared and ordered in Resolution of January 17, 2018, confirmed on appeal KLCE2018-0894, and the rights of *Tenerife* and the mortgagor thereon, over those instruments judgments and contracts.

It is not possible, it is not valid, it is not rational, it is not legal (*De La Vega v. Frow*, supra it is not constitutional for contradictory and/or inconsistent judgments to remain in force and binding. This Court gave the federal district court and the federal court of appeals all the room possible to make its ruling consistent with the rulings in K CD2009-0708 and K CD2011-0142. It was reasonable and inescapable to think that it would be, since what was assigned for payment by sale at public auction was precisely a joint community interest in the judgment. To annul what has to be sold maximizing the price is contrary to the purpose that the parties agreed upon. Consequently, this Court, in its constitutional function and in the use of its Exclusive Primary *In Rem* Jurisdiction, declares that the judgment rendered in this case on November 7, 2011, as interpreted and applied to the facts by Resolution of January 17, 2018 has primacy, priority and controls over any opinion, decision or judgment of the Federal Court in case 16-01394 and what was decided by the Federal Court of Appeals in appeal 19-1766; if not being divisible the Federal Judgment has any validity.                    The                    nature                    of                    the

*K CD2009-0708 | RESOLUTION AND ORDER | 38*

Exclusive Primary *In Rem* Jurisdiction, and the illegality of conflicting judgments subsisting, the Exclusive Primary *In Rem* Jurisdiction[23], coupled with the function of this Court at this juncture demands such remedy as the most effective and feasible, if any other remedy could be available, no other has been brought to the attention of this Court. The parties, the Courts and society cannot stand such situation for a prolonged period of time, betraying the constitutional function of adjudicating live and real controversies in a final and conclusive manner. That is the remedy that this Court imposes in design specific to the circumstances, which has been determined and explained herein in detail.

As a measure in aid of jurisdiction and in Enforcement of Judgment, the Registrar of the Property is ordered to note in the books under his charge the exclusive primary *In Rem* jurisdiction of this Court in this case, as described below in the order, and an order to that effect is issued.

### Enforcement of Judgment, Rule 56 of Civil Procedure

The text of Rule 56 is clear and has been extensively interpreted, it is not necessary to extend this opinion substantially. It is sufficient to recognize that the Remedy in Enforcement of Judgment refers to the final, firm, unappealable judgment rendered on November 7, 2011, which no one disputes. Likewise, that the effectiveness of said judgment is in real, credible, and substantial risk of being undermined, to the extreme of being annulled by third parties and action of another Court lacking the same Exclusive Primary *In Rem* Jurisdiction. It is recognized that the parties since 2017 and 2018 had the opportunity to present and present evidence, and that a face-to-face court hearing was held where they had additional opportunity. The situation addressed by this Court requires that, as the forum with Exclusive Primary *In Rem* Jurisdiction, both the effectiveness of the judgment, as well as the constitutional rights of the parties over the same, be protected. The threatened damage is irreparable by definition, Supra. Being post judgment, no

---

[23] *See: Pastor-Ginorio v. R & G Mortg. Corp., 371 F. Supp.2d 89, USDC PR, 2005) (When the state court has In Rem jurisdiction it may issue injunction to the federal court in protection of such jurisdiction).*

*K CD2009-0708 | RESOLUTION AND ORDER | 39*

posting of bond is required. Therefore, it is necessary to issue as the following remedies are issued [sic];

**ORDER**

Upon examination of the Motion for Order in Aid of Jurisdiction and Post Judgment Provisional Remedy pursuant to Rule 56 of Civil Procedure, this Court determines that there is an imminent risk that *WM Capital* and its legal representation will undermine the effectiveness of the Judgment and rulings in this case, by failing to comply with them through the use of remedies before other Courts. Consequently, in view of the imminent risk, this Court issues order in Aid of the Exclusive *In Rem* Jurisdiction that it has over the property and the mortgage that has been merged with the November 2011 judgment. This Court Orders as follows:

