## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| FRANCISCO ALMEIDA-LEÓN et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 3:16-cv-01394-JAW |
| WM CAPITAL MANAGEMENT, INC., | ) ) ) | |
| Defendant. | ) ) | |

### ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER

This long-running, bitter and contentious commercial dispute has escalated into a confrontation between the federal and state courts and under the United States Constitution and laws, where there is an irreconcilable conflict between the federal and state courts in a matter within federal jurisdiction, federal law must be supreme. Concluding that the Resolution and Order dated August 16, 2021 of the Superior Court of Puerto Rico, Court of First Instance, Superior Part of San Juan in *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuzu PR, Inc.*, Civil No. K CD2009-0708 presents an irreconcilable conflict with the orders of this Court in this case and that WM Capital Management, Inc. has satisfied the requirements for a temporary restraining order, this Court enjoins the Superior Court of Puerto Rico from enforcing the August 16, 2021 Resolution and Order that the Superior Court issued in derogation and defiance of a final order of the federal court.

# I.      BACKGROUND

The commercial dispute among the parties in this case has been the subject of countless exhaustive opinions.  In this Order, the Court addresses the essence of the conflict between the court orders leading to the issuance of this Order and will explain why the federal, not state, court orders must prevail.

## A.      The June 27, 2019 Final Judgment of the United States District Court

On June 27, 2019, the United States District Court issued a final judgment in this commercial dispute, granting relief to Defendant/Counterclaim Plaintiff WM Capital against the Almeida-León Plaintiffs.[1]  *Final J.* (ECF No. 289).  The Final Judgment ordered the following relief:

> Plaintiffs/Counter-Defendants' breach of contract claim against WM Capital Management, Inc. is DISMISSED with prejudice.
>
> WM Capital Management, Inc.'s counterclaim for specific performance against Plaintiffs/Counter-Defendants is GRANTED.   The Court ORDERS the parties to undertake the following actions:
>
> (1)     The Plaintiffs/Counter-Defendants shall within three (3) business days from the entry of Judgment in this case consign the four mortgage notes identified in the Agreement into the Puerto Rico Court of First Instance, KCD2011-0142, as stated in paragraph 3.1.2 of the Agreement.

---

[1]      The "Almeida-León Plaintiffs" is shorthand for Francisco Almeida-León, Wanda Cruz-Quiles, their Conjugal Partnership, Juan Almeida-León, and their company Tenerife Real Estate Holdings, LLC.

(2)     The parties shall file a joint motion to the Puerto Rico Court of First Instance, KCD2011-0142, to foreclose on the four mortgage notes identified in paragraph 3.1.2 of the Agreement and sell the encumbered Kennedy Property via public auction as provided for under the Agreement.

(3)     As stated in paragraph 3.1.6 of the Agreement, the minimum bid price of the public auction shall be $3,850,000.

(4)     If a third party purchases the Kennedy Property at public auction for the minimum bid price, the proceeds of such sale will be deposited in the U.S. District Court for the District of Puerto Rico's Designated Financial Institution pursuant to Local Rule 67.  If a third party does not purchase the Kennedy Property for the minimum bid price, the parties shall proceed as proscribed in the Agreement.

(5)     Once the foreclosure is completed and all proceeds from the public auction have been deposited into the U.S. District Court for the District of Puerto Rico's Designated Financial Institution, WM Capital Management, Inc., shall be paid first and full from the sale proceeds up to $2,828,850.11, corresponding with the Judgment amount entered on September 26, 2013 in *Federal Deposit Insurance Corporation as Receiver of RG Premier Bank of Puerto Rico v. Almeida-Leon et al.*, 3:12-cv-02025-FAB, *J.* (ECF No. 25), plus pre-judgment and post-judgment interest.

(6)    After WM Capital Management, Inc. is paid first and in full satisfaction from the Kennedy Property sale proceeds up to $2,828,850.11 plus pre-judgment and post-judgment interest, the remaining sale proceeds shall be assigned to Francisco Almeida-León, Wanda Cruz-Quiles, their Conjugal Partnership, and Juan Almeida-León.

(7)    WM Capital Management, Inc. is awarded post-judgment and pre-judgment interest. Post-judgment interest shall begin to accrue as of the entry of this Judgment at the rate provided for in 28 U.S.C. § 1961. Pre-judgment interest shall be calculated from June 7, 2016 until the date of the entry this Judgment at a rate of 6% per annum.

This is a Final Judgment on all claims in this lawsuit. It is a Final Judgment against Plaintiffs/Counter-Defendants' three claims: breach of contract; litigious credit, and co-owner redemption under Puerto Rico law; and it is a Final Judgment in favor of WM Capital Management, Inc.'s counterclaim for specific performance.

*Id.* at 1-3.

Despite having been issued this order more than two years ago, the Almeida-León parties have failed to comply with the final judgment and have instead now obtained a state court order that contradicts and defies the final judgment of this Court and imposes significant sanctions on WM Capital and its attorneys for complying with the final judgment of this Court.

B.     **The March 26, 2021 Opinion of the United States Court of Appeals for the First Circuit:** *Almeida-León v. WM Capital, Inc.*, **993 F.3d 1 (1st Cir. 2021).**

The Almeida-León Plaintiffs disagreed with the final judgment of this Court and on July 19, 2019, they appealed that judgment to the Court of Appeals for the First Circuit. *Notice of Appeal* (ECF No. 410); *Notice of Appeal* (ECF No. 411). On March 26, 2021, the First Circuit issued its opinion, rejecting the Almeida-León Plaintiffs' appeals and affirming the final judgment. *Almeida-León v. WM Capital, Inc.*, 993 F.3d 1, 15 (1st Cir. 2021) ("For the reasons stated above, we disagree with the appellants' challenges to the district court orders and final judgment. We affirm."). On April 16, 2021, the First Circuit issued its formal mandate:

> In accordance with the judgment of March 26, 2021, and pursuant to Federal Rule of Appellate Procedure 41(a), this constitutes the formal mandate of this Court.

*Mandate* (ECF No. 413).

C.     **The June 28, 2021 Order to Show Cause**

Rather than comply with the final judgment of this Court as affirmed by the Court of Appeals for the First Circuit, the Almeida-León Plaintiffs simply defied it.[2] Finally, on June 28, 2021, the Court issued an Order to Show Cause, requiring the

---

[2]     The Almeida-León Plaintiffs' defiance of this Court's final judgment extends to mid-July 2019. Under Federal Rule of Civil Procedure 62, a party has thirty days to comply with a final judgment of a United States District Court. FED. R. CIV. P. 62(a) (providing for an automatic stay of thirty days). If a party appeals a final judgment and wishes that judgment stayed pending appeal, the party must move to stay the final judgment and file "a bond or other security" with the district court. FED. R. CIV. P. 62(b). The Almeida-León Plaintiffs did not move for a stay or file a bond or other security with the Court. *See Order on Post-J. Mots.* at 36-37 (ECF No. 373). Therefore, the Almeida-León Plaintiffs should have complied with the Final Judgment of this Court in mid-July 2019. Any contention that the Final Judgment of the Court was not final while their appeal was pending, which is incorrect as a matter of law absent the filing of a bond or other security, was resolved on April 16, 2021, when the Court of Appeals issued its mandate.

5

Almeida-León Plaintiffs and their attorneys to demonstrate why the Court should not hold them in contempt of court for their willful failure to comply with the Court's Final Judgment. *Second Am. Order to Show Cause* (ECF No. 464).

### D.      The August 12, 2021 Contempt Order

On August 12, 2021, the Court issued an order holding the Almeida-León Plaintiffs and their attorneys in contempt of court. *Order on Civil Contempt and Pending Mots.* (ECF No. 477). To encourage compliance, the Court imposed no sanction for two weeks to allow the Almeida-León Plaintiffs and their counsel to comply with the Final Judgment. The Court imposed a sanction of $10,000 per day against the Almeida-León Plaintiffs and their counsel beginning two weeks after the August 12, 2021 order, and if no party demonstrated compliance with the Final Judgment of the Court within four weeks after the August 12, 2021 order, the Court authorized Attorney Dora L. Monserrate[3] to execute documents in place of the Almeida-León Plaintiffs in order to effect the terms of the Final Judgment.

### E.      The August 16, 2021 Resolution and Order of the Court of the First Instance

On August 16, 2021, Raul A. Candelario Lopez, a judge of the Court of the First Instance, Superior Part of San Juan (the GMAC Court) issued a forty-two-page Resolution and Order. *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera,*

---

[3]      On October 2, 2020, pursuant to Federal Rule of Civil Procedure 70(a), the Court granted WM Capital's motion to appoint Attorney Monserrate to execute on behalf of the Almeida-León Plaintiffs documents necessary to comply with the Final Judgment. *Order Granting WM Capital Management, Inc.'s Mot. to Appoint a Third Party to Act on Behalf of the Pls.* (ECF No. 400). On October 30, 2020, the Almeida-León Plaintiffs filed a notice of appeal of that order to the Court of Appeals for the First Circuit. *Notice of Appeal* (ECF No. 401). That appeal remains pending.

