UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| FRANCISCO ALMEIDA-LEÓN, WANDA CRUZ QUILES, the Conjugal Partnership; JUAN ALMEIDA-LEON<br><br>Plaintiffs<br><br>v.<br><br>WM Capital Management, Inc.; Juan del Pueblo, Inc., John Doe, y Fulano de Tal, BM Capital de Tal and Others<br><br>Defendants | CIVIL ACTION NO. 16-01394 (JAW/BJM)<br><br>**RE: STATE COURT ACTION** CASE NO. KAC2016-0027 (806)<br><br>BREACH OF CONTRACT; DAMAGES; LITIGIOUS CREDIT<br><br>TRIAL BY JURY DEMANDED |

### REQUEST FOR COERCIVE AND PUNITIVE SANCTIONS AGAINST THE ALMEIDA PLAINTIFFS AND THEIR ATTORNEYS FOR VIOLATING THE TRO

**TO THE HONORABLE COURT:**

**COMES NOW**, defendant WM Capital Management, Inc. ("WM"), by and through its undersigned counsel, and requests that the Almeida Plaintiffs[1] and their attorneys be sanctioned to coerce compliance and sanctioned under this Court's inherent powers, due to their violation of this Court's Temporary Restraining Order (the "TRO Order" or "TRO"):

I. **The Almeida Plaintiffs and their attorneys ignore the TRO**.

On September 15, 2021, this Court issued a TRO against the Almeida Plaintiffs and their attorneys. ECF No. 510. It specifically ordered them to stop undermining this Court's Final

---

[1] The "Almeida Plaintiffs" are Francisco Almeida León, his wife Wanda Cruz-Quiles, their conjugal partnership, and Juan Almeida León as well as their company, Tenerife Real Estate Holdings, LLC.

1

Judgment.[2] Despite this Order, on September 21, 2021, they filed yet another motion with the GMAC Court. This time, trying to undermine this Court's Final Judgment and the TRO. **Exhibit 1**. This is another attempt to have this Court's jurisdiction relitigated and decided by the local courts – while ignoring this Court's decrees. The Almeida Plaintiffs and their attorneys seem to believe that they are above the law, and this Court's authority. They must be disabused of the notion.[3]

WM respectfully requests that coercive sanctions be issued against the Almeida Plaintiffs and their attorneys. That is, that they be ordered to pay $10,000 per day for every day that they refuse to withdraw their recent motion with the GMAC Court purporting to undermine this

---

[2] The TRO Order states:

It is further **ORDERED** that Francisco Almeida-León, his wife Wanda Cruz- Quiles, their Conjugal Partnership, Juan Almeida-León, Tenerife Real Estate Holdings LLC, and their agents, employees, and all other persons, firms, or corporations acting or claiming to act on their behalf, or in concert or participation with them, including but not limited to Edilberto Berríos Pérez, Esq., Roberto Berríos Falcón, Esq., and Fernando E. Longo-Quiñones, Esq. are hereby **ENJOINED** from:

1) Directly or indirectly making any further collateral attacks on the Final Judgment of this case;

2) Making any attempt to execute the GMAC Judgment other than as specified in this Court's Final Judgment;

3) Making any attempt to enjoin or impede these federal proceedings in the Courts of the Commonwealth of Puerto Rico.

[3] On September 22, 2021, the Almeida Plaintiffs filed a response to the Court's TRO titled "Motion in Compliance With Order About Improvident TRO Against State Court And Plaintiffs". While WM is still digesting that filing (and may respond through separate motion), it is abundantly clear that the Almeida Plaintiffs and their attorneys have nothing but contempt for this Court's Final Judgment and the authority of the Court to effectuate its Final Judgment. Instead of a reasoned argument about why the TRO should not be allowed to be converted into a permanent injunction, they repeat their same arguments that have already been rejected by both this Court and the First Circuit Court of Appeals. Further, the Almeida Plaintiffs and their attorneys threaten the reputation of the Court and insinuate (at best) that the Court's TRO will somehow lead to the United States Supreme Court and some sort of judicial reform, as in Charles Dickens's *Bleak House*. ECF No. 511 at 25. Again, WM and its counsel are still digesting the Almeida Plaintiffs' filing, but it is clear that they have taken the law into their own hands and have no intention on obeying the TRO or allowing this case to come to a close.