(a) *WM Capital* and its counsel, *Mellado & Mellado Villa Real Law Offices*, Jairo Mellado Villareal, its employees, associates and partners, to **Cease and Desist** from disavowing the January 17, 2018 judgment, from attempting, directly or indirectly to evade it, to set it aside or render it ineffective, under penalty of being found in contempt. They are also **Ordered to Cease and Desist** from pursuing to undermine, annul, cancel and/or impair the Judgment rendered in November 2011 in this case, under penalty of contempt.

b) **Order the Registrar of the Property to make a Preventive Annotation in the Registry of the Property** in the property subject to execution in this case, property number 13,936, recorded in folio 239 of Volume 366 of Monacillos, Registry of the Property of San Juan, Third Section; and in volume 939 of Agora, folio 12, and folio 124, Volume 785, Third Section of San Juan, property number 13,936. The deed of mortgage for the amount of $2,635,000.00, was executed on July 18, 1989, deed #2 before the Notary Public, Charles P. Adams, and is recorded in folio 123 of volume 785, Monacillos, Finca 139376, recordation 18. Said mortgage shall not be cancelled except by express Order of this Court in the present case K CD2009-0708, which has **Exclusive *In Rem* Jurisdiction** over said property and mortgage. Third parties in contempt of the decrees of this Court seeking to cancel said mortgage over and contrary to the rulings of this Court in this case. [sic] The remedy is

*K CD2009-0708 | RESOLUTION AND ORDER | 40*

necessary to preserve the integrity of the Registry, the powers of this Court and the Exclusive Primary *In Rem* Jurisdiction of this Court.

  <u>In view of the Prior Exclusive Jurisdiction *In Rem* over the first Mortgage, it is</u> <u>ordered that no other Court or person may order the cancellation of the first mortgage,</u> nor alter or cancel the judgment rendered in this case, except by express order of this Court in this case, it shall be so recorded in the Land Registry.

  c) The notation in the Registry of the Property must include that *WM Capital Management, Inc.* nor any assignee or successor thereof has any right whatsoever over the mortgage constituted on July 18, 1989, deed number two (2), recorded in the Registry of the Property.

   --- Urban: Located in the Monacillos Ward of Río Piedras, Puerto Rico, with a total area of 10,986.903 square meters. In bounds by the NORTH with the parcel adjudicated to Luis Lloréns Torres and Mercedes De La Torre; by the SOUTH with the San Patricio road; by the EAST with Luis Torres and by the WEST with the San Juan to Bayamón Highway, today State Highway Number Two (2).

   --- This description corresponds to the remainder of this property after segregations.

   --- Recorded in Folio 123, of Volume 785, Third Section of San Juan, Property number 13,936.

   --- The physical address of the property is the following: Lot. CM, East Marginal, John F. Kennedy Expressway, Bechara Industrial Park, Barrio Monacillos, San Juan, Puerto Rico.

  d) Order that the deposit of the promissory note subject to foreclosure in this case, which deposit with proper endorsement was made in case K CD2011-0142, be transferred to this case, for the exclusive custody and protection of the Exclusive Primary *In Rem* Jurisdiction that this Court has in this case over the real property with respect to the first mortgage, the deposit of the three promissory notes which are the subject of execution in case K CD2011-0142 shall remain on deposit in said case K DC2011-0142, for the protection and aid of jurisdiction of the Superior Court in said case, until such time as the Honorable Judge in charge of said case shall otherwise direct.

  e) The promissory note secured by mortgage created by deed number 2 of July 18, 1989 before Notary Charles P. Adams, recorded in folio 123

of Volume 785 of Monacillos, property number 13936, entry 18, shall be held in custody of this Court, nor shall be cancelled or transferred until otherwise ordered by this Court, or cancelled by Order of this Court, as part of the proper process of the public foreclosure auction held in this case in execution of the judgment rendered in this case.