*Isuzu PR, Inc.*, Civil No. K CD2009-0708.   *Mot. Submitting English Translation of Spanish Language Doc. at ECF No. 492-1*, Attach. 1, *Resolution and Order* (ECF No. 498) (*Resolution and Order*).   In its Resolution and Order, the GMAC Court concludes that the federal court orders in this case contradict a November 7, 2011 Final Judgment of the Court of the First Instance and a January 17, 2018 Resolution and Opinion of the same Court.   *Id.* at 3.   Finding that the Puerto Rico Court of the First Instance has had primary in rem jurisdiction, the GMAC Court concludes that the federal court lacked jurisdiction to issue its orders.   *Id.*   Moreover, the GMAC Court finds that the "post judgment jurisdictional, substantive and due process defect contained in the final Federal Judgment is a continuation of the same fraudulent, non-compliant conduct of *WM Capital* and its agents."   *Id.* at 34.   The GMAC Court concludes that "[t]he Federal Court induced such conduct and judgment.   In doing so, it has repeatedly, intentionally and illegally deprived *Tenerife* of its property by not allowing it to enforce its judgment for seven years."   *Id.*

The GMAC Court further finds that in taking its legal positions against the judgments of the Puerto Rico courts, "*WM Capital* has incurred in insistent recklessness sustained for six or seven years" and that WM Capital's counsel have "breached their obligations under Rule 9.1 of Civil Procedure by insisting on disregarding the orders of this Court and in vacating the judgment of November 7, 2011."   *Id.* at 35.   The GMAC Court concludes that "relief under Rule 9.3 is appropriate, both in the form of monetary and procedural sanctions and

disqualification of *WM Capital*'s attorneys, including Mellado, Leal and Orejuela." *Id.*

Having made these findings and drawn these conclusions, the GMAC Court ordered the following remedies:

1) That WM Capital and its attorneys cease and desist from disavowing the November 7, 2011 and January 17, 2018 judgments of the Puerto Rico state court upon pain of contempt of court;

2) That the Registrar of Property make a "Preventive Annotation" in the Registry of the Property;

3) That a promissory note, secured by a mortgage on the property, dated July 2, 1989 shall be held in the custody of the Court of First Instance;

4) That a public sale of the property shall be conducted expeditiously and that the priority of the proceeds shall be determined by the Court of the First Instance;

5) That WM Capital and its attorneys are in contempt of the Court of the First Instance, that WM Capital is subject to a sanction of $25,000, and that its attorneys are subject to a sanction of $5,000, that payment is due within fifteen days from the date of the order, and that counsel for WM Capital are disqualified from filing any documents in the case before the Court of the First Instance; and

6) That the Court of the First Instance's November 7, 2011 Judgment takes precedence over any federal judgment.

*Id.* at 39-42.

F.    **WM Capital's Motion for TRO**

On August 25, 2021, WM Capital filed an emergency motion for TRO.  *Emer. Mot. for TRO and Permanent Injun.* (ECF No. 502).  In its motion, WM Capital asks this Court to grant the following relief:

1) Enjoin the GMAC Court from holding WM Capital and its attorneys in contempt;

2) Enjoin the GMAC Court from disqualifying WM Capital's attorneys from filing documents on behalf of WM Capital;

3) Enjoin the GMAC Court from foreclosing on the GMAC mortgage unless in a manner consistent with this Court's Final Judgment;

4) Enjoin the GMAC Court from enforcing its orders as to the consignment of the GMAC note or the annotation of any restrictions to the Kennedy Property in the Registry of Property in Puerto Rico;

5) Enjoin the Registry of Property in Puerto Rico from annotating any of the restrictions as provided for in the GMAC order;

6) Order the GMAC Court to coordinate the foreclosure of the property with the Kennedy Court and to foreclose as per the Final Judgment; and

7) Permanently enjoin the Almeida-León Plaintiffs and their attorneys from making any collateral attacks against this Court's Final

9

Judgment be it in existing or new cases as per the Relitigation
Exception to the Anti-Injunction Act.

*Id.* at 4-5.

### G.    The Almeida-León Plaintiffs' Response

On September 2, 2021, the Almeida-León Plaintiffs responded to WM Capital's
motion for TRO.  *Resp. to WMC's Req. at Docket Entry No. 502* (ECF No. 506).
Accusing WM Capital's counsel of seeking to "mislead and induce error," *id.* at 4, the
Almeida-León Plaintiffs argue that the WM Capital presentation deprives this Court
of subject matter jurisdiction because it is based on "an illusion, a fiction." *Id.* at 5.
The Almeida-León Plaintiffs contend that the GMAC Court judgment did not enjoin
the operation of this Court's Final Judgment and that this Court does not have the
authority to "annul, modify or reverse state Court judgments based on state law." *Id.*
at 6.  The Almeida-León Plaintiffs say that WM Capital has a remedy, which is to
appeal the GMAC Court's Resolution and Order to a higher state court, what they
term a "ready remedy" under state law. *Id.* at 7.  The Almeida-León Plaintiffs contend
that the All Writs Act and Anti-Injunction Act prohibit this Court from interfering
with a state court judgment issued on a matter of state law.  *Id.* at 9-10.

### H.    WM Capital's Informative Motion

On September 3, 2021, WM Capital filed an informative motion, effectively
urging this Court to act quickly on its motion for TRO because the sanction deadlines
imposed by the GMAC Court and the procedural deadlines under Puerto Rico's civil

rules place WM Capital in an untenable position absent an order by this Court. *WM Capital's Informative Mot.* (ECF No. 507).

## II.   DISCUSSION

### A.   The GMAC Court's Order

The GMAC Court's August 16, 2021 Order is grounded on two premises, both involving the supposed res judicata effect of two orders from the Court of First Instance in Puerto Rico: the first is a November 7, 2011 order and the second a January 17, 2018 order, both in the case of *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuzu, PR, Inc.*, Civil Number K CD 2009-708. As the GMAC Court views it, the United States District Court for the District of Puerto Rico has improperly assumed jurisdiction over a res for which the Court of the First Instance had already assumed jurisdiction and this Court then issued judgments in contravention of the orders of the Court of the First Instance. The GMAC Court views the supposed encroachment of federal judicial authority into a sphere reserved to the state courts as sufficiently grave to require the imposition of severe sanctions against WM Capital and against its attorneys. Unfortunately, the GMAC Court's August 16, 2021 opinion is based on erroneous premises and, as it effectively prevents WM Capital from executing a final judgment of the United States District Court affirmed by the Court of Appeals for the First Circuit and sanctions WM Capital's attorneys for attempting to enforce that judgment, the GMAC Court's order cannot stand.

### 1.   The Events Leading to the July 28-29, 2014 Agreement

11

The Court acknowledges that the facts in this case are dense and easily misinterpreted. However, the Court reluctantly concludes that the GMAC Court's order betrays fundamental misunderstandings regarding what the federal court has done in this case and the scope of the federal court's authority to act.

To place this matter in context, the Court reiterates the factual statement of the case found in the First Circuit's opinion in *Almeida-León*, 993 F.3d at 993 F.3d at 5-6.[4] In 2007, an official from R-G Premier Bank of Puerto Rico ("R-G Premier") approached Francisco and Juan Almeida with a business opportunity. *Id.* at 5. A businessman named Emérito Estrada-Rivera wanted to obtain financing from R-G Premier for his car dealership venture but was unable to obtain a loan from R-G Premier on his own. *Id.* The R-G Premier official therefore suggested to Francisco and Juan that they take advantage of their strong credit to obtain a loan from R-G Premier and use the funds to provide a loan to Mr. Estrada-Rivera. *Id.* In exchange, Francisco and Juan would receive interest from Mr. Estrada-Rivera, and the R-G Premier official also promised to facilitate a separate construction loan application on their behalf. Francisco and Juan agreed to this arrangement, taking out two loans from R-G Premier totaling approximately $2.6 million, and subsequently providing a loan in that amount to Mr. Estrada-Rivera. *Id.*

---

[4]     For the sake of internal consistency, the Court has slightly altered the First Circuit's description of the parties. In using the term "the Almeidas," the Court is referring to Francisco and Juan Almeida-León. In using the term, "the Almeida-León Plaintiffs," as noted in footnote one, the Court is referring to Francisco Almeida-León, Wanda Cruz-Quiles, their Conjugal Partnership, Juan Almeida-León, and their company Tenerife Real Estate Holdings, LLC.