Court's Final Judgment – in violation of the TRO. Also, in said motion they should make clear to said Court that they will abide by the TRO and this Court's orders.

Moreover, the Almeida Plaintiffs and their attorneys have for several years now displayed a flippant attitude towards this Court's decrees. In their recent motion to the GMAC Court, they announce their intention to continue to defy this Court's jurisdiction and authority. That is, they inform of their determination [to defy this Court] and state that they will not be bent or swayed. **Exhibit 1** at 29. This is the ultimate token of disrespect to this Court's authority. Punitive sanctions should be ordered against them commensurate with their disregard of this Court's authority. In addition, the Almeidas should be ordered to pay for WM's attorneys' fees spent in defending the TRO and filing related motions.

WM also requests that this Court issue whatever other order it deems proper in light of the Almeida Plaintiffs' and their attorneys' actions – including initiating criminal contempt proceedings and make the appropriate referral for the review of their professional conduct within this district.

II. **The flippancy of the Almeida Plaintiffs and their attorneys and their repeated violations to this Court's orders without compunction**.

The Almeida Plaintiffs and their attorneys have consistently disregarded and pointedly disobeyed this Court's orders – even after being held in contempt. What follows is a short summary illustrating their misconduct.

  A. *The extraordinary lengths to which "the Almeida Plaintiffs [and their attorneys] … have gone to collaterally attack the Court's rulings" – after the Final Judgment was issued*.[4]

---

[4] There were several collateral attacks initiated by the Almeida Plaintiffs before this Court issued its Final Judgment. To wit the Almeida Plaintiffs and their attorneys filed an injunction in state court against the judge presiding this case, WM, and its attorneys. See case No. 19-1533 (WAG) removed to this Court. Also, even though the case of caption was the case with jurisdiction to determine the rights of the parties to the

3

On May 29, 2020, this Court issued an Order on Post Judgment Motions. There it granted WM's request for the execution of the Final Judgment. Also, it reviewed some of the conduct by the Almeida Plaintiffs and their attorneys to impede the execution of the Final Judgment issued by this Court. Moreover, it described their collateral attacks as extraordinary.

> Even though the Almeida Plaintiffs and Tenerife have a right to appeal this Court's decisions, a right they are exercising, the lengths to which the Almeida Plaintiffs and Tenerife have gone to collaterally attack the Court's rulings are extraordinary.

ECF No. 373. In this Order, the Court illustrates part of the obstructive conduct by the Almeida Plaintiffs – in state and in federal courts.[5]

Further, this Court described more of their obfuscation and complete lack of cooperation by failing to pledge compliance with the Final Judgment of this Court. ECF Nos. 383 at 3-4.[6] Thus,

---

*Agreement to Satisfy Judgment; and Assignment of Mortgages* at issue in this case, the Almeida Plaintiffs initiated several attempts to foreclose on the GMAC Note without WM. This occurred on November 4, 2016, and June 18, 2019. *See* ECF No. 75 and 296-1 at 5.

[5] "First, WM Capital documents that, in an attempt to collaterally attack this Court's rulings, the Almeida Plaintiffs and Tenerife filed an action in state court against, among others, the attorney representing WM Capital, this Judge, and Chief Judge Gelpi, an action promptly dismissed by Judge Young. *See Order of Dismissal, Almeida-León v. Mellado-Villareal*, Case No. 3:19-cv-01533-WGY (ECF No. 34). In dismissing the removed action, Judge Young described the joinder of the Puerto Rico attorneys as "fraudulent." *Tr. of Proceedings for Videoconf. Hr'g Before Judge William G. Young* at 11:17-19, *Mellado-Villareal*, Case No. 3:19-cv-01533-WGY (ECF No. 36)." ECF No. 373 at 45.