f) The public auction of the property subject of the Judgment in this case is ordered promptly, without further delay, and the Clerk's Office shall issue the corresponding Mandates; the proceeds of said auction, if in the bidding money is tendered in addition to the mortgage loan, or a third party participant pays the price of the auction sale, after this Court approves the auction process, such money shall be disbursed in accordance with the ranking of the mortgages and liens in force to each owner holder of each lien as ordered by the Mortgage Act and shall not be transferred to any other Court, this is part of the Exclusive Primary *In Rem* Jurisdiction of this Court, the post Judgment due process and the rights of the parties as declared by this Court;

g) It is determined that *WM Capital Managment, Inc*, the manager of *WM Capital*, Mr. James Barr, and its attorneys, Mellado & Mellado, Jairo Mellado Villareal, Tessie Leal-Garabis and Héctor Orejuela are found to be in contempt of the Orders, Judgments issued in this case, and the Order issued by the Puerto Rico Court of Appeals in Appeal KLCE2018-00824, particularly for not having abided by what was decided by this Court on January 17, 2018, specifically their lack of right to demand that the judgment in this case be annulled or cancelled, and that the Assignment for Payment contract of July 28, 2014 has been rightly terminated by *Tenerife Real Estate Holdings, LLC*, especially because said ruling was confirmed by the Court of Appeals by Judgment of August 29, 2019, two years ago.

h) Having evaluated *Tenerife*'s arguments, we concur with said party that *WM Capital* Managment, Inc. and its attorneys, Mellado & Mellado, Jairo Mellado Villareal, Tessie Leal-Garabis and Héctor Orejuela have breached their duties under Rule 9.1 of Civil        Procedure,        and        sanctions        should        be

*K CD2009-0708 | RESOLUTION AND ORDER | 42*

imposed pursuant to Rule 9.3 of Civil Procedure. It is hereby determined that for the temerity *WM Capital Management, Inc.* has incurred since being denied intervention by this Court on January 17, 2018 and sustained to the present, fees in the amount of $25,000.00 are hereby imposed. In addition, the sum of Five Thousand Dollars ($5,000) is hereby assessed against each of counsel. They shall have fifteen (15) days to satisfy the same, because their deliberate acts have been driven by a pattern of unjust and excessive enrichment sustained for six years; the Court begins with a modest sum, considering what has been caused, its duration and consequences. considering what has been caused, its duration and consequences. As permitted by Rule 9.3, they are disqualified from filing any documents in this case, even though their client *WMC* is not a party to the case but is a party to this opinion. Be advised that if the provisions herein are not complied with, further sanctions and any other measure according to law may be imposed.

j) It is hereby declared that the Judgment rendered in this case on November 7, 2011, as recognized and applied in the Resolution of January 17, 2011, takes precedence in all its aspects in reference to the Judgment rendered by the Federal Court in case 16-01394, especially those parts that are in contradiction and/or may undermine what was decreed and sentenced in this case.

The Clerk's Office of this Court hereby orders the Registrar of the Property, the parties, their attorneys, Dora Monserrate Peñagaricano, and directs the Bailiff to enforce the Order in all its parts.

**BE RECORDED AND NOTIFIED.**

In San Juan, Puerto Rico this 16th day of August, 2021.

[Signature]
**s/RAUL A. CANDELARIO LOPEZ**
**SUPERIOR JUDGE**

*Identifying Number: RES2021_____*

**No. 2021-141   TRANSLATOR'S CERTIFICATE OF ACCURACY**

I, Mayra Cardona Durán, of legal age, single, resident of Guaynabo, Puerto Rico, Certified Interpreter of the United States Courts (Certification No. 98-020) and certified by the National Association of Judiciary Interpreters and Translators (10671), holding a Master's Degree in Translation and admitted to the Puerto Rico Bar Association (Bar No. 12390, RUA No. 11038) hereby CERTIFY: that according to the best of my knowledge and abilities, the foregoing is a true and rendition into English of the original Spanish text, which I have translated and it is stamped and sealed as described therein. This document is comprised of Forty-Three (43) Pages, including this certification page, and does not contain changes or erasures.

In Guaynabo, Puerto Rico today, Monday, August 23, 2021.

Lcda. Mayra Cardona
BA Lit/Fr, MA Trans, JD
United States Courts Certified Interpreter
NAJIT Certified Interpreter and Translator
3071 Alejandrino Ave. PMB 306 Guaynabo, Puerto Rico 00969-7035
Tel. (787) 530-1414
e-mail: mayra@cardona.com