The deal was short-lived. *Id.* Mr. Estrada-Rivera defaulted on his obligations soon after the deal was finalized, which led Juan and Francisco to default on their obligations to R-G Premier. *Id.* In 2011, the Almeidas brought a foreclosure action against Mr. Estrada-Rivera in Puerto Rico state court. *Id.* The Almeidas obtained a judgment enabling them to foreclose on three mortgage notes that secured Mr. Estrada-Rivera's property on John F. Kennedy Avenue in San Juan ("Kennedy Notes"). *Id.* These three mortgage notes were subordinate to a fourth mortgage note that was originally issued to the General Motors Acceptance Corporation ("GMAC Note"). Tenerife, a corporate entity controlled by the Almeidas, later acquired the GMAC Note. *Id.*

With that judgment in hand, Francisco and Juan set out to resolve the debt owed to R-G Premier. *Id.* However, continuing the string of defaults, R-G Premier itself failed and in 2012 was put under the stewardship of a receiver, the Federal Deposit Insurance Corporation ("FDIC-R"). Shortly thereafter, the FDIC-R initiated an action in the U.S. District Court for the District of Puerto Rico to recoup on the loan originally made by R-G Premier. *Id.* The district court granted a judgment in FDIC-R's favor for $2,828,850.11 and also put in place a temporary restraining order prohibiting liquidation of the mortgage notes acquired in the Almeidas' state court action against Mr. Estrada-Rivera.[5] *Id.* Negotiations ensued with the FDIC-R regarding how to satisfy the judgment for $2,828,850.11. *Id.*

---

[5]     For further clarification, the FDIC lawsuit against Juan Almeida-León is found in *FDIC v. Juan Almeida-León*, 3:12-cv-2025-FAB. In its order on WM Capital's motion for summary judgment, this Court described the motivation behind the FDIC's emergency motion for TRO:

In July 2014, the FDIC-R and the Almeida-León Plaintiffs entered into a contract entitled "Agreement to Satisfy Judgment[] and Assignment of Mortgage Notes" ("2014 Agreement"). *Id.* at 5-6. According to the 2014 Agreement, the FDIC-R would receive "an undivided one-half interest" in the Kennedy Notes and the GMAC Note. *Id.* at 6. The parties to the agreement agreed to jointly motion the state court to amend the judgment in the foreclosure proceedings against Mr. Estrada-Rivera to recognize the FDIC-R as a "co-plaintiff and judgment creditor." *Id.* They also agreed that the FDIC-R would facilitate a "Phase 1 Environmental Site Assessment" of the John F. Kennedy Avenue property. *Id.* Once those conditions were met, the Kennedy Notes and the GMAC Note would be liquidated through the sale of the real estate collateral. *Id.* Following the liquidation, the agreement stipulated that the proceeds necessary to satisfy the judgment would first be distributed to FDIC-R and any remaining proceeds would be distributed to appellants. *Id.* In December 2015, the FDIC-R sold its interest in the 2014 Agreement to WM Capital, a company based in New York. *Id.* This transfer gave the Almeidas, who had been frustrated at the

---

On May 28, 2014, believing that Juan Almeida-León and Francisco Almeida-León were diverting funds from Juan Almeida-León's interest in the three mortgage notes implicated in its federal judgment, the FDIC filed an emergency TRO and asserted that one of the four mortgage notes the Almeida brothers claimed joint ownership of was transferred to Tenerife and the three other notes were being foreclosed on without Juan Almeida-León. The TRO was granted and later converted into a preliminary injunction and a hearing date was set to see if the injunction should be continued, but following settlement discussions, the injunction was dissolved on August 8, 2014 in light of the parties' Agreement to Satisfy Judgment and Assignment of Mortgage Notes (the Agreement) dated July 28, 2014.

*Am. Order on Def./Countercl. Pl.'s Mot. for Summ. J.* at 11-13 (ECF No. 265) (*Summ. J. Order*).

amount of time it was taking to liquidate the mortgage notes, what they hoped was an opportunity to reclaim full ownership of the Kennedy Notes. *Id.*

### 2.  "A Dispute Over the Enforcement of a Contract"

As presented to the United States District Court and the Court of Appeals, the issue, as the First Circuit aptly described it, concerned "a dispute over the enforcement of a contract that controls the assignment and liquidation of several mortgage notes." *Id.* at 4.  In short, on July 28-29, 2014, after the Court of First Instance issued its November 7, 2011 foreclosure judgment in *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuzu, PR, Inc.*, Civil Number K CD 2009-708, Tenerife and the Almeida-Leóns entered into a comprehensive agreement with FDIC, the predecessor to WM Capital, to resolve their respective claims.  A central question before the federal courts was the significance of Tenerife's participation in the July 28-29, 2014 agreement.

Regarding Tenerife, this Court held that by participating in the July 28-29, 2014 agreement, Tenerife was bound by its terms.  The Court of Appeals for the First Circuit affirmed this Court's judgment.  Contrary to the GMAC Court's August 16, 2021 Resolution and Order, this Court's judgment was not, therefore, in derogation of the Court of the First Instance's November 7, 2011 order.  Rather, this Court, as the First Circuit observed, resolved a dispute about the meaning of a later global agreement that Tenerife and the Almeidas entered into with the FDIC to resolve their financial rights and duties concerning the notes and mortgages on the Kennedy Property.

It seems unremarkable that after a judgment, the parties affected by the judgment may enter into an enforceable post-judgment agreement to resolve the issues among them, including the judgment itself. *See Guinness PLC v. Ward*, 955 F.2d 875, 896 (4th Cir. 1992) ("Our research reveals that a post judgment settlement of the litigants' relevant disputes reached during the pendency of the appeal will generally result in at least the dismissal of the appeal. Where a post judgment settlement truly renders the parties' disputes moot, this Circuit as well as the Maryland State appellate courts have not hesitated to not only dismiss the parties' appeal but also have vacated the judgment on appeal and remanded the case with instructions for the trial court to dismiss the case"); *McCollum v. Sec'y of HHS*, 91 Fed. Cl. 86, 94 (Ct. Cl. 2010) (The judgment could then be amended to conform to the parties' private agreement") (citing *Armstrong v. United States*, 155 Ct. Cl. 177, 180 (1961) (en banc) (holding that the court may modify a stipulated judgment to reflect the parties' subsequent agreement)). Consistent with the general policy to encourage the settlement of lawsuits, the law will uphold validly entered-into private agreements even though they may affect judgments. *See Grand Canyon W. Ranch v. Kempthorne*, No. CV-03-02496-PCT-NVW, 2013 U.S. Dist. LEXIS 206513, *18 (D. Ariz. July 1, 2013) ("Amending the judgment . . . vindicates both the parties' interest in being able to rely upon their agreement and the public interest in encouraging and enforcing settlements"). "Settlement agreements enjoy great favor with the courts as 'the preferred alternative to costly, time-consuming litigation.'" *Fed. & Guar. Ins. Co.*

*v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008) (quoting *Mathewson Corp. v. Allied Marine Indust., Inc.*, 827 F.2d 850, 852 (1st Cir. 1987)).

Nor is it surprising that Tenerife would be a party to the July 28-29, 2014 agreement since Tenerife was (and is), in the words of the First Circuit, a "corporate entity controlled by the Almeidas." *Almeida-León*, 993 F.3d at 5.  As the First Circuit observed, the FDIC had initiated a lawsuit in federal court in Puerto Rico against Juan Almeida-León and on September 26, 2013, the United States District Court issued a judgment against Juan Almeida-León in the amount of $2,828,850.11.  *See FDIC v. Juan Almeida-León*, No. 3:12-cv-02025-FAB, *J.* (ECF No. 25).  On May 28, 2014, the United States District Court had granted a motion for TRO against Juan Almeida-León and Francisco Almeida-León, preventing them from proceeding with an auction in *Francisco Almeida-León v. Emerito Estrada Rivera-Isuzu Puerto Rico, Inc.*, KCD 2011-0142, Court of the First Instance, Superior Part of San Juan.  *Id.*, *Order Granting Mot. for TRO* (ECF No. 29).  On June 24, 2014, the United States District Court converted the TRO into a preliminary injunction to expire on July 24, 2014 to allow the parties to effect a settlement.  *Id.*, *Order* (ECF No. 51).  After the parties entered into the July 28-29, 2014 agreement, upon motion, on August 8, 2014, the United States District Court dissolved the preliminary injunction.  *Id.*, *Order Vacating Prelim. Injun.* (ECF No. 69).  Thus, the Almeida-León Plaintiffs had good reason to seek a global resolution of the dispute.

### 3. The Considered Judgment of the Federal Courts

#### a. Tenerife Joined as a Desirable Party

The Court's decision concerning the enforceability of the July 28-29, 2014 agreement against Tenerife was the considered judgment of this Court affirmed by the Court of Appeals.  Tenerife was not initially a party to the litigation and on August 4, 2016, WM Capital moved to add Tenerife as an indispensable party under Federal Rule of Civil Procedure 19.  *Mot. to Join Indispensable Necessary Party Tenerife Real Estate Holdings, LLC* (ECF No. 35).  WM Capital's motion to add Tenerife was based on the premise that Tenerife had been a signatory to the July 28-29, 2014 agreement and was therefore an indispensable party to the lawsuit to enforce the terms of that agreement.  *Id.* at 1-6.  The Almeida-León Plaintiffs objected to adding Tenerife as a party, denominating Tenerife an "involuntary plaintiff." *Opp'n to Mot. to Join Party (ECF No. 35)* (ECF No. 36).