[6] "First, the Court finds that the Almeida Plaintiffs' and Tenerife's responses to these recent motions do not adequately pledge compliance with the final judgment. Instead, they attempt to reargue to this Court and to WM Capital their disagreement with the rulings of this Court. If the Almeida Plaintiffs and Tenerife had wanted to place a hold on the Court's judgment, they would have been required to comply with the bond provision of Federal Rule of Civil Procedure 62(b), which provides that "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security." They did not do so and on May 29, 2020, the Court issued an execution of judgment, *Order on Post-Judgment Mots.* at 47, so the Almeida Plaintiffs and Tenerife are required to comply with the judgment. Since their responses do not confirm that they will comply with the judgment and execution, the Court applies Rule 70(a) and will appoint another person to act for the Almeida Plaintiffs and Tenerife in carrying out the judgment and execution." ECF No. 383 at 3-4.

4

preventing the execution of the Final Judgment. All this conduct required the application of Fed. R. Civ. P. 70 (a) – the appointment of a third party to act on their behalf.

On March 29, 2021, the Final Judgment and its related orders were affirmed by the First Circuit. ECF Nos. 408, 409. Armed with these judgments WM, and attorney Dora Monserrate-Peñagarícano filed a request to foreclose the GMAC note in coordination with the Kennedy notes. ECF No. 422-2 (Request at Kennedy case at ECF No. 416-1). Nevertheless, the Almeida plaintiffs redoubled their collateral attacks – opposing the request to foreclose in state court Civil No. K CD2009-0708 ("GMAC case") - with outright misrepresentations and inaccuracies.[7] ECF No. 422-1.

The GMAC court was misled and denied the request to foreclose on the GMAC note. ECF No. 422-3. Thus, WM sought the intervention of this Court to stop the collateral litigation by the Almeida plaintiffs and their attorneys through a second emergency motion.[8] ECF No. 416.

On April 22, 2021, this Court expressed concern about the injunction issued by the GMAC court at the behest of the Almeida Plaintiffs to stop the execution of its Final Judgment.

> The Court views the recent injunction by the Puerto Rico state court, at least as described by WM Capital, as inexplicable in light of the opinions of the Court of Appeals for the First Circuit and this Court in this case, which are now final judgments. The Court suspects that the injunction in *Tenerife Real Estate Holdings, LLC*

---

[7] It is no exaggeration to describe the content of the motions filed by the Almeida Plaintiffs in state court as plagued with outright misrepresentations and inaccuracies – see the certified translations of the latest motions filed at ECF Nos. 422-1, 422-4, 444- 1. For a discussion of these misrepresentations see WM's motions at ECF Nos. 416 at 7-9, 448 at 14-17 and n. 11, 450 at 3-6 and 467 n. 4, 6, 8.

[8] On July 17, 2019, WM filed a first emergency motion seeking this court's intervention to effectuate the Final Judgment due to the Almeida Plaintiffs' and their attorneys' collateral litigation – including their efforts to foreclose on the GMAC note without WM's participation – so as to keep all the proceeds from the public sale of the Kennedy Property. ECF No. 296.

>*v. Emérito Estrada Rivera-Isuzu PR, Inc.*, Civil Case No. K CD2009-0708 (505) may have been based on a lack of complete information about the status of the federal action.

ECF No. 421. Moreover, it warned the Almeida Plaintiffs and their attorneys that - under the circumstances explained by WM - it would likely issue an order to show cause why they are not in contempt.[9] This should have given them pause.

Meanwhile, on April 29, 2021 (in the GMAC court) WM filed a motion for reconsideration of the order denying the request to foreclose on the GMAC note – attempting to clarify the record. ECF No. 446-1.