On March 3, 2017, the Court denied the motion under Rule 19 but suggested that a motion under Rule 20 to add Tenerife as a desirable party might be appropriate.  *Opinion and Order* (ECF No. 61).  In his March 3, 2017 Order, United States District Judge Salvador E. Casellas wrote that "The [July 28-29, 2014] Agreement plainly states that the parties agreed to consign the GMAC note to the state court.  WM Capital's claim against Tenerife is identical to the one levied against Plaintiffs . . .." *Id.* at 8.

On April 3, 2017, WM Capital moved to add Tenerife as a desirable party under Rule 20.  *Mot. to Join Tenerife Real Estate Holdings, LLC Pursuant to Rule 20 of the Federal Rules of Civil Procedure* (ECF No. 68).  Significantly, neither Tenerife nor the Almeida-Leóns objected to this motion and on April 18, 2017, the Court added

Tenerife as a party. *Order* (ECF No. 72). As Judge Casellas' March 3, 2017 Order establishes, contrary to the GMAC Court's August 16, 2021 Resolution and Order, Tenerife's presence in the federal lawsuit was desirable because Tenerife was a party to the July 28-29, 2014 agreement and WM Capital was suing to enforce the terms of the agreement against all parties to the agreement, including Tenerife.

On appeal to the First Circuit, the Almeida-León Plaintiffs raised as one claim of error the joinder of Tenerife in the lawsuit. *Almeida-León*, 993 F.3d at 10-12. The First Circuit rejected this claim of error as "entirely lacking," finding that the Almeida-León Plaintiffs' arguments "are highly abbreviated and contain factual misstatements." *Id.* at 11. The GMAC Court's August 16, 2021 Resolution and Order in which he concludes that this Court never properly assumed jurisdiction runs directly counter to the orders and judgments of the federal courts.

### b.   Tenerife's Obligations Under the July 28-29, 2014 Agreement

In its order on the motion for summary judgment, this Court addressed whether Tenerife, inarguably a party to the July 28-29, 2014 agreement, could be properly ordered to comply with its terms and with what Tenerife had agreed to do. *Summ. J. Order* at 22-23. In doing so, the Court discussed *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuzu PR, Inc.*, Civil No. K CD2009-0708, also denominated the "GMAC state case." First, the Court found that Tenerife — along with the Almeidas — was, in fact, a party to the July 28-29, 2014 agreement. *Summ. J. Order* at 13 ("The Agreement was among Francisco Almeida-León, Wanda Cruz-Quiles, their Conjugal Partnership, Juan Almeida-León, Tenerife, and the

FDIC-R"); *id.* at 22 ("The Agreement defines the "Parties" as the Almeida Plaintiffs, Tenerife, and the FDIC-R, all of which signed the Agreement") (citing *Agreement* ¶ 1.1).

Turning to the July 28-29, 2014 agreement, the Court found that Tenerife — along with the Almeidas — had "stipulated that as 'assignment for payment' to satisfy the judgment in the FDIC-R's federal case, the Almeida Plaintiffs and Tenerife would 'assign the FDIC an undivided one-half interest' in four promissory notes guaranteed by the mortgage deed of a realty referred to as the 'Kennedy Property.'  *Id.* at 19 (citing *Agreement* ¶ 3.1.2) (emphasis supplied).

    **c.**    **The July 29-29, 2014 Agreement and the Pending State Action:** ***Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuzu PR, Inc.***, **Civil No. K CD2009-0708**

The Court directly addressed the GMAC state court action.  "One of the notes, the GMAC note, was previously owned by Francisco Almeida-León and is a first rank mortgage note, and relates to the GMAC Judgment, which was entered in the state court case, KCD2009-0708."  *Id.* at 20 (quoting *Agreement* ¶ 2.5 ("In addition to the Kennedy Notes, the Borrower, Co-Holders, and/or Tenerife also own . . . "the GMAC Note" . . . [and] "the GMAC Judgement").  To be clear, the Court found that "[t]he Almeida Plaintiffs are co-holders of the other three notes, the Kennedy Notes."  *Id.* at 20-21.  The Court noted that "[t]he Kennedy Notes are the subject of a judgment in the state case, *Francisco Almeida León, et al. v. Emérito Estrada Rivera-Isuzu Puerto Rico Inc.*, KCD2011-0142."  *Id.* at 21.  The Court also found that "WM has been joined as a co-plaintiff in the Kennedy Notes state case, KCD 2011-0142, but has not been

joined as a plaintiff in the GMAC state case, KCD 2009-0708, where Tenerife is the plaintiff." *Id.*

The Court turned to the heart of the agreement and described what the parties, including Tenerife, had agreed to do. "The Agreement specifies a "Procedure to Satisfy Judgment" and provides that the "Parties agree that the Judgment will be satisfied" in the manner described in paragraph 3.1." *Id.* at 22-23 (quoting *Agreement* ¶ 3.1). The Court quoted Paragraph 3.1.2 of the agreement:

> Borrower, Co-Holders and Tenerife hereby assign to the FDIC-R, as of the Effective Date of this Agreement, an undivided one-half interest in each of the Kennedy Notes, GMAC Note, and GMAC Judgment. The Kennedy Notes and GMAC Note will be consigned by the FDIC-R, Co-Holders and Borrower to the State Court in the Foreclosure Action as of the date of the execution of this Agreement until: (i) the sale of Kennedy Property, (ii) termination of this Agreement under Section 3.2 below, (iii) or cancellation of the Kennedy Notes and GMAC Notes. While the Kennedy Notes and GMAC Note are consigned to the State Court, the Parties and any potential purchaser of the Kennedy Property accompanied by one or more of the Parties may obtain access to inspect such notes.

*Id.* at 23 (quoting *Agreement* ¶ 3.1.2). The agreement detailed what would happen if a third party purchased the property at a public auction and what would happen if a third party did not. *Id.* at 22-23. The Court found that "Paragraph 3.1.8.3 provides the FDIC-R receives 'all amounts owed under the Judgment from the first sale proceeds paid by the purchaser [and] then deliver or otherwise assign, as . . . any excess sale proceeds to Borrower and Co-Holders.'" *Id.* at 24 (quoting *Agreement* ¶ 3.1.8.3). The Court quoted the agreement as to how the proceeds of the public sale would be disbursed: "once the FDIC-R receives full payment of its Judgment, it:

> (i) release[s] and deliver[s] to the Borrower and Co-holders the mortgage

21

notes and notes on which the FDIC-R sued to obtain the Judgment; (ii) assign[s] to the Borrower and Co-Holders any remaining sale proceeds or Rental Income from, or interest in, the Kennedy Property; and (iii) assign[s] to the Borrower and Co-Holders any notes or judgment encumbering the Kennedy Property."

*Id.* at 25 (quoting *Agreement* ¶ 3.1.9).

In its summary judgment order, the Court considered and rejected various arguments by the Almeida-León Plaintiffs and Tenerife that the state court judgment in *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuzu PR, Inc.*, Civil No. K CD2009-0708 somehow had a binding impact on this Court's jurisdiction and prevented this Court from enforcing the terms of the agreement. *Summ. J. Order* at 57-68. In its May 8, 2019 order denying Tenerife's motion for summary judgment, the Court explained why the judgment in *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuzu PR, Inc.*, Civil No. K CD2009-0708 did not have a res judicata effect on this Court:

> Even assuming the state court order were a final judgment on the merits, res judicata is not applicable because there is no perfect identity as to either the object or cause of the cases and no perfect identity of the parties. *Universal Ins, Co.*, 755 F.3d at 38. Tenerife's state court case is a case about the collection of money and execution of mortgage note against EER-IPR. WM has never been a party in Tenerife's state court case. The current case is a claim by the Almeida Plaintiffs for breach of contract, litigious credit, and co-owner redemption against WM, as well as a counterclaim by the latter against the former and Tenerife for specific performance of the Agreement. WM joined Tenerife as Co-Plaintiff/Counter-Defendant pursuant to Federal Rule of Civil Procedure 20, and EER-IPR has never been a party to the instant case. Moreover, while the Agreement is the sole object of the instant case, it is not an object of Tenerife's state court case against EER-IPR.
>
> The Court concludes that res judicata is not applicable to WM's counterclaim.

22

*Order on CoPl./Countercl. Def.'s Mot. for Summ. J.* at 54-55 (ECF No. 263).

> **d**. **The June 17, 2019 Judgment and *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuzu PR, Inc.*, Civil No. K CD2009-0708**

In this Order, the Court has described its prior orders because it is apparent that the GMAC Court's August 16, 2021 Resolution and Order is grounded on a misimpression of what this Court addressed and ordered. Again, this Court has been enforcing an agreement between the parties that post-dated the Court of the First Instance's judgment in *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuzu PR, Inc.*, Civil No. K CD2009-0708, and was entered into to resolve the controversies among the parties concerning that litigation as well as all other related litigation. To enforce the terms of a post-judgment agreement in which the parties agree to resolve the dispute that led to the judgment is not a derogation of the judgment. It is the enforcement of the post-judgment agreement.