Nevertheless, the Almeida Plaintiffs and their attorneys continued their obstructionist campaign. Later in the afternoon of the same day - **after this Court had issued its Order** - the Almeidas filed with the Kennedy Court[10] a *Motion Informing Decision by the Court in Case KCD2009-0708 [GMAC Court] Resolution of April 13, 2021*.

Thereafter, they opposed WM's motion for reconsideration at the GMAC Court - employing several falsehoods and misrepresentations. ECF No. 444-1 (discussed by WM at ECF Nos. 450 at 3-6), see also WM's efforts to clarify the record with the GMAC Court at ECF No. 446-2.

On June 25, 2021, this Court issued an order to show cause why the Almeida Plaintiffs and their attorneys should not be held in contempt ("OSC"). ECF No. 464. There, this Court ordered that they abide by, and refrain from collaterally attacking this Court's Final Judgment in state courts. Evidently this included the GMAC case:

>The Court stresses to the Almeida Plaintiffs and their attorneys that they must comply with the Final Judgment of this Court. **They must also refrain from further collateral**

---

[9] "…will likely issue an Order to Show Cause as to why the Court should not hold the Plaintiffs and Plaintiffs' counsel in contempt of court for willful disregard of this Court's Orders." *Id*.

[10] Case No. KCD2011-0142 before the Court of First Instance.

**relitigation while this Court is considering WM Capital's various motions for sanctions.** *See AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 425-26 (1st Cir. 2015) (explaining that district courts "enjoy[] wide latitude" to impose coercive sanctions for civil contempt after providing "notice and an opportunity to be heard").

Id.  (Emphasis added).

The Almeida Plaintiffs simply ignored this Court's order in the OSC – that they stop their collateral relitigation. On July 9, 2021 they filed a *Request for Relief to Enforce Effectiveness of Judgment, under Rule 56 of Civil Procedure, Exercise of Structural Constitutional Right*. ECF No. 470-1. There, they sought to reverse this Court's rulings on the Agreement executed by the parties. As part of their request for relief they requested that the GMAC Court:

> iv. Put into effect its Resolution of January 17, 2018 where this Court declared that WMC has no rights under the contract of July 28, 2014 for having breached it and having been found in default and terminated said contract by Tenerife.

ECF No. 470-1, at 26. WM responded by filing two motions – one requesting that the GMAC Court abstain from issuing a ruling until this federal court issue its ruling on the OSC (ECF No. 473-1); and another motion opposing the injunction request filed by the Almeida Plaintiffs and their attorneys (not submitted to this Court).

On August 12, 2021, the Almeida Plaintiffs and their attorneys were held in contempt by this Honorable Court for willfully obstructing the execution of the Final Judgment. ECF No. 477. The Almeida Plaintiffs and their attorneys, however, were not done snubbing this Court's orders to stop their collateral relitigation.

The very same day that this Court held them in contempt, the Almeida Plaintiffs and their attorneys prodded the GMAC Court to issue an injunction against this Court, WM, it's representative Jim Barr Coleman, and its attorneys ("GMAC Order").

7

> "7. We ask for an *injunction* issued to the Federal Court so it ceases and desists from depriving this Court of its exclusive jurisdiction…".

ECF No. 482-1.

On August 16, 2021, the GMAC Court issued a Resolution and Order granting injunctive relief against this Court, reversing its Final Judgment and rulings. ECF No. 498-1. On August 25, 2021, WM requested the issuance of a TRO and Permanent Injunction against the GMAC Court, the Almeida Plaintiffs and their attorneys. ECF No. 502. While this Court adjudicated said request, WM also filed a motion for reconsideration with the GMAC Court to stem the effects of the GMAC Order. ECF No. 507.