It is true that this Court did not order the parties to take any direct action in *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuzu PR, Inc.*, Civil No. K CD2009-0708. From the Court's perspective, there were several good reasons for the way the Court framed its judgment. First, unlike in the pending foreclosure on the Kennedy Notes, WM Capital was not a party to the *Tenerife* foreclosure action.

Second, the Court ordered the Almeida-León Plaintiffs, including Tenerife, "within three (3) business days from the entry of Judgment in this case [to] consign the four mortgage notes identified in the Agreement into the Puerto Rico Court of First Instance, KCD2011-0142, as stated in paragraph 3.1.2 of the Agreement." *J.* at

1.  Once all four notes, including the GMAC Note, were consigned to KCD2011-0142, the Court ordered the Almeida-León Plaintiffs, including Tenerife, and WM Capital to "file a joint motion to the Puerto Rico Court of First Instance, KCD2011-0142, to foreclose on the four mortgage notes identified in paragraph 3.1.2 of the Agreement and sell the encumbered Kennedy Property via public auction as provided for under the Agreement." *Id.* at 1-2.  The Kennedy Property would be put up for public sale and the proceeds of the sale would be distributed in accordance with the judgment. *Id.*

The net effect of this order would have been to resolve *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuzu PR, Inc.*, Civil No. K CD2009-0708 in accordance with the agreement of the parties because the GMAC Note would have been satisfied and Tenerife could not maintain an action on a promissory note that had already been paid.  The problem this Court did not anticipate is that the Almeida-León Plaintiffs, including Tenerife, would have willfully and successfully obstructed the execution of the federal judgment ever since it issued on June 17, 2019, now over two years ago.  Thus, the judgment of the Court of the First Instance in *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuzu PR, Inc.*, Civil No. K CD2009-0708 has lingered, not because of this Court's judgment, but because of the intransigence of the Almeida-León Plaintiffs, including Tenerife, and their counsel.

More specifically, under the express terms of the July 28-29, 2014 agreement, Tenerife was required to assign to the FDIC (now WM Capital) "an undivided one-half interest in . . . the GMAC Note, and GMAC judgment." *2014 Agreement* ¶ 3.1.2.

If Tenerife had simply done what it promised to do under the July 28-29, 2014 agreement and what it was ordered to do by this Court and if Tenerife had assigned the GMAC note to what is now WM Capital in the Kennedy court, this would have had negated the judgment in *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuzu PR, Inc.*, Civil No. K CD2009-0708 because under Puerto Rico law, to effect a foreclosure, the mortgagee must have ownership of both the promissory note and the mortgage. *See Roosevelt Cayman Asset Co. II v. Cruz-Rivera*, 232 F. Supp. 3d 230, 232-33 (D.P.R. 2017) (concluding that a lender was not entitled to foreclose because the mortgage had not been recorded and could proceed only with an action on a promissory note). Once Tenerife assigned the GMAC promissory note to FDIC-R, Tenerife would not have been able to proceed with the public sale under *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuzu PR, Inc.*, Civil No. K CD2009-0708 because Tenerife's ownership of the note and mortgage would no longer have been unified but subject to the assignment.

But more to the point, Tenerife agreed not only to assign the GMAC note, it also agreed to assign the GMAC judgment. *2014 Agreement* ¶ 3.1.2 ("Tenerife hereby assign to the FDIC-R, as of the Effective Date of this Agreement, an undivided one-half interest in each of the Kennedy Notes, GMAC Note, and GMAC Judgment") (emphasis supplied). Again, if Tenerife had simply lived up to its own agreement and assigned the GMAC judgment to FDIC-R, there could be no claim that WM Capital, as the successor to FDIC-R and as assignee of the GMAC judgment, was somehow violating the terms of the judgment.

Thus, it is Tenerife's refusal to comply with its own agreement and the federal courts' orders enforcing the terms of that agreement, not WM Capital's compliance with the terms of the Court of the First Instance's November 7, 2011 judgment, that is the crux of the issue in this matter.

Finally, even if the parties had contemplated a joint motion to the Court of the First Instance in *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuzu PR, Inc.*, Civil No. K CD2009-0708 and used that lawsuit along with KCD2011-0142 as the vehicles to foreclose on the Kennedy Property, it would have made little sense to do so because the Kennedy Property could be foreclosed and sold only once. Using Civil No. K CD2009-0708 as the vehicle to effect the foreclosure in accordance with the agreement among the parties was practical because, as noted earlier, WM Capital was a party to that action and time was of the essence. Furthermore, having the parties consign all four notes, including the GMAC note, to Civil No. K CD2009-0708 was a sensible way to resolve *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuzu PR, Inc.*, Civil No. K CD2009-0708 in a manner consistent with what the parties, including Tenerife, had agreed to in July 2014.

## B.   The January 17, 2018 Resolution of the Court of the First Instance

The second basis for the GMAC Court's August 16, 2021 Resolution and Order is the Court of the First Instance's January 17, 2018 Resolution and Opinion in which the Court of the First Instance denied WM Capital's motion to intervene in *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuzu PR, Inc.*, Civil No. K CD2009-0708. The GMAC Court wrote that this Court's June 17, 2019 judgment

"annul[ed] and vacat[ed] the Resolution and opinion in this case of January 17, 2018 confirmed on appeal." *Resolution and Order* at 3.

Here, the GMAC Court is simply wrong. The Almeida-Leóns and Tenerife, raised a similar issue in this litigation, namely that the January 17, 2018 Resolution and Opinion of the Court of the First Instance denying WM Capital's motion to intervene was res judicata and binding on this Court. *Opp'n to WM Capital's Rule 56 Mot. (DKT. #119); Lack of Jurisdiction, Lack of Standing and Fictitious Controversy; Colorado River Abstention* at 2, 4, n.4, 5 (ECF No. 123) (*Pls.' Opp'n*); *Opp'n to WM Capital's Mot. for Summ. J.*, at 1-3 (ECF No. 131) (*Tenerife's Opp'n*); *Tenerife's Mot. for Summ. J.* at 14 (ECF No. 108) (*Tenerife's Mot.*).

This Court considered those arguments and rejected them. *Order on Co-Pl./Counter-Def.'s Mot. for Summ. J.* at 50-55 (ECF No. 263) (*Order on Tenerife Mot. for Summ. J.*); *see Am. Order on Def./Countercl.-Pl.'s Mot. for Summ. J.* at 62-64 (ECF No. 265). This Court concluded that the Puerto Rico Court's denial of WM Capital's motion to intervene was a "procedural order, not a substantive adjudication on the merits, based on the state court's conclusion that the judgment in that case had been final and unappealable for more than five years, making WM [Capital]'s request to intervene untimely." *Order on Tenerife Mot. for Summ. J.* at 52. This Court further concluded that "[e]ven assuming the state court order were a final judgment on the merits, res judicata is not applicable because there is no perfect identity as to either the object or cause of the cases and no perfect identity of the parties." *Id.* at 54.

Moreover, as this Court observed, the Almeida-Leóns and Tenerife appealed this Court's orders and judgment and the Court of Appeals for the First Circuit affirmed the judgment of the District Court. *Almeida-León*, 993 F.3d at 15. The First Circuit opinion does not address directly whether the denial of a motion to intervene operates as an adjudication on the merits and it is not clear, from this Court's reading of the First Circuit opinion, whether the Almeida-Leóns and Tenerife raised this issue on appeal. *Id.* at 1-16. It does not matter whether the Almeida-Leóns raised or waived this issue before the First Circuit. The First Circuit affirmance of this Court's judgment and its mandate is binding.

### C.    The All Writs Act

WM Capital urges the Court to invoke the All Writs Act to enjoin the Superior Court of Puerto Rico from enforcing the August 16, 2021 Resolution and Order. *Emer. Mot. for TRO and Permanent Injun.* at 13-14. The All Writs Act empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651.

The Supreme Court "has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Telephone*, 434 U.S. 159, 173 (1977). "Litigants who engage in forum-shopping, or otherwise take advantage of our dual court system for the specific purpose of evading the authority of a federal court, have the potential 'to seriously impair the federal court's flexibility

and authority to decide that case.'" *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1203 (7th Cir. 1996) (quoting *Atlantic Coastline R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295 (1970)). "Indeed, although an injunction is extraordinary relief, where such abuses exist, failure to issue an injunction may create the very needless friction between state and federal courts which the Anti-Injunction Act was designed to prevent." *Id.* (holding that the "Anti-Injunction Act does not bar courts with jurisdiction over complex multidistrict litigation from issuing injunctions to protect the integrity of their rulings . . . as long as the injunctions are narrowly crafted to prevent specific abuses which threaten the court's ability to manage the litigation effectively and responsibly") (internal quotations omitted).