  B. *This Court issues the TRO, the Almeida Plaintiffs and their attorneys violate it*.

The TRO was issued by this Court on September 15, 2021. There it ordered the Almeida Plaintiffs and their attorneys to cease their collateral litigation at the GMAC Court attempting to reverse its Final Judgment:

> It is further **ORDERED** that Francisco Almeida-León, his wife Wanda Cruz- Quiles, their Conjugal Partnership, Juan Almeida-León, Tenerife Real Estate Holdings LLC, and their agents, employees, and all other persons, firms, or corporations acting or claiming to act on their behalf, or in concert or participation with them, including but not limited to Edilberto Berríos Pérez, Esq., Roberto Berríos Falcón, Esq., and Fernando E. Longo-Quiñones, Esq. are hereby **ENJOINED** from:
>
> 1) **Directly or indirectly making any further collateral attacks on the Final Judgment of this case**;
>
> 2) Making any attempt to execute the GMAC Judgment other than as specified in this Court's Final Judgment;
>
> 3) Making any attempt to enjoin or impede these federal proceedings in the Courts of the Commonwealth of Puerto Rico. (Emphasis added.)

ECF No. 510 at 3.

8

On September 21, 2021, the Almeidas and their attorneys, however, filed an opposition to the motion for reconsideration filed by WM. There they request that the Commonwealth Courts ignore the TRO, and declare the supremacy of the GMAC Order of August 16, 2021 (which attempted to reverse this Court's Final Judgment). Moreover, they request that the GMAC Court decree that the interventions by the Almeida Plaintiffs and their attorneys in said state court do not constitute relitigation of matters. Thus, they indirectly collaterally attack the Final Judgment and attempt to induce the GMAC Court into impeding the TRO proceedings. In their request for remedies, they request that the GMAC Court:

> …
>
> b. Acknowledge that the *Resolution and Order* of August 16, 2021, remains fully in force and is final, firm and unappealable;
>
> c. Declare the nullity of everything acted by WMC and its attorneys that is the result or effect of having violated the cease and desist order issued against them;
>
> d. declare that the process of giving full faith and credit, as well as the process of exequatur is not an injunction against another court, nor is it relitigating anything, nor does it undermine the judgment of another court, but, simply the complying with the requirements to determine if the courts of Puerto Rico can or should put into effect a judgment of another jurisdiction…".

Exhibit 1 at 32 (translation ours).

Moreover, in yet another collateral attack, the Almeida Plaintiffs and their attorneys continue to argue and insist that the GMAC Court is the one with jurisdiction – not this Court.

> This Court correctly decreed that the Federal Court lacks jurisdiction to annul, modify and undermine the judgment issued in this case on November 7, 2011, that decision has not been questioned by WMC nor by its attorneys nor the Federal Court. On the other hand the decision of this Court of August 16, 2021, controls and reigns over any other expression of WMC or the Federal Court in case 16-1394, or another case.

Ex. 1 at 3 (translation ours).

Finally, the Almeida Plaintiffs and their attorneys give the GMAC Court their opinion on this Court's sanctions and their effect on them. Essentially, they state in no uncertain terms that they will not be swayed or "bent" into compliance – and accuse this Court of ordering them to act illegally.

> The Federal Court was expressly informed since at least the year 2018 (docket #123), and reiterated at oral argument of February 21, 2019 (Ap.p. 1-73) that the course of action that it was taking, that it was informed in open court that it would take, and that finally it has taken, exceeded the limits of its jurisdiction. It was expressly informed to the Federal Court that it would provoke an unnecessary interjurisdictional confrontation (Ap.p. 61). Tenerife and the appearing parties have been the object of multiple excesses by WMC, and the Federal Court, who assumed that because of the overwhelming sanctions the will of the appearing parties would bend, and through that overwhelming would obtain the "consent" extracted from those manifest excesses. Abuse of process in those manifest extremes deliberately oppressive. **Ten thousand dollars a day of sanctions for refusing to act illegally is unheard of**.

Exhibit 1 at 29.  (Emphasis on the original, footnotes in the original excluded.)

This indicates a belief by the Almeida Plaintiffs and their attorneys that they are above the law – beyond this Court's authority and reach.