Federal courts invoking the All Writs Act to protect or effectuate their judgments are limited by the Anti-Injunction Act, in that they "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

Faced with a general statutory rule against a federal court enjoining state court action, WM Capital argues that the Anti-Injunction Act's relitigation exception applies here, as "the requested TRO and permanent injunction [are] necessary for this Court to protect or effectuate its judgments." *Emer. Mot. for TRO and Permanent Injun.* at 13-14. Specifically, WM Capital asserts that the relitigation exception is "clearly applicable here" as it "(1) reinforces the preclusive effect of federal court judg[]ments, (2) ensures the finality of federal court decisions, and (3) prevents

harassment through repetitive state court proceedings of those litigants prevailing in federal court." *Id.* at 14. WM Capital further reasons that the Anti-Injunction Act's "strangers" exception applies here as well, since "the party requesting injunctive relief in the federal court is neither a party, nor in privity with a party, to the state court proceedings sought to be enjoined." *Id.* at 14 n.7. Since "WM was never made a party to the GMAC case," WM Capital is a "stranger" that should not be barred from seeking a TRO on the basis of alternative opportunities to intervene in the state court litigation. *Id.* (citing *Iantosca v. Step Plan Servs., Inc.*, 604 F.3d 24, 32 (1st Cir. 2010) ("[t]he Anti–Injunction Act does not prohibit third parties from seeking to enjoin a state proceeding with a federal injunction if the third party is a stranger to the state proceedings"). WM Capital urges the Court to act "where [it] has conclusively decided an issue" to "prevent the unsuccessful party from relitigating that same issue in state court." *Id.* (citing *Fernandez-Vargas v. Pfizer*, 522 F.3d 55, 68 (1st Cir. 2008)).

Even if the All Writs Act and Anti-Injunction Act permit the Court's intervention here, the fact "[t]hat injunctive relief may issue does not mean it must issue." *Fernández-Vargas*, 522 F.3d at 68. "The court needs a 'substantial justification' for issuing such injunction," and "the general prerequisites for injunctive relief must usually be met." *Id.* (internal quotations omitted). "Some issues that might confront the district court include the scope of a potential injunction, how it might be crafted to respect the sovereign interests of Puerto Rico, and ultimately whether an injunction would be a proper exercise of the court's equitable power."

*Industria Lechera De P.R. v. Beiró*, 989 F.3d 116, 123 (1st Cir. 2021) (citing *Mitchum v. Foster*, 407 U.S. 225, 243, (1972) (noting the "principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding"); *Fernández-Vargas*, 2006 U.S. Dist. LEXIS 81963 at *5-8 (D.P.R. Nov. 8, 2006), *aff'd*, 522 F.3d 55 (1st Cir. 2008)).

Mindful of the admonitions urging federal courts to be restrained in enjoining the orders of a state court proceeding, this Court has carefully reviewed the GMAC Court's August 16, 2021 Resolution and Order to determine whether it is possible to reconcile this Court's Final Judgment and the GMAC Court's Resolution and Order. Unfortunately, it is not.

To the contrary, the GMAC Court seems to go out of its way to frame its Resolution and Order in terms of direct defiance and disrespect for the federal courts. The GMAC Court writes that this Court's Final Judgment "is equivalent to revoking and annulling the Final Judgment in this case of November 7, 2011, and also annulling and vacating the Resolution and opinion in this case of January 17, 2018, confirmed on appeal." *Resolution and Order* at 3. The GMAC Court concludes that the federal courts "lack jurisdiction to dispose in such a manner." *Id.* The GMAC Court observes that Tenerife "faces the crossroads of conflicting judgments requiring incompatible and irreconcilable conduct, and illegal and physically impossible conduct." *Id.* at 4.

The GMAC Court writes that it "has deployed substantial effort to reconcile what the Federal Court decrees, with what this Court has sentenced and decreed on

November 7, 2011 and January 17, 2018[.]"  *Id.* at 5.  The GMAC Court concludes

that "[t]he abysmal difference in process, price and contradictions transcends any

possible rational effort at reconciliation."  *Id.* at 5.  The GMAC Court also concludes

that the federal and state judgments are "inconsistent and contradictory."  *Id.* at 6.

Indeed, the GMAC Court even makes the extraordinary charge that the federal

courts have engaged in or induced fraudulent behavior:

> Therefore, this Court concludes and determines that the post judgment
> jurisdictional, substantive and due process defect contained in the final
> Federal Judgment is a continuation of the same fraudulent, non-
> compliant conduct of *WM Capital* and its agents.  The Federal Court
> induced such conduct and judgment.  In doing so, it has repeatedly,
> intentionally and illegally deprived *Tenerife* of its property by not
> allowing it to enforce its judgment for seven years.

*Id.* at 34.

> The GMAC Court concludes:

> Consequently, this Court, in its constitutional function and in the use of
> its Exclusive Primary *In Rem* Jurisdiction, declares that the judgment
> rendered in this case on November 7, 2011, as interpreted and applied
> to the facts by Resolution of January 17, 2018 has primacy, priority and
> controls over any opinion, decision or judgment of the Federal Court in
> case 16-01394 and what was decided by the Federal Court of Appeals in
> appeal 19-1766; if not being divisible the Federal Judgment has any
> validity.

*Id.* at 37.

In its order, the GMAC Court makes it plain that its August 16, 2021

Resolution and Order takes precedence over the federal court judgment:

> It is hereby declared that the Judgment rendered in this case on
> November 7, 2011, as recognized and applied in the Resolution of
> January 17, 2011, takes precedence in all its aspects in reference to the
> Judgment rendered in the Federal Court in case 16-01394, especially

those parts that are in contradiction and/or may undermine what was
decreed and sentenced in this case.

*Id.* at 42.

Based on the contents of the GMAC Court's August 16, 2021 Resolution and
Order, this Court agrees with the GMAC Court that there is an irreconcilable conflict
between its August 16, 2021 Resolution and Order and the Final Judgment of this
Court as affirmed by the Court of Appeals for the First Circuit.

**D.    WM Capital's Motion for Temporary Restraining Order**

**1.    Legal Standard**

 "[Injunctive relief] is an extraordinary and drastic remedy that is never
awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-
9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*,
645 F.3d 26, 32 (1st Cir. 2011)).   A judge should use the authority to grant such
injunctive relief "sparingly."   *Mass. Coal. of Citizens with Disabilities v. Civil Def.
Agency & Office of Emergency Preparedness*, 649 F.2d 71, 76 n.7 (1st Cir. 1981); *see
also Augusta News Co. v. News Am. Publ'g, Inc.*, 750 F. Supp. 28, 31 (D. Me. 1990)
("Preliminary injunctions must be used sparingly and only in cases where the need
for extraordinary equitable relief is clear and plain").

To determine whether to issue a temporary restraining order, the Court
applies the same four-factor analysis used to evaluate a motion for a preliminary
injunction.   *See Alcom, LLC v. Temple*, No. 1:20-cv-00152-JAW, 2020 WL 2202443, at
*5 (D. Me. May 6, 2020) (citing cases).   The four factors are:

(1) the likelihood of success on the merits; (2) the potential for
irreparable harm [to the movant] if the injunction is denied; (3) the

balance of the relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

*Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 17-18 (1st Cir. 2006) (alteration in original) (quoting *Bl(a)ck Tea Soc'y v. City of Bos.*, 378 F.3d 8, 11 (1st Cir. 2004)). As with a preliminary injunction, "[t]he party seeking [an injunction] bears the burden of establishing that these four factors weigh in its favor." *Id.* at 18. The same is true with respect to a temporary restraining order. *Martin*, 665 F. Supp. 2d at 22. Ultimately, "trial courts have wide discretion in making judgments regarding the appropriateness of such relief." *Francisco Sánchez v. Esso Standard Oil Co.*, 572 F.3d 1, 14 (1st Cir. 2009).

### 2.    Analysis

The task before the Court on this motion for a TRO is narrow: to determine whether, at this stage, WM Capital is entitled to immediate temporary injunctive relief to prevent irreparable harm and serve the public interest. The Court analyzes the four factors WM Capital must establish in turn.

### a.    Likelihood of Success on the Merits

"The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002); *see also Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 7 (1st Cir. 2012) (confirming

that this factor is the "most important part of the preliminary injunction assessment" (quoting *Jean v. Mass. State Police*, 492 F.3d 24, 27 (1st Cir. 2007))).

WM Capital asserts that "[w]ith respect to interpretation of the Agreement and whether it was breached, WM has already prevailed on the merits." *Emer. Mot. for TRO and Permanent Injun.* at 19 (citing the Final Judgment and this Court's previous orders granting WM Capital's motions to dismiss and for summary judgment and denying Plaintiffs' motions to alter judgment and for summary judgment on WM Capital's counter-claims). WM Capital further points to this Court's "final, firm, and unappealable" determinations regarding proper subject matter jurisdiction and the lack of res judicata or collateral estoppel effects from the January 17, 2018 Resolution. *Id.* The Court's May 9, 2019 order denying Tenerife's motion for summary judgment on WM Capital's counterclaim concluded that "neither res judicata nor collateral estoppel is applicable to the state court's order denying WM Capital's motion to intervene in Tenerife's state case, and as a result, the Court does not owe 'full faith and credit' to that decision." *Order on Tenerife's Mot. For Summ. J.* at 50 (ECF No. 263).