III.     **Argument.**

The Almeidas have violated the TRO. Accordingly, they should be held in contempt (again) and their compliance must be coerced. Furthermore, the Almeidas have long ago justified the need for punitive rather than purely coercive sanctions. Accordingly, as explained below, WM also requests the imposition of punitive sanctions and whatever other remedy this Court deems proper.

   A. *Applicable legal standard to the coercive Civil Contempt sanctions.*

Civil contempt is a forward-looking penalty meant to coerce compliance rather than to punish past noncompliance. *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 426 (1st Cir. 2015). There is no dichotomous split between coercion and punishment, however, and a civil contempt sanction may evidence a punitive flavor. *Id.* After all, "[m]ost contempt sanctions, like most criminal punishments, to some extent punish a prior offense as well as coerce an offender's future obedience." *Id.* (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994). In addition to nudging a party to comply with a past court order, a district court may also utilize sanctions to compensate the complainant for harms suffered as a result of the contempt and to reinforce the court's own authority. *Id.*

Due to the "contempt power's virility and damage potential," federal courts use a four-pronged test to cabin judicial discretion and ensure that judges exercise their contempt powers judiciously. *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005). Specifically, the proof must establish:

> (1) that the alleged contemnor had notice that he was within the order's ambit;
> (2) that the order was clear and unambiguous;
> (3) that the alleged contemnor had the ability to comply; and
> (4) that the order was indeed violated.

*Id.* (internal citations omitted). When the question turns on findings of fact, "a complainant must prove civil contempt by clear and convincing evidence." *Id.* at 28. Here, all four prongs are satisfied.

First, the Court's TRO Order makes it clear that the Almeidas and their attorneys fall within the TRO's ambit. ECF No. 510 at 3. That Order, in turn, was notified through the ECF System. Second, the TRO Order enjoins the Almeida Plaintiffs and their attorneys from "[d]irectly or

indirectly making any further collateral attacks on the Final Judgment of this case." *Id.* That is clear and unambiguous. The Almeida Plaintiffs' Opposition to WM's Motion for Reconsideration is precisely the sort of conduct prohibited by the TRO Order. Third, the Almeida Plaintiffs and their attorneys had the opportunity to comply. All they had to do was not file what they filed. Fourth and finally, the TRO Order was indeed violated.

Thus, the imposition of coercive sanctions is warranted.

    B. *Applicable legal standard to the punitive non-contempt sanctions*.

The First Circuit has held that criminal contempt is not the only way to issue a punitive sanction. *United States v. Kouri-Pérez*, 187 F.3d 1, 8–9 (1st Cir. 1999). There, the First Circuit held that a district court may, in appropriate circumstances, impose "punitive non-contempt sanctions." *See id.* at 7. In other words, the contempt power is merely one of many inherent powers that a court possesses; it is not the only type of inherent power that can be deployed. *In re Charbono*, 790 F.3d 80, 85 (1st Cir. 2015) (collecting cases). The authority to issue a punitive sanction also may reside in "a court's inherent power to police itself, thus vindicating judicial authority without resort to the more drastic sanctions available for contempt of court." *Id.* (internal quotation marks omitted). Exercising this authority, courts may levy sanctions (including punitive sanctions) for such varied purposes as disciplining attorneys, remedying fraud on the court, and preventing the disruption of ongoing proceedings. *Id.* at 85-86; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991).

Because of their very potency, inherent powers must be exercised with restraint and discretion. *Id.* at 44-45. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. *Id.* Thus, a Court may use its inherent

12

powers only when a "(a) litigant has engaged in bad-faith conduct or (2) willful disobedience of a court's orders. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991). With respect to the first prong, the Supreme Court has held the following:

> [A] court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy."

*Id.* at 45–46. (internal citations omitted).

With respect to the second prong, the Court's inherent power allows district courts to impose attorney's fees on the sanctioned party and therefore make whole the prejudiced party. *See id.* at 45 ("a court's discretion to determine "[t]he degree of punishment for contempt" permits the court to impose as part of the fine attorney's fees representing the entire cost of the litigation").