The applicable test for res judicata under Puerto Rico law requires "perfect identity between the things, causes, and persons of the litigants, and their capacity as such." 31 L.P.R. § 3343. WM Capital asserts that "[a]ll three requirements [for issue preclusion] are satisfied here" as the "Almeida Plaintiffs are counter-defendants" and "although not a party to the GMAC case, the GMAC Court has entered a remedy against [WM] as if it were." *Id.* at 19-20. Furthermore, the "GMAC

Resolution contradicts the Final Judgment and this Court's opinions & orders," and with issue preclusion, "identity of causes" is unnecessary. *Id.*

After applying issue preclusion to the Final Judgment and prior Orders in this case, WM Capital urges the court to find that the GMAC Order is not res judicata. *Id.* at 20. WM Capital cites *Parsons Steel, Inc. v. First Alabama Bank*, which involved "concurrent actions pending in state and federal court regarding events arising out of the same conduct, the defendants first won in federal court, but the state court rejected the defenses of res judicata and collateral estoppel, and the defendants were found liable in that forum." *Id.* (citing 474 U.S. 518 (1986)). *Parsons* concluded with the district court on remand finding that state "law did not give preclusive effect to the state court's determination of the res judicata issue because there was no final judgment in that action and that an injunction was proper under principles of equity, comity and federalism." *First Alabama Bank, N.A. v. Parsons Steel, Inc.*, 825 F.2d 1475, 1480 (11th Cir. 1987) (affirming the district court's order that its injunction continue). "A district court has discretion to determine whether federal interference with state proceedings is warranted pursuant to the relitigation exception to the Anti-Injunction Act and, within that discretion, a district court in a given case may go either way and not be reversed." *Id.* at 1486.

WM Capital next explains that, under Puerto Rico law, "a prior judgment on the merits must be . . . 'final and unappealable.'" *Emer. Mot. for TRO and Permanent Injun.* at 21. WM Capital asserts that "[a] post-judgment order such as the one issued by the GMAC court is not a judgment at all." *Id.* Moreover, the GMAC Order "is not

appealable as of right but may only be reviewed by the intermediate Court of Appeals issuing a writ of certiorari that is, in turn, discretionary." *Id.* As Puerto Rico Rule of Civil Procedure 52.2 grants litigants thirty days to seek appellate review, "the GMAC Order is not a final judgment on the merits" while WM Capital has until September 17 in which to file a writ of appeal.

In establishing their likelihood to win on the merits, WM Capital next alleges that the GMAC Court made several erroneous conclusions of law. *Id.* at 21-25. First, WM Capital argues the GMAC Court "completely ignored the jurisdictional determinations made by this Court," ignoring that res judicata decisions "cannot be collaterally attacked." *Id.* at 21-22 (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 153 (2009). WM Capital submits that the GMAC Court "ignored this Court's holding that the January 17, 2018, [Resolution] has no preclusive effect due to res judicata or collateral estoppel" in contradiction of both appliable law and its own prior ruling that "the January 17, 2018, Resolution was procedural in nature and did not go to the merits of the dispute between the parties." *Id.* at 22 (citing *Stoll v. Gottlieb*, 305 U.S. 165, 172 ("After a Federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of res judicata is made has not the power to inquire again into that jurisdictional fact"). WM Capital further reasons that even if the Court agrees with the Almeida Plaintiffs that "the January 17, 2018, Resolution was indeed an on the merits final judgment," the Court's Final Judgment "would still prevail" as the last in time among conflicting judgments. *Id.* at 22.

Next, WM Capital takes aim at the GMAC Court's "patently flawed" application of the *Princess Lida* doctrine regarding *in rem* jurisdiction between state and federal courts. *Id.* (citing *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456 (1939)). The GMAC Court's Order concluded "in accordance with the *In Rem* jurisdictional principles outlined in *Princess Lida v. Thompson*, supra, that this Court in this case has Exclusive Primary *In Rem* Jurisdiction over the subject matter, which precludes any other Court from acting differently from what this Court has ruled by Judgment over the mortgage and the real property in foreclosure." *Resolution and Order* at 29.

WM Capital alleges that "*Princess Lida* was misapplied by the GMAC Court in two principal ways." *Emer. Mot. for TRO and Permanent Injun.* at 24. "First, although the GMAC Judgment emanates from a quasi-in rem proceeding, the cause of action adjudicated by this Court – a breach of contract claim - was strictly in personam." *Id.* WM Capital reasons that *Princess Lida* does not bar the Court's Final Judgment, which has "not attempted in any way to wrest control of the res from the GMAC Court." *Id.* "Second, the GMAC Court misunderstood the fact that although Princess Lida 'spoke of jurisdiction,' it never spoke "of subject matter jurisdiction; it was exploring the difference between *in personam* and *in rem* proceedings." *Id.* (quoting *Carvel v. Thomas and Agnes Carvel Foundation*, 188 F.3d 83 (2d Cir. 1999)). WM Capital thus characterizes *Princess Lida* as "an **abstention-related** doctrine." *Id.* at 25 (quoting *Carvel*, 188 F.3d at 83) (emphasis added by Defendant). Addressing the balancing of *Princess Lida* concerns within a larger *Colorado River* abstention

analysis, WM Capital notes that "the First Circuit has explicitly held that 'a state court's quasi in rem jurisdiction **does not make abstention mandatory**.'" *Id.* (quoting *Bergeron v. Estate of Loeb*, 777 F.2d 792, 799 (1st Cir. 1985) (emphasis added by Defendant)).   WM Capital concludes by reminding the Court that its now unappealable final determination that "abstention was not warranted" under *Colorado River* "is res judicata and the Almeida Plaintiffs are estopped from collaterally attacking it, just as the GMAC Court is obligated to respect it." *Id.*

The Court agrees with WM Capital.  As a preliminary matter, the GMAC Court's extraordinary decree "that <u>no other Court or person may order the cancellation of the first mortgage,</u> nor alter or cancel the judgment rendered in this case," and proceeds from public auction of the property "shall not be transferred to any other Court" attempts to enjoin this Court from enforcing its Final Judgement. *Resolution and Order* at 40, 41 (emphasis in original).  The GMAC Court's August 16, 2021 Resolution and Order likely violates Puerto Rico statutory law, which generally prohibits state courts from issuing an injunction "(2) To stay proceedings in a court of the United States." 32 L.P.R. § 3524(2)[6]; *see Pearson Yacht Leasing Co., Div. of*

---

[6]     32 L.P.R. § 3524(2) reads:

An injunction or restraining order cannot be granted:

(2) To stay proceedings in a court of the United States.

> Provided, further, That upon issuing said order the court shall consider the public interest involved and conclude that the petitioner has a real possibility of prevailing on the merits of the petition.  Said order shall have force only in the specific case before the court and between the parties.

This statutory language seems contradictory because it forbids the issuance of a state court injunction against a federal court and then seems to say what a state court may consider in issuing such an injunction.  Even if this statutory language could be interpreted as allowing an injunction against a

*Grumman Allied Industries, Inc. v. Massa*, 363 F. Supp. 1337, 1340, 1340 n.5 (D.P.R. 1973) (three-judge court) (describing § 3524 as "an anti-injunction statute").

Second, the GMAC Order is not res judicata as to the parties in this case. "A party asserting res judicata under Puerto Rico law must establish "(i) the existence of a prior judgment  on the merits that is 'final and unappealable'; (ii) a perfect identity of thing or cause between both actions; and (iii) a perfect identity of the parties and the capacities in which they acted." *Universal Ins. Co. v. Office of the Ins. Comm'r*, 755 F.3d 34, 38 (1st Cir. 2014) (quoting *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 183 (1st Cir. 2006)).

Third, the *Princess Lida* rule does not apply where, as here, a "question is presented in the federal court as to the right of any person to participate in the res or as to the quantum of his interest in it." *Id.*  The Supreme Court clarified in *Princess Lida* that the doctrine, intended to protect "the harmonious cooperation of federal and state tribunals," does not apply to a case such as this "in a federal court based upon diversity of citizenship, wherein the plaintiff seeks merely an adjudication of his right of his interest as a basis of a claim against a fund in the possession of a state court." 305 U.S. at 466.  The First Circuit has upheld federal jurisdiction where "in contrast to the situation in *Princess Lida*, [the party's] claims against the trust appear to be unrelated to the administration of the trust corpus." *Bergeron v. Estate*

federal court (and this Court is not ruling that it may be properly be so interpreted), the statute limits the state court's authority to an injunction "between the parties."  Here, the GMAC Court's order reaches beyond the parties to capture WM Capital, which has never been a party in *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuza PR, Inc.,* Civil No. K CD2009-0708 and therefore, under the express terms of this possible exception to the general prohibition against a state court injunction against a federal court, the state court does not have the authority to issue an injunction beyond the parties to the litigation before it.