The continued disobedience of the orders of this Court - the latest example of which is their violation of the terms of the TRO – warrant the imposition of severe punitive sanctions on the Almeida Plaintiffs and their attorneys.

C. *Sanctions should be issued to prevent a state of lawlessness and to make WM whole.*

As illustrated earlier in this motion, the Almeida Plaintiffs simply refuse to abide by *any* of this Court's Orders. Further, the Almeida Plaintiffs even gloated to the GMAC Court of their defiance to the sanctions imposed by this Court. **Exhibit 1** at 29. They seem to believe that compliance with the orders and rulings of this Court are optional - mere suggestions. The

Almeida Plaintiffs and their attorneys lost in this case, but that does not matter to them. They will abide by the orders they deem convenient and ignore those that are not. This conduct is contrary to the rule of law. If the parties to a litigation are to act as they choose - ignoring the rulings and orders of a Court - lawlessness would ensue.

Accordingly, WM requests that the Almeida Plaintiffs be sanctioned with coercive and punitive sanctions. If they refuse to abide by this Court's orders they have to be coerced to comply. Also, the history of defiance and non-compliance is by now too long to be ignored. WM respectfully holds that the Almeida Plaintiffs and their attorneys must be punished for their acts.

Therefore, WM requests that coercive sanctions in the amount of $10,000 per day be issued jointly and severally against the Almeida Plaintiffs and their attorneys for every day – after a certain date selected by this Court - that they refuse to withdraw their motion opposing the motion for reconsideration filed by WM with the GMAC Court *and* make clear to said court that they will abide by the Final Judgment and TRO issued by this Court.

Also, joint and several punitive sanctions against the Almeida Plaintiffs and their attorneys should issue from this Court commensurate with their defiance and lack of deference to the authority and dignity of this Court. Also, the punitive sanctions should include the attorneys' fees spent by WM in filing the TRO and defending it.[11]

---

[11] As this Court is aware, WM is seeking its full attorneys' fees for the entirety of this case – which by now are considerable. This case should never have had to be filed to begin with (as the underlying agreement was a settlement agreement for the payment of a judgment), and the case has taken over six years of highly contentious litigation to be resolved due exclusively to the vexatious conduct of the Almieda Plaintiffs and their attorneys. WM reserves its right to seek and collect all of its attorneys' fees and does not intend for the request of fees here to be any sort of waiver.

Finally, WM also requests that this Court issue whatever other order it deems proper in light of the lawlessness engaged in by the Almeida Plaintiffs and their attorneys – including initiating criminal contempt proceedings and/or make the appropriate referral for the review of the professional conduct of their attorneys within this district.

WHEREFORE, WM hereby requests that this Court issue joint and several coercive and punitive sanctions against the Almeida Plaintiffs and their attorneys - $10,000 for each day that they refuse to withdraw their motion opposing the motion for reconsideration filed by WM – while making clear to the GMAC Court that they will abide by this Court's TRO and Final Judgment, and issue punitive sanctions commensurate with their defiance and contempt, plus imposing the attorneys' fees spent by WM in filing the TRO and defending it. Also, WM requests that this Court consider any other remedies that in light of the current circumstances are warranted – including initiating criminal contempt proceedings and/or referral for the review of the professional conduct of their attorneys within this district.

**RESPECTFULLY SUBMITTED:**

In San Juan, Puerto Rico, this 23rd day of September 2021.

**I HEREBY CERTIFY:** that on this date I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the case of caption.

s/ Jairo Mellado-Villarreal

USDC-PR No.208112
jmellado@mellado.com

s/ Tessie Leal Garabis

15

USDC-PR No. 218408
tleal@mellado.com

s/ Héctor Orejuela Dávila
USDC-PR No. 301111
horejuela@mellado.com

*Attorneys for WM Capital*
MELLADO & MELLADO-VILLARREAL
165 Ponce de León Ave., Suite 102
San Juan, Puerto Rico 00917-1235
Tel. 787-767-2600/Fax 787-767-2645

16