*of Loeb*, 777 F.2d 792, 799 (1985).  Where a party "seeks merely an adjudication of his right or his interest as a basis of a claims against a fund in the possession of a state court," a state court's assertion of in rem jurisdiction does not necessarily defeat federal jurisdiction.  *Id.* (quoting *Princess Lida*, 305 U.S. at 466).

In their response to WM Capital's emergency TRO motion, Plaintiffs protest that "the oldest valid final judgment governs, and every other court must give it full faith and credit, and that judgment is the November, 7, 2011 final judgment in case no. KCD2009-0708." *Pls.' Response to WMC's Request at Docket Entry No. 502* (ECF No. 506).  However, "[w]hen two now final and unappealable judgments or orders are in conflict, the one last in time—not the first—is the one entitled to res judicata effect." *In re Arroyo*, 2020 Bankr. LEXIS 2172, *13 (citing *In re Aurora Commer. Corp.*, No. 19-10843 (SCC) 2020 Bankr. LEXIS 17, at *23 (Bankr. S.D.N.Y. Jan. 2, 2020) ("Courts in the United States do not follow a 'first in time' rule, . . . but rather a 'last in time' rule")).  The Court concludes that WM Capital has established a likelihood of success on the merits in their efforts to obtain relief from the GMAC Court Order and effectuate the Final Judgment in this case.

### b.      Irreparable Harm

Irreparable injury is "an injury that cannot adequately be compensated for either by a later-issued . . . injunction, after a full adjudication on the merits, or by a later-issued damages remedy." *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 76 (1st Cir. 2005).  Plaintiffs must "demonstrate that irreparable injury is likely in the absence of an injunction," not merely that it is a possibility. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original*); see also*

41

*Canadian Nat'l Ry. Co. v. Montreal, Me. & Atl. Ry., Inc.*, 786 F. Supp. 2d 398, 432 (D. Me. 2011) ("[P]roof of a mere possibility of injury is insufficient to justify an injunction"). Thus, WM Capital must demonstrate that the potential for irreparable harm is immediate and serious rather than merely remote and speculative.

Here, WM Capital claims that it will suffer irreparable harm if the Court does not issue a TRO. *Emer. Mot. for TRO and Permanent Injun.* at 25. "First, WM will continue to have to relitigate the same issues that this Court has adjudicated over half a decade of contentious litigation. That is sufficient to demonstrate actual rather than likely irreparable harm." *Id.* "Second, the Court's Final Judgment is in danger of being annulled." *Id.* at 26. WM Capital stresses that the burden and expense of this unresolved litigation "demonstrate[s] actual rather than likely irreparable harm," and that "there would absolutely be irreparable harm" following "immediate execution of the GMAC Note with no consideration for the terms convened by the parties in the Agreement," as the GMAC Court has ordered. *Id.*

Under Puerto Rico's Rules of Civil Procedure, WM Capital has no immediate, guaranteed path to appeal the GMAC Court's Order. WM Capital faces immediate sanctions and disqualification from protecting its interests under the GMAC Court's Order, which further directs foreclosure on the GMAC Mortgage in contravention of this Court's Final Order and the exclusion of WM Capital in the distribution of proceeds from the sale. WM Capital also raises legitimate concerns that even if a state Court of Appeals granted a request for certiorari, the complicated and at times contradictory record of this case would at best delay and at worst distort appellate

review.  *Id.* at 3 n.5.  In any event, WM Capital has already expended significant efforts and resources to combat Plaintiffs' collateral attacks and effectuate this Court's Final Judgment.  The GMAC Court's Order extends and amplifies this existing burden.  Thus, Defendant WM Capital has demonstrated that, without the issuance of a TRO, it faces definite, imminent financial and legal consequences.

### c.       Balance of the Equities and the Public Interest

The third factor is what the First Circuit terms the "balance of relevant impositions," an assessment of "the hardship to the nonmovant if enjoined as contrasted to the hardship to the movant if no injunction is granted." *Esso*, 445 F.3d at 18.  The Court must weigh the balance of the hardships on the parties and the public interest.

WM Capital emphasizes the values of fairness and good faith in addressing this final factor. *Emer. Mot. for TRO and Permanent Injun.* at 26-28.  WM Capital argues that as the Almeida Plaintiffs "have gone above and beyond in their attempts to sabotage and annul this Court's final judgment and attempt to wear WM down with collateral litigation at every turn," equity "conclusively tilts in [WM's] favor." *Id.* at 26.  WM Capital characterizes the GMAC Order as "manifestly unfair and unequitable." *Id.*  WM Capital points to the GMAC Order's harsh, immediate consequences to "forbid[] and prevent[] WM from enforcing this Court's Final Judgment . . . while excluding WM from the case" and hold "WM and its representatives in contempt of the final judgment of the GMAC Court that wasn't even issued against them[.]" *Id.*  WM Capital highlights the contradictory unfairness of being sanctioned "for prosecuting this case even though the same GMAC

Resolution of October 10, 2019 (under a different judge) had previously held that the January 17, 2018, Resolution was not res judicata and that this Court had exclusive jurisdiction to adjudicate the contractual disputes regarding [the] Agreement." *Id.* at 27. Finally, WM Capital urges that "issuance of a 14-day TRO to sort out the confusion created by the Almeida Plaintiffs and their attorneys will not prejudice them - or the GMAC Court for that matter," reasoning that "14-days of status quo will not make much of a difference" in the lifetime of this protracted case. *Id.*

As to the public policy interests at stake, WM Capital invokes res judicata as "a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts." *Id.* at 27 (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981)). WM Capital further cites the Puerto Rico Supreme Court's pronouncement that "'the rule of res judicata is attended by public interest and directed to maintain private peace and to avoid the perpetuation of judicial controversies, and it is grounded on the convenience of recognizing the dignity to which the judgments of courts are entitled'" in support of their requested relief. *Id.* at 28 (quoting *Lausell Marxuach v. Diaz de Yanez*, 103 D.P.R. 533; 3 P.R. Offic. Trans. 742, 746-747 (1975)). The Court agrees with WM Capital that issuance of a TRO to enforce this Court's final judgment, in the hopes of bringing this case to a close, "advances and promotes the public interest." *Id.*

### E.   Relief

This Court grants WM Capital's motion for TRO and has separately issued a TRO detailing its specific relief. In doing so, the Court has attempted to frame its injunction in as narrow a fashion as possible to avoid any unnecessary conflict

between the state and federal courts.  However, as the GMAC Court's August 16, 2021 Resolution and Order declares its precedence over the final judgment of the federal courts, this Court has been unable to devise a TRO that does not enjoin the operation of the GMAC Court's August 16, 2021 Resolution and Order without enjoining its own final judgment.[7]

In doing so, the Court sua sponte and for the moment stays operation of its August 12, 2021 Order on Civil Contempt and Pending Motions (ECF No. 477) in which it imposed monetary sanctions on the Almeida-Leóns, Tenerife, and their counsel and imposed a deadline of four weeks by which time the Almeida-Leóns and Tenerife's title to the Kennedy Notes and the GMAC Note would be vested in Attorney Monserrate and Attorney Monserrate would be ordered to execute the Final Judgment. *See Order on Civil Contempt and Pending Mots.* at 45 (ECF No. 477).  The Court does not remove the Order's finding of civil contempt, the financial penalty for that contempt, or the other necessary relief.  It stays the Order only because it contemplated that the prospect of a financial penalty would have resulted in compliance with its Final Judgment by this time.  As the Almeida-Leóns, Tenerife and their counsel have defied the orders of this Court, the Court has considered that the financial penalty is becoming too onerous and that the order of execution to

---

[7]    In its proposed order, WM Capital suggested that this Court enjoin the Court of the First Instance from enforcing the part of its order that forbids WM Capital's counsel from making any filings in *Tenerife Real Estate Holdings, LLC v. Emérito Estrada Rivera, Isuzu PR, Inc.*, Civil No. K CD2009-0708.  This Court notes that despite the conduct of counsel for the Almeida-Leóns, which has occasionally been egregious, this Court has not disallowed them from representing their clients in federal court.  Nevertheless, a central function of a court is to determine who may practice law before it and, despite WM Capital's counsels' quandary, this Court is reluctant to extend its TRO to dictate to the Court of the First Instance who may practice in its court and thus declines to issue that part of the proposed TRO.

Attorney Monserrate should await clarification of the conflict between the state and federal courts.

## III.   CONCLUSION

The Court GRANTS WM Capital Management, Inc.'s Emergency Motion for Issuance of Temporary Restraining Order (ECF No. 502) and the Court sua sponte stays its Order on Civil Contempt and Pending Motions (ECF No. 477) pending further order of the Court.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 15th day of September, 